FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2013 FEB 15 P 12: 28

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

---------------------------------------------------------- x
REYNOLDS CONSUMER PRODUCTS INC.,      :
                                       :   Case No.: 1:13CV214-LO/TRJ
                Plaintiff,             :
                                       :
        -v-                            :   COMPLAINT
                                       :
HANDI-FOIL CORPORATION,                :
                                       :   Jury Trial Demanded
                Defendant.             :
                                       :
                                       :
---------------------------------------------------------- x

Plaintiff Reynolds Consumer Products Inc. ("Plaintiff" or "Reynolds"), by its undersigned attorneys, as and for its complaint against Defendant Handi-foil Corporation ("Defendant" or "Handi-foil"), alleges as follows:

### THE NATURE OF THE ACTION

1. This case involves Defendant's manufacture, sale, and/or distribution of aluminum foil that uses the famous and distinctive trade dress Plaintiff owns and uses to distinguish REYNOLDS WRAP aluminum foil.

2. Defendant is manufacturing, or causing to be manufactured, and is selling and distributing aluminum foil in packaging nearly identical to the packaging for Plaintiff's REYNOLDS WRAP aluminum foil. Defendant's packaging allows Defendant to unfairly compete, infringes and dilutes Plaintiff's trademarks and trade dress, and blurs the distinctiveness of Plaintiff's marks. As a result, this action seeks injunctive and monetary relief for trademark infringement in violation of § 32 of the Lanham Act (15 U.S.C. § 1114), false designation of origin in commerce in violation of § 43(a) of the Lanham Act (15 U.S.C.

§ 1125(a)), trade dress infringement in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trademark dilution in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)), trademark infringement in violation of Virginia Code § 59.1-92.12 and other states' laws, and common law unfair competition and unjust enrichment.

## THE PARTIES

3. Plaintiff Reynolds Foil Inc. d/b/a Reynolds Consumer Products Company is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 6641 West Broad Street, Richmond, Virginia 23230.

4. Defendant Handi-foil Corporation is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 135 E. Hintz Road, Wheeling, Illinois 60090.

## JURISDICTION AND VENUE

5. The Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367 and general principles of ancillary and pendent jurisdiction.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and/or because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## THE FACTS

### Plaintiff's World-Renowned Trademarks and Trade Dress

7. Plaintiff manufactures and markets a variety of high-quality consumer disposable food storage and cookware products.

8. Plaintiff devotes substantial effort, time, and resources to developing and testing its products and to designing the packaging and graphics for those products. Packaging is an important element in marketing consumer products because it serves to distinguish Plaintiff's products from those of others, to represent and convey a product's quality and value to consumers, and to designate Plaintiff as the source or origin of a product.

9. Among the products Plaintiff manufactures and markets is the world-renowned, high-quality REYNOLDS WRAP aluminum foil. Reynolds owns incontestable federal trademark registrations for the REYNOLDS WRAP name and package design. Specifically, Reynolds owns, *inter alia*, the entire right, title, and interest in and to the following federally registered trademarks and designs:

| **Reg.** | **Date** | **Mark** | **Image** |
|---|---|---|---|
| 1,070,888 | August 9, 1977 | Reynolds Wrap Design |  |
| 1,067,092 | June 7, 1977 | Reynolds Wrap Name and Design |  |

With respect to the registrations listed above, the drawings are lined to designate the colors blue (horizontal), silver (diagonal), and pink (vertical) (collectively, and together with other design elements of Plaintiff's package design, the "Reynolds Wrap Marks"). Reynolds owns corresponding trademark registrations in at least 53 other countries.

10. Reynolds has developed a distinctive trade dress for its REYNOLDS WRAP aluminum foil that includes numerous features combined in a unique format to create a highly distinctive overall impression. REYNOLDS WRAP trade dress includes:

   a. The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

   b. The use of the color scheme – the blue and pink sections run left to right;

   c. The use of prominent lettering to display the brand name within the blue section on the front of the box;

   d. The use of silver bands to separate the blue from the pink sections of the front of the box;

   e. The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

   f. The inclusion that "FOIL MADE IN U.S.A." in silver lettering on the front of the box;

   g. The repetition of the color scheme and type on the ends of the box;

   h. The use of the "press here to lock" feature on the ends of the boxes;

   i. The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

   j. The use of the "Lift" graphic to indicate how to open the box;

    k. The positioning of REYNOLDS WRAP on the top flap of the box; and

    l. The color (yellow), placement, and text used to caution the consumer.

11. The Reynolds Wrap Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's goods to the consuming public. Through Plaintiff's extensive use and promotion of the Reynolds Wrap Marks, Plaintiff distinguishes its products from the products of other businesses and distinguishes the source and origin of Plaintiff's products.

12. Plaintiff has spent and continues to spend large sums of money marketing and selling in interstate commerce REYNOLDS WRAP aluminum foil packaged in high-quality boxes bearing its trademarks, trademarked designs, and trade dress. As a result of the extensive advertising of REYNOLDS WRAP aluminum foil in connection with the Reynolds Wrap Marks, the widespread sale of REYNOLDS WRAP aluminum foil, and the celebrity that Reynolds Wrap Marks have achieved, aluminum foil bearing Reynolds Wrap Marks has been and is now recognized by the public and in the trade as originating from Reynolds.

13. Aluminum foil bearing the Reynolds Wrap Marks has come to be known by the purchasing public throughout the United States as aluminum foil of the highest quality. As a result, the Reynolds Wrap Marks, together with the goodwill associated with them, are of inestimable value to Plaintiff.

14. As a result of Plaintiff's extensive use and promotion of the Reynolds Wrap Marks in the Commonwealth of Virginia and elsewhere, Plaintiff has acquired valuable common law rights in the Reynolds Wrap Marks.

15. The Reynolds Wrap Marks are famous, well-known, and distinctive.

16. Plaintiff has engaged and continues to engage in interstate activities designed to promote REYNOLDS WRAP aluminum foil, and the business and goodwill associated with the

Reynolds Wrap Marks, and to expand the use and reputation of the Reynolds Wrap Marks in the Commonwealth of Virginia and throughout the United States.

17. Plaintiff's goods sold under the Reynolds Wrap Marks have been and continue to be sold from retail stores located within this District.

### Defendants' Unlawful Activities

18. According to its website, www.handi-foil.com, Handi-foil has been "a leader in the industry, manufacturing aluminum foil bakeware products from our Wheeling, Illinois facility using the most modern equipment in the business" "[f]or three generations." Defendant "is a privately owned manufacturer of recyclable aluminum products committed to quality, convenience and innovation."

19. Defendant is manufacturing, or causing to be manufactured, selling and distributing two different packages of aluminum foil that bear the Reynolds Wrap Marks, or trade dress remarkably similar thereto (collectively, the "Infringing Products").

20. Defendant is distributing and selling or causing the distribution and sale of the Infringing Products within this District.

21. Below is a depiction of the first of Defendant's Infringing Products and one of the authentic REYNOLDS WRAP products:





22. Defendant's trade dress in the First Infringing Product copies most elements referenced in Paragraph 10 herein, including, *inter alia*:

    a. The color scheme – the overall color scheme of Defendant's packaging contains the bright shade of blue separated from a red section;

    b. Like Plaintiff's packaging, Defendant's packaging uses prominent white lettering to display the brand name on the front of the box;

    c. As on REYNOLDS WRAP, Defendant's packaging uses a silver band to separate the blue from the red sections of the front of the box;

    d. Defendant's package places quantity information (square footage) on the right side of the box, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

    e. Defendant prominently displays, in silver font, that its product was "MADE IN USA," just as Plaintiff's package does;

    f. Defendant's box uses the "Lift" graphic to indicate how to open the box;

    g. Defendant's package contains graphics with how-to information on the back of the box, like Plaintiff's package; and

    h. Defendant's name is positioned on the top flap of the box, as is Plaintiff's.

23. Even more, Defendant's package references REYNOLDS WRAP, stating: "COMPARE TO REYNOLDS WRAP FOIL."

24. Defendant has combined all of these elements on a box that has the same width and approximate height and depth as Plaintiff's box.

25. Defendant changed its trade dress as described above to look even more like REYNOLDS WRAP. Below is a depiction of the second of Defendant's Infringing Products and one of the authentic REYNOLDS WRAP products:



26. Defendant's trade dress in the second Infringing Product copies even more of the elements referenced in Paragraph 10 herein, including, *inter alia*:

   a. The color scheme – now the majority of Defendant's box is the bright shade of blue of REYNOLDS WRAP, and the rest of the front of the box is a shade of red;

   b. The use of the color scheme – the blue and red sections run left to right, as Plaintiff's blue and pink sections run left to right;

   c. Like Plaintiff's packaging, Defendant's packaging uses prominent white lettering to display the brand name on the front of the box in the bright blue section;

   d. As on REYNOLDS WRAP, Defendant's packaging uses a silver band to separate the blue from the red sections of the front of the box;

   e. Defendant's package places quantity information (square footage) on the right side of the front of the box in the red section, and includes, in white lettering, the number of yards by inches;

   f. Defendant prominently displays, in silver font, that its product was "MADE IN USA," just as Plaintiff's package does;

g. Defendant's box uses the "Lift" graphic to indicate how to open the box;

h. Defendant's box uses graphics showing how-to information such as, *inter alia*, "Cover" to "Keep[] Food Moist" and use it in "Preparation": "Perfect to Line Roasting Pans . . ."; and

i. Defendant's name is positioned on the top flap of the box, as is Plaintiff's.

27. Defendant has combined all of these elements on a box that has the same width and approximate height and depth as Plaintiff's box.

28. Even more, Defendant's package references REYNOLDS WRAP, stating: "COMPARE TO REYNOLDS WRAP FOIL."

29. Defendant is not affiliated with or sponsored by Plaintiff and has not been authorized by Plaintiff to use any of its trademarks, designs, or trade dress to identify its products.

30. Upon information and belief, Defendant adopted the Reynolds Wrap Marks and referenced REYNOLDS WRAP on its packages at least in part to deceive, mislead, and confuse the public into believing that Plaintiff was and is the source of Defendant's products or that Defendant's products and related goods and activities are affiliated with Plaintiff, so as to trade on the substantial reputation and goodwill enjoyed by Plaintiff through its use of the Reynolds Wrap Marks.

### Effect of Defendants' Activities on Plaintiffs and the Consuming Public

31. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package is likely to cause confusion, mistake, and/or deceive customers and potential customers of Plaintiff, at least as to an

affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods.

32. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package falsely indicates to the purchasing public that Defendant's goods and/or services originate with Plaintiff, or are affiliated, connected, or associated with Plaintiff, or are sponsored, endorsed, or approved by Plaintiff, or are in some manner related to Plaintiff and/or its goods.

33. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package falsely designates the origin of Defendant's goods and falsely and misleadingly describes and represents facts with respect to Defendant and its goods.

34. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package enables it to trade on and receive the benefit of goodwill in the Reynolds Wrap Marks and REYNOLDS WRAP, which Plaintiff has built up with great labor and expense over decades. Defendant's unauthorized use also enables it to gain acceptance for its own goods, not solely on their own merits, but on the reputation and goodwill of Plaintiff and its trademarks and trade dress.

35. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above blurs and dilutes the distinctive quality of Plaintiff's famous Reynolds Wrap Marks.

36. Defendant's unauthorized use of the Reynolds Wrap Marks began after the Reynolds Wrap Marks became distinctive and famous.

37. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above unjustly enriches Defendant at Plaintiff's expense.

38. Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above deprives Plaintiff of the ability to control the nature and quality of goods provided under its marks and trade dress and places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control.

39. Upon information and belief, Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiff's rights and with an intent to trade on Plaintiff's goodwill in the Reynolds Wrap Marks.

40. Plaintiff has been and continues to be damaged by Defendant's above-stated activities and conduct. Defendant has profited thereby and, unless enjoined, Plaintiff's business, goodwill, and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

## FIRST CAUSE OF ACTION:
## FEDERAL TRADEMARK INFRINGEMENT

41. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

42. The acts of Defendant complained of herein constitute infringement of Plaintiff's registered marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

## SECOND CAUSE OF ACTION:
## FEDERAL FALSE DESIGNATION OF ORIGIN

43. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

44. The acts of Defendant complained of herein constitute false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## THIRD CAUSE OF ACTION:
## FEDERAL TRADE DRESS INFRINGEMENT

45. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

46. The acts of Defendant complained of herein constitute infringement of Plaintiff's trade dress in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## FOURTH CAUSE OF ACTION:
## FEDERAL TRADEMARK DILUTION

47. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

48. The acts of Defendant complained of herein constitute dilution of Plaintiff's marks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## FIFTH CAUSE OF ACTION:
## STATE LAW TRADEMARK INFRINGEMENT

49. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

50. The acts of Defendant complained of herein constitute infringement of Plaintiff's registered marks in violation of § 59.1-92.12 of the Virginia Code.

## SIXTH CAUSE OF ACTION:
## COMMON LAW UNFAIR COMPETITION

51. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

52. The acts of Defendant complained of herein constitute unfair competition in violation of the common law of the Commonwealth of Virginia and other states.

## SEVENTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

53. Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

54. The acts of Defendant complained of herein constitute unjust enrichment of Defendant at Plaintiff's expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

(a) Defendant, its agents, servants, employees, and all those persons in active concert or participation with Defendant, be preliminarily and permanently enjoined and restrained from:

(i) Manufacturing, selling, or distributing aluminum foil in the packaging currently used for the Infringing Products or any packaging substantially similar thereto;

(ii) Using in any manner the Infringing Products and the Reynolds Wrap Marks or trade dress, alone or in combination with any word(s) or design(s) that so resemble each said trademark or trade dress so as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not Plaintiff's product or not authorized by Plaintiff to be sold in connection with each of the Reynolds Wrap Marks;

(iii) Passing off, inducing, or enabling others to sell or pass off the Infringing Products and any other product as and for products produced by Plaintiff that are not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under the Reynolds Wrap Marks;

(iv) Engaging in any conduct that tends falsely to represent or is likely to confuse, mislead, or deceive purchasers, Defendant's customers, and members of the public to believe that the Infringing Products and Defendant are connected with Plaintiff or are sponsored, approved, or licensed by Plaintiff or are in some way connected or affiliated with Plaintiff;

(v) Further diluting and infringing the Reynolds Wrap Marks and trade dress and damaging Plaintiff's goodwill;

(vi) Otherwise unfairly competing with Plaintiff in any manner;

(vii) Using any reproduction, counterfeit, copy, or colorable imitation of any of the Reynolds Wrap Marks or trade dress in connection with the publicity, promotion, sale, or advertising of products manufactured, received, acquired, imported, shipped, purchased, sold, offered for sale, or distributed by Defendant bearing a copy or colorable imitation of any of the Reynolds Wrap Marks or trade dress;

(viii) Affixing, applying, annexing, or using in connection with the manufacture, advertising, receiving, acquisition, importation, shipment, purchase, sale, offer for sale, or distribution of any goods a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Plaintiff's products and from offering such goods in commerce;

(ix) Destroying any records documenting the manufacture, sale, or receipt of the Infringing Products; and

(x) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above.

(b) Defendant be required to recall all Infringing Products that have not been sold by any retailer or distributor to which Defendant has distributed or sold the Infringing Products and notify all such retailers and distributors that they are not to sell the Infringing Products.

(c) Defendant be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendant's possession or control that use any trademark, design, or trade dress similar to the Reynolds Wrap Marks and/or trade dress or that incorporates the Reynolds Wrap Marks and/or trade dress.

(c) Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

(d) Plaintiff recover all damages sustained as a result of Defendant's activities and that said damages be trebled.

(e) An accounting be directed to determine Defendant's profits resulting from its activities and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case.

(f) Plaintiff recover its reasonable attorneys' fees.

(g) Plaintiff recover punitive damages and its costs of this action, together with prejudgment and post-judgment interest.

(h) Plaintiff recover such other and further relief as the Court deems just and proper.

Dated: February 15, 2013

By: /s/ David M. Foster
David M. Foster
Virginia Bar No. 20799
FULBRIGHT & JAWORSKI L.L.P.
Market Square
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 662-4517
Facsimile: (202) 662-4643
Email: dfoster@fulbright.com

OF COUNSEL:
Mark N. Mutterperl
Jami Mills Vibbert
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
Email: mmutterperl@fulbright.com
jvibbert@fulbright.com

*Attorneys for Plaintiff Reynolds Consumer Products Inc.*