UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., <br><br> Plaintiff, <br><br> -v- <br><br> HANDI-FOIL CORPORATION, <br><br> Defendant. | Case No.: 1:13-CV-214 LO/TRJ |

**PLAINTIFF REYNOLDS CONSUMER PRODUCTS INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Paul E. Sumilas (VSB #75498)
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile:  (202) 662-4643
paul.sumilas@nortonrosefulbright.com

OF COUNSEL:
Mark N. Mutterperl (*pro hac vice*)
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 318-3000
Facsimile:   (212) 318-3400
mark.mutterperl@nortonrosefulbright.com

*Attorneys for Plaintiff Reynolds Consumer Products Inc.*

52941897.5

## **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................. 1
II. FACTS AND PROCEDURAL HISTORY ................................................................. 2
    A. Facts Supporting a Claim for False Advertising ............................................. 3
        1. Handi-Foil's Weaker Consumer Roll Foil Product ................................. 3
        2. Handi-Foil Changed Its Packaging Without Changing Its Product ........... 3
        3. Handi-Foil Has "Introduc[ed]" Its "New" Consumer Roll Product to Customers and Potential Customers as "Comparable To," "Equivalent to," and "Equal to" REYNOLDS WRAP in "Strength" ........ 5
    B. After Learning of Handi-Foil's False Advertising, Reynolds Has Moved to Amend the Complaint as Quickly as Possible ........................................................ 6
III. ARGUMENT ................................................................................................................ 8
    A. The Applicable Standards ................................................................................ 8
    B. The Motion Meets the Rule 15(a) Standard ................................................... 9
        1. Reynolds Has Not Delayed in Seeking to Amend the Complaint and Delay Is Not Sufficient to Deny Granting of a Motion to Amend ................................................................................................... 9
        2. Allowing the Amendment Is Neither Prejudicial to Handi-Foil nor Bad Faith on the Part of Reynolds ............................................................ 9
        3. Reynolds' False Advertising Claim Is Not Futile ................................... 10
    C. The Motion Meets the Good Cause Standard of Rule 16 ................................ 12
IV. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Applied Medical Resources Corp. v. Steuer*,
   527 F. Supp. 2d 489 (E.D. Va. 2007) .................................................................................. 11

*C.B. Fleet Co., Inc. v. Smithkline Beecham Consumer Healthcare, L.P.*,
   131 F.3d 430 (4th Cir. 1997) ................................................................................................ 12

*Capital One Servs., LLC v. Foster*,
   No. 3:09-CV-569, 2010 U.S. Dist. LEXIS 12145 (E.D. Va. Feb. 11, 2010) ............... 8, 12, 13

*Davis v. Piper Aircraft Corp.*,
   615 F.2d 606 (4th Cir. 1980) .................................................................................................. 9

*Deasy v. Hill*,
   833 F.2d 38 (4th Cir. 1987), *cert. denied,* 485 U.S. 977 (1988) ............................................ 9

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ................................................................................................ 10

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002) ................................................................................................... 11

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) .............................................................................................. 8, 9

*Lufthansa Sys. Infratec Gmbh v. Wi-Sky Inflight, Inc.*,
   No. 10-CV-745, 2011 U.S. Dist. LEXIS 23681 (E.D. Va. Mar. 9, 2011) ............................. 11

*Montgomery v. Anne Arundel County*,
   182 Fed. Appx. 156 (4th Cir. 2006) ................................................................................. 8, 12

*Nourison Rug Corp. v. Parvizian*,
   535 F.3d 295 (4th Cir. 2008) .................................................................................................. 8

*PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) ................................................................................................ 12

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
   803 F. Supp. 2d 459 (E.D. Va. 2011) ................................................................................... 10

*Scotts Co., LLC v. Pennington Seed, Inc.*,
   No. 3:12-CV-168, 2012 U.S. Dist. LEXIS 170573 (E.D. Va. Nov. 30, 2012) ..................... 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Scotts Co. v. United Indus. Corp.*,
   315 F.3d 264 (4th Cir. 2002) ..................................................................................................11

*Stokes v. Harris*,
   No. 1:10-CV-935, 2013 U.S. Dist. LEXIS 41668 (M.D.N.C. Mar. 25, 2013) ..........................9

**RULES AND STATUTES**

Federal Rule of Civil Procedure 15 ................................................................................................8

Federal Rule of Civil Procedure 16 ............................................................................................2, 8

I.     PRELIMINARY STATEMENT

Plaintiff Reynolds Consumer Products Inc. ("Reynolds") respectfully submits this brief in support of its Motion for leave to file its Second Amended Complaint (the "Motion") to add a claim for false advertising and unjust enrichment in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) against Defendant Handi-Foil Corporation ("Handi-Foil").  The Second Amended Complaint is attached hereto as Exhibit A.  A redline showing the amendments to the First Amended Complaint reflected in the Second Amended Complaint is attached hereto as Exhibit B.

The false advertising claim is based upon documents and information first obtained by Reynolds from Handi-Foil during discovery *after* the July 5, 2013 deadline to amend pleading set by the Court.  Only through document productions from Handi-Foil on July 19 and July 23, 2013 did Reynolds learn of the mechanisms of Handi-Foil's false advertising.  And not until the deposition of David Sarnoff, Executive Vice President of Handi-Foil, on July 30 and July 31, 2013, did Reynolds learn that despite statements to the contrary, Handi-Foil's consumer roll foil product has not changed since its introduction at least 12 years ago and could therefore not be comparable in strength to REYNOLDS WRAP.

Reynolds has acted diligently in moving to amend the complaint only days after this information was conveyed.  Reynolds received the expedited transcript of Mr. Sarnoff's deposition on Friday, August 2, 2013.  Reynolds drafted the Second Amended Complaint immediately and sent a draft of the Second Amended Complaint to Handi-Foil on Monday, August 5, 2013.  On August 7 and August 8, 2013, Reynolds received permission from Handi-Foil to file publicly the Motion, this Brief in support of the Motion, the Second Amended Complaint, and the Declaration of David B. Schwartz in support of the Motion (the "Declaration"), filed herewith.  (Decl. ¶16.)

52941897.5

The addition of the false advertising claim neither prejudices Handi-Foil nor requires an extension of the discovery period due to the overlapping facts in both the false advertising claim and the intentional confusion of consumers alleged in Reynolds' trademark infringement and related claims.  Moreover, interests of judicial economy dictate that these issues be litigated together rather than in a new action.  Accordingly, Reynolds' Motion should be granted.

## II.     FACTS AND PROCEDURAL HISTORY

Reynolds' Complaint (Docket No. 1) and First Amended Complaint (Docket No. 34) against Handi-Foil allege certain claims (the "Existing Claims")[1] against Handi-Foil related to its consumer aluminum roll foil products advertised and/or sold from 2012 to the present.  On May 22, 2013, the parties submitted a Joint Discovery Plan (the "Joint Discovery Plan"), which specified July 5, 2013 as the deadline to file motions to amend the pleadings.  (Docket No. 19.)  On June 3, 2013, the Court entered the Rule 16(b) Scheduling Order (the "Scheduling Order") incorporating the deadline from the Joint Discovery Plan.  (Docket No. 20.)

Discovery on the Existing Claims has brought to Reynolds' attention information and documents from Handi-Foil supporting the false advertising claim of which Reynolds was not previously aware.  As detailed in the Declaration, Reynolds only became aware of these key facts *after* the deadline to amend the complaint had passed.  In particular, Reynolds learned of this information only in Handi-Foil's document productions received by Reynolds on July 19 and July 23, 2013 and in the Deposition of David Sarnoff on July 30 and July 31, 2013.

---

[1] These claims are for trademark infringement in violation of § 32 of the Lanham Act (15 U.S.C. § 1114), false designation of origin in commerce in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trade dress infringement in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trademark dilution in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)), trademark infringement in violation of Virginia Code § 59.1-92.12 and other states' laws, and common law unfair competition and unjust enrichment.

A.     **Facts Supporting a Claim for False Advertising**

1.     **Handi-Foil's Weaker Consumer Roll Foil Product**

Handi-Foil has been selling consumer aluminum foil roll products under the Handi-Foil brand since 2001.  (Decl. ¶¶9-10.)  From 2001 until the introduction of the Dollar Tree Box[2] in 2012, Handi-Foil did not advertise or sell any such products as comparable to the "national brand" generally or to REYNOLDS WRAP specifically.  (*Id.* at ¶10.)  In fact, a 2002 third-party test commissioned by Handi-Foil found that Handi-Foil consumer aluminum foil roll product was inferior in both tensile strength and bursting strength to REYNOLDS WRAP and concluded it was not comparable to REYNOLDS WRAP.  (*Id.* at ¶4.)  Another test commissioned by a customer in 2003, at Defendant's expense, found that Handi-Foil branded standard and heavy-duty consumer aluminum roll foil products were substantially weaker than their REYNOLDS WRAP counterparts, and each report expressly concluded that the Handi-Foil product was "Not comparable to the national brand, Reynolds."  (*Id.* at ¶6.)

2.     **Handi-Foil Changed Its Packaging Without Changing Its Product**

In or around 2011, Dollar Tree approached Defendant with an inquiry whether Defendant could supply it with a "National Brand Equivalent" ("NBE") product.  (*Id.* at ¶9. )[3]  Importantly, Handi-Foil did not commission a new roll foil product for Dollar Tree.  Instead, it commissioned only a new box.  The aluminum foil used in Handi-Foil brand aluminum roll foil products has not changed between 2002 and the present.  (*Id.* at ¶11.)  The only thing that has changed about Handi-Foil branded consumer roll products has been the boxes in which they are sold.  (*Id.*)

---

[2] The Dollar Tree Box is defined in ¶ 53 and depicted in ¶ 29 of the of the Second Amended Complaint.

[3] REYNOLDS WRAP was at that time, and remains today, the sole national brand of consumer aluminum roll foil products in the United States.  (Decl. ¶9.)

Although a third-party report commissioned by Defendant in 2011 concluded, based on a number of superficial measures relating primarily to the size of the products, that Handi-Foil was "Comparable" to the REYNOLDS WRAP products, even this report showed that Handi-Foil was substantially weaker than REYNOLDS WRAP.  (*Id.* at ¶14.)  Nevertheless, Defendant agreed to sell its Handi-Foil brand aluminum roll foil product in a 25 square-foot size to Dollar Tree as a NBE product.  Dollar Tree suggested that the Dollar Tree Box display the following legend: "compared to the national brand."  Defendant suggested that the legend state, instead: "Compare to Reynolds Wrap® Foil."  Dollar Tree agreed, and that is the legend that has appeared on every Dollar Tree Box sold to date.  (*Id.* at ¶12.)

After sales of consumer aluminum foil in the Dollar Tree Box began, Defendant selected a slightly different, although substantially similar, package design (the "Third Box")[4] and commenced selling consumer aluminum roll foil in that box in approximately mid-2012.  In late 2012, Defendant modified the package of its consumer aluminum roll foil products slightly to create the Grocery Box,[5] which is also substantially and intentionally similar to the packaging of REYNOLDS WRAP, and began selling product in that box shortly thereafter.  Both boxes display the "Compare to Reynolds Wrap® Foil" legend.

### 3. Handi-Foil Has "Introduc[ed]" Its "New" Consumer Roll Product to Customers and Potential Customers as "Comparable To," "Equivalent to," and "Equal to" REYNOLDS WRAP in "Strength"

Defendant announced its Handi-Foil brand consumer aluminum foil products in the Third Box and Grocery Box as new products that were, for the first time, comparable to REYNOLDS WRAP.  For example, Defendant and its sales representatives emailed and/or presented its

---

[4] The Third Box is defined in ¶ 62 and  depicted ¶¶ 36-37 of the Second Amended Complaint.

[5] The Grocery Box is defined in ¶ 63 and depicted in ¶¶ 38-39 of the Second Amended Complaint.

prospective customers glossy catalog sheets, prepared by Defendant and approved by its top management, which proclaimed: "introducing handi-foil ALUMINUM FOIL," directly over a photograph of product in the Third Box displaying the "COMPARE TO REYNOLDS WRAP® FOIL" legend. Immediately following that photograph, the catalog sheets proclaimed "Reynolds Equivalent Gauge and Strength," and "Compare to Reynolds Wrap on the Box." (*Id.* at ¶7.)

Through other written and oral advertisements and promotional communications, Handi-Foil personnel and sales representatives expressly and repeatedly advised prospective customers that Handi-Foil consumer roll foil products were equal in gauge and strength to REYNOLDS WRAP, and that this was the meaning of the "COMPARE TO REYNOLDS WRAP® FOIL" legend on the boxes, as depicted on the catalog sheets described above. (*Id.* at ¶7.) For example, in emails to customers and potential customers between September 2012 and March 2013, Handi-Foil representatives touted the "NEW HANDI-FOIL" as "'EQUAL' TO REYNOLDS GUAGE [sic] & STRENGTH," and "equivalent in gauge and strength to Reynolds's [sic] Wrap." (*Id.* at ¶¶3, 7.) In addition, in February 2013, a Handi-Foil representative emailed a prospective customer advising in substance that Defendant's written claims about quality and strength of Handi-Foil consumer roll foil products were supported by third-party testing. (*Id.* at ¶7c.)

The "Compare To" and strength equivalency claims necessarily implied the existence of supporting tests, as evidenced in part by various customers' requests for the testing that supported the claims. Moreover, as shown above, it was commonplace for Handi-Foil to expressly advise customers in writing and in face-to-face sales meetings that those claims were supported by third-party testing. (*Id.* at ¶7c.)

Defendant's sales efforts included detailed written presentations that urged customers to replace many REYNOLDS WRAP products on store shelves with Handi-Foil products in the REYNOLDS look-alike boxes.  The main selling points were Defendant's repeated assertions that Handi-Foil was a new, REYNOLDS WRAP-equivalent product that was equal in strength but lower in cost.  (*Id.* at ¶3.)

### B. After Learning of Handi-Foil's False Advertising, Reynolds Has Moved to Amend the Complaint as Quickly as Possible

Reynolds is bringing its Motion at the first opportunity to do so.  Reynolds only began to become aware of the majority of the above-referenced facts in the last 21 days.  Prior to the recent document productions and deposition, Reynolds was not aware that the Handi-Foil product presented as new was actually old, that Handi-Foil was telling customers that "Compare To" meant same strength, or that Handi-Foil's consumer foil wrap product had not changed in any way since it was first introduced.

On July 19, 2013, Defendant produced and Reynolds received written presentations to Handi-Foil's customers and potential customers urging them to replace REYNOLDS WRAP products with Handi-Foil products, with the main selling point being that the Handi-Foil products were new, REYNOLDS-equivalent products that were equal in strength but lower in cost.  (*Id.* at ¶¶2-4.)   On July 23, Defendant produced and Reynolds received (i) email communications from Handi-Foil representatives to customers and potential customers stating that the Handi-Foil consumer roll products being offered in 2012 and 2013 were "New" and "Equivalent," and "Equal" to REYNOLDS WRAP in strength, and (ii) evidence that catalog sheets with similar claims were widely distributed to customers and potential customers.  (*Id.* at ¶¶5-7.)

Handi-Foil did not produce until July 19 and July 23, respectively, the 2002 and 2003 reports of third-party test results that showed Handi-Foil's consumer aluminum foil products were substantially weaker than, and not "Comparable" to REYNOLDS WRAP. (*Id.* at ¶¶2-7.) Reynolds did receive the April 2011 tests prior to those productions, and those tests also showed Handi-Foil aluminum foil wrap products to be weaker than REYNOLDS WRAP. (*Id.* at ¶¶14.)[6] Importantly, however, Reynolds had no reason to believe that the Handi-Foil products "introduced" as a new line and equal in strength to Reynolds in 2012 was actually the same, demonstrably weaker aluminum foil that Handi-Foil had been selling to stores without any "Compare To" label since at least 2002.

Reynolds first became aware that the consumer roll foil products offered under the Handi-Foil brand from 2001 through the present are the same and have never varied in quality or composition from Mr. Sarnoff's deposition testimony on July 30 and July 31, 2013. (*Id.* at ¶¶8, 11.) He testified that the only thing that has changed about those products from 2002 to the present has been the boxes in which they are sold. (*Id.* at ¶¶8, 11.)

Mr. Sarnoff also testified that at the time of Dollar Tree's approach described above, Defendant had been selling consumer aluminum roll foil products under the Handi-Foil brand for at least 10 years. (*Id.* at ¶10.) He testified further that Defendant had not advertised or sold any such products as comparable to the "national brand" generally or to REYNOLDS WRAP specifically. (*Id.*) In addition, he testified that Dollar Tree approached Defendant in or around

---

[6] Handi-Foil has subsequently produced on August 2, 2013, a third-party test dated 2004 showing that Handi-Foil and REYNOLDS WRAP were comparable in strength. This test result is inconsistent with the earlier tests in 2002 and 2003 and the more current test in 2011, which all showed that Handi-Foil was substantially weaker than REYNOLDS WRAP. (*Id.* at ¶14 n.2.) In addition, Handi-Foil sent the more recent 2011 test results, rather than the 2004 test results, to potential customers along with catalogue sheets asserting "Reynolds Equivalent Gauge and Strength. (*Id.* at ¶14.).

2011, with an inquiry whether Defendant could supply it with a "National Brand Equivalent" product and that Handi-Foil had suggested the "Compare to Reynolds" language for the Dollar Tree Box.  (*Id.* at ¶¶9-10, 12.)

### III.   ARGUMENT

#### A.   The Applicable Standards

Pursuant to Federal Rule of Civil Procedure 15(a), the "court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a).  "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotation marks and citation omitted).

In this case, the deadline in the scheduling order has passed.  (*See* Docket No. 20.) "Once the scheduling order is set, it is the timelines within that document that control and the 'good cause' standard of Rule 16 that governs any amendments to pleadings."  *Capital One Servs., LLC v. Foster*, No. 3:09-CV-569, 2010 U.S. Dist. LEXIS 12145, at *4 (E.D. Va. Feb. 11, 2010)  (*citing Montgomery v. Anne Arundel County*, 182 Fed. Appx. 156, 162 (4th Cir. 2006)); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").  Rule 16 states that "[a] schedule may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b).

Reynolds' Motion meets both standards and should be granted.

### B.  The Motion Meets the Rule 15(a) Standard

#### 1.  Reynolds Has Not Delayed in Seeking to Amend the Complaint and Delay Is Not Sufficient to Deny Granting of a Motion to Amend

Plaintiff has moved as soon as reasonably possible after learning of the evidence of false advertising and thus, leave should be granted.  See *Stokes v. Harris*, No. 1:10CV935, 2013 U.S. Dist. LEXIS 41668, at *14 (M.D.N.C. Mar. 25, 2013) (finding "no dilatory conduct, as Plaintiff sought his amendment shortly after discovering the new information").  "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Id.* (*citing Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987), *cert. denied,* 485 U.S. 977 (1988) (internal quotation marks omitted).  "Delay alone, however, is an insufficient reason to deny [a] motion to amend." *Laber*, 438 F.3d at 426 (*citing Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

The majority of the documents and testimony referenced in this Brief were provided to Reynolds only in last 21 days.  Significantly, Reynolds was not aware until Mr. Sarnoff's deposition merely a week ago that the quality and composition of Defendant's Handi-Foil branded consumer roll foil product had not changed since at least 2002.  (Decl. ¶11.)  Without this information, any newly relevant documents produced prior to this period would not have given Reynolds adequate notice of any claim for false advertising.

#### 2.  Allowing the Amendment Is Neither Prejudicial to Handi-Foil nor Bad Faith on the Part of Reynolds

Reynolds' quick action in moving to amend and the interrelated nature of its existing claims belays any potential prejudice to Handi-Foil.  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427.

Plaintiff has sought leave to amend the Complaint as soon as possible after learning of Handi-Foil's false advertising.  Moreover, discovery is still ongoing and the discovery schedule

entered by the Court need not change.  The facts underlying Reynolds' false advertising claim will be relevant to its existing infringement claim, as they support Reynolds' position that Defendant intentionally sought to mislead its customers regarding the relationship between Handi-Foil and Reynolds' products.  As such, much discovery has already been accomplished and any additional discovery can be accomplished in the period that remains.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)  (finding no prejudice when "allegations sought to be added in [the amended complaint] derived from evidence obtained during discovery regarding matters already contained in the complaint in some form").

Only two depositions have occurred to date, both taken by Reynolds, and Reynolds will not seek to redepose either of these witnesses.  Moreover, Handi-Foil recently served Document Requests that seek information relevant to the proposed false advertising claims.  (Decl. ¶15.)  Defendant will not be prejudiced by allowing Reynolds to amend the Complaint and interests of judicial economy dictate that these issues be litigated together rather than in a new action.

### 3. Reynolds' False Advertising Claim Is Not Futile

Reynolds sufficiently alleges false advertising by Handi-Foil in the Second Amended Complaint.  "A party seeking to amend its pleadings must meet the pleading requirements for the particular cause of action it seeks to bring to avoid denial on the basis of futility."  *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 459, 461 (E.D. Va. 2011).  The elements of a false advertising claim are:

> (1) The defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) The misrepresentation is material, in that it is likely to influence the purchasing decision; (3) The misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) The defendant placed the false or misleading statement in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Lufthansa Sys. Infratec Gmbh v. Wi-Sky Inflight, Inc.*, No. 10-CV-745, 2011 U.S. Dist. LEXIS 23681, at *38 (E.D. Va. Mar. 9, 2011) (*citing Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002)).  Reynolds has sufficiently alleged all such elements.

Handi-Foil has repeatedly made false and misleading statements about the newness and strength, in relation to REYNOLDS WRAP, of its consumer roll foil products despite the products never changing and Handi-Foil's third-party tests showing that its products are not as strong as REYNOLDS WRAP.  Those statements have accompanied explicit statements to customers that Handi-Foil's products should replace REYNOLDS WRAP products on retail shelves, and Handi-Foil has been somewhat successful in doing so.

Moreover, these statements constitute commercial advertisements.  To qualify as commercial advertisements, statements must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.

*Applied Medical Resources Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) (*citing Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002)).  Handi-Foil's catalog sheets were utilized widely to penetrate the market for consumer roll foil products in grocery chains and distributors nationwide.  Top Handi-Foil management, including Executive Vice President David Sarnoff, spent substantial time designing and updating those flyers, which were called variations of "email.pdf," showing they were intended to be emailed to customers and prospective customers.  The catalog sheets all falsely claimed, in one form or another, that Handi-Foil was equivalent to REYNOLDS WRAP in strength.  In that respect, they were literally false because, as all the third-party tests showed, Handi-Foil was substantially weaker than REYNOLDS WRAP.

In addition, by emailing or presenting the catalog sheets to prospective customers (who were buyers for grocery or discount stores, or for distributors to such stores), Handi-Foil employees and sales representatives referenced test results that purportedly supported the strength-equivalence claims. "When an advertising claim of favorable fact either expressly or impliedly asserts that the fact is testor study-validated . . . [s]uch a claim may . . . be proven literally false by showing only that the test asserted to validate it did not in fact do so." *C.B. Fleet Co., Inc. v. Smithkline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997). "'Where the advertisement is literally false, a violation may be established without evidence of consumer deception.'" *Scotts Co., LLC v. Pennington Seed, Inc.*, No. 3:12-CV-168, 2012 U.S. Dist. LEXIS 170573, at *13 (E.D. Va. Nov. 30, 2012) (*citing PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)). Those claims were evidently endorsed by Handi-Foil top management as part of its plan to get the Handi-Foil brand off the ground again. Among other things, Mr. Sarnoff testified he spent a lot of time educating sales representatives about the Handi-Foil aluminum foil products and that in emailing or presenting the catalog sheets to customers and potential customers, statements that the strength-equivalence claims were supported by third-party tests could have been made. (Decl. ¶13.)

C.   **The Motion Meets the Good Cause Standard of Rule 16**

Because Reynolds only learned of the facts supporting a false advertising claim *after* the deadline to amend pleadings and has moved swiftly to move to amend, good cause exists to grant the Motion.

Under Rule 16, the "good cause" standard focuses on the diligence of the moving party. *Capital One Servs., LLC*, 2010 U.S. Dist. LEXIS 12145, at *4 (*citing Montgomery*, 182 Fed. Appx. at 162). As explained above, Reynolds advised Defendant of this claim by furnishing a draft Second Amended Complaint less than a week after it fully came to light. Reynolds could

not have brought this claim any sooner and this Court has granted leave to amend for far less diligent movants. *See Capital One Servs., LLC*, 2010 U.S. Dist. LEXIS 12145, at *5 (granting plaintiff's motion to amend complaint even when "all of the documents supporting the new claims in the Amended Complaint were within [plaintiff's]'s possession" prior to the filing of the complaint).

## IV. CONCLUSION

For the foregoing reasons, Reynolds respectfully requests that this Court enter an Order granting Reynolds leave to file the Second Amended Complaint.

Dated: August 9, 2013

Respectfully Submitted,

/s/ Paul E. Sumilas
Paul E. Sumilas (VSB #75498)
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
paul.sumilas@nortonrosefulbright.com

OF COUNSEL:
Mark N. Mutterperl (*pro hac vice*)
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
mark.mutterperl@nortonrosefulbright.com

*Attorneys for Plaintiff Reynolds Consumer Products Inc.*

CERTIFICATE OF SERVICE

*Reynolds Consumer Products Inc. v. Handi-Foil Corporation*,
Case No. 1:13-CV-214 (Eastern District of Virginia)

The undersigned counsel for plaintiff Reynolds Consumer Products Inc. hereby certifies that on August 9, 2013, the above and foregoing will be electronically filed with the Clerk of the Court using the CM/ECF system, which will send, as appropriate, an automatic notification of such filing to the following:

Brian N. Gross
Kirkland & Ellis L.L.P.
655 15th Street, NW
Suite 12
Washington, D.C. 20005
Email:  brian.gross@kirkland.com

The undersigned counsel also certifies that a copy of the above and foregoing will be sent via electronic mail via agreement between the parties to the following non-filing users:

| D. Sean Trainor<br>Kirkland & Ellis LLP<br>655 15th Street, NW<br>Suite 12<br>Washington, D.C. 20005<br>dtrainor@kirkland.com | David Callahan<br>Ian J. Block<br>Robin A. McCue<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>dcallahan@kirkland.com<br>ian.block@kirkland.com<br>rmccue@kirkland.com |
|---|---|

/s/ Paul E. Sumilas
Paul E. Sumilas

52941897.5