# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., | : | Case No.: 1:13-cv-214 LO/TRJ |
| Plaintiff, | : | |
| -v- | : | SECOND AMENDED COMPLAINT |
| HANDI-FOIL CORPORATION, | : | Jury Trial Demanded |
| Defendant. | : | |

Plaintiff Reynolds Consumer Products Inc. ("Plaintiff" or "Reynolds"), by its undersigned attorneys, alleges as follows for its Second Amended Complaint against Defendant Handi-Foil Corporation ("Defendant" or "Handi-Foil"):

THE NATURE OF THE ACTION

1.     This case involves Defendant's manufacturing, advertising, offering to sell, selling, and/or distributing (together, "selling") consumer aluminum foil products in product packaging that infringes and dilutes the famous and distinctive trade dress Plaintiff owns and uses to distinguish REYNOLDS WRAP-brand aluminum foil.  Defendant began selling those aluminum foil products to retail merchants and distributors in or around 2012, in conjunction with an advertising campaign that falsely portrayed the products as a new "line" Defendant had just "introduced," which was comparable to REYNOLDS WRAP in possessing "Reynolds Equivalent Gauge and Strength."  Not only were those Handi-Foil products the *same aluminum foil* that Defendant had sold for years without any equivalence claims, but independent testing commissioned by Defendant and others (who shared the test results with Defendant) showed that

the Handi-Foil product was *weaker than*, and *not comparable* to REYNOLDS WRAP.  In selling its aluminum foil products in look-alike packaging pursuant to false equivalence claims, Defendant has explicitly asked its customers to replace REYNOLDS WRAP on their retail shelves with the cheaper Handi-Foil products, and in some cases Defendant's false claims have caused them to do so.

2.     Defendant's infringing packaging and false advertising allows Defendant to unfairly compete, infringes and dilutes Plaintiff's trademarks and trade dress, and blurs the distinctiveness of Plaintiff's marks.  As a result, this action seeks injunctive and monetary relief for trademark infringement in violation of § 32 of the Lanham Act (15 U.S.C. § 1114), false designation of origin in commerce in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trade dress infringement in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trademark dilution in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)), trademark infringement in violation of Virginia Code § 59.1-92.12 and other states' laws, common law unfair competition and unjust enrichment, and false advertising and unfair competition in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

THE PARTIES

3.     Plaintiff Reynolds Consumer Products Inc. F/K/A Reynolds Foil Inc. is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 6641 West Broad Street, Richmond, Virginia 23230.

4.     Defendant Handi-Foil Corporation is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 135 E. Hintz Road, Wheeling, Illinois 60090.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367 and general principles of ancillary and pendent jurisdiction.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and/or because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## THE FACTS

### Plaintiff's World-Renowned Trademarks and Trade Dress

7.     Plaintiff manufactures and markets a variety of high-quality consumer disposable food storage and cookware products.

8.     Plaintiff devotes substantial effort, time, and resources to developing and testing its products and to designing the packaging and graphics for  those products.  Packaging is an important element in marketing consumer products because it serves to distinguish Plaintiff's products from those of others, to represent and convey a product's quality and value to consumers, and to designate Plaintiff as the source or origin of a product.

9.     Among the products Plaintiff manufactures and markets is the world-renowned, high-quality REYNOLDS WRAP aluminum foil.  Plaintiff owns trade dress rights in its REYNOLDS WRAP packaging design, which consists of the overall look, feel and commercial impression of the combination of elements in a unique format that make up that design.

10.     For example, Reynolds owns incontestable federal trademark registrations for its REYNOLDS WRAP package designs.  Specifically, Reynolds owns, *inter alia*, the entire right, title, and interest in and to the following federally registered package designs:

| Reg. | Registration Date | Mark | Image |
|------|-------------------|------|-------|
| 1,070,888 | August 9, 1977 | Reynolds Wrap Package Design |  |
| 1,067,092 | June 7, 1977 | Reynolds Wrap Package Design (with name) |  |

With respect to the registrations listed above, the drawings are lined to designate the colors blue (horizontal), silver (diagonal), and pink (vertical) (collectively, and together with other design elements of Plaintiff's package design, the "Reynolds Wrap Marks").   Reynolds owns corresponding trademark registrations in at least 53 other countries.

11.     In addition to its federal registrations, Plaintiff owns extensive common law trade dress rights in the overall look, feel and commercial impression of its REYNOLDS WRAP packaging design.  Plaintiff's distinctive trade dress for its REYNOLDS WRAP aluminum foil packaging design includes numerous features combined in a unique format to create a highly distinctive overall impression.  Elements of Plaintiff's REYNOLDS WRAP trade dress include, for example:

a.  The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

- 4 -

b.  The use of the color scheme – the blue and pink sections run left to right;

c.  The use of prominent lettering to display the brand name within the blue section on the front of the box;

d.  The use of silver bands to separate the blue from the pink sections of the front of the box;

e.  The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

f.  The inclusion that "FOIL MADE IN U.S.A." in lettering on the front of the right side of the box;

g.  The repetition of the color scheme and type on the ends of the box;

h.  The use of the "press here to lock" feature on the ends of the boxes;

i.  The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

j.  The use of the "Lift" graphic to indicate how to open the box;

k.  The positioning of REYNOLDS WRAP on the top flap of the box; and

l.  The color (yellow), placement, and text used to caution the consumer.

12.     Examples of Plaintiff's current REYNOLDS WRAP-brand aluminum foil products and REYNOLDS WRAP-brand heavy duty aluminum foil products using product packaging reflecting Plaintiff's trade dress rights are shown below.



13.    In addition to the trade dress rights Plaintiff owns in the packaging designs represented by incontestable United States Trademark Reg. Nos. 1,067,092 and 1,070,888, and the common law trade dress rights Plaintiff owns as identified in paragraph 11 and depicted in photographs in paragraph 12, Plaintiff owns extensive common law rights in the overall look, feel and commercial impression of the combination of elements in a unique format for its REYNOLDS WRAP package design for other of its REYNOLDS WRAP packaging designs that are consistent with the trade dress represented by Plaintiff's United States Trademark Reg. Nos. 1,067,092 and 1,070,888 and common law rights.   For example, photographs of Plaintiff's REYNOLDS WRAP heavy duty non-stick foil and REYNOLDS WRAP grill foil that use such product packaging are shown below.





14. Plaintiff's trade dress rights in its REYNOLDS WRAP packaging design are reflected in a wide variety of Plaintiff's REYNOLDS WRAP-brand aluminum foil product offerings that use the trade dress in their packaging, including, but not limited to, the aluminum foil products shown in photographs herein. Plaintiff's trade dress rights are not limited by, and Plaintiff does not intend to limit its claims alleged in this Second Amended Complaint to, the REYNOLDS WRAP packaging designs shown in the photographs of REYNOLDS WRAP-brand products herein, including any limitation as to packaging design for specific sizes of REYNOLDS WRAP-brand foil products.

15. The Reynolds Wrap Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's goods to the consuming public. Through Plaintiff's extensive use and promotion of the Reynolds Wrap Marks, Plaintiff distinguishes its products from the products of other businesses and distinguishes the source and origin of Plaintiff's products.

16. Plaintiff has spent and continues to spend large sums of money marketing and selling in interstate commerce REYNOLDS WRAP aluminum foil packaged in high-quality boxes bearing its trademarks, trademarked designs, and trade dress. As a result of the extensive advertising of REYNOLDS WRAP aluminum foil in connection with the Reynolds Wrap Marks, the widespread sale of REYNOLDS WRAP aluminum foil, and the celebrity that Reynolds Wrap Marks have achieved, aluminum foil bearing Reynolds Wrap Marks has been and is now recognized by the public and in the trade as originating from Reynolds.

17. Aluminum foil bearing the Reynolds Wrap Marks has come to be known by the purchasing public throughout the United States as aluminum foil of the highest quality. As a

result, the Reynolds Wrap Marks, together with the goodwill associated with them, are of inestimable value to Plaintiff.

18.     As a result of Plaintiff's extensive use and promotion of the Reynolds Wrap Marks in the Commonwealth of Virginia and elsewhere, Plaintiff has acquired valuable common law rights in the Reynolds Wrap Marks.

19.     The Reynolds Wrap Marks are famous, well-known, and distinctive.

20.     Plaintiff has engaged and continues to engage in interstate activities designed to promote REYNOLDS WRAP aluminum foil, and the business and goodwill associated with the Reynolds Wrap Marks, and to expand the use and reputation of the Reynolds Wrap Marks in the Commonwealth of Virginia and throughout the United States.

21.     Plaintiff's goods sold under the Reynolds Wrap Marks have been and continue to be sold from retail stores located within this District.

Defendant's Unlawful Activities

22.     According to its website, www.handi-foil.com, Handi-Foil has been "a leader in the industry, manufacturing aluminum foil bakeware products from our Wheeling, Illinois facility using the most modern equipment in the business" "[f]or three generations."  Defendant "is a privately owned manufacturer of recyclable aluminum products committed to quality, convenience and innovation."

23.     Defendant is manufacturing, or causing to be manufactured, advertising, planning to sell, offering to sell, selling and/or distributing several different packages of aluminum foil that bear the Reynolds Wrap Marks, or trade dress remarkably similar thereto (collectively, the "Infringing Products").

24.     Defendant is advertising, planning to sell, offering to sell, distributing, selling and/or causing the distribution and sale of the Infringing Products within this District.

25.    Below is a depiction of the first of Defendant's Infringing Products and authentic REYNOLDS WRAP products:



26.    Defendant's trade dress in the first Infringing Product copies most elements referenced in Paragraph 11 herein, including, *inter alia*:

a.    The color scheme – the overall color scheme of Defendant's packaging contains the bright shade of blue separated from a red section;

b.    Like Plaintiff's packaging, Defendant's packaging uses prominent white lettering to display the brand name on the front of the box;

c.    As on REYNOLDS WRAP, Defendant's packaging uses a silver band to separate the blue from the red sections of the front of the box;

d.    Defendant's package places quantity information (square footage) on the right side of the box, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

e.    Defendant prominently displays, on the front of the right side of the box, that its product was "MADE IN USA," just as Plaintiff's package does;

f.    Defendant's box uses the "Lift" graphic to indicate how to open the box;

g.    Defendant's package contains graphics with how-to information on the back of the box, like Plaintiff's package; and

h.    Defendant's name is positioned on the top flap of the box, as is Plaintiff's.

27.     Even more, Defendant's package references REYNOLDS WRAP, stating: "COMPARE TO REYNOLDS WRAP® FOIL."

28.     Defendant has combined all of these elements on a box that has the same width and approximate height and depth as Plaintiff's box.

29.     Defendant changed its trade dress as described above to look even more like REYNOLDS WRAP.  Below is a depiction of the second of Defendant's Infringing Products and one of the authentic REYNOLDS WRAP products:



30.     Defendant's trade dress in the second Infringing Product copies even more of the elements referenced in Paragraph  11 herein, including, *inter alia*:

a.  The color scheme – now the majority of Defendant's box is the bright shade of blue of REYNOLDS WRAP, and the rest of the front of the box is a shade of red;

b.  The use of the color scheme – the blue and red sections run left to right, as Plaintiff's blue and pink sections run left to right;

c.  Like Plaintiff's packaging, Defendant's packaging uses prominent white lettering to display the brand name on the front of the box in the bright blue section;

d.  As on REYNOLDS WRAP, Defendant's packaging uses a silver band to separate the blue from the red sections of the front of the box;

e. Defendant's package places quantity information (square footage) on the right side of the front of the box in the red section, and includes, in white lettering, the number of yards by inches;

f. Defendant prominently displays,  on the front of the right side of the box, that its product was "MADE IN USA," just as Plaintiff's package does;

g. Defendant's box uses the "Lift" graphic to indicate how to open the box;

h. Defendant's box uses graphics showing how-to information such as, *inter alia*, "Cover" to "Keep[] Food Moist" and  use it in "Preparation":  "Perfect to Line Roasting Pans . . ."; and

i. Defendant's name is positioned on the top flap of the box, as is Plaintiff's.

31. Defendant has combined all of these elements on a box that has the same width and approximate height and depth as Plaintiff's box.

32. Even more, Defendant's package references REYNOLDS WRAP, stating: "COMPARE TO REYNOLDS WRAP® FOIL."

33. Upon information and belief, Defendant is advertising, planning to sell, offering to sell, selling, distributing, and/or causing to be sold or distributed the infringing product packaging shown in paragraphs 25 and 29 in a variety of different sizes of aluminum foil roll products, and thus Plaintiff alleges that each and every size of such products using the same box design infringes Plaintiff's REYNOLDS WRAP trade dress rights.

34. Additionally, through discovery Plaintiff has learned that Defendant is manufacturing, or causing to be manufactured, advertising, offering to sell, selling and/or distributing additional aluminum foil products that use product packaging that bear the Reynolds Wrap Marks, or trade dress impermissibly similar thereto (such additional infringing products to

be included in the definition of "Infringing Products," *supra*). Below are photographs depicting

additional of Defendant's aluminum foil products infringing Plaintiff's REYNOLDS WRAP

trade dress.

35.     For example, Defendant's "non-stick heavy duty aluminum foil" product

("Defendant's Non-Stick Product") uses product packaging that infringes and dilutes Plaintiff's

REYNOLDS WRAP trade dress. Below is a photograph of Defendant's Non-Stick Product

compared to Plaintiff's REYNOLDS WRAP-brand heavy duty non-stick foil product.



36.     Additionally, upon information and belief, Defendant is advertising, offering for

sale, selling, distributing and/or causing the distribution and sale of both "standard" and "heavy

duty" aluminum foil roll products using the product packaging depicted in the first photograph

below, in a variety of sizes, including at least: (a) Handi-Foil standard aluminum foil roll, 12" x

25'; (b) Handi-Foil standard aluminum foil roll, 12" x 75'; and (c) Handi-Foil heavy duty

aluminum foil roll, 12" x 50'.



37.     Below is a photograph of one of Defendant's products using the newly identified infringing and diluting product packaging design compared to one of Plaintiff's REYNOLDS WRAP heavy duty products using the trade dress alleged to be infringed and diluted in this case.





38.     Further, upon information and belief, Defendant is advertising, offering for sale, selling, distributing  and/or causing the distribution and sale of both "standard" and "heavy duty" aluminum foil roll products using the product packaging design depicted in photographs below, in a variety of sizes, including at least: (a) Handi-Foil heavy duty aluminum foil roll, 12" x 50'; (b) Handi-Foil standard aluminum foil roll, 12" x 30'; (c) Handi-Foil standard aluminum foil roll 12" x 200'; (d) Handi-Foil heavy duty aluminum foil roll, 12" x 50'; (e) Handi-Foil heavy duty aluminum foil roll, 18" x 37.5'; (f) Handi-Foil heavy duty aluminum foil roll, 18" x 75'; (g) Handi-Foil standard aluminum foil roll, 12" x 70'; (h) Handi-Foil heavy duty aluminum foil roll, 12" x 45'; (i) Handi-Foil standard aluminum foil roll, 12" x 250'; and (j) Handi-Foil standard aluminum foil roll, 12" x 25'.





39.     Below is a photograph of one of Defendant's products using one of the newly

identified infringing and diluting product packaging designs compared to one of Plaintiff's

REYNOLDS WRAP heavy duty products using the trade dress alleged to be infringed and

diluted in this case.



40.     Although Plaintiff has identified herein examples of Defendant's products which

Plaintiff alleges, upon information and belief, violate Plaintiff's trade dress rights, such as

products in particular sizes depicted in photographs of Defendant's products, Plaintiff alleges

that each and every product that uses Defendant's product packaging designs as shown in this

Second Amended Complaint violate Plaintiff's trade dress, regardless of the size of any of

Defendant's products.

41.     Defendant is not affiliated with or sponsored by Plaintiff and has not been

authorized by Plaintiff to use any of its trademarks, designs, or trade dress to identify its

products.

42.     Upon information and belief, Defendant adopted the Reynolds Wrap Marks and

referenced REYNOLDS WRAP on its packages at least in part to deceive, mislead, and confuse

the public into believing that Plaintiff was and is the source of Defendant's products or that

Defendant's products and related goods and activities are affiliated with Plaintiff, so as to trade

on the substantial reputation and goodwill enjoyed by Plaintiff through its use of the Reynolds Wrap Marks.

Effect of Defendant's Activities on Plaintiff and the Consuming Public

43.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package is likely to cause confusion, mistake, and/or deceive customers and potential customers of Plaintiff, at least as to an affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods.

44.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package falsely indicates to the purchasing public that Defendant's goods and/or services originate with Plaintiff, or are affiliated, connected, or associated with Plaintiff, or are sponsored, endorsed, or approved by Plaintiff, or are in some manner related to Plaintiff and/or its goods.

45.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package falsely designates the origin of Defendant's goods and falsely and misleadingly describes and represents facts with respect to Defendant and its goods.

46.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above and its use of REYNOLDS WRAP on its package enables it to trade on and receive the benefit of goodwill in the Reynolds Wrap Marks and REYNOLDS WRAP, which Plaintiff has built up with great labor and expense over decades.  Defendant's unauthorized use also enables it to gain acceptance for its own goods, not solely on their own merits, but on the reputation and goodwill of Plaintiff and its trademarks and trade dress.

47.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above blurs and dilutes the distinctive quality of Plaintiff's famous Reynolds Wrap Marks.

48.     Defendant's unauthorized use of the Reynolds Wrap Marks began after the Reynolds Wrap Marks became distinctive and famous.

49.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above unjustly enriches Defendant at Plaintiff's expense.

50.     Defendant's unauthorized use of the Reynolds Wrap Marks in the manner described above deprives Plaintiff of the ability to control the nature and quality of goods provided under its marks and trade dress and places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control.

51.     Upon information and belief, Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Plaintiff's rights and with an intent to trade on Plaintiff's goodwill in the Reynolds Wrap Marks.

52.     Plaintiff has been and continues to be damaged by Defendant's above-stated activities and conduct.  Defendant has profited thereby and, unless enjoined, Plaintiff's business, goodwill, and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

<u>Defendant's False Advertising</u>

53.     Defendant's first infringing aluminum foil product, packaged as shown in paragraph 29 above (the "Dollar Tree Box"), has been sold exclusively by Defendant to Dollar Tree stores, and by Dollar Tree to the consuming public.  Upon information and belief, Dollar Tree approached Defendant in or around 2011, with an inquiry whether Defendant could supply

it with a "National Brand Equivalent" ("NBE") product. REYNOLDS WRAP-brand was at that time, and remains today, the sole national brand of consumer aluminum roll foil products in the United States.

54.    At the time of Dollar Tree's approach described above, Defendant had been selling consumer aluminum roll foil products under the HANDI-FOIL-brand for at least 10 years. Defendant had not advertised or sold any such products as comparable to the "national brand" generally or to REYNOLDS WRAP specifically.

55.    In fact, a 2002 third-party test commissioned by Defendant found that HANDI-FOIL-brand foil was inferior in both tensile strength and bursting strength to REYNOLDS WRAP and concluded it was not comparable to REYNOLDS WRAP.

56.    Similarly, in 2003, a customer supplied Defendant with lab analysis reports from testing the customer had commissioned, at Defendant's expense, on Defendant's standard and heavy-duty HANDI-FOIL consumer aluminum roll foil products. Those tests found that both HANDI-FOIL products were substantially weaker than their REYNOLDS WRAP counterparts, and each report expressly concluded that the HANDI-FOIL-brand product was "[n]ot comparable to the national brand, Reynolds."

57.    In April 2011, Defendant received the results of another series of third-party tests it had commissioned upon HANDI-FOIL-brand and REYNOLDS WRAP-brand consumer roll foil products. Those tests again found that HANDI-FOIL was substantially weaker than REYNOLDS WRAP. Nevertheless, based on a number of superficial measures relating primarily to the size of the products, the report concluded generally that HANDI-FOIL was "Comparable" to the REYNOLDS WRAP products.

58.     The aluminum foil used in HANDI-FOIL-brand aluminum foil roll products did not change between 2002 and 2011.  The only thing that has changed about those products from 2002 to the present has been the boxes in which they are sold.

59.     Nevertheless, Defendant agreed to sell its Handi-Foil brand aluminum roll foil in a 25 square-foot size to Dollar Tree as a National Brand Equivalent product.  Defendant and Dollar Tree worked together to design the box for that product, and agreed on a design that was substantially and intentionally similar to the packaging of REYNOLDS WRAP.

60.     Dollar Tree suggested that the Dollar Tree Box display the following legend: "compared to the national brand."  Defendant suggested that the legend state, instead:  "Compare to Reynolds Wrap® Foil."  Dollar Tree agreed, and that is the legend that has appeared on every Dollar Tree Box sold to date.

61.     Defendant has been selling HANDI-FOIL-brand consumer aluminum roll foil to Dollar Tree in the Dollar Tree Box beginning in the spring of 2012 and continuing to the present time.  During that time, Dollar Tree has been displaying and selling that product in its retail stores.

62.     Defendant had agreed to give Dollar Tree exclusivity on the Dollar Tree Box design.  Accordingly, after sales of the Dollar Tree product began, Defendant selected a slightly different, although substantially similar, package design (the "Third Box")[1] for the consumer aluminum roll foil products it intended to sell to retail merchants and/or distributors other than Dollar Tree.  That design is depicted in ¶¶ 36-37 above.  It is substantially and intentionally similar to the packaging of REYNOLDS WRAP.

63.     Defendant commenced selling consumer aluminum roll foil products in the Third Box in approximately mid-2012.  In late 2012, Defendant modified the package of its consumer

---

[1] The "Red Box," shown in ¶ 25 above, was the second of the Handi-Foil boxes at issue in this case.

aluminum roll foil products slightly, and began using the box shown in ¶¶ 38-39 above (the "Grocery Box"). That box, too, is substantially and intentionally similar to the packaging of REYNOLDS WRAP.

64.    Defendant announced its HANDI-FOIL-brand consumer aluminum foil products in the Third Box and the Grocery Box as new products that were, for the first time, comparable to REYNOLDS WRAP-brand aluminum foil roll products. For example, Defendant and its sales representatives emailed and/or presented its prospective customers glossy catalog sheets, prepared by Defendant and approved by its top management, which proclaimed: "introducing handi-foil ALUMINUM FOIL," directly over a photograph of product in the Third Box displaying the "COMPARE TO REYNOLDS WRAP® FOIL" legend. Immediately following that photograph, the catalog sheets proclaimed "Reynolds Equivalent Gauge and Strength," and "Compare to Reynolds Wrap on the Box." Another such catalog sheet widely distributed by Defendant to customers proclaimed:  "introducing handi-foil ALUMINUM FOIL Reynolds Equivalent Gauge and Strength," immediately above photographs of products in the Third Box, displaying the "COMPARE TO REYNOLDS WRAP® FOIL" legend.

65.    Through other written and oral advertisements and promotional communications, Handi-Foil personnel and sales representatives expressly and repeatedly advised prospective customers that HANDI-FOIL-brand consumer roll foil products were equal in gauge and strength to REYNOLDS WRAP, and that this was the meaning of the "COMPARE TO REYNOLDS WRAP® FOIL" legend on the boxes, as depicted on the catalog sheets described above.

66.    For example, in September 2012, one Handi-Foil representative emailed customers as follows:  "NEW HANDI-FOIL 25' TO 200' ALUM ROLL FOIL 'EQUAL' TO REYNOLDS GUAGE [sic] & STRENGTH, BUT LESS COST."

67.     In October 2012, another Handi-Foil representative emailed customers:  "we are excited to announce that we are *now entering the roll foil market*.  Handi-Foil is equivalent in gauge and strength to Reynolds's [sic] Wrap . . . ."  (emphasis added).

68.     In February 2013, a Handi-Foil representative emailed a prospective customer advising in substance that Defendant's written claims about quality and strength of Handi-Foil consumer roll foil products were supported by third-party testing.

69.     The "Compare To" and strength equivalency claims necessarily implied the existence of supporting tests, as evidenced in part by various customers' requests for the testing that supported the claims.  Moreover, as shown above, it was commonplace for Handi-Foil to expressly advise customers in writing and in face-to-face sales meetings that the claims made in its advertising circulars were supported by third-party testing.

70.     Defendant's sales efforts included detailed written presentations that urged customers to replace many REYNOLDS WRAP-brand products on store shelves with Handi-Foil products in the REYNOLDS WRAP look-alike boxes.  The main selling points were Defendant's repeated assertions that Handi-Foil was a new, REYNOLDS WRAP-equivalent product that was equal in strength but lower in cost.  In some stores, Defendant has been successful in replacing some REYNOLDS WRAP-brand aluminum foil roll products with HANDI-FOIL-brand aluminum foil roll products on store shelves.

71.     Defendant's above-described statements were false, and knowingly so, for the following reasons, among others.

72.     Handi-Foil consumer roll foil products, as sold in the Dollar Tree Box, the Third Box, and the Grocery Box, were not new products with which Defendant was entering the

market.  Rather, those products were made of the same aluminum foil sold by Defendant under the Handi-Foil brand since the early 2000s.

73.     Handi-Foil as sold in the Dollar Tree Box, the Third Box, and the Grocery Box was not comparable to REYNOLDS WRAP foil.  That was the express conclusion of the third-party studies, referenced above, that were conducted on Handi-Foil and REYNOLDS WRAP in 2002 and 2003.

74.     Handi-Foil as sold in the Dollar Tree Box, the Third Box, and the Grocery Box was not comparable to REYNOLDS WRAP in the sense that it was equal in strength, which was the meaning expressly attributed by Defendant to the "COMPARE TO" legend on those boxes. The statements of Defendant's executives and sales representatives to the effect that Handi-Foil was equal in strength to REYNOLDS WRAP were also literally false.  This is shown not only by the 2002 and 2003 tests, but by the tests conducted for Defendant in 2011, as described above, all of which found that Handi-Foil was substantially weaker.

75.     Defendant's claims that Handi-Foil was equal in strength to REYNOLDS WRAP were presented by Defendant to its prospective customers as being supported by third-party testing.  Because the testing conducted by or otherwise known to Defendant did not support those claims, but in fact contradicted them, the claims were literally false.

76.     Plaintiff has been damaged by Defendant's false claims comparing Handi-Foil to REYNOLDS WRAP.  Among other things, those claims have had the purpose and effect of inducing some stores to replace some REYNOLDS WRAP products on their shelves with Handi-Foil.  Those claims have also misled customers of Plaintiff into believing that Handi-Foil is equivalent in quality and strength to REYNOLDS WRAP.

FIRST CAUSE OF ACTION:

FEDERAL TRADEMARK INFRINGEMENT

77.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

78.     The acts of Defendant complained of herein constitute infringement of Plaintiff's registered marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

SECOND CAUSE OF ACTION:

FEDERAL FALSE DESIGNATION OF ORIGIN

79.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

80.     The acts of Defendant complained of herein constitute false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

THIRD CAUSE OF ACTION:

FEDERAL TRADE DRESS INFRINGEMENT

81.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

82.     The acts of Defendant complained of herein constitute infringement of Plaintiff's trade dress in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

FOURTH CAUSE OF ACTION:

FEDERAL TRADEMARK DILUTION

83.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

84.     The acts of Defendant complained of herein constitute dilution of Plaintiff's marks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

FIFTH CAUSE OF ACTION:

STATE LAW TRADEMARK INFRINGEMENT

85.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

86.     The acts of Defendant complained of herein constitute infringement of Plaintiff's registered marks in violation of § 59.1-92.12 of the Virginia Code.

SIXTH CAUSE OF ACTION:

COMMON LAW UNFAIR COMPETITION

87.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

88.     The acts of Defendant complained of herein constitute unfair competition in violation of the common law of the Commonwealth of Virginia and other states.

SEVENTH CAUSE OF ACTION:

UNJUST ENRICHMENT

89.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

90.     The acts of Defendant complained of herein constitute unjust enrichment of Defendant at Plaintiff's expense.

EIGHTH CAUSE OF ACTION:

FEDERAL FALSE ADVERTISING AND UNFAIR COMPETITION

91.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

92.     The commercial advertising claims described in ¶¶ 53-76 above constitute false and misleading descriptions of fact, or false and misleading representations of fact, which

misrepresent the nature, characteristics, and qualities of Handi-Foil consumer aluminum roll foil products, and the nature, characteristics, and qualities of REYNOLDS WRAP roll foil products, in violation of § 43(a) of the Lanham Act.

93.     Plaintiff has been and is likely to be damaged by Defendant's false and misleading representations concerning Handi-Foil and REYNOLDS WRAP products.

94.     Defendant's false and misleading commercial advertising claims are likely to mislead and deceive buyers for retail merchants and distributors into purchasing Handi-Foil products instead of the REYNOLDS WRAP products.

95.     Plaintiff has built up substantial goodwill in its REYNOLDS WRAP consumer aluminum roll foil products and Defendant's advertising diminishes that goodwill.

96.     Plaintiff has suffered and will continue to suffer irreparable injury by reason of the false and misleading statements by Defendant about the Handi-Foil and REYNOLDS WRAP products, and the diminution of goodwill caused by those statements.

97.     Plaintiff has no adequate remedy at law.

98.     Defendant should be enjoined preliminarily and permanently from disseminating or causing to be disseminated or published any advertisement, commercial, promotional material, labeling, packaging, package insert, press release, or other material containing claims, representations, statements, or demonstrations that state or imply, directly or indirectly, any of the claims set forth in ¶¶ 53-76 above.

99.     Defendant should be ordered to publish corrective advertising to dispel the false and deceptive impressions created by the advertising of the claims set forth in ¶¶ 53-76 above.

100.    Plaintiff should be awarded damages to compensate it for lost sales and diminished goodwill in an amount to be proven at trial.

101.   In the alternative, to compensate it for lost sales and diminished goodwill, Plaintiff should be awarded the profits Defendant has earned from its sales of Handi-Foil consumer roll foil products in the Dollar Tree Box, the Third Box, and the Grocery Box.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

(a)   Defendant, its agents, servants, employees, and all those persons in active concert or participation with Defendant, be preliminarily and permanently enjoined and restrained from:

(i)   Manufacturing, advertising, offering to sell, selling, or distributing aluminum foil in the packaging currently used for the Infringing Products or any packaging substantially similar thereto;

(ii)   Using in any manner the Infringing Products and the Reynolds Wrap Marks or trade dress, alone or in combination with any word(s) or design(s) that so resemble each said trademark or trade dress so as to be likely to cause confusion, deception, or mistake on or in connection with the manufacture, advertising, offering for sale, sale, or distribution of any product not Plaintiff's product or not authorized by Plaintiff to be sold in connection with each of the Reynolds Wrap Marks;

(iii)   Passing off, inducing, or enabling others to sell or pass off the Infringing Products and any other product as and for products produced by Plaintiff that are not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under the Reynolds Wrap Marks;

(iv)   Engaging in any conduct that tends falsely to represent or is likely to confuse, mislead, or deceive purchasers, Defendant's customers, and members of the public to believe that the Infringing Products and Defendant are connected with Plaintiff

or are sponsored, approved, or licensed by Plaintiff or are in some way connected or affiliated with Plaintiff;

(v)     Further diluting and infringing the Reynolds Wrap Marks and trade dress and damaging Plaintiff's goodwill;

(vi)     Otherwise unfairly competing with Plaintiff in any manner;

(vii)     Using any reproduction, counterfeit, copy, or colorable imitation of any of the Reynolds Wrap Marks or trade dress in connection with the publicity, promotion, sale, or advertising of products manufactured, received, acquired, imported, shipped, purchased, sold, offered for sale, or distributed by Defendant bearing a copy or colorable imitation of any of the Reynolds Wrap Marks or trade dress;

(viii)     Affixing, applying, annexing, or using in connection with the manufacture, advertising, receiving, acquisition, importation, shipment, purchase, sale, offer for sale, or distribution of any goods a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Plaintiff's products and from offering such goods in commerce;

(ix)     Destroying any records documenting the manufacture, sale, or receipt of the Infringing Products; and

(x)     Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above.

(b)     Defendant be required to recall all Infringing Products that have not been sold by any retailer or distributor to which Defendant has distributed or sold the Infringing Products and notify all such retailers and distributors that they are not to sell the Infringing Products.

(c)     Defendant be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendant's possession or control that use any trademark, design, or trade dress similar to the Reynolds Wrap Marks and/or trade dress or that incorporates the Reynolds Wrap Marks and/or trade dress.

(d)     Defendant be enjoined preliminarily and permanently from disseminating or causing to be disseminated or published any advertisement, commercial, promotional material, labeling, packaging, package insert, press release, or other material containing claims, representations, statements, or demonstrations that state or imply, directly or indirectly, any of the claims set forth in ¶¶ 53-76 above.

(e)     Defendant be ordered to publish corrective advertising to dispel the false and deceptive impressions created by the advertising of the claims set forth in ¶¶ 53-76 above.

(f)     Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

(g)     Plaintiff recover all damages sustained as a result of Defendant's activities and that said damages be trebled.

(h)     An accounting be directed to determine Defendant's profits resulting from its activities and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case.

(i)     Plaintiff recover its reasonable attorneys' fees.

(j)     Plaintiff recover punitive damages and its costs of this action, together with prejudgment and post-judgment interest.

(k)     Plaintiff recover such other and further relief as the Court deems just and proper.

Dated:  August __, 2013

By:_____
        Paul E. Sumilas (VSB #75498)
FULBRIGHT & JAWORSKI LLP
Market Square
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile:  (202) 662-4643
Email: paul.sumilas@nortonrosefulbright.com

OF COUNSEL:
Mark N. Mutterperl
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 318-3000
Facsimile:  (212) 318-3400
Email: mark.mutterperl@nortonrosefulbright.com

*Attorneys for Plaintiff Reynolds Consumer Products Inc.*