**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:13-cv-214 LO/TRJ |
| | ) | |
| HANDI-FOIL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT HANDI-FOIL CORPORATION'S OPPOSITION
TO REYNOLDS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

REDACTED PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ..............................................................................................................1

LISTING OF DISPUTED FACTS .....................................................................................2

LEGAL STANDARD.........................................................................................................9

    I.      Summary Judgment Is Applicable Only Where There Is No Genuine Issue Of Material Fact In Light Of The Record Of Admissible Evidence.......................9

    II.    A Mark Is Abandoned When It Is No Longer Used In Commerce And Its Owner Has No Intention Of Resuming Its Use. ....................................................9

ARGUMENT .....................................................................................................................10

    I.      Reynolds Has Abandoned Its Registered Marks. ...................................................10

    II.    Reynolds Must Show Tacking To Overcome Its Conceded Abandonment Of The Marks Depicted In The Asserted Registrations........................................12

          A.    Tacking Is Exceedingly Difficult To Prove, And Courts—Including The Fourth Circuit—Apply It In Only "Exceptionally Narrow" Instances........................................................................................13

          B.    Reynolds Advances A Misleading Picture Of The Prevailing Legal Standard For Tacking, Relying On Outdated Case Law............................16

    III.   Reynolds Has Not Shown As A Matter Of Law That The Abandoned Marks Depicted In The Asserted Registrations Are Legally Indistinguishable From The Trade Dress Reynolds Currently Uses. ...................18

          A.    None Of The Evidence That Reynolds Relies On Proves That The Marks Depicted In The Asserted Registrations May Be Tacked Onto Reynolds' Current Trade Dress. .......................................................19

               1.    The 1999 PRS Study On Which Reynolds Relies Is Inadmissible And Nonetheless Suggests That The Marks In The Asserted Registrations Cannot Be Tacked To Reynolds' Current Trade Dress. ....................................................19

                    a.    The PRS Study Is Inadmissible. ........................................20

                    b.    The PRS Study Does Not Support Tacking The Current Package To The Designs As Registered..............22

                2.    The CBX Study Is Inadmissible And, By Its Own Language, Is Not Reliable Evidence..............................................23

          B.    Reynolds' Evidence Of Alleged Secondary Meaning Has No Bearing On The Tacking Analysis............................................................25

i

**Page(s)**

C. Reynolds' Reliance On The USPTO's *Ex Parte* Acceptance Of An Outdated Version Of Reynolds' Trade Dress Is Neither Binding Nor Persuasive Evidence That Tacking Is Appropriate Here.....................26

D. Contrary To Reynolds' Interpretation Of The "Evidence" On Which It Relies, The Facts Show That The Changes Reynolds Has Made To The Design Are Material And Thus Tacking Is Not Applicable. .................................................................................................26

CONCLUSION...............................................................................................................30

REDACTED PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventis, Inc. v. Consol. Prop. Holdings, Inc.*,
  No. 7:02CV00611, 2006 WL 1134129 (W.D. Va. Apr. 24, 2006) .................................... 12, 18

*Am. Paging, Inc. v. Am. Mobilphone, Inc.*,
  13 U.S.P.Q.2d 2036 (T.T.A.B. 1989),
  *aff'd, unpublished op.*, 923 F.2d 869 (Fed. Cir. 1990) ............................................................. 13

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................................................... 12, 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................... 9

*Central Mfg., Inc. v. Brett*,
  492 F.3d 876 (7th Cir. 2007) ................................................................................................... 11

*Data Concepts, Inc. v. Digital Consulting, Inc.*,
  150 F.3d 620 (6th Cir. 1998) ........................................................................................... 7, 14, 28

*Dreyfus Fund, Inc. v. Royal Bank of Canada*,
  525 F. Supp. 1108 (S.D.N.Y. 1981) ....................................................................................... 17

*Emergency One, Inc. v. Am. FireEagle, Ltd.*,
  228 F.3d 531 (4th Cir. 2000) ........................................................................................... 9, 10, 11

First Sav. Bank, F.S.B. v. First Bank Sys., Inc.
  101 F.3d 645 (10th Cir. 1996) ................................................................................................. 18

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,
  902 F. Supp. 1366 (D. Kan. 1995) ......................................................................................... 18

*George & Co., LLC v. Imagination Entm't Ltd.*,
  575 F.3d 383 (4th Cir. 2009) ....................................................................................... 3, 12, 15, 16

*In Re App. of Clorox Co.*,
  578 F.2d 305 (Cust. & Pat. App. Bd. 1978) ........................................................................... 26

*Keziah v. W.M. Brown & Son, Inc.*,
  888 F.2d 322 (4th Cir. 1989) ................................................................................................... 20

*Louangel Inc. v. Darden Rests. Inc.*,
  106 U.S.P.Q.2d 1809 (S.D. Tex. 2013) ................................................................................... 12

*Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*,
  403 F.3d 188 (4th Cir. 2005) ................................................................................................... 9

*Mitchell v. Data Gen. Corp.*,
  12 F.3d 1310 (4th Cir. 1993) ................................................................................................... 20

REDACTED PURSUANT TO PROTECTIVE ORDER

**Page(s)**

*Nguyen v. CNA Corp.,*
   44 F.3d 234 (4th Cir. 1995)...................................................................................... 9

*One Industries v. Jim O'Neal,*
   578 F.3d 1154 (9th Cir. 2009)........................................................................... 15, 27

*Pro-Cuts v. Schilz-Price Enters. Inc.,*
   27 U.S.P.Q.2d 1224 (T.T.A.B. 1993).................................................................... 14

*Rohrbough v. Wyeth Labs., Inc.,*
   916 F.2d 970 (4th Cir. 1990)................................................................................. 20

*Smith v. Wyeth-Ayerst Labs. Co.,*
   278 F. Supp. 2d 684 (W.D.N.C. 2003).................................................................. 22

*Swatch, S.A. v. Beehive Wholesale, L.L.C.,*
   888 F. Supp. 2d 738 (E.D. Va. 2012)............................................................... 21, 22

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,*
   926 F.2d 1156 (Fed. Cir. 1991) .................................................................... passim

*Veryfine Prods., Inc. v. Colón Brothers., Inc.,*
   799 F. Supp. 240 (D.P.R. 1992) ........................................................................... 17

**Statutes**

15 U.S.C. § 1064................................................................................................... 9, 10

15 U.S.C. § 1065......................................................................................................... 9

15 U.S.C. § 1115......................................................................................................... 2

15 U.S.C. § 1127......................................................................................................... 9

**Rules**

37 C.F.R. § 2.51......................................................................................................... 10

Fed. R. Civ. P. 56(a) .................................................................................................. 9

Fed. R. Civ. P. 56(c) ................................................................................................ 20

Fed. R. Evid. 702 ..................................................................................................... 21

Fed. R. Evid. 801(c) ................................................................................................ 20

Fed. R. Evid. 802 ..................................................................................................... 20

**Treatises**

3 McCarthy on Trademarks and Unfair Competition § 17.26 (4th ed. 2013).................... 13

J. Gilson, *Trademark Protection and Practice* § 3.03[1] at 3-67-68 (1990) ................ 14

iv

REDACTED PURSUANT TO PROTECTIVE ORDER

## <u>INTRODUCTION</u>

"Use it or lose it" is a powerful maxim in trademark law.  Reynolds applied for and obtained a registration nearly forty years ago, but admits that it ***no longer uses*** the marks that it registered, nor does it intend to resume using those marks.  Handi-Foil has proven, as a matter of law, that Reynolds has abandoned its registrations and this Court should, therefore, cancel them. Because these facts are beyond dispute, Reynolds attempts to save its registrations by asserting the affirmative defense of "tacking," arguing that the package design it currently uses creates the "same commercial impressions" as every Reynolds Wrap package design it has used since 1958, and that consumers will view all of these distinct designs ***as the same mark***.  Reynolds' motion for summary judgment carefully avoids the term "tacking" because that is, in fact, an ***affirmative defense*** upon which ***Reynolds***—not Handi-Foil—bears the burden of proof.  Yet Reynolds has no such proof.  And Reynolds ignores the current law on tacking, which sets an exceedingly high bar Reynolds simply cannot meet.  Finally, Reynolds goes so far as to manipulate multiple images of its discontinued historical packages in its brief to make them look more like the package Reynolds actually uses today.

None of these efforts can save Reynolds from the consequences of its of haphazard trademark prosecution strategy.  Most companies avoid the pitfalls of losing federal registration protection over their evolving marks by registering each new version of their marks, maintaining use of predecessor marks, or both.  For example, PepsiCo has used its red, white, and blue globe device as a trademark for soft drinks since at least 1963.  To protect its rights in these evolving designs, PepsiCo has registered and continues to use each of these similar but distinct marks, as USPTO records demonstrate:

| U.S. Reg. No. 824,153 (first use in 1963) | U.S. Reg. No. 2,100,417 (first use in 1997) | U.S. Reg. No. 3,045,794 (first use in 2001) | U.S. Reg. No. 3,774,833 (first use in 2008) |
|---|---|---|---|
|  |  |  |  |

(Ex. A (printouts of USPTO records for various active PepsiCo trademark registrations).)[1]

Reynolds, on the other hand, neither continued used of its old marks, nor filed any registrations for its new marks, including the mark at issue, which it did not begin to use until 2008. Now, in an effort to save its registrations and take advantage of the legal presumptions they confer,[2] Reynolds asks this Court to apply an outdated legal standard and rely on inadmissible evidence. Because Reynolds cannot prove its tacking defense to abandonment, this Court should deny Reynolds' motion for summary judgment on Handi-Foil's counterclaim and cancel Reynolds' asserted registrations.

## LISTING OF DISPUTED FACTS

Pursuant to Local Rule 56(B), Handi-Foil sets out the following disputes to the corresponding numbered paragraphs in Reynolds' "Statement of Undisputed Facts," including

---

[1]   All references to lettered in this Brief refer to the corresponding lettered exhibits to the Declaration of Ian J. Block in Support of Defendant Handi-Foil Corporation's Opposition to Reynolds' Motion for Partial Summary Judgment, filed concurrently herewith.

[2]   By statute, the federal registration of a trademark confers certain evidentiary presumptions in litigation, such as "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115. Reynolds has abandoned the marks depicted in the asserted registrations, and thus should not be entitled to the benefit of these presumptions at trial or in subsequent enforcement of its purported trade dress rights.

2

disputes relating to factual accuracy and materiality of Reynolds' allegations, as well as objections to the admissibility of the evidence on which Reynolds relies:[3]

**SUF ¶¶ 3-8[4] and 38-46**: As explained in detail in Section III.B below, Reynolds' purported evidence of sales, advertising, advertising expenditures, and purported brand recognition in the REYNOLDS WRAP name is immaterial to the issues raised in its motion, namely, whether the asserted registrations corresponding to Reynolds' 1992 package design create the same commercial impression as Reynolds' current packaging.  Reynolds must show that the 1992 package design is "the legal equivalent of the [current Reynolds Wrap package design] mark in question or indistinguishable therefrom such that consumers consider both as the same mark."  *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 402 (4th Cir. 2009) (internal quotations omitted).  Evidence of sales, advertising, and recognition of the brand name over 65 years and nearly ten package redesigns cannot prove this, as evidence that the new and old Reynolds designs emanate from the same source is insufficient to prove continuing commercial impression.  *Id.* (confusing similarity between an old and new mark is insufficient to prove that marks are legal equivalents).  And, as discussed below with respect to SUF ¶¶ 43-45, Reynolds' purported evidence of brand recognition is inadmissible and should be disregarded.

**SUF ¶ 12**: Handi-Foil does not dispute that dominant elements of the asserted registrations are depicted in the asserted registrations as blue, silver, and pink; however, Handi-Foil disputes that the colors in and of themselves are "the dominant aspects" of the asserted registrations.  Rather, as the marks depicted in the asserted registrations reflect, the dominant

---

[3]   Any fact presented by Reynolds that is not addressed in this section is not disputed.

[4]   Handi-Foil objects to the Declaration of David Bryla, cited for the first time in connection with SUF ¶ 8, that Reynolds served with its motion to the extent that this declaration states alleged facts that Reynolds did not provide during discovery.

REDACTED PURSUANT TO PROTECTIVE ORDER

aspects of the asserted registrations include the ***placement and configuration*** of each colored section.  (Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Reynolds' Brief") Ex. 6 p. 63; Reynolds' Brief Ex. 7 p. 41; Ex. B, Defendant's Deposition Exhibit 22 at HANDI 00000982 (USPTO electronic record for U.S. Reg. No. 1,067,092); Ex. C, Defendant's Deposition Exhibit 23 at HANDI 00001139 (USPTO electronic record for U.S. Reg. No. 1,070,888); Dkt. No. 62 ("Stipulated Facts") ¶¶ 9-10; Dkt. No. 56 ("2d Am. Compl.") ¶ 10.) The marks in the asserted registrations contain only three and four elements, respectively, so even minor changes to these elements materially alter these dominant aspects.

        **SUF ¶¶ 16, 18, 20, 25, and 29**:  Handi-Foil objects to the altered representations of the packages depicted in Reynolds' brief at each of the identified SUFs because Reynolds modified them from the original, changing the proportions of height and width, resulting in "squished" images, as shown below:

| Image of Packaging Specimen Reflected in the Certified Registration File for U.S. Reg. No. 1,067,092 (Reynolds' Brief Ex. 6, p. 8) | Altered Image of Packaging Specimen as Depicted in Reynolds' Motion at SUF ¶ 16 |
|---|---|
|  | |

        Representing package designs accurately is critical because it belies Reynolds' attempts to downplay the alteration it effected with its most recent round of changes to the Reynolds Wrap package in 2008.  The 2008 change actually did result in a noticeable reduction to the height of Reynolds' current package as compared to the width, which remained constant.  The result was a

4

change in the height-to-length ratio of Reynolds' package that necessitated the 2008 design change.  (Ex. D, 8/12/13 Deposition of Douglas Mickle ("Mickle Dep.") 38:5-21 & 75:4-21.) Reynolds' Rule 30(b)(6) corporate designee described the effects of this packaging change as follows:

> While I was there, in 2008, there was a project initiated by our senior brand manager.  There was a desire to reduce the amount of packaging in the product, which required that the core that the foil is rolled on be reduced in diameter, which meant the overall carton needed to be reduced, which meant by reducing it all, the billboard for the packaging became much smaller, and therefore required a revision to the graphics so that we could adapt the trade dress to the new requirements of the smaller package.

(*Id.* at 38:9-18.)   Even though this most recent change altered the placement of all of the elements on Reynolds' box, Reynolds disregards this change from its analysis in its motion. (Reynolds' Brief at 3 n.3; *id.* at 19 (incorrectly claiming that the *only* change at issue is Reynolds' adoption of the curved silver bands in lieu of a straight-line divider between the blue and pink sections of Reynolds' packages).)   Accordingly, Handi-Foil disputes Reynolds' adulterated depictions of packages in its motion and asks this Court to disregard Reynolds' attempts to manipulate the evidence by relying on the images as depicted in the source documents or in Handi-Foil's briefs.

**SUF ¶¶ 22-24 and 31-32**: As explained in detail in Section III.C below, evidence concerning Reynolds' 2007 renewals of the asserted registrations is immaterial.  Specifically, the package Reynolds submitted as a specimen of use in support of the 2007 renewals reflects Reynolds' historical 2002 box and ***not*** its current 2008 package that features altered proportions from its predecessors.   Accordingly, the USPTO ***never evaluated Reynolds' registrations against Reynolds' current box***.   Nonetheless, Reynolds' reliance on the USPTO's ex parte acceptance of Reynolds' 2007 specimen of use for renewal carries hardly any probative weight, as no party had an opportunity to challenge the sufficiency of Reynolds' submission.

REDACTED PURSUANT TO PROTECTIVE ORDER

**SUF ¶ 27**: In this SUF, Reynolds incorrectly identifies a specimen submitted to the USPTO in *1982* as being a specimen submitted in *1997*. The image Reynolds depicts in SUF ¶ 27 appears to be a Polaroid photograph of Reynolds' 1973 package, which Reynolds discontinued in approximately 1992. (SUF ¶ 34; Ex. D, Mickle Dep. 60:8-10, 61:3-8, 82:5-83:3.) The next page in the file history appears to be the back side of the Polaroid picture Reynolds presents in SUF ¶ 27, and it bears an August 23, 1982 USPTO mailroom intake stamp that appears as follows:



(Reynolds' Brief Ex. 7, pp. 30-31.)

**SUF ¶ 35**: Handi-Foil disputes Reynolds' claim that its nine rounds of packaging changes to the Reynolds Wrap package between 1958 and the present did not change the overall look and feel of the Reynolds Wrap package. Reynolds' 1958 package, for example, is materially different in a number of respects from Reynolds' current package, as the following images confirm:

REDACTED PURSUANT TO PROTECTIVE ORDER



(SUF ¶ 34.)  Reynolds offers an interpretation of the evidence that Handi-Foil disputes based on this side-by-side comparison of the marks, which is sufficient to show the differences in colors, placement of design elements, typeface, wording, etc.  *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991) ("Merely from review of the marks, it is clear that they create different commercial impressions."); *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623 (6th Cir. 1998) ("A determination of legal equivalence may be based on 'the visual or aural appearance of the marks themselves.'") (quoting *Van Dyne-Crotty*, 926 F.2d at 1159).  Reynolds' interpretation of the effects of Reynolds' numerous changes to the Reynolds Wrap trade dress plainly differs from Handi-Foil's.

Furthermore, as explained below in Section III.A., Reynolds may not rely on the PRS Study (Reynolds' Brief Ex. 12) cited to support this SUF, as that study is inadmissible hearsay and presents undisclosed expert testimony.  For the reasons discussed in Section III.A., Handi-Foil accordingly disputes every SUF that relies on the PRS Study.

**SUF  ¶¶ 35-37,  46-65**: As raised in the paragraph above and explained in detail in Section III.A below, Handi-Foil disputes each and every SUF that relies on the PRS Study attached to Reynolds' motion as Exhibit 12, as this document is inadmissible hearsay, offers improper undisclosed expert testimony, and does not test the products at issue in this motion, namely, the marks depicted in the asserted registrations that correspond to Reynolds' 1992 box and Reynolds' current trade espoused in 2008.

7

**SUF ¶¶ 43-45**: Reynolds' purported evidence of brand recognition is both inadmissible and inapposite.  (*See* Reynolds' Brief SUF ¶¶ 43-45; Reynolds' Brief Exs. 28-29.)  First, these third-party documents purporting show the results of brand recognition surveys are inadmissible hearsay that this Court should disregard entirely.  Reynolds did not conduct any of these studies and has not identified any witness with firsthand personal knowledge of them, such as representatives from EquiTrend, Harris Interactive, or Global TGI.  Indeed, Reynolds' own Chief Marketing Officer, David Bryla, admits that the research methodology for these types of studies is "shaky."  (Ex. G, 8/22/13 Deposition of David Bryla ("Bryla Dep.") 101:5-103:7 ("All of these brand power rankings have shaky methodology, let me just put it that way."); Ex. E, Defendant's Deposition Exhibit 60 (describing 2013 Global TGI study for inclusion in Reynolds' promotional materials as having "shaky" methodology).)  Moreover, these brand recognition studies do not speak to the issues raised in Reynolds' motion or, indeed, the relevant marks in this case, as the studies relate to the brand REYNOLDS WRAP and ***not*** the trade dress— Reynolds' package designs—that Reynolds has asserted here.

**SUF ¶¶ 63-65**: ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████.

8

## LEGAL STANDARD

I.   **Summary Judgment Is Applicable Only Where There Is No Genuine Issue Of Material Fact In Light Of The Record Of Admissible Evidence.**

At summary judgment, this Court views the facts, and inferences to be drawn from those facts, in the light most favorable to Handi-Foil. *Nguyen v. CNA Corp.*, 44 F.3d 234, 236-37 (4th Cir. 1995).  Summary judgment is appropriate only if the admissible evidence shows that there is no genuine issue as to any material fact and that Reynolds is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 197 (4th Cir. 2005) (citation omitted).  A genuine issue of material fact is one that might affect the outcome of the suit under the governing law.  *Metric/Kvaerner Fayetteville*, 403 F.3d at 197.

II.   **A Mark Is Abandoned When It Is No Longer Used In Commerce And Its Owner Has No Intention Of Resuming Its Use.**

"A mark shall be deemed to be 'abandoned' . . . [w]hen its use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127.  "Thus, a party claiming that a mark has been abandoned must show non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future."  *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 535 (4th Cir. 2000) (internal quotation marks omitted).  "Non-use for three consecutive years alone, however, constitutes prima facie evidence of abandonment."  *Id.* at 536 (citing 15 U.S.C. § 1127 ("Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.")).  The incontestability of a trademark registration is not a defense to abandonment.  15 U.S.C. § 1064(3) (a registration may be canceled as abandoned "at any time," including after incontestability is conferred under 15 U.S.C. § 1065); *see* 15 U.S.C. § 1065 (incontestability of a registration precludes challenges against the validity of such a registration

9

on certain grounds, such as descriptiveness of the registered mark, but does not impede

challenges based on the owner's abandonment of the mark).[5]

## ARGUMENT

### I. Reynolds Has Abandoned Its Registered Marks.

Handi-Foil filed a counterclaim for abandonment, and thus bears the burden of proving

abandonment, which requires a showing that: (1) Reynolds is not using the marks in its

registrations, and (2) Reynolds does not intend "to resume use in the reasonably foreseeable

future." *Emergency One,* 228 F.3d 535 (internal quotation marks omitted).  Based on Reynolds'

admissions, Handi-Foil has shown as a matter of law that Reynolds has not used the registered

design marks for far longer than the last three years and does not intend to resume using them.

*First*, Reynolds is not using the registered mark.  On the contrary, Reynolds has

redesigned its package numerous times over the years, and with each redesign, Reynolds stopped

using the prior package.  (Ex. D, Mickle Dep. 60:8-10 & 82:12-83:3.)  Reynolds admits in its

motion that the design depicted in the two asserted registrations is Reynolds' 1992 box design,

not the current package design on the market.  (Reynolds' Brief at 2-3.)  Moreover, Reynolds

admits that its current trade dress (*i.e.*, the 2008 box on the market today) is not identical to those

historical marks.  (*Id.*)  Reynolds' redesigns noticeably changed the appearance of the Reynolds

Wrap package such that the current box embodies a different mark than those depicted in

Reynolds' registrations.  (Ex. D, Mickle Dep. 103:7-19; *see* 37 C.F.R. § 2.51 ("the drawing of

the mark must be a ***substantially exact representation of the mark as used*** on or in connection

with the goods and/or services") (emphasis added); Ex. F, 8/21/13 Deposition of Kenard Lane

---

[5]  In its motion, Reynolds suggests that the incontestability of the asserted registrations affects
this Court's ability to find the marks abandoned.  (Reynolds' Brief at 1-2.)  This argument is
incorrect; the Lanham Act makes clear that abandonment is a valid basis to challenge a
registration "at any time." 15 U.S.C. § 1064.

REDACTED PURSUANT TO PROTECTIVE ORDER

("Lane Dep.") 175:4-8 ("Q: . . . My question is you can distinguish the changes that were made between the 1973 box and the 2002 box; correct?   A: I can.").)   Thus, Reynolds' conceded discontinuation of the 1992 box satisfies the nonuse prong for proving abandonment.

      **Second**, Reynolds has unequivocally stated that it has ***no intention*** of using the registered marks in the future.  Reynolds' Rule 30(b)(6) corporate representative on the topics of Reynolds' use of historical package designs and Reynolds' intention to use, discontinue, or resume each such use was clear:

> Q: Are you aware of any current plans or intentions by Reynolds to use the 1992 package design?
>
> A: No.
>
> Q: Are you aware of any current use of the 1992 package design?
>
> A: I'm not, no.

(Ex. D, Mickle Dep. 148:6-11).  Reynolds has not used the registered marks in more than ten years, which proves intent to abandon.  *Emergency One*, 228 F.3d at 536 (three years of nonuse "constitutes prima facie evidence of abandonment" and a presumption of intent not to resume use).  But more importantly, Reynolds *admitted* it does not intend to resume its use of the registered package, satisfying the second prong of abandonment.  Notwithstanding all of the extraneous evidence it attaches to its motion, by hanging its hat on the allegedly identical "continuing commercial impression" created by the historical package design depicted in Reynolds' registered design marks and the design Reynolds actually uses today, Reynolds admits that its actions provide prima facie evidence of abandonment.[6]

---

[6]    Nor does Reynolds dispute either the propriety of canceling the two asserted registrations upon this Court's finding that the registered marks have been abandoned, or this Court's authority to do so.  15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations . . . ."); *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007) (affirming cancellation of plaintiff's trademark registration as abandoned and explaining that "[w]here, as here, a registrant's asserted rights to a mark are shown to be

11

## II.   Reynolds Must Show Tacking To Overcome Its Conceded Abandonment Of The Marks Depicted In The Asserted Registrations.

By relying on the allegedly similar continuing commercial impression created by its 1992 box (which corresponds to the registered marks) and the package Reynolds currently uses, Reynolds concedes that it no longer uses the marks in the asserted registrations because "[t]he tacking doctrine, viewed as a constructive use theory, applies to a 'similar, *but technically distinct mark*.'"  *Louangel Inc. v. Darden Rests. Inc.*, 106 U.S.P.Q.2d 1809, 1813 (S.D. Tex. 2013) (quoting *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, No. 7:02CV00611, 2006 WL 1134129, at *3 (W.D. Va. Apr. 24, 2006) (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999))) (emphasis added) (rejecting tacking).   In other words, Reynolds' argument is *not* that the registered 1992 box and the current box are the same mark—they plainly are not—but instead that the historical and current marks are sufficiently "close enough" to one another as to be *indistinguishable*, such that consumers will view the old and the new marks as *the same mark*, thus allowing Reynolds to tack the marks covered by the registrations to its current use of a different design.  *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 402 (4th Cir. 2009) (rejecting tacking defense to abandonment).

Importantly, and despite Reynolds' continued mantra that this is Handi-Foil's burden, "*the party seeking to tack bears the burden of proof*."  *Adventis*, 2006 WL 1134129, at *5 n.10 (denying registrant's motion for summary judgment as not satisfying tacking) (emphasis added). Reynolds' burden for proving that tacking applies here is exceedingly high, and Reynolds cannot meet it as a matter of law.

---

invalid, *cancellation is not merely appropriate, it is the best course*" because the trademark register identifies the marks in active, enforceable registrations to the public) (emphasis added).

REDACTED PURSUANT TO PROTECTIVE ORDER

**A.      Tacking Is Exceedingly Difficult To Prove, And Courts—Including The Fourth Circuit—Apply It In Only "Exceptionally Narrow" Instances.**

While it was historically the rule that, to prove tacking, a registrant must demonstrate that the new form of the mark "creates the same commercial impression" as did the old form (3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 17.26 (4th ed. 2013)), the courts have over the past twenty years imposed a substantially heightened standard on parties attempting to prove tacking.  As Professor McCarthy explains, "in the late 1980s, the Trademark Trial and Appeal Board [the "TTAB"] and the Federal Circuit began to apply the continuing commercial impression test with much more rigor and strictness than in the past," building in additional requirements to satisfy this otherwise nebulous concept.  *Id.*  For example, in a 1989 TTAB decision affirmed by the Federal Circuit, a registrant was not permitted to tack its prior use of the mark AMERICAN MOBILPHONE and star and stripe design to achieve priority of use for AMERICAN MOBILPHONE PAGING with an identical star and stripe design.  *Am. Paging, Inc. v. Am. Mobilphone, Inc.*, 13 U.S.P.Q.2d 2036, 2038 (T.T.A.B. 1989), *aff'd, unpublished op.*, 923 F.2d 869 (Fed. Cir. 1990) ("we believe that purchasers would distinguish the two marks and would not consider them to be the same").  The two marks, while differing by only one word, were held to create "different commercial impressions and hence are not legally identical," as the addition of the generic word "paging" was regarded as sufficient to alter the commercial impression of the composite marks.  *Id.* at 2039.

Continuing the trend towards a stricter application of the standard, in *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991), the Federal Circuit held that the required degree of similarity between new and old formats in the tacking context is greater than the familiar test of a likelihood of confusion that is conducted to determine infringement between competing marks.  To meet the "same continuing commercial impression" test, "[t]he

13

previously used mark must be the ***legal equivalent*** of the mark in question or ***indistinguishable***

***therefrom***, and the consumer should consider both as ***the same mark***." *Id.* at 1159 (emphasis

added).  Moreover, the later mark should not materially differ from or alter the character of the

mark attempted to be tacked.  *Id.* (citing 1 J. Gilson, *Trademark Protection and Practice*

§ 3.03[1] at 3-67-68 (1990) ("What may seem minor to the trademark owner modifying his mark

may, from the standpoint of maintaining continuous priority rights, ***result in an entirely new***

***mark*** with its own, and later, priority." (emphasis added))).  In *Van Dyne-Crotty*, the Federal

Circuit held that prior use of the slogan CLOTHES THAT WORK FOR THE WORK YOU DO

could not be tacked on to later use of the slogan CLOTHES THAT WORK, because the deletion

of a portion of the slogan was deemed significant enough to change the commercial impression.

*Id.*  A subsequent TTAB decision summarized the Federal Circuit's strict *Van Dyne-Crotty* rule

for tacking as follows:

> A party seeking to "tack" its use of an earlier mark onto its use of a later mark for
> the same goods or services may do so ***only if the earlier and later marks are***
> ***legal equivalents, or are indistinguishable from one another***.  To meet the legal
> equivalents test, the marks must create the same commercial impression, and
> cannot differ materially from one another.  Thus, the fact that two marks may be
> confusingly similar does not necessarily mean that they are legal equivalents.

*Pro-Cuts v. Schilz-Price Enters. Inc.*, 27 U.S.P.Q.2d 1224, 1226-27 (T.T.A.B. 1993) (rejecting

tacking) (emphasis added). With this rigorous standard, the Federal Circuit found in *Van Dyne-*

*Crotty* that tacking only is applicable in "rare instances."  926 F.2d at 1160.

Multiple circuit courts of appeal—including the Fourth Circuit—have since adopted the

strict test for tacking set out in *Van Dyne-Crotty*.  For instance, the Sixth Circuit has held that a

logo of the letters "dci" may not be tacked onto "DCI."  *Data Concepts, Inc. v. Digital*

*Consulting, Inc.*, 150 F.3d 620, 623-24 (6th Cir. 1998) (rejecting tacking upon application of of

the *Van Dyne-Crotty* rule).  The Ninth Circuit has applied the *Van Dyne-Crotty* rule on at least

14

two occasions, rejecting the application of tacking both times.  *One Indus. v. Jim O'Neal Dist., Inc.*, 578 F.3d 1154, 1160-62 (9th Cir. 2009); *Brookfield Commc'ns,* 174 F.3d 1047-49.  In *One Industries v. Jim O'Neal*, the Ninth Circuit found that the following marks, developed over a period of years and reproduced in the court's opinion, could ***not*** be tacked:



578 F.3d at 1157.  The Ninth Circuit affirmed the district court's summary judgment finding of no tacking, explaining that "[t]he standard for tacking is exceedingly strict: the marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked."  *Id.* at 1160 (quoting *Brookfield*, 174 F.3d at 1048 (quoting *Van Dyne-Crotty*, 926 F.2d at 1159) (internal quotation marks and emphasis omitted).  In reviewing tacking decisions under the modern standard, the Ninth Circuit noted that the cases confirm that tacking is allowed only when marks are "virtually identical."  *Id.* at 1161.

The Fourth Circuit applies the *Van Dyne-Crotty* rule at least as strictly as the Ninth Circuit.  In *George & Company, LLC v. Imagination Entertainment Ltd.*, the Fourth Circuit made clear that tacking is permitted "only in rare instances." 575 F.3d 383, 402 (4th Cir. 2009).  In denying a plaintiff's tacking defense to abandonment, the Fourth Circuit held that "[t]he use of an earlier mark can be tacked onto the use of a subsequent mark ***only if*** the previously used mark is ***the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark***."  *Id.* (quoting *Van Dyne-Crotty*, 926 F.2d at 1159) (emphasis added) (internal quotations omitted).  Proving tacking, therefore, requires evidence

15

that consumers consider the old and new marks as the same mark.[7]  This is ***Reynolds'*** burden of

proof, and Reynolds simply cannot meet it.  Instead, Reynolds attempts to change the standard

by which its conduct is measured by advancing a more lenient, outdated test.

> **B.**  **Reynolds Advances A Misleading Picture Of The Prevailing Legal Standard For Tacking, Relying On Outdated Case Law.**

Reynolds disregards the Fourth Circuit's demanding tacking standard—adopted from the

Federal Circuit's similarly strict *Van Dyne-Crotty* decision—arguing instead for the antiquated,

lax standard that predated *Van Dyne-Crotty*.[8]  (Reynolds' Brief at 18-21.)  Indeed, Reynolds does

not cite to a single case permitting tacking under the *Van Dyne-Crotty* rule that the Fourth Circuit

adopted in *George* and that binds this Court here.

Instead, Reynolds attempts to avoid the Fourth Circuit's tacking standard from *George*,

stating in a footnote only that *George* "arguably took a narrow approach to the issue of

'continuing impression.'"  (Reynolds' Brief at 19 n.8.)  Reynolds' cannot avoid binding Fourth

Circuit law, which holds that "[t]he use of an earlier mark can be tacked onto the use of a

subsequent mark ***only if*** the previously used mark is ***the legal equivalent of the mark in***

***question or indistinguishable therefrom such that consumers consider both as the same***

---

[7]  Just as other courts applying the strict modern tacking standard have held, the Fourth Circuit found in *George* that proving two marks create the same continuing commercial impression requires more than merely showing a likelihood of confusion between a registrant's old and new marks, which means evidence suggesting that consumers recognize a registrant's registered and subsequent marks as identifying the same source is insufficient to show tacking.  575 F.3d at 402.  The ultimate question is not whether products offered under old and new marks come from the same manufacturer, but whether consumers recognize the old and new marks themselves as the same mark.  *Id.*

[8]  Indeed, although Reynolds refers repeatedly to the concept of "continuing commercial impression" and cites to multiple decisions involving tacking, Reynolds does not mention the word "tacking" once in its motion.  Reynolds' omission is telling, as its signals Reynolds' recognition that the standard for proving tacking is far more exacting than the ethereal "continuing commercial impression" catchphrase might otherwise suggest.

REDACTED PURSUANT TO PROTECTIVE ORDER

*mark*." *George*, 575 F.3d at 402.  Reynolds does not make any serious attempt in its motion to satisfy this exacting standard.[9]

To the contrary, Reynolds relies on fleeting quotations from older cases weighing "continuing commercial impression" issues against weaker standards than the Fourth Circuit requires.  For instance, Reynolds relies on *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1115 (S.D.N.Y. 1981), for the proposition that modifying a mark does not result in abandonment if the old mark and the new mark create the same, continuing commercial impression.  Yet this case was decided a decade before the Federal Circuit issued its ruling in *Van Dyne-Crotty* and did not require any of the other conditions that are required for tacking today, such as legal equivalence between the old and new marks or evidence that consumers perceive the marks as being the same mark.  To the contrary, the *Dreyfus* court permitted tacking based upon a finding that the old and new marks were likely to identify the same source to consumers—precisely the type of evidence that *Van Dyne-Crotty* and *George* have held *insufficient*.  525 F. Supp. 1115 (the plaintiff's old and new marks "may well suffice to remind readers, even subliminally, of the association with [the plaintiff]").

Reynolds also relies on *Veryfine Products, Inc. v. Colón Brothers., Inc.*, 799 F. Supp. 240 (D.P.R. 1992), for its citation to a treatise. *Id.* at 255. This decision also failed to apply the *Van Dyne-Crotty* standard.  Indeed, *Veryfine Products* relied on the *Dreyfus* court's now-antiquated continuing commercial impression test.  *Id.* (citing *Dreyfus*, 525 F. Supp. at 1115).

Finally, Reynolds extracts a blurb from a 1995 decision from the District of Kansas for the proposition that courts "hardly ever find abandonment" when alterations are made to marks.

---

[9]  Contrary to Reynolds' suggestion to the contrary (Reynolds' Brief at 19 n.8.), simply because the facts of *George* lent themselves to an easier finding of no tacking than the facts attendant to Reynolds' abandonment here does not mean that the strict tacking standard the Fourth Circuit set in *George* is any less binding or applicable.

REDACTED PURSUANT TO PROTECTIVE ORDER

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1366, 1380 (D. Kan. 1995).   Yet this decision from a district court in another circuit—**which was later reversed**, 101 F.3d 645 (10th Cir. 1996)—actually highlights the distinction between the old lax standard for tacking and the current strict standard.   Specifically, the *First Savings Bank* court found one set of marks suitable for tacking under the old standard, *id.* at 1380, and another set of modified marks ineligible for tacking under the new standard, *id.* at 1375.   And, unlike the marks at issue here that relate to package designs, all of the marks at issue in *First Savings Bank* were primarily word marks, so while the marks that maintained the same words could be tacked, the marks that changed literal elements could not.   *Id.* at 1375 & 1380.

Besides its efforts to minimize the tacking standard the Fourth Circuit set out recently in *George*, Reynolds does not cite to any cases decided by the Fourth Circuit or any district court within this Circuit that relate to tacking.   The Fourth Circuit's binding precedent in *George* makes clear that Reynolds cannot prove tacking as a matter of law.

**III.   Reynolds Has Not Shown As A Matter Of Law That The Abandoned Marks Depicted In The Asserted Registrations Are Legally Indistinguishable From The Trade Dress Reynolds Currently Uses.**

Besides relying on an unduly lax and outdated standard to try to show that Reynolds may tack its abandoned historical registered marks onto the package design Reynolds currently uses, Reynolds also tries to place the burden of proof with Handi-Foil.   It is **Reynolds**, however, that must show that consumers cannot distinguish the changes made from the registered 1992 design and the current box implemented in 2008.   *Adventis*, 2006 WL 1134129, at *5 n.10 ("The party seeking to tack bears the burden of proof."); *George*, 575 F.3d at 402 ("The use of an earlier mark can be tacked onto the use of a subsequent mark **only if** the previously used mark is **the legal equivalent of the mark in question or indistinguishable therefrom such that consumers**

18

*consider both as the same mark*.")  Simply stated, Reynolds has presented no such evidence; there is not a single piece of data that compares the *current box* to the design as registered.

Instead, Reynolds relies on a kitchen sink's worth of inadmissible and nonprobative evidence to support its untenable argument that the 1992 Reynolds Wrap box depicted in the asserted registrations creates the same commercial impression as the box Reynolds uses today. Specifically, Reynolds points to three types of evidence that this Court should disregard: (1) two inadmissible presentations purported reflecting consumer research; (2) evidence of alleged secondary meaning in the REYNOLDS WRAP word mark and Reynolds' ten or more package designs for Reynolds Wrap products; and (3) ex parte USPTO decisions concerning historical package designs that predate Reynolds' current trade dress.

### A. None Of The Evidence That Reynolds Relies On Proves That The Marks Depicted In The Asserted Registrations May Be Tacked Onto Reynolds' Current Trade Dress.

To support its argument that Reynolds' 1992 box creates the same commercial impression as its current package design, Reynolds relies heavily on presentation slide decks created by third parties that purport to reflect the results of consumer testing conducted in June 1999 ██████████ namely the PRS Study ██████████ (*See* Reynolds' Brief SUF ¶¶ 35-37, 46-65; Reynolds' Brief Ex. 12 (June 1999 Perception Research Services Eye Tracking Study) ("PRS Study"); ████████████████████████████

████████████████  Neither of these documents provides evidence of tacking.

### 1. The 1999 PRS Study On Which Reynolds Relies Is Inadmissible And Nonetheless Suggests That The Marks In The Asserted Registrations Cannot Be Tacked To Reynolds' Current Trade Dress.

Reynolds relies heavily on a presentation that purports to show the results of a third-party eye-tracking survey conducted in 1999.  (Reynolds' Brief Ex. 12.)  The PRS Study allegedly consisted of showing participants shelves of food protection products and tracking their eye

19

movements when the Reynolds brand was called out and then interviewing participants about the packages they were shown.  (*Id.* at RHF00020445_0013-14.)  The stated purpose of the exercise was to determine consumers' reactions to potential design changes to the Reynolds Wrap package.  (*Id.* at RHF00020445_0008-10.)  This document cannot create a genuine issue of material fact to overcome a finding of abandonment because it is inadmissible, and because the PRS Study did not test the current package but rather included in its study the predecessor package and thus is irrelevant in proving that the current package is indistinguishable from the registered designs.

### a.     The PRS Study Is Inadmissible.

To be considered at summary judgment, Reynolds' evidence must be such as would be admissible in evidence at trial.  FED. R. CIV. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the [nonmovant's] case to determine whether the [nonmovant] has proffered sufficient proof in the form of admissible evidence, that could carry the burden of proof in his claim at trial.").  This Court may not consider the PRS Study because it is inadmissible hearsay.  *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 973 (4th Cir. 1990) (district court may only consider evidence that would be admissible at trial); *Keziah v. W.M. Brown & Son, Inc.*, 888 F.2d 322, 326 (4th Cir. 1989); FED. R. EVID. 801(c) & 802.

The PRS Study was conducted nearly fifteen years ago by a third party that Reynolds has never identified as an entity on which it intends to rely at trial.  (Dkt. No. 66 at pp. 2-3 (Reynolds' First Amended Pretrial Disclosures.)  Reynolds' corporate designee on these topics testified that he was not involved in designing or conducting the survey itself and did not even fully understand its conclusions.  (Ex. D, Mickle Dep. 141:17-142:12.)  Reynolds has not identified any witness with firsthand knowledge of the PRS Study who could authenticate it, nor

REDACTED PURSUANT TO PROTECTIVE ORDER

has Reynolds presented the declaration or testimony of anyone with personal knowledge about

the survey's creation or methodology.   In short, Reynolds attempts to admit a study without

anyone—expert or otherwise—with personal knowledge of the study methodology or results.

This Court has properly excluded precisely this type of unauthenticated hearsay:

> Swatch seeks admission and authentication of the survey through Higgins, non-party Swatch (U.S.)'s brand manager . . . .  But Higgins had nothing to do with the survey.  She did not conduct it; she did not write the *Women's Wear Daily* article about the survey; she is not an expert; and she has no personal knowledge of the survey's methodology other than what appears in the *Women's Wear Daily* article announcing its results.  . . .  Higgins' proffer that the survey is a 'true and accurate' version of the article featured in *Women's Wear Daily* is insufficient to eliminate the evidentiary concerns raised by Beehive and as a result, the survey is in admissible.

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 743-44 (E.D. Va. 2012)

(O'Grady, J.) (internal citations omitted).  Reynolds does not even present the flawed affidavit

that this Court rejected in *Swatch*.  And the PRS Study Reynolds seeks to admit includes more

profound evidentiary defects, as the document on which Reynolds relies is incomplete on its

face: although the table of contents identifies at least 157 pages (Reynolds' Brief Ex. 12

at RHF00020445_0005-06), the document itself is only 51 pages long, inexplicably skips from

page 32 to page 87 (*id.* at RHF00020445_0041-42), and ends on page 96 (*id.*

at RHF00020445_0051).  Moreover, the document only exists in black and white, so there is no

way to determine the colors of packaging used in the purported study.

Besides being inadmissible, the PRS Study and its results reflect unreliable expert

testimony presented only in a fifteen-year-old document that lacks anything resembling a proper

expert disclosure.  The data itself deals with eye-tracking technology supposedly capable of

measuring "eye flow" and the "visual prominence of elements" on packaging (*id.* at

RHF00020445_15-17), and—irrespective of its validity—is highly scientific in nature.  This type

of "scientific" testimony is the subject of expert testimony.  *See* FED. R. EVID. 702.  For expert

21

testimony to be admissible, "[a]n expert must account for "how and why" he or she reached the challenged opinion." *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 691 (W.D.N.C. 2003) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997)); *Swatch*, 888 F. Supp. 2d at 744 n.1 (striking report of a consumer survey where the party attempting to use the evidence "attempts to admit the survey without anyone, expert or otherwise, with personal knowledge of the survey methodology or results beyond recounting the hearsay written by a nontestifying author of an article about the survey").  Reynolds has presented no such witness who can testify about how or why the PRS Study reached the conclusions it did.  In addition to the study being unauthenticated and improper hearsay, Reynolds failed to properly disclose this type of "expert opinion" (if it were even reliable in the first place) during discovery and thus violated Federal Rule of Civil Procedure 26(a)(2).

> **b.     The PRS Study Does Not Support Tacking The Current Package To The Designs As Registered.**

Nor does the PRS study have any bearing on the issues of continuing commercial impression Reynolds raises in its motion to avoid a finding of abandonment.  Specifically, the PRS Study only tests Reynolds' 1992 box against a prototype package that arguably corresponds to the Reynolds Wrap box Reynolds adopted in 2002 (that is, three years after the study was conducted).  The proper comparison for the tacking issue in this motion, however, requires a comparison between Reynolds' 1992 and the ***current*** Reynolds Wrap package adopted in 2008. To be evidence to support the tacking of the marks depicted in the asserted registrations to the trade dress Reynolds uses today, the PRS Study would have to compare those marks and conclude that consumers view ***the two designs as the same mark***.  Yet this 1999 study simply does not test the relevant 2008 package at issue here.  Moreover, any results relating to consumers considering the 1992 and 2002 boxes as emanating from the same source carry little

REDACTED PURSUANT TO PROTECTIVE ORDER

to no weight in the tacking analysis, as the law is clear that likelihood of confusion between a registrant's old and new marks is *not* the test for tacking. *George*, 575 F.3d 402 ("Legal equivalence for tacking purposes does not exist simply because the two marks a party seeks to tack are 'confusingly similar.' Rather, the marks sought to be tacked must create the same continuing commercial impression.") (citing *Van Dyne-Crotty,* 926 F.2d 1159.)

Moreover, to the extent comparing Reynolds' 1992 package against the historical 2002 package that Reynolds retired in 2008 has any probative value, the results of the PRS Study demonstrate that Reynolds cannot prove tacking as a matter of law. The PRS Study itself concluded that approximately 20% of respondents recognized almost immediately upon viewing the 2002 box that it was not the same package design as 1992 box Reynolds was using when the test was conducted. (Reynolds' Brief Ex. 12 at RHF00020445_0030 & RHF00020445_0033.) One would expect these figures to be even higher during actual buying scenarios. Reynolds' current 2008 box is even further changed from the 2002 box tested in the PRS Study, so this finding strongly suggests that consumers do distinguish between the marks in the asserted registrations and Reynolds' current trade dress, and thus do not consider the two designs to be the same mark as required for tacking. At a minimum, the fact that 20% of respondents perceived the 1992 and 2002 boxes as distinct creates a question of fact on Reynolds' tacking defense that precludes the grant of summary judgment Reynolds seeks against Handi-Foil's cancellation counterclaim.

2. █████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████    ████████████████

23

24

REDACTED PURSUANT TO PROTECTIVE ORDER

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

**B.      Reynolds' Evidence Of Alleged Secondary Meaning Has No Bearing On The Tacking Analysis.**

While Reynolds pads the record with evidence of its historical advertisements, advertising expenditures, and sales figures for the ten or more package designs it has used since 1947, all with the goal of demonstrating secondary meaning in the Reynolds Wrap brand name and each iteration of its trade dress (*see, e.g.*, Reynolds' Brief SUF ¶¶ 3-8 & 38-46; Reynolds' Brief Exs. 5 & 13-29; Bryla Decl. ¶¶ 2-13), secondary meaning *has no bearing* on the issue presented in Reynolds' motion, namely, whether Reynolds' 1992 box that corresponds to its asserted registrations is legally equivalent to the package it currently uses.  As noted elsewhere in this opposition, the law is clear that likelihood of confusion between a registrant's old and new marks is *not* the test for tacking.  *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 402 (4th Cir. 2009) ("Legal equivalence for tacking purposes does not exist simply because the two marks a party seeks to tack are 'confusingly similar.'  Rather, the marks sought to be tacked must create the same continuing commercial impression.") (citing *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991)).  That the planet could be wrapped a thousand times over with all of the aluminum foil Reynolds has sold since 1947 might be probative of consumers' awareness of Reynolds in general, but it does not and cannot show that consumers view Reynolds' old and new trade dress as the same mark.  This is Reynolds' burden, and evidence of advertising and sales over 65 years and ten package designs does not satisfy it.

25

Accordingly, all of this Reynolds' evidence of historical sales, advertising, and name recognition are immaterial.

**C.**    **Reynolds' Reliance On The USPTO's *Ex Parte* Acceptance Of An Outdated Version Of Reynolds' Trade Dress Is Neither Binding Nor Persuasive Evidence That Tacking Is Appropriate Here.**

Reynolds' reliance on the USPTO's ex parte acceptance of Reynolds' submissions does not translate to persuasive evidence that the USPTO endorses Reynolds' premise that its various historical marks create the same commercial impression.  Importantly, Reynolds' most recent submission for renewal of its registrations in *2007* does not bear on the marks at issue—the 1992 box and the current box implemented in *2008*—because the USPTO did not evaluate the current box.  Nonetheless, the USPTO's ex parte acceptance of a specimen for the purposes of renewal is afforded little probative value because courts and the Board recognize that these submissions are reviewed and accepted without being put through the rigors of an adversarial process, such as federal litigation or opposition or cancellation proceedings.  *See In Re App. of Clorox Co.*, 578 F.2d 305, 310 n.2 (Cust. & Pat. App. Bd. 1978).

**D.**    **Contrary To Reynolds' Interpretation Of The "Evidence" On Which It Relies, The Facts Show That The Changes Reynolds Has Made To The Design Are Material And Thus Tacking Is Not Applicable.**

Reynolds attempts to prove tacking by arguing that the package design depicted in the asserted registrations creates the same "continuing commercial impression" as the changed package that Reynolds uses today.  (Reynolds' Brief at 20.)  Indeed, Reynolds takes its misguided "continuing commercial impression" argument well past its breaking point.  By arguing that its 1958 box creates the same commercial impression as its current box, Reynolds is claiming that consumers perceive the 1958 design as the same mark as the current design.  (*Id.* at 21.)  That is both illogical and plainly not borne out by a comparison of the two designs. They

26

are not the same, are not indistinguishable, and do not create the same continuing commercial impression.

This is demonstrated simply by comparing the marks at issue.  Applying the same strict standard for tacking that the Fourth Circuit set in *George* just a month earlier, for instance, the Ninth Circuit relied on a comparison of the marks themselves and found that the following "evolving" marks did not create the same commercial impression:



*One Indus. v. Jim O'Neal Dist., Inc.*, 578 F.3d 1154, 1157, 1161 (9th Cir. 2009) (reciting the differences between the marks).  Here, Reynolds has changed its marks at least nine times:



(Reynolds' Brief Ex. 11; *see* Reynolds' Brief SUF ¶ 34.)  Notwithstanding the inapposite and inadmissible evidence Reynolds appended to its motion, the most powerful evidence is the visual appearance of the marks themselves.  *Van Dyne-Crotty,* 926 F.2d 1159 ("Merely from review of

27

the marks, it is clear that they create different commercial impressions."); *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623 (6th Cir. 1998) ("A determination of legal equivalence may be based on the 'visual or aural appearance of the marks themselves.'") (quoting *Van Dyne-Crotty*, 926 F.2d at 1159).

As evidenced from the visual appearance, each box new version of the Reynolds' box created noticeable differences by adding or removing elements.  Specifically, for example, the 1958 and unknown-date boxes are the only two designs that use a single, straight, narrow silver band to separate the blue and pink sections of the box, as well as as another silver section all the way on the right.  Reynolds used the "King George" logo of a man on a horse through its 1970 box (Ex. G, Bryla Dep. 27:5-18), but discontinued that element thereafter.  Reynolds adopted a wide white or silver band as the central element in its 1973 box, abandoning the single narrow diagonal band that preceded it.  In 1992, Reynolds discontinued the wide single central element and replaced it with a series of narrow, straight lines, and in so doing changed the placement of the length of the product in each box from the central element to the rightmost pink section.  In 2002, Reynolds adopted its tri-arch element of three curved, upward-sloping silver bands as a replacement for the straight-line divider.  The 2008 box further changed the 1992 box altering the proportions of the box, resulting in a stretched graphical design that noticeably distanced the words "Reynolds Wrap" from the tri-arch element.  Throughout all of these various changes, the typeface of the words "Reynolds Wrap" has changed multiple times, along with the placement, inclusion, and fonts of other literal elements, such as "foil made in USA," "quality aluminum foil," and "trusted since 1947."  This panoply of changes necessarily means that consumers will not view any two of these marks as the same.  They are distinguishable and are not legal equivalents.  (Ex. F, Lane Dep. 175:4-8 ("Q: . . . My question is you can distinguish the changes

28

that were made between the 1973 box and the 2002 box; correct?  A: I can."); Ex. D, Mickle Dep. 103:7-19.)

These are precisely the types of material changes that Reynolds made between the 1992 box that corresponds to the marks in the asserted registrations and Reynolds' current package, and they preclude tacking here.  A comparison of one of the asserted registrations and Reynolds' current package appears as follows:



| Asserted U.S. Reg. No. 1,067,092 | |
|---|---|
| Reynolds' Current Box | |

(Stipulated Facts ¶¶ 3 & 6.)  These boxes clearly are distinguishable from one another.  The 1992 box differs from the current package in at least three noticeable, material respects: (1) the current package uses the curved tri-arch element rather than straight-line divider that preceded it; (2) the height-to-width ratio of the box changed, creating a narrower rectangular outline of the box; and (3) the change in box proportions resulted in graphical changes, such as the placement of the "Reynolds Wrap" literal element further from tri-arch than the predecessor boxes.  Moreover, while Reynolds' registrations cover only three or four elements (color, layout, and diagonal line divider), in its complaint, Reynolds identifies *twelve* elements that it claims make up its protected and distinctive common law trade dress—all of which, according to Reynolds, are embodied in the current package, but many of which were not present in 1992 (*e.g.*, the use of different fonts for quantity information, the phrase "Foil made in U.S.A.," *etc.*).  All of these numerous and noticeable differences between the marks Reynolds registered and the trade dress it currently

REDACTED PURSUANT TO PROTECTIVE ORDER

uses justify canceling the asserted registrations as a matter of law.  (*See* Handi-Foil's Motion for Partial Summary Judgment pp. 13-19.)  At the very least—particularly in light of Reynolds' lack of admissible or probative evidence to the contrary—these differences create a question of fact as to whether Reynolds may take advantage of tacking, a defense to abandonment that is proved only rarely, and thus necessitate the denial of Reynolds' motion.

## **CONCLUSION**

Based on the foregoing, Handi-Foil respectfully requests that this Court deny Reynolds' motion for partial summary judgment.

REDACTED PURSUANT TO PROTECTIVE ORDER

Dated: December 31, 2013                  Respectfully Submitted,

By:  */s/ Brian N. Gross*
      D. Sean Trainor (Va. Bar No. 43260)
      dtrainor@kirkland.com
      Brian N. Gross (Va. Bar No. 76795)
      brian.gross@kirkland.com
      KIRKLAND & ELLIS LLP
      655 Fifteenth Street, N.W.
      Washington, D.C. 20005
      Telephone: (202) 879-5000
      Facsimile: (202) 879-5200

      David K. Callahan, P.C. (admitted *pro hac vice*)
      dcallahan@kirkland.com
      Robin A. McCue (admitted *pro hac vice*)
      rmccue@kirkland.com
      Jordan M. Heinz (admitted *pro hac vice*)
      jordan.heinz@kirkland.com
      Ian J. Block (admitted *pro hac vice*)
      ian.block@kirkland.com
      KIRKLAND & ELLIS LLP
      300 North LaSalle
      Chicago, Illinois 60654
      Telephone: (312) 862-2000
      Facsimile: (312) 862-2200

      *Counsel for Defendant*
      *Handi-Foil Corporation*

REDACTED PURSUANT TO PROTECTIVE ORDER

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 31st day of December, 2013, pursuant to the Court's Order

(Dkt. No. 87) and the parties' agreement, a copy of the foregoing document was served via

electronic mail to the following:

    Britt Cass Steckman (Va. Bar No. 80966)
    britt.steckman@bgllp.com
    BRACEWELL & GIULIANI LLP
    2000 K Street, N.W., Suite 500
    Washington, D.C. 20006
    Telephone: (202) 828-5831

    Mark N. Mutterperl
    mark.mutterperl@bgllp.com
    Jessica S. Parise
    jessica.parise@bgllp.com
    BRACEWELL & GIULIANI LLP
    1251 Avenue of the Americas, 49th Floor
    New York, New York 10020
    Telephone: (212) 638-6468

                      */s/ Ian J. Block*
                      Ian J. Block (admitted *pro hac vice*)
                      ian.block@kirkland.com
                      KIRKLAND & ELLIS LLP
                      300 North LaSalle
                      Chicago, Illinois 60654
                      Telephone: (312) 862-2000
                      Facsimile: (312) 862-2200