UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | Case No.: 1:13-CV-214 LO/TRJ |
| HANDI-FOIL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

OPPOSITION OF REYNOLDS CONSUMER PRODUCTS, INC. TO
HANDI-FOIL CORPORATION'S MOTION TO STRIKE REYNOLDS' JURY DEMAND

BRACEWELL & GIULIANI LLP

Britt Steckman
britt.steckman@bgllp.com
2000 K Street NW, Suite 500
Washington, D.C. 20006-1809
Telephone: 202.828.5800
Facsimile: 800.404.3970

OF COUNSEL:

Mark N. Mutterperl (*pro hac vice*)
mark.mutterperl@bgllp.com
1251 Avenue of the Americas, 49th Floor
New York, New York 10020-1104
Telephone: 212.508.6100
Facsimile: 800.404.3970

*Attorneys for Plaintiff Reynolds Consumer
Products Inc.*

Dated: December 31, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.     Reynolds' Reliance On HF's Profits As A Measure Of Damages
       Is A Legal Issue For The Jury.............................................................................. 2

       A.     The Supreme Court's Decision In *Dairy Queen* Should Control ............ 3

       B.     As Set Forth In Reynolds' Complaint, HF's Profits Serve As A Proxy For
              Reynolds' Own Sustained Losses ........................................................... 5

       C.     Courts Routinely Find That Damage Claims Based On Infringers' Profits Are
              Properly Presented To A Jury .................................................................. 6

       D.     The Lanham Act Itself Contemplates Jury Determination Of Damages Claims
              Based On Infringers' Profits .................................................................... 8

II.    The Cases Relied Upon By HF Are Distinguishable ........................................... 9

III.   Efficiency And Economy Alone Cannot Trump The Seventh Amendment ...... 12

IV.    Even If The Court Concludes That Reynolds Is Not Entitled To A Jury, The Court
       Should Empanel An Advisory Jury Pursuant To Fed. R. Civ. P. 39(c)(1) ........ 13

CONCLUSION ................................................................................................................ 14

Table of Authorities

Page(s)

CASES

*3M Co. v. Mohan,*
    2012 WL 1949033 (Fed. Cir. May 29, 2012) .................................................................9

*American Cyanamid Co. v. Sterling Drug, Inc.,*
    649 F.Supp. 784 (D.N.J. 1986) ......................................................................................11

*AMF, Inc. v. National Boat Work, Inc.,*
    192 U.S.P.Q. 81, 1975 WL 21202 (M.D.N.C. Nov. 25, 1975).......................................8

*Beacon Theatres, Inc. v. Westover,*
    359 U.S. 500 (1959).....................................................................................................1, 2

*Cache, Inc. v. M.Z. Berger & Co.,*
    2001 WL 38283 (S.D.N.Y. 2001)...................................................................................6

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,*
    494 U.S. 558 (1990)...................................................................................................2, 12

*Coryn Group II, LLC v. O.C. Seacrets, Inc.,*
    2010 WL 1375301 (D. Md. Mar. 30, 2010)....................................................................8

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962) ............................................................................................. *passim*

*Daisy Group, Ltd. v. Newport News, Inc.,*
    999 F. Supp. 548 (S.D.N.Y. 1998) ..............................................................................5, 7

*Ideal World Marketing, Inc. v. Duracell, Inc.,*
    997 F. Supp. 334 (E.D.N.Y. 1998)..............................................................................6, 7

*L.L. Bean, Inc. v. Drake Publishers, Inc.,*
    629 F. Supp. 644 (D. Me. 1986) .....................................................................................8

*NordicTrack, Inc. v. Consumer Direct, Inc.,*
    158 F.R.D. 415 (D. Minn. 1994)....................................................................................7

*Oxford Industries, Inc. v. Hartmarx Corp.,*
    1990 WL 65792 (N.D. Ill May 2, 1990.)...............................................................6, 7, 11

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Development,*
    955 F. Supp. 598 (E.D. Va. 1997) ..............................................................................9, 10

*Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*,
 170 F.3d 449 (4th Cir. 1999) ...................................................................................................11

*Ross v. Bernhard*,
 396 U.S. 531 (1970).................................................................................................................12

*SPSS Inc. v. Nie*,
 2009 WL 2579232 (N.D. Ill. Aug. 19, 2009) .......................................................................11

*Terry v. Chauffeurs, Teamsters and Helpers, Local 391*,
 863 F. 2d 334 (4th Cir. 1988) ................................................................................................12

STATUTES

15 U.S.C. § 1117...................................................................................................................6, 7, 8, 10

15 U.S.C. § 1125(c)(2).....................................................................................................................10

RULES

Fed. R. Civ. P. 39(c)(1)......................................................................................................................13

TREATISES

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 30:59 (2013)............8

Defendant Handi-Foil Corporation's ("HF") motion to strike the jury demand of plaintiff Reynolds Consumer Products Inc. ("Reynolds") effectively usurps Reynolds' Seventh Amendment right to trial by jury and should be denied. Contrary to HF's characterization, the monetary relief sought by Reynolds here is not properly categorized as "equitable" such that Reynolds should be denied a jury trial. To the contrary, Reynolds' claim for monetary damages, although quantified via analysis of HF's profits, constitutes a legal issue for the jury.

## INTRODUCTION

The Supreme Court has directed that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (quotation omitted). HF's motion seeks to deny Reynolds the right to present its claims for relief to a jury of consumers who, like the Court, have firsthand experience with aluminum roll foil and will appreciate the egregious nature of HF's conduct in gaining market share by trading on Reynolds' goodwill and widespread recognition as the industry leader.

In its prayer for relief, Reynolds seeks to "recover all damages sustained as a result of Defendant's activities" and has requested an "accounting be directed to determine Defendant's profits resulting from its activities and that such profits be paid over to Plaintiff." Second Amended Complaint [Dkt. No. 56].[1] Reynolds' expert has relied upon HF's own profits as a quantifiable measure of the damages owed to Reynolds for HF's infringing and improper acts. This approach is consistent with the case law and with Reynolds' pleadings in this case.

---

[1] In its Second Amended Complaint, Reynolds asserted causes of action for, and demanded a jury trial on, federal trademark infringement, federal false designation of origin, federal trade dress infringement, federal trademark dilution, state law trademark infringement, common law unfair competition, unjust enrichment, and federal false advertising and unfair competition.

ARGUMENT

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." The Supreme Court has interpreted the Seventh Amendment to require "that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 (1962) (*citing Beacon Theatres*, 359 U.S. at 500). Relevant here, the Supreme Court has determined that a cause of action for trademark infringement that requests a money judgment is unquestionably "a claim wholly legal in its nature however the complaint is construed." *Dairy Queen*, 369 U.S. at 477.

HF's motion is predicated entirely on the proposition that Reynolds' use of HF's profits to quantify its monetary relief in this case mandates that the Court conclude Reynolds is seeking only "equitable relief." From that foundational (but incorrect) premise, HF argues that no jury trial should occur in the absence of a legal issue.

The Court can therefore dispose of HF's motion by deciding whether Reynolds' claim for monetary relief in the form of an accounting of HF's profits is a legal issue or an equitable issue. *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (to determine whether a particular action will resolve legal rights involves evaluating whether the remedy sought is legal or equitable in nature). Because Reynolds' request for an accounting is undoubtedly legal in nature, HF's motion should be denied.

I.   Reynolds' Reliance On HF's Profits As A Measure Of Damages
     Is A Legal Issue For The Jury

As noted by the court in *Alcan International, Ltd. v. S.A. Day Manufacturing. Co., Inc.*, "[i]n determining whether an accounting for profits is legal or equitable in nature, there are two lines of authority." 179 F.R.D. 398, 401 (W.D.N.Y. 1998) (denying request to strike jury

demand where damage claim took the form of request for accounting of profits). Over the past fifteen years, that schism of authority has continued, and like the plaintiff in *Alcan*, HF has, of course, chosen to present the Court only with those cases that hold statutory damages under the Lanham act based on profits are equitable in nature. However, Reynolds cites an equal number of far more persuasively reasoned cases holding the opposite below.

Importantly, more than one decision relied upon by Reynolds, *Alcan* included, find the Supreme Court case of *Dairy Queen* to be controlling. In *Dairy Queen*, for the first time since the merging of the courts of law and equity, the Supreme Court held that "the legal remedy of money damages in [a trademark] infringement case could no longer be characterized as one for which there is no adequate remedy at law [i.e., equitable]." *Alcan*, 179 F.R.D. at 401-402 ("I find that the better line of authority on this issue is set forth in the recent decisions in *Daisy Group* and *Ideal World* . . . ."; both cases (cited below) finding that accounting of profits in trademark infringement context is legal in nature, relying on *Dairy Queen*). The weight of authority compels the conclusion that Reynolds' request for money damages in the form of HF's profits is properly a *legal* issue, and therefore one for the jury, not the Court.

## A.    The Supreme Court's Decision In *Dairy Queen* Should Control

The Supreme Court's holding in *Dairy Queen, Inc. v. Wood* is on point and has been relied upon by lower courts finding a right to a jury trial in trademark cases where money damages are sought. In *Dairy Queen*, the trademark owner sued a former licensee who had continued to use the DAIRY QUEEN trademark after termination of the license. *Dairy Queen*, 369 U.S. at 474-75. The license had required a payment based on a percentage of revenue received by the licensee. *Id.* at 474. The complaint sought: (1) injunctive relief to prevent use of the trademark, (2) an accounting to determine the exact amount owed by the former licensee, and (3) an injunction to prevent the former licensee from collecting any money from other Dairy

Queen stores in its territory. *Id.* at 475. The former licensee moved to strike the jury demand on the grounds that the relief was purely equitable, and the district court agreed. *Id.* at 470.

On appeal, the Supreme Court recognized that the nature of the relief sought could be characterized as purely legal, based on classical contract breach principles, or as trademark infringement. *Id.* at 477. Ultimately, the Court stated that the distinction (which HF emphasizes) *did not matter*:

> We find it unnecessary to resolve this ambiguity in the respondents' complaint because we think it plain that their claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.

*Id.* The Court explained that whether the right to a jury trial exists is not subject to hyper-technical reading of the pleadings, but depends instead on the nature of relief:

> The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.

*Id.* at 477-78. Critically to the analysis in this case, the fact that the damages sought required only a review of the defendants' profitability did not eliminate the plaintiff's right to a jury trial. *Id.* at 479 ("The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.").

The Supreme Court's reasoning should control here. Reynolds has alleged trademark infringement (just as the plaintiff/respondent in *Dairy Queen*). Reynolds has requested as its remedy compensation based on an accounting of the defendant's sales (just as the

plaintiff/respondent in *Dairy Queen*).   Accordingly, HF's motion to strike Reynolds' jury demand should be denied.

> B.   As Set Forth In Reynolds' Complaint, HF's Profits Serve As A Proxy For Reynolds' Own Sustained Losses

Where an award of profits serves as a "rough proxy measure" of a plaintiff's damages, trial by jury is appropriate. *See Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998) (concluding that a claim for a trademark infringer's profits was legal in nature, thereby giving rise to a right to trial by jury).   Reynolds respectfully directs the Court to paragraph 101 of the Second Amended Complaint wherein Reynolds states:

> In the alternative, *to compensate it for lost sales and diminished goodwill*, Plaintiff should be awarded the profits Defendant has earned from its sales of Handi-Foil consumer roll foil products in the Dollar Tree Box, the Third box, and the Grocery Box.

Second Amended Complaint [Dkt. 56] (emphasis added).

As was the case in *Daisy*, and as highlighted by the deposition excerpts cited by HF (HF Br. at 3), Reynolds faces the traditional difficulties of a trademark holder in establishing actual lost sales and/or actual damages.   While it can speculate as to the damage and dilutive effect that HF's improper conduct has caused it, Reynolds, to carry its evidentiary burden in this case, looks to HF's profits as a "surrogate for damages, an alternative measure of damages because of the difficulty of proving actual lost sales."[2] *Daisy*, 999 F. Supp. at 552 ("This type of remedy is *fundamentally compensatory and legal in nature* . . . a claim for an infringer's profits as a proxy for damages . . . entitles the plaintiff to a jury trial.") (emphasis added); *see Alcan*, 179 F.R.D. at 402 ("[I]t is clear that S.A. Day seeks profits as a rough proxy measure of its damages, given the

---

[2] HF's pronouncement that Reynolds has "abandoned any claim for compensatory damages" has no basis in fact.   Reynolds has not abandoned its right to be compensated for HF's improper conduct, either expressly or implicitly.   Rather, Reynolds' damages theory is based on using HF's profits as a measure of damages necessary to compensate Reynolds in this case.

difficulty of establishing damages . . . ."); *see also Cache, Inc. v. M.Z. Berger & Co.*, No. 99 CIV. 12320 (JGK), 2001 WL 38283 (S.D.N.Y. 2001) (accounting for profits gave rise to right to trial by jury; denying motion to strike jury demand); *Ideal World Marketing, Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998) (award of profits in trademark cases "designed to compensate plaintiffs for diverted sales and to address the difficulties of proof inherent in such cases"; denying motion to strike jury demand when award of infringer's profits sought).

While Reynolds does not dispute that its financial expert has used HF's own profits to quantify the harm to Reynolds from HF's improper acts, Reynolds' claim for HF's profits in this matter as a proxy for its own unquantifiable damage is legal in nature, thus entitling it to a trial by jury.

C.   Courts Routinely Find That Damage Claims Based On Infringers' Profits Are Properly Presented To A Jury

The development of case law on this point is more complicated than is portrayed in HF's motion, but ultimately the majority of courts return to the Supreme Court's decision in *Dairy Queen*. The well-reasoned decision in *Oxford Industries, Inc. v. Hartmarx Corp.*, 15 U.S.P.Q. 2d 1648, 1990 WL 65792 (N.D. Ill. May 2, 1990), is instructive. As here, the court there was "confronted with the technical question of whether a trademark owner is entitled to a jury trial on a claim for the infringer's profits under 15 U.S.C. § 1117(a)." *Id.* at *1. The trademark owner had been awarded the infringer's profits as a measure of damages by a jury. The infringer moved to vacate the judgment on the ground that the jury verdict could only be considered advisory, and the court considered whether damages had been appropriately put before the jury.

The *Oxford* court reviewed the history of the courts of equity and law and the role that distinction played in actions for trademark infringement, ultimately relying on the Supreme

Court's decision in *Dairy Queen* to find that a claim for an infringer's profits under 15 U.S.C. §

1117(a) is a *legal* claim:

> Because trademark actions were historically legal . . . because an award of profits
> in the trademark context is more like an award of damages than restitution and
> because any doubts should be resolved in favor of the policy expressed in *Beacon
> Theatres and Dairy Queen* favoring jury trials of factual issues, we believe that
> *Dairy Queen, Ross* and *Curtis* entitled [the trademark owner] to a jury trial on its
> claim for profits under 15 U.S.C. § 1117.

15 U.S.P.Q. 2d at 1654-55.

Other courts have likewise relied upon the Supreme Court's *Dairy Queen* decision when

addressing this issue. The court in *Ideal World*, like the court in *Oxford*, engaged in an analysis

of the genesis of the remedy of an award of profits in the trademark context before concluding, in

line with *Dairy Queen*, that such relief is properly categorized as legal, entitling the plaintiff to a

jury trial. 997 F. Supp. at 339 ("[t]he Court simply cannot conclude that a right as fundamental

as the Seventh Amendment right to a jury trial can be made to depend upon subtle distinctions"

between rationales for awarding profits).

In *Daisy*, where the court also concluded that a claim for profits entitled the trademark

owner to a jury trial, the court held simply:

> The Supreme Court decision in *Dairy Queen* is the controlling authority.  In *Dairy
> Queen*, the Supreme Court held that an action for trademark infringement seeking
> a money judgment is an action at law, not equity, regardless of the name given to
> the remedy.  Absent a showing that an inquiry into defendant's profits would be
> "too complicated for the jury adequately to handle alone," 369 U.S. at 478, there
> is no basis to view plaintiff's requested relief as an equitable accounting.

999 F. Supp. at 551; *see NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 422 (D.

Minn. 1994) ("Actions which pursue an accounting for damages under Section 1117, can be --

under the ordinary application of the *Dairy Queen* principle -- presented to a Jury."); *Hall

Publications, Inc. v. Stauffer Comm'n, Inc.*, No. 92-4253-SAC, 1993 WL 62430 at *2 (D. Kan.

Feb. 12, 1993) ("Since *Dairy Queen*, the courts have recognized a Seventh Amendment right to a jury trial whenever damages are among the relief sought on the trademark claim."; plaintiff entitled to jury trial); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F. Supp. 644, 646 (D. Me. 1986) ("the weight of authority supports the reading that *Dairy Queen* accords the Plaintiff a right to trial by jury on trademark infringement and unfair competition claims."; trial by jury for Lanham Act claim); *AMF, Inc. v. Nat'l Boat Work, Inc.*, 192 U.S.P.Q. 81, 1975 WL 21202, at *1 (M.D.N.C. Nov. 25, 1975) (claim for "equitable accounting" of profits is legal damage claim which requires trial by jury); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 30:59 (2013) (an accounting of an infringer's profits is a question for a jury when a jury demand is made).

As with the cases cited above, this Court should apply the Supreme Court's decision in *Dairy Queen* to Reynolds' request for relief and conclude that it is properly a legal issue for the jury to decide.

> D.     The Lanham Act Itself Contemplates Jury Determination Of Damages Claims Based On Infringers' Profits

The case law on this point is further supported by the statute itself, 15 U.S.C. §1117(a) which explicitly states that "[t]he court shall assess such profits and damages *or cause the same to be assessed under its direction*."[3] (Emphasis added). As noted by the court in *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, No. WDQ-08-276, 2010 WL 1375301, at *4 n.8 (D. Md. Mar. 30, 2010), the language emphasized above confirms that "the question of the plaintiff's entitlement to monetary relief may be submitted to a jury."

---

[3] 15 U.S.C. § 1117 provides: "[T]he plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Thus the statute itself recognizes claims for profits and claims for damages as distinct forms of relief available to a plaintiff.

II.     The Cases Relied Upon By HF Are Distinguishable

HF relies heavily on cases holding that a right to jury trial does not exist for equitable issues. That is well settled law which Reynolds does not dispute, but that is not the issue here, where the case involves unique aspects of trademark law. HF's citation to cases involving (i) an injunction and attorneys' fees, but not a claim for money damages, or (ii) equitable claims outside the context of trademark, dilution, and the other causes of action in this case are unavailing. The sole issue raised by HF's motion is whether Reynolds' requested monetary relief is equitable or legal in nature, which the Court must decide in view of the unique circumstances of the injury inflicted by trademark infringement, as well as the historical evolution of trademark remedies. Accordingly, Reynolds will limit itself to those key cases which HF cites which bear directly on that issue in the trademark context.

In *3M Co. v. Mohan*, No. 2011-1328, 2012 WL 1949033 (Fed. Cir. May 29, 2012), the Federal Circuit concluded that where the plaintiff sought only to enforce equitable rights and remedies, the Seventh Amendment did not apply. While HF cites this case numerous times, it is distinguishable for the simple fact that the plaintiff, 3M, sought and obtained *non-monetary* relief in the form of a permanent injunction following a bench trial.[4] Its claim for statutory damages was denied, and neither the Federal Circuit's decision, nor the excerpted language cited by HF, has any bearing on the issue before this Court where monetary damages are at issue.

The Court's decision in *Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Development*, 955 F. Supp. 598 (E.D. Va. 1997), also repeatedly cited by HF, actually supports Reynolds' position. In that case, the Court observes that "the Supreme Court [in *Dairy Queen*] held that 'an action for damages based on a charge of trademark

---

[4] "The district court then held a four-day bench trial on the remaining issues of trademark infringement, permanent injunction, and attorneys' fees." *3M*, 2012 WL 1949033, at *1. None of those issues would trigger a right to a jury trial.

infringement' is a legal claim." *Id.* at 602 n.12 (quoting *Dairy Queen*, 369 U.S. at 477). The issue before the Court was only whether a stand-alone claim for trademark dilution should be heard by a jury. The Court disposed of that question by finding the language of the Lanham Act intended to create only equitable relief in the form of an injunction or, where willfulness was present, damages subject to the court's equitable powers. Accordingly, despite the Court's conclusion that a dilution claim has both legal and equitable characteristics, the nature of the relief available -- equitable only -- was determinative of the Seventh Amendment issue, as it was in the *3M* case.

HF mischaracterizes the holding of this Court in *Ringling Brothers*, stating that "this Court expanded its decision past trademark dilution cases and noted that 'the remaining available remedies in §§ 1117(a) and 1118 are wholly equitable.'" HF Br. at 8. In fact, the Court actually said: [5]

> Alternatively, *even if 'willful intent' is shown*, the Seventh Amendment does not compel a jury trial for Ringling's dilution claim because there is no evidence of damages and the remaining available remedies in §§ 1117(a) and 1118 are wholly equitable.

*Ringling Bros.*, 955 F. Supp. at 603 (emphasis added). The passage cited by HF relates solely to the alternative scenario wherein the plaintiff could establish willful intent, thereby triggering the provision of 15 U.S.C. § 1125(c)(2) allowing for additional remedies to flow to the plaintiff as set forth in §§ 1117(a) and 1118. In *Ringling Brothers*, the Court made clear that even if willful intent had been shown, there was no evidence of damages so any additional relief would be

---

[5] HF's statement seem to suggest that it contends *Ringling Brothers* would require that any claim under § 1117(a) or § 1118 be characterized as equitable, which is wrong.

equitable in nature.[6] The language quoted by HF does not represent a sea change in the law.

HF's reliance on *SPSS Inc. v. Nie*, No. 08 C 66, 2009 WL 2579232 (N.D. Ill. Aug. 19, 2009), is similarly misplaced. *SPSS* is distinguishable as the trademark holder, an individual, would never have been able to establish any actual damages resulting from the accused infringer's activities. The individual was not even in the same line of business as the infringer. Accordingly, the court properly rejected the individual's attempt to characterize his request for an accounting of the infringer's profits as "a surrogate for damages," given that he could not develop a theory as to how he suffered any damage. *Id.* at *3. By contrast, Reynolds has alleged its theory of damage in a competitive marketplace with competitive products and, in paragraph 101 of its Second Amended Complaint, specifically identified HF's profits as a "surrogate" for its own, unquantifiable damages. Accordingly, *SPSS*, while perhaps correctly decided on the facts of that particular case, has no bearing on the issue before this Court.

Finally, the decision in *American Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784 (D.N.J. 1986), predates the development of much of the district court jurisprudence described herein and has been criticized by at least one district court for incorrectly relying upon an improper distinction between a claim for damages and one for profits. *See Oxford*, 15 U.S.P.Q.2d at 1653 ("With respect, we believe that this analysis is inconsistent with *Dairy Queen*."). The *Oxford* criticisms also apply to those cases cited by HF that attempt to distinguish *Dairy Queen* on the basis of the contractual relationship between the parties in that case or that follow *American Cyanamid*.

---

[6] On appeal, the Fourth Circuit expressly reserved any decision on the Seventh Amendment right to a jury trial as it related to the willful intent issue. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 465 (4th Cir. 1999).

III.    Efficiency And Economy Alone Cannot Trump The Seventh Amendment

In Section III(C) of its motion, HF argues that the "abilities and limitations of a jury" have some bearing on Reynolds' constitutional right to a jury trial under the Seventh Amendment, citing *Terry v. Chauffeurs, Teamsters and Helpers, Local 391*, 863 F.2d 334 (4th Cir. 1988), which itself quotes from footnote 10 of *Ross v. Bernhard*, 396 U.S. 531 (1970). The language of *Terry* and *Ross* relied upon by HF does not relate to Reynolds' Seventh Amendment rights. Rather, that language, repurposed here by HF and taken out of context, relates to the determination of *whether* an issue is legal or equitable. In that context, it makes sense that the Supreme Court would instruct lower courts to evaluate the jury's capacity for decision-making as it relates to the issue in question being either equitable or legal. It makes no sense, however, to read *Terry* or *Ross* as suggesting that the jury's "abilities and limitations" should be considered in deciding Reynolds' entitlement to a jury under the Seventh Amendment.

HF's misapplication of *Terry* focuses on the Court's familiarity with the subject matter of the case and the Court's involvement in evidentiary and pre- and post-trial motion practice. HF Br. at 11-12. While Reynolds does not dispute that the Court, having overseen this case since inception, will be more familiar with the underlying subject matter than a newly empaneled jury, that fact is simply not relevant here and certainly cannot displace Reynolds' Seventh Amendment rights.[7] Simply put, the Court's background and familiarity with this case, while certainly important, should not be considered in analyzing whether Reynolds' right to a jury under the Seventh Amendment should be denied.

---

[7] Moreover, that same argument could be made in every civil litigation pending before a district court.

IV.    **Even If The Court Concludes That Reynolds Is Not Entitled To A Jury, The Court Should Empanel An Advisory Jury Pursuant To Fed. R. Civ. P. 39(c)(1)**

Were the Court to conclude, despite the Supreme Court's directive in *Dairy Queen* and in view of the other authority cited herein, that Reynolds' use of HF's profits to quantify its damages somehow renders its request an equitable one, Reynolds respectfully requests that, pursuant to Fed. R. Civ. P. 39(c)(1), the Court empanel an advisory jury for the duration of the trial in this matter.  The Court is, of course, empowered to do so, and in a case such as this, involving consumer perception in the marketplace and other intangible factors of the consuming public, Reynolds contends that the viewpoints and experiences of the jury would provide valuable guidance to the Court's resolution of the issues to be heard at trial.

## CONCLUSION

For the reasons set forth herein, HF's motion to strike Reynolds' jury demand should be denied.

Dated: December 31, 2013

Respectfully submitted,

Britt Steckman
britt.steckman@bgllp.com
BRACEWELL & GIULIANI LLP
2000 K Street NW, Suite 500
Washington, D.C. 20006-1809
Telephone: 202.828.5800
Facsimile: 800.404.3970

OF COUNSEL:

Mark N. Mutterperl (*pro hac vice*)
mark.mutterperl@bgllp.com
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas, 49th Floor
New York, New York 10020-1104
Telephone: 212.508.6100
Facsimile: 800.404.3970

*Attorneys for Plaintiff Reynolds Consumer
Products Inc.*

-14-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2013, the foregoing document was served via electronic mail upon the following per the parties' agreement:

Brian N. Gross
D. Sean Trainor
Kirkland & Ellis L.L.P.
655 15th Street, NW
Suite 12
Washington, D.C. 20005
brian.gross@kirkland.com
dtrainor@kirkland.com

David Callahan
Ian J. Block
Robin A. McCue
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
dcallahan@kirkland.com
ian.block@kirkland.com
rmccue@kirkland.com

Mark N. Mutterperl