**REDACTED PURSUANT TO
PROTECTIVE ORDER (DKT. NO. 22)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| REYNOLDS CONSUMER PRODUCTS INC.,<br><br>Plaintiff,<br><br>v.<br><br>HANDI-FOIL CORPORATION,<br><br>Defendant. | Civil Action No.:  1:13-CV-214 LO/TRJ |

**Plaintiff's Reply In Support  of Motion For Leave
To Offer Damages Expert Rebuttal Testimony
<u>Following His Previous Deposition Testimony</u>**

Defendant Handi-Foil's response to Plaintiff Reynolds' motion confirms that there is no unfairness in permitting Reynolds to offer rebuttal testimony to Handi-Foil's damages expert's opinion.  In this circumstance, where there is a duty under Federal Rule 26(e) to supplement expert's reports or deposition testimony, the ability to do so – even if untimely – ultimately boils down to a question of fairness.  Handi-Foil's response glosses over the fairness issue and instead focuses on issues of timeliness.  Reynolds acknowledges that its supplement is later than the Court's scheduling order had contemplated.  The issue is whether that lateness should preclude Reynolds from offering expert rebuttal testimony at trial that fills out testimony *he has already given at a deposition and under questioning from Handi-Foil*.  Neither the Federal Rules nor the case law contemplate that result.  Application of the test for prejudice to Handi-Foil required by Fourth Circuit precedent demonstrates that Reynolds should be allowed to provide its rebuttal testimony at trial to Ms. Davis' expert profits opinions.

Untimeliness, alone, is not a reason to exclude Conroy's report.  And here, the timeliness issue is not nearly as clear as Handi-Foil portrays it.  Handi-Foil acknowledges that it was

Reynolds' initial burden under Section 35 of the Lanham Act merely to present evidence of Handi-Foil's challenged sales, and that it was Handi-Foil's burden to show its own costs and resulting profits.[1] <u>The discovery plan in the case simply did not take into account this difference in burdens under the Lanham Act, but Handi-Foil now seeks to preclude a proper challenge to Handi-Foil's asserted costs and resulting profits</u>.

Handi-Foil acknowledges (at p. 8) that Mr. Conroy's report would have been due January 23, 2014 if the court "had not set a deadline," and that Reynolds might characterize Mr. Conroy's report as "a rebuttal to a rebuttal report and not specifically included in this Court's Scheduling Orders . . .." Handi-Foil is thus left arguing that Reynolds' disclosure violates "the spirit" of this Court's Orders and the timeframe set forth in the Local and Federal Rules.

Handi-Foil also mischaracterizes (at p. 4) Mr. Conroy's deposition. Mr. Conroy clearly provided opinions in his deposition on Ms. Davis' deductions, as well as the other subjects of his rebuttal report, in response to questioning by Handi-Foil. (*See, e.g.,* Dkt. No. 152-1, Bradley Decl. Ex. B, Conroy Dep. at 56:4-5 ("So the ones that in my mind may not be incremental...would be the indirect ones"), 56:16-19 ("depreciation seems like it's -- I don't know why that would be considered a variable expense"), 56:19-20 ("I don't know why real estate tax would be considered a variable expense"); 56:23-24 ("I don't know why plant rent

---

[1] Defendant still impermissibly attempts (at p. 2) to shift its burden to Reynolds by suggesting that Reynolds in the first instance should have calculated Handi-Foil's costs and resulting profits. Section 35 of the Lanham Act explicitly provides, however, that "[i]n assessing profits the plaintiff shall be required to prove defendant's sale *only*." 15 U.S.C. §1117(a) (emphasis added). Reynolds met its burden with its affirmative report on sales, served on July 12, 2013.

The Lanham Act clearly requires that "[D]efendant must prove all elements of cost or deduction claimed." *Id.*; *JTH Tax, Inc. v. H&R Block Eastern Tax Servs.*, 28 Fed. Appx. 207, 216 (4th Cir. 2002) ("The plain language of the Act clearly indicates that a defendant's 'profits' are to be calculated by reducing the amount of the defendant's 'sales' by appropriate 'elements of cost or deduction,' *so long as the defendant proves those elements*.") (emphasis added). Defendant served no report meeting this burden by the July 12, 2013 deadline. Defendant's formulation would require that Reynolds bear the burden of proving costs and deductions and that Defendant would only have to rebut such costs. That is not the law.

would be a variable cost"); and 57:4-5 ("The rent equipment, I don't know why that would necessarily be variable").)

I.  **Application Of The Fourth Circuit Factors Confirms That Rebuttal Expert Testimony To Ms. Davis' Expert Profits Opinions Should Be Allowed**

The parties agree that the Fourth Circuit's five factor test guides this Court's evaluation of nondisclosures, and Handi-Foil cannot deny the plain language Fed. R. Civ. P. 37(c)(1) that the evidence may be presented if the nondisclosure is *either* "substantially justified or is harmless." (Response at 10.)[2] Handi-Foil is long on rhetoric but short on facts. The Fourth Circuit's factors that relate to evaluating the harmlessness of nondisclosures favor Reynolds being able to put on damages rebuttal testimony to Handi-Foil's damages expert here:

(1) <u>There is no or little surprise</u>.

Handi-Foil errs in stating (at pages 1 and 13) that "Reynolds now attempts to assert a damages case for several million dollars where none previously existed," that "Reynolds asserted a multi-million dollar expert damages opinion for the first time in this litigation" on February 18, 2014, and that Mr. Conroy's proposed explanation of Reynolds' previously disclosed profits claim of $2 million is "more than 40 times greater than" the damages figure in the record.[3]

First, it is telling that *at no point in its brief* does Handi-Foil dispute that Reynolds $2 million damages number was presented to Handi-Foil's counsel during the mediation. Next, the

---

[2] With regard to Reynolds' retention of new counsel, Handi-Foil misstates the court's decision in *Bay Area Cellular Telephone Co. v. City and County of San Francisco*, 2005 WL 889722, *1 (N.D. Cal. 2005). There the court determined that plaintiff's change of position with regard to an agreement to provide discovery based on the retention of new counsel was unreasonable because the docket showed that the plaintiff had not retained new counsel, but rather had merely followed its former counsel to a new firm. *Id.*

[3] Handi-Foil's su▇▇▇▇ assumption that its expert's opinion that $▇▇▇▇ in infringing sales resulted in only ▇▇▇ of profit would not be challenged at trial, is ▇▇▇ is for finding unfair prejudice. Hand▇▇ was put on notice as to Reynolds' dispute of its expert's calculations at Mr. Conroy's deposition and in mediation, and Reynolds served in good faith Mr. Conroy's rebuttal report explaining in more detail the basis for such criticisms.

The mere fact that Reynolds did not file a *Daubert* motion to exclude Ms. Davis obviously does not mean that Reynolds accepted her calculations as fact.

WAI-3164881v1

"40 times greater" argument is misleading. Reynolds met its prima facie burden under Section 35 of the Lanham Act in the customary way by previously asserting a damages claim based on Handi-Foil's challenged sales of ▮▮▮—which Handi-Foil later stipulated to be ▮▮▮. If the jury does not "buy" Ms. Davis' opinion that Handi-Foil's profit on ▮▮▮ in infringing sales was only ▮▮▮, then the jury may award Reynolds as damages Handi-Foil's sales of ▮▮▮. That number is already in the record, and is *seven times more* than the profits figure that Mr. Conroy proposes to offer in rebuttal to Ms. Davis' profits opinion.

Handi-Foil does not and cannot show that Mr. Conroy's proposed rebuttal testimony is a "complete 'do over'" of Reynolds' damages case, much less "discovery" and its "entire case strategy." (Handi-Foil Response at 1-2, 11 n.8.)[4] Tellingly, Handi-Foil does not deny that each of Mr. Conroy's rebuttal points follows up on testimony he previously gave in response to questioning by Handi-Foil during his deposition.[5] Handi-Foil also does not deny that, based on deducting only the categories of questionable expenses that were explicitly identified in Mr. Conroy's deposition, Handi-Foil could easily have determined from its own documents that the

---

[4] Handi-Foil also mischaracterizes Reynolds efforts to narrow the case in preparation for trial. Reynolds has served revised deposition designations which primarily shorten and delete prior designations, including in response to objections to the designations served by Handi-Foil. Reynolds served both a red-line and clean version of its revisions to the designations so that it was clear what revisions had been made. Additionally, as Reynolds explained in its letter to opposing counsel, it is working on revising and shortening its exhibit list in preparation for trial. (*See* Dkt. No. 152-1, Bradley Decl. Ex. D.)

[5] Mr. Conroy could not have divined Handi-Foil's costs or profits at the time that he timely submitted his original report as to Handi-Foil's sales. (*Cf.* Handi-Foil's Response at p. 2.) Ms. Davis did not offer her opinion as to Handi-Foil's costs and resulting profits until the rebuttal expert report deadline of August 12, 2013, and then only in explicit reliance upon conversations with Handi-Foil's Chief Financial Officer, Pete Perkins, as well as Mr. Perkins' deposition transcript (taken on August 8, 2013) which had not even occurred by the time that Mr. Conroy's initial report was due.

Indeed, Mr. Conroy's original report put Handi-Foil on notice that he may address costs and deductions, as he stated that he "attempted to calculate Handi-Foil's gross profit (sales less cost of goods sold) from the Accused Products, but the data necessary to perform such a calculation were not provided" (Conroy Rept. at pp. 10, 11.)

resulting alternative profits number would be $1.728 million. (*See* Dkt. No. 152-2, Conroy Decl. ¶ 3.)[6]

Handi-Foil acknowledges (at p. 5) that Reynolds indicated at the mediation before Magistrate Judge Jones on November 6, 2013 "that it might seek to rely on Mr. Conroy at trial" to offer "damages opinions analyzing Handi-Foil's profits," and Handi-Foil does not deny that Reynolds' former counsel disclosed its rebuttal profits damages figure of $2 million to counsel for Handi-Foil with Magistrate Judge Jones present. (*See* Opening Mem. at p. 7 (citing Dkt. No. 152-3, Mutterperl Decl. ¶¶ 2-3).) Handi-Foil also acknowledges that Reynolds made references on January 10, 2014 to its considering amending Mr. Conroy's report. If Handi-Foil were genuinely "surprised" by Mr. Conroy's proposed rebuttal testimony and not merely trying to gain a tactical advantage by precluding Reynolds from offering a well-founded rebuttal challenge to Handi-Foil's asserted costs and resulting profits, then Handi-Foil would not have had reason to send its February 11, 2014 email seeking agreement that Reynolds would not call Mr. Conroy--who otherwise only sponsored a sales number to which Handi-Foil had already stipulated—and threatening to seek to preclude him from testifying. (*See* Dkt. No. 152-1, Bradley Decl. Ex. C.) *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) ("Precluding testimony from the expert under this [Rule 37(c)(1)] is a drastic remedy and should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules.").

---

[6] Further, Handi-Foil does not deny that it could have compared the financial effects of Mr. Conroy's additional deposition testimony to the royalty rates implied by Ms. Davis' profit figures to recognize that the royalty rates implied by her profit figures were unreasonably low; Handi-Foil merely responds that it was not its burden to do so. (Cf. Response at p. 15.) The only material and opinion that are new are the licenses and opinion that they further demonstrate the unreasonableness of Ms. Davis' implied royalty rates. Contrary to Handi-Foil's suggestion (at 14), they are not offered for any "suggested royalty rate" or any alternative reasonable royalty damages theory or number. Rather, in follow-up to his deposition testimony that he was surprised she did not check the difference between her opinion and "generic" (i.e., private label) products (Conroy Dep. 48, 61), he states that the royalty rates implied by Ms. Davis' opinion are unreasonable. Moreover, Handi-Foil has this information, and does not contend it needs any additional information from Mr. Conroy to defend Ms. Davis' profits opinion.

(2) <u>Reynolds has cured any surprise</u>.  Handi-Foil simply makes a conclusory assertion (at 16) that "the only way to cure" any surprise is to "preclude" Reynolds from presenting any of Mr. Conroy's rebuttal opinions at trial.  Reynolds served the Conroy Rebuttal Report in good faith to spell out exactly what his rebuttal testimony would be.  Handi-Foil does not suggest that it needs any additional information or time to cure any alleged surprise.[7]

(3) <u>Allowing rebuttal to Ms. Davis' profits opinions would not disrupt the trial</u>.  Handi-Foil's vague assertion (at 16) that it "will have no time to react to or make the changes to its trial strategy that would be necessary to rebut" Mr. Conroy's opinions, cannot obscure the fact that Mr. Conroy's proposed testimony is in *rebuttal* to Ms. Davis' profits opinions.[8]  Reynolds served the Conroy Rebuttal Report more than a month before trial, and Handi-Foil has plenty of time to react to or make any tweaks to its trial strategy that would be necessary to respond to Mr. Conroy's rebuttal.  Handi-Foil complains (at p. 16) that it might now have to defend "the propriety of Ms. Davis' opinions," but it would have to do so anyway in preparing Ms. Davis for cross-examination at trial.  For the previously stated reasons, allowing Mr. Conroy (who has

---

[7] Handi-Foil's cited cases are off the mark. In *Adams v. Kroger Ltd. Partnership I*, 2013 WL 6229379, *3-*4 (E.D. Va. 2013) the expert had not been disclosed by the deadline in the scheduling order, and the party had not identified any liability expert who would testify on its behalf. In *Guar. Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237-38 (N.D. Ill. 2013), the issue was whether a lay witness had exceeded the scope of allowed testimony which had to be based on his personal knowledge. Notably, the court there recognized that "questions asked at depositions may expand the scope of the expert's testimony." *Id.* at 237. In *MMG Ins. Co. v. Samsung Elecs. Am., Inc.*, 293 F.R.D. 58 (D.H.H. 2013), the deposition testimony failed to show that the expert performed the tests according to reliable principles and methodology, the deposition testimony did not provide the basis for his opinion, and the expert never provided any further explanation of his opinions. Here Mr. Conroy's testimony provided notice of his opinion and the bases therefor, and Reynolds has provided a rebuttal report that provides additional detail regarding the opinions.

[8] *Digital Vending Servs. Int'l v. Univ. of Phoenix Inc.*, No. 2:09CV555, 2013 WL 5533233, at *9 (E.D. Va. Oct. 3, 2013) is inapposite because the court's decision there turned on the fact that plaintiff had produced over 7,000 documents close to trial, including documents which the plaintiff had previously represented did not exist. *Cong. Air, Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513 (D. Md. 1997) was decided prior to *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) and accordingly does not address the Fourth Circuit's factors. Additionally, the plaintiff there had not sought leave to offer the testimony, had not served the report until several weeks after the expert provided it, and the court noted that the original report did not in any way address the subject matter of the subsequent report. *Id.* at 515-16.

been on Reynolds' witness list all along) to testify would not be "adding a new witness to present a damages case," and would not delay or otherwise disrupt the trial.

Rather, permitting rebuttal to Ms. Davis' profits opinion would help clarify the damages issues for the jury.  Without such rebuttal, and as Handi-Foil tacitly acknowledges (at p. 17), jurors would be left to determine "on their own" what the defects in Ms. Davis' profits opinion imply to what the appropriate figure should be.[9]  Precluding rebuttal expert testimony to Ms. Davis' profits opinion would threaten confusion and disruption in its own right.

Tellingly, Handi-Foil asserts only one specific example to support its prejudice claim.  Handi-Foil argues that it would now have to prepare for an extra trial witness (Mr. Conroy) it had not planned to prepare for.  (Response at p. 16).  However, Mr. Conroy has been on Reynolds' "will call" witness list all along.

(4) <u>Rebuttal evidence to Ms. Davis' profits opinion is important</u>.

Handi-Foil makes a circular argument (at 17) that, if rebuttal expert testimony on damages were important, Reynolds would have disclosed it sooner.  Handi-Foil acknowledges that Reynolds is "free to challenge Ms. Davis' deductions on cross-examination and then argue to the jury w[h]y such deductions are improper," but does not deny the importance of being able to offer expert testimony with an alternative damages number in rebuttal.[10]  Without the rebuttal testimony of Mr. Conroy, Reynolds would not be able to offer *any* rebuttal to Ms. Davis' profits

---

[9] Defendant's citation of *East West, LLC v. Rahman*, 2012 WL 4105128, *5 (E.D. Va. Sept. 17, 2012) supports allowing Mr. Conroy's rebuttal testimony, as the court recognized that "[l]ost profits and damages are not easy to quantify…"  There the Court *denied* the defendant's motion to exclude an expert's initial and supplemental report on lost profits.

[10] *Gallagher v. Southern Source Packaging, LLC,* 568 F. Supp. 2d 624, 629, 632 (E.D.N.C. 2008) is inapposite because the court concluded there that the defendant's expert report was not important because the expert had merely rewritten its prior report and reached a different conclusion.  Additionally, the court concluded that the new report would not assist the defendant because it suffered from the same flaws as the previously disclosed report, and accordingly would not have prevented summary judgment.

opinion or figure, or *any* profits damage figure of its own.[11]  Without this ability, Reynolds and the jury would face the unfair prospect of Ms. Davis' opinion and number being the only one available for consideration (other than the parties' stipulated number of ▉▉▉▉▉ for Handi-Foil's challenged sales).[12]  It is important to Reynolds and to the jury that Reynolds be able to present rebuttal expert testimony to Ms. Davis' profits opinions.

## II.     Mr. Conroy's Report Is A Proper Supplement

Handi-Foil had the acknowledged burden of proving costs and deductions, and Mr. Conroy lacked access to Handi-Foil's cost information and thus could not have calculated costs or resulting profits in his report served on July 12, 2013.   Additionally, the fact that Handi-Foil chose not to provide an affirmative report on costs and deductions even though it bears the burden of proof on costs and profits (and stipulated to sales), further prevented Mr. Conroy from providing any rebuttal opinion on costs or profits by the same rebuttal expert report deadline on which Ms. Davis served her report for the first time.   Contrary to Handi-Foil's suggestion (at p. 19), Reynolds is presenting no "new theories."[13]   Accordingly, Mr. Conroy supplemented his original opinion at his deposition, and his rebuttal expert report further clarifies and explains this proper supplement.

---

[11] Reynolds' fact witnesses do not have access to Handi-Foil's confidential financial information.

[12] Handi-Foil tactitly acknowledges that Mr. Conroy's "supplemental report" might be considered important. *See* Response at p. 18.  Likewise, at the hearing on Handi-Foil's motion to strike Reynolds' jury demand, the Court expressed concern that a jury may be preferable due to the disputed issues on costs and the credibility determinations involved.

[13] *Gallagher v. Southern Source Packaging*, LLC, 568 F. Supp. 2d 624, 629, 631 (E.D.N.C. 2008) is also inapposite here, as the court determined there that the report was not a supplement because defendant's expert merely rewrote his report in response to plaintiff's criticisms during summary judgment briefing, and reached a different result.  Additionally, the court's decision recognizes that supplementation allows a party to correct omissions, and its full quote states that "[s]upplementation, however, is not a license to amend an expert report to avoid summary judgment." Id. at 631 (emphasis added).  Here, however, Mr. Conroy is providing a more detailed explanation of the criticisms of Defendant's claimed costs that he gave at his deposition. Reynolds is not attempting to avoid summary judgment, and the damages issue remains in the case.

**III.     Conclusion**

The Court should grant Reynolds' motion for leave to permit Mr. Conroy to offer rebuttal expert testimony to Ms. Davis' cost and profits opinions.

Dated:   February 27, 2014                              Respectfully submitted,

/s/ John G. Froemming
John G. Froemming (VSB No. 25319)
Jessica D. Bradley (VSB No. 70830)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: jfroemming@jonesday.com
Email: jbradley@jonesday.com

*Attorneys for Plaintiff*
*Reynolds Consumer Products Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification to the following ECF participants:

>Brian N. Gross
>D. Sean Trainor
>Kirkland & Ellis LLP
>655 15th St NW
>Suite 12
>Washington, DC 20005-5701
>brian.gross@kirkland.com
>dtrainor@kirkland.com
>
>*Attorneys for Defendant*
>*Handi-Foil Corporation*

The undersigned also certifies that a copy of the foregoing was served by electronic mail on the following non-filing users:

>David Callahan
>Ian J. Block
>Robin A. McCue
>Kirkland & Ellis LLP
>300 North LaSalle
>Chicago, Illinois 60654
>dcallahan@kirkland.com
>ian.block@kirkland.com
>rmccue@kirkland.com

>/s/ John G. Froemming
>_____
>John G. Froemming
>Virginia State Bar No. 25319
>JONES DAY
>51 Louisiana Avenue, NW
>Washington, DC 20001
>Tel: (202) 879-3939
>Fax: (202) 626-1700
>Email: jfroemming@jonesday.com
>*Attorney for Plaintiff*
>*Reynolds Consumer Products Inc.*