

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| REYNOLDS CONSUMER PRODUCTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>HANDI-FOIL CORPORATION,<br><br>Defendant. | Civil Action No.:13-cv-214 |

## MEMORANDUM OPINION

On August 28, 2013, Reynolds Consumer Products, Inc. ("Reynolds") filed its Second Amended Complaint against Handi-Foil Corporation ("Handi-Foil"). The Complaint contained eight counts and alleged that Handi-Foil had infringed Reynolds' registered trademarks and its common law trade dress rights in violation of the Lanham Act. Reynolds also accused Handi-Foil of false advertising. In its Answer Handi-Foil asserted two counterclaims seeking (i) cancellation of Reynolds' trademark registrations on the basis of abandonment, and (ii) declaratory judgment of non-infringement.

Currently before the Court are multiple pretrial motions. Both parties have submitted motions for partial summary judgment with respect to Handi-Foil's abandonment counterclaim. Handi-Foil has also moved for partial summary judgment with respect to Reynolds' false advertising claim. The parties have both filed motions to strike the opposing party's expert. Finally, Handi-Foil has moved to strike Reynolds' jury demand.

The Court held argument on the motions—all of which were extensively briefed and vigorously opposed—in open court on January 10, 2014. For the reasons stated below, the Court

1

finds that Reynolds has not abandoned its trademark registrations. Therefore, Reynolds' Motion for Partial Summary Judgment (Dkt. No. 107) is GRANTED. All other motions are DENIED.

## BACKGROUND

Both parties manufacture and market consumer aluminum food storage and cookware products. The cornerstone of Reynolds' business is its Reynolds Wrap aluminum foil, a product sold at remarkably high volumes and found in a strikingly large number of United States households. In the summer of 1977, Reynolds' predecessor applied for, and was granted, two trademark registrations for its Reynolds Wrap package designs. Reynolds currently owns these two registrations, which it now asserts against Handi-Foil in the current action.[1]

Reynolds amended the registrations in 1997. As part of its application to amend the marks, Reynolds submitted a specimen to reflect how the Reynolds Wrap package was currently being used in commerce. The majority of the 1997 specimen is metallic blue, while the far right end of the package is pink. A series of sharp, diagonal silver lines separate the blue and pink areas. On the blue area, the words "Reynolds Wrap" are written in bold silvery-white font. On the pink area, the square footage of the roll foil is prominently written in bold blue font.

Ten years later, in the summer of 2007, Reynolds sought to renew both registrations. In doing so, Reynolds again submitted a specimen to reflect how the Reynolds Wrap package was currently being used in commerce. There is no question that the 1997 and 2007 specimens differ. Both retain the familiar blue, silver, and pink color-pattern. The 2007 specimen, however, used a series of curved silver lines to separate the blue and pink areas. The writing and font on the packages remained largely the same. The United States Patent and Trademark Office ("PTO") accepted the 2007 specimen and renewed both registrations.

---

[1] The U.S. Registration Numbers for the two registrations are 1,067,092 ("the '092 registration") and 1,070,888 ("the '888 registration"). Handi-Foil does not question that Reynolds is the current owner of both registrations.

2

Reynolds again altered the Reynolds Wrap box in 2008, a year after the PTO renewed the registrations on the basis of the 2007 specimen. The changes mostly altered the proportions of the blue and pink areas, as well as the proportions of the writing in each area. Additionally, Reynolds added the text "Trusted Since 1947" underneath the Reynolds Wrap logo on the blue side of the box.

For many years the bulk of Handi-Foil's business focused on aluminum baking pans. According to Handi-Foil, Dollar Tree Stores, Inc. ("Dollar Tree") approached Handi-Foil about creating an aluminum roll foil product in 2011. In March of 2012 Handi-Foil began selling aluminum roll foil at Dollar Tree stores. Months later Handi-Foil expanded its production and began offering the foil at retail grocery stores nationwide. As part of its efforts to enter the national retail aluminum roll foil market, Handi-Foil representatives began to pitch Handi-Foil's product as new and comparable to Reynolds Wrap. Reynolds argues that Handi-Foil representatives solicited purchasing agents from over a quarter of the nation's large retail grocery stores with these or similar pitches. These solicitations make up the bulk of Reynolds' false advertisement claim.[2]

## DISCUSSION

### I. Cross Motions for Partial Summary Judgment

#### A. Standard of Review

Summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court explained, "this standard provides that the mere existence of some alleged

---

[2] At least some of the roll foil sold by Handi-Foil comes in a metallic blue, pink, and silver package. For the purposes of the motions currently before the Court, however, any resemblance between Handi-Foil and Reynolds packages is immaterial.

3

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Finally, in making a summary judgment determination, the Court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. Abandonment

Each party has moved for judgment in its favor on Handi-Foil's abandonment counterclaim. An abandonment claim like Handi-Foil's forces the Court to determine whether Reynolds has discontinued the use of its registered marks, with no intent to resume such use. *See* 15 U.S.C. § 1127; *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 535-36 (4th Cir. 2000). Handi-Foil rests its abandonment claim on the fact that the Reynolds Wrap box currently used is not identical to Reynolds' registered marks. Reynolds does not debate this fact, nor could it. It is beyond dispute that Reynolds has altered its box numerous times since obtaining the registrations. Instead, Reynolds claims the changes it has made are minor and invokes the legal doctrine of "tacking" as a defense to Handi-Foil's abandonment claim.

The signature case outlining the modern standard for tacking in the Fourth Circuit is *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383 (4th Cir. 2009). In *George* the Fourth Circuit adopted the standard for tacking outlined by the Federal Circuit in *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991). These cases instruct the Court to determine whether or not the marks in use are the "legal equivalent" of the earlier marks. *George*, 575 F.3d at 402; *Van Dyne-Crotty*, 926 F.2d at 1159. The test for legal

4

equivalency in the tacking context is more stringent than the "confusingly similar" standard used to determine infringement. *Id.* A tacking claim will only be successful if the marks in question create "the same, continuing commercial impression." *Id.* This is a high standard and both the Fourth and Federal Circuits have made clear that tacking is to be allowed "only in rare instances." *Id.*

The standard for tacking may be clear, yet a number of subsidiary issues related to the application of that standard at summary judgment are less well-defined. First, it appears to be an open question in the Fourth Circuit whether tacking is a question of law or fact. Second, it is unclear who bears the burden of proving tacking. Third, evidentiary issues impact this Court's analysis under the *George* test. The evidentiary issues most pertinent to the current case include what two marks should be compared and what evidence the court should consider at this stage of the litigation. While the parties agree that the continuing commercial impression standard governs the Court's inquiry, they disagree on the majority of these subsidiary questions.

Courts hold opposing views as to whether tacking is a question of fact or law. The Federal Circuit has found that, because "[n]o evidence need be entertained other than the visual or aural appearance of the marks themselves," tacking is a question of law subject to *de novo* review. *See In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1347 (Fed. Cir. 2001) (citing *Van Dyne-Crotty*, 926 F.2d at 1159). The Sixth Circuit has agreed that tacking is a question of law. *See Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623 (6th Cir. 1998). The Ninth Circuit, however, has held that tacking is a question of fact. *See One Indus., LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009).[3]

---

[3] Tellingly, the Ninth Circuit followed this conclusion by stating that "A question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion." *One Indus.*, 578 F.3d at 1160.

5

The only decision in the Fourth Circuit to specifically address this issue is *Adventis, Inc. v. Consol. Prop. Holdings*, where Judge Turk provided an analysis of the relevant case law and found that tacking is a question of fact. Case No. 7:02-cv-611, 2006 WL 1134129 at *4-5 (W.D. Va. April 24, 2006). At argument, both Reynolds and Handi-Foil stated their belief that tacking is a question of law. Despite the puzzling result—as pointed out in *Adventis*—that infringement could be an issue of fact while tacking could be an issue of law, the Fourth Circuit's reliance on *Van Dyne-Crotty*, along with both parties stipulation, compels this Court to find that tacking is a question of law.

Next, the Court considers which party bears the burden of proving tacking. The parties vehemently disagree on this issue. Handi-Foil maintains that the burden of proving tacking as a matter of law lies with Reynolds. Unsurprisingly, Reynolds believes the burden lies with Handi-Foil. The disagreement stems from language in *George*. In discussing abandonment generally, *George* explicitly held that "[t]he ultimate burden of proof remains always on the party claiming a mark has been abandoned." *George*, 575 F.3d at 401. Reynolds points to this language in an effort to conclude that Handi-Foil bears the burden when it comes to any questions related to abandonment. A close reading of *George*, along with an understanding of the specific question at issue in this case, militates against Reynolds' interpretation.

The quote above in *George* is pulled from the Fourth Circuit's discussion of abandonment, not tacking. *George* did not actually address who bears the burden of proving tacking. Moreover, Reynolds has admitted that the marks currently in use are not the same as the marks as registered and that it has no intention of returning the former marks to use. This admission concedes the key elements of an abandonment claim. In response to this concession, however, Reynolds seeks to utilize tacking as a defense to Handi-Foil's abandonment

6

counterclaim. Given this posture, the Court finds that the burden for proving tacking lies with Reynolds. *See Adventis*, 2006 WL 1134129 at n. 10 (agreeing that "[t]he party seeking to tack bears the burden of proof").

Turning to the open evidentiary questions, the principal issue is what two boxes the Court should consider in conducting its tacking inquiry. The Court finds the logical points of comparison are the Reynolds Wrap box as currently used in commerce and the box as registered with the PTO. This in turn requires the Court to compare the current Reynolds Wrap box with the 2007 specimen.[4]

To summarize the above, the Court finds that tacking is a question of law. The Court also finds that the burden of showing that the Reynolds Wrap box as currently sold creates the same, continuing commercial impression as the 2007 specimen rests with Reynolds. Reynolds has met this burden.

The Court is well aware that *George* sets a very high standard for tacking. If Reynolds' current box and the 2007 specimen cannot be said to create a continuing commercial impression, however, the Court cannot imagine any two non-identical marks that would. Based on sight alone, the Court finds that a reasonable juror could not find that the marks in question fail to produce a continuing commercial impression. Accordingly, Reynolds as a matter of law is entitled to summary judgment in its favor on Handi-Foil's abandonment counterclaim.[5]

---

[4] During oral argument the parties disagreed about the amount of deference owed to the PTO's renewal determination. The PTO analyzed Reynolds' renewal application in light of the 2007 specimen. In doing so, it did not consider the box as currently marketed to consumers. Accordingly, the Court need not factor in the PTO's renewal decision in conducting the tacking inquiry.

[5] In *Adventis*, Judge Turk noted that probative evidence of tacking include (1) side-by-side comparisons of the marks; (2) broad evidence of consumer impression; and (3) the intent of the mark-holder in modifying the designs. *See* 2006 WL 1134129 at n. 10. While the Court bases its conclusion on the first of these three factors alone, the final two also support Reynolds' tacking claim. For example, the Perception Research Services, Inc. study ("the PRS Study") commissioned by Reynolds found that "the vast majority of target buyers fail to recognize that Reynolds packaging has been modified." *See* PRS Study, Exhibit 12 to the Decl. of Mark N. Mutterperl Submitted in Support

7

### C. False Advertising

In its motion for partial summary judgment, Handi-Foil also asks the Court to enter judgment in its favor on Reynolds' false advertising claim. In order to succeed on its false advertising claim under the Lanham Act Reynolds must show that: (1) Handi-Foil made a false or misleading statement in a commercial advertisement about either a Handi-Foil or Reynolds product; (2) the misrepresentation was material; (3) the misrepresentation actually deceives or has a tendency to deceive a substantial segment of its audience; (4) Handi-Foil placed the misrepresentation in interstate commerce; and (5) Handi-Foil's misrepresentation injured Reynolds. *See PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). Handi-Foil argues that it is entitled to summary judgment on the basis of the first three prongs. In particular, Handi-Foil asserts the solicitations made by its sales representatives were not commercial advertisements. Additionally, Handi-Foil argues that Reynolds cannot show that any of the statements in question were false, had a tendency to deceive, or were material. All of these arguments fail.

Fourth Circuit courts seeking to determine whether a statement is a commercial advertisement for the purposes of a Lanham Act false advertising claim have turned to the Second Circuit's decision in *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002). *See Applied Med. Res. Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) (applying the standard from *Fashion Boutique*); *Tao of Syst. Integration, Inc. v. Analytical Serv. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004) (same). For a statement to be a commercial advertisement it must be: (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the

---

of Plaintiff's Motion for Partial Summary Judgment. The PRS Study is also evidence of Reynolds' intention to not abandon its marks.

8

defendant's good; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion". *Applied Med. Res, Corp.*, 527 F. Supp. 2d at 493. Whether or not an advertisement is sufficiently disseminated depends on the specific market in question. *Id.*

With these principles in mind, even a brief review of the record shows that Handi-Foil's arguments must fail. Reynolds has all but proven the first three elements of the *Fashion Boutique* standard. As this litigation makes clear, Handi-Foil is in commercial competition with Reynolds. Additionally, the email exchanges between Handi-Foil sales representatives and retail stores are clear examples of commercial speech meant to encourage those stores to purchase Handi-Foil roll foil.[6] As to the fourth *Fashion Boutique* criteria, the facts read in a light most favorable to Reynolds show that Handi-Foil contacted over a quarter of the relevant market. This, at the very least, creates a genuine issue of material fact as to whether the allegedly false statements were commercial advertisements.

Even if the statements at issue are commercial advertisements, Handi-Foil asserts an alternative ground for its summary judgment argument. In short, Handi-Foil contends that Reynolds cannot prove that the three "categories of claims" are false.

Reynolds does not have to prove its claims at this stage of the litigation. Rather, in the face of Handi-Foil's motion, Reynolds must show the existence a genuine issue of material fact that the statements were material and that they were false or had the tendency to deceive. Reynolds has made this showing. First, as a general matter, questions of materiality and falsity are typically questions of fact. *See, e.g., X-IT Products, LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 627 (E.D. Va. 2001). *See also Basile Baumann Prost Cole & Assocs.,*

---

[6] *See, e.g.*, Exhibits 11-18 to the Decl. of Ian J. Block in Support of Defendant's Motion for Partial Summary Judgment.

*Inc. v. BBP & Assocs. LLC,* 875 F. Supp. 2d 511, 529-30 (D. Md. 2012) (citing *Dunn v. Borta,* 369 F.3d 421, 427 (4th Cir. 2004)). Second, the Court does not accept Handi-Foil's contention that professional retail buyers would find information pertaining to roll foil's strength immaterial. If the inferences are read in Reynolds' favor, as the Court must, Handi-Foil's clear focus on strength equivalency in its concerted sales pitches itself creates a genuine issue of fact as to whether strength equivalency was material. Finally, the equivalency tests included in the record create a genuine issue of material fact as to whether Handi-Foil is in fact as strong as Reynolds Wrap. Accordingly, the Court must deny Handi-Foil's motion for summary judgment on Reynolds' false advertising claim.

## II. Motions to Exclude Experts

Both parties contracted experts to conduct consumer surveys in preparation for trial. Each expert conducted a consumer survey seeking to determine whether Handi-Foil aluminum roll foil packages are confusingly similar to Reynolds Wrap packages. Predictably, the experts reach dramatically different conclusions. Also predictably, each party now moves to exclude the other party's expert.

Under the Federal Rules of Evidence, expert testimony is allowed when it (1) will assist the trier of facts, (2) is based on sufficient facts or data, and (3) is the product of reliable principles which have been reliably applied to the facts of the case. Fed. R. Evid. 702. Courts must ensure that all scientific evidence is both relevant and reliable. *See PBM Prod.*, 639 F.3d at 123 (citations omitted). When it comes to consumer perception surveys in trademark infringement cases, courts hold a clear preference for admissibility. *Id.* As the Fourth Circuit has noted, "[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare."

*Id.* This is not one of those rare instances. While there are almost certainly technical deficiencies in each of the expert surveys produced, such shortcomings do not determine admissibility but merely serve to reduce the weight given to the evidence. Therefore both Reynolds' and Handi-Foil's motions to exclude are denied.

### III. Motion to Strike Reynolds' Jury Demand

Handi-Foil's final motion asks the Court to strike Reynolds' jury demand. The parties agree that Reynolds loses its right to a jury trial only if the relief it seeks is entirely equitable in nature. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-80 (1962). In its Second Amended Complaint, Reynolds explicitly asks to be "awarded damages to compensate it for lost sales and diminished goodwill in an amount to be proven at trial." *See* Dkt. No. 56 at ¶ 100. Handi-Foil contends that because Reynolds' damages expert spoke exclusively in terms of "unjust enrichment" when deposed, it has forfeited its right to a jury trial. In support Handi-Foil points to *Ringling Bros.-Barnum & Bailey Combined Shows Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598 (E.D. Va. 1997).

*Ringling Brothers* analyzed the right to a jury trial in a Lanham Act anti-dilution case and focused primarily on the standards set out in *Dairy Queen*, the controlling case in this instance. *Dairy Queen* held that an action for damages based upon a charge of trademark infringement is legal in nature. Of significance for the current inquiry, *Dairy Queen* noted that

> The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. . . The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.

11

*Dairy Queen*, 369 U.S. at 477-78. *Ringling Brothers* is entirely consistent with *Dairy Queen*, denying a jury trial only because the "remaining available remedies" were "wholly equitable." *Ringling Bros.*, 955 F. Supp. at 603.

Reynolds is seeking proxy damages. In other words, Reynolds plans to quantify its alleged damages for lost sales and diminished goodwill by looking to Handi-Foil's profits. This is identical to what was sought in *Dairy Queen*. That Reynolds' damages expert, a non-lawyer, used the terms "unjust enrichment" instead cannot vitiate Reynolds' Seventh Amendment right to a jury. This conclusion is bolstered by credibility issues relating to the experts' competing analyses of Handi-Foil's profits as well as this Court's responsibility to protect against the unnecessary curtailment of constitutional rights. *See Dairy Queen*, 369 U.S. at 477-78 ("the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings"). *See also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." (citing *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

## CONCLUSION

For the reasons stated above the Court finds that Reynolds has not abandoned its registered marks. Reynolds' Motion for Partial Summary Judgment is therefore GRANTED. The Court also finds that (i) Reynolds has created genuine issues of material fact on its false advertising claim (Count VIII); (ii) the consumer surveys by both parties' experts should be admitted; and (iii) Reynolds has not forfeited its right to a jury trial. Accordingly, the remaining motions are DENIED. A corresponding order shall issue.

February 27, 2016
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

ADDENDUM

The 2007 Specimen:



The Current Reynolds Wrap box:

