**REDACTED PURSUANT TO
PROTECTIVE ORDER (DKT. NO. 22)**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

REYNOLDS CONSUMER PRODUCTS INC.,

Plaintiff,

v.

HANDI-FOIL CORPORATION,

Defendant.

Civil Action No.:  1:13-CV-214 LO/TRJ

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

John G. Froemming (VSB No. 25319)
Jessica D. Bradley (VSB No. 70830)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: jfroemming@jonesday.com
Email: jbradley@jonesday.com

*Attorneys for Plaintiff
Reynolds Consumer Products LLC*

# TABLE OF CONTENTS

**Page**

PLAINTIFF'S PROPOSED INSTRUCTION NO. 1
DEFINITION OF "TRADEMARK"...................................................................3

PLAINTIFF'S PROPOSED INSTRUCTION NO. 2
DEFINITION OF "TRADE DRESS" ...............................................................4

PLAINTIFF'S PROPOSED INSTRUCTION NO. 3
TRADEMARK AND TRADE DRESS INFRINGEMENT................................5

PLAINTIFF'S PROPOSED INSTRUCTION NO. 4
ESTABLISHING LIKELIHOOD OF CONFUSION .......................................6

PLAINTIFF'S PROPOSED INSTRUCTION NO. 5
EVALUATING THE LIKELIHOOD OF CONFUSION FACTORS .............7

PLAINTIFF'S PROPOSED INSTRUCTION NO. 6
VALIDITY AND OWNERSHIP OF REYNOLDS TRADE DRESS .............8

PLAINTIFF'S PROPOSED INSTRUCTION NO. 7
INCONTESTABILITY OF REYNOLDS TRADEMARK AND TRADE DRESS ..........9

PLAINTIFF'S PROPOSED INSTRUCTION NO. 8
LIKELIHOOD OF CONFUSION FACTORS –
STRENGTH OR DISTINCTIVENESS ...........................................................10

PLAINTIFF'S PROPOSED INSTRUCTION NO. 8A
INHERENT DISTINCTIVENESS OF TRADE DRESS.................................12

PLAINTIFF'S PROPOSED INSTRUCTION NO. 8B
"GENERICNESS"............................................................................................14

PLAINTIFF'S PROPOSED INSTRUCTION NO. 8C
FUNCTIONALITY OF TRADE DRESS .....................................................15

PLAINTIFF'S PROPOSED INSTRUCTION NO. 9
LIKELIHOOD OF CONFUSION FACTORS – ACTUAL CONFUSION ....................16

PLAINTIFF'S PROPOSED INSTRUCTION NO. 10
LIKELIHOOD OF CONFUSION FACTORS –
INTENT AND PRESUMPTION OF CONFUSION........................................17

PLAINTIFF'S PROPOSED INSTRUCTION NO. 11
LIKELIHOOD OF CONFUSION FACTORS – OTHER FACTORS..............18

# TABLE OF CONTENTS
(continued)

Page

PLAINTIFF'S PROPOSED INSTRUCTION NO. 12
UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN ........................20

PLAINTIFF'S PROPOSED INSTRUCTION NO. 13
FAIR USE AS A DEFENSE TO INFRINGEMENT .......................................21

PLAINTIFF'S PROPOSED INSTRUCTION NO. 14
FEDERAL TRADEMARK DILUTION ...........................................................23

PLAINTIFF'S PROPOSED INSTRUCTION NO. 15
LIKELIHOOD OF DILUTION – FAME..........................................................25

PLAINTIFF'S PROPOSED INSTRUCTION NO. 16
LIKELIHOOD OF DILUTION..........................................................................26

PLAINTIFF'S PROPOSED INSTRUCTION NO. 17
POLICING OF TRADEMARKS .......................................................................27

PLAINTIFF'S PROPOSED INSTRUCTION NO. 18
ELEMENTS OF FALSE ADVERTISING .......................................................28

PLAINTIFF'S PROPOSED INSTRUCTION NO. 19
ESTABLISHING A COMMERCIAL ADVERTISEMENT ...........................29

PLAINTIFF'S PROPOSED INSTRUCTION NO. 20
ESTABLISHING FALSITY ...............................................................................30

PLAINTIFF'S PROPOSED INSTRUCTION NO. 21
DAMAGES............................................................................................................32

PLAINTIFF'S PROPOSED INSTRUCTION NO. 22
CALCULATION OF HANDI-FOIL'S PROFITS ............................................36

PLAINTIFF'S PROPOSED INSTRUCTION NO. 23
WILLFUL INFRINGEMENT.............................................................................38

PLAINTIFF'S PROPOSED INSTRUCTION NO. 24
UNJUST ENRICHMENT ....................................................................................39

PLAINTIFF'S PROPOSED INSTRUCTION NO. 25
UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
UNDER VIRGINIA LAW ...................................................................................40

PLAINTIFF'S PROPOSED INSTRUCTION NO. 26
FALSE ADVERTISING UNDER VIRGINIA LAW .......................................41

## PLAINTIFF'S SUMMARY OF THE PARTIES' CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Reynolds seeks an injunction and money damages from Handi-Foil for trademark and trade dress infringement, trademark and trade dress dilution, unfair competition under Federal and Virginia law, false advertising and unjust enrichment.  Reynolds' claims are based on Reynolds' allegation that Handi-Foil's packaging for its aluminum roll foil product infringes Reynolds' trade dress and trademarks related to Reynolds' Reynolds Wrap® packaging, that Handi-Foil falsely designated the origin of if its aluminum roll foil product on its packaging, that Handi-Foil made certain claims to the marketplace about its product that Reynolds alleges constitute false advertising, that Handi-Foil's actions constitute unfair competition, and that Handi-Foil was unjustly enriched through its allegedly wrongful activities at Reynolds' expense.

Handi-Foil denies each and every of Reynolds' allegations.

Your job is to decide whether Reynolds has proven any of its claims.  If you decide that Reynolds has proven any of its claims, you will then need to decide any money damages to be awarded to Reynolds to compensate it for Handi-Foil's actions.  If you find that Handi-Foil infringed Reynolds' trademark or trade dress, you will also need to make a finding as to whether the infringement was willful.

In this case, either party may have the burden of proving an element of its case.  The burden of proof that you will apply to the evidence in this case is called "preponderance of the evidence."  A preponderance of the evidence means that the fact that is to be proven is more

1

likely true than not.[1]   In other words, if you were to put the parties' evidence on opposite sides of the scales, you would need to find that the scales tip, however slightly, in favor of the party with the burden of proof.[2]

These standards are different from, and lower than, what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.

---

[1] *Concrete Pipe and Products of Calif., Inc. v. Construction Laborers Pension Trust of Southern Calif.*, 508 U.S. 602, 622 (1993) ("The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'") (citations omitted).

[2] *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 187 (2d Cir. 1992) ("the court should instruct the jury that it is to conclude that a fact has been proven by a preponderance of the evidence if it 'find[s] that the scales tip, however slightly, in favor of the party with the burden of proof" as to that fact") (citing Sand, *Modern Federal Jury Instructions* ¶ 73.01, at 73–4 (1992)); *see also Blossom v. CSX Trasnport, Inc.*, 13 F.3d 1477, 1480 (11th Cir. 1994) (approving as "a proper illustration" of preponderance of the evidence as "if you were to put plaintiff's and defendant's evidence on opposite sides of the scales, plaintiff would have to make the scales tip slightly on that side," citing Manual of Model Jury Instructions for the Ninth Circuit, Civil Instruction 10.08 (1985)).

2

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 1**

**DEFINITION OF "TRADEMARK"**

A trademark includes any word, name, symbol, or device, or any combination thereof used to identify and distinguish goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.[3]

---

[3] 15 U.S.C. § 1127; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'")

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 2

### DEFINITION OF "TRADE DRESS"

"Trade dress" is a type of trademark.[4]  "Trade dress" of a product consists of its total image and overall appearance, including its size, shape, color or color combinations, texture, graphics, or even particular sales techniques.[5]

---

[4] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)

[5] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992) ("'The 'trade dress' of a product is essentially its total image and overall appearance.' It 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'") (citations omitted); *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999)

4

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 3

### TRADEMARK AND TRADE DRESS INFRINGEMENT

To establish trademark or trade dress infringement, Reynolds must prove: (1) that it owns a valid trademark or trade dress; (2) that Handi-Foil used the trademark or trade dress "in commerce" and without Reynolds' authorization; (3) that Handi-Foil used the trademark or trade dress (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that Handi-Foil's use of the trademark or trade dress is likely to confuse consumers.[6]

In this case, only element (4) – likelihood of confusion – is in dispute.

Where the trademark in question is trade dress, Reynolds must prove (1) that its trade dress is primarily non-functional; (2) that Handi-Foil's use of its packaging creates a likelihood of confusion; and (3) that Reynolds' trade dress is either (a) inherently distinctive or (b) has acquired secondary meaning.[7]

---

[6] *Rosetta Stone Ltd. v Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) ("To establish trademark infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.").

[7] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) ("To prove a case of trade dress infringement, a party must demonstrate that (1) its trade dress is primarily non–functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 4

## ESTABLISHING LIKELIHOOD OF CONFUSION

Likelihood of confusion is determined based on weighing a number of factors, including:

(1) the strength or distinctiveness of Reynolds' trademark or trade dress as actually used in the marketplace;

(2) the similarity of the two trademarks or trade dress to consumers;

(3) the similarity of the goods or services that the trademarks or trade dress identify;

(4) the similarity of the facilities used by the parties;

(5) the similarity of advertising used by the parties;

(6) Handi-Foil's intent;

(7) actual confusion;

(8) the quality of Handi-Foil's product; and

(9) the sophistication of the consuming public.[8]

---

[8] *Rosetta Stone Ltd. v Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012) ("This court has articulated at least nine factors that generally are relevant to the 'likelihood of confusion' inquiry: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 5

### EVALUATING THE LIKELIHOOD OF CONFUSION FACTORS

The likelihood of confusion factors are not always weighted equally, and not all factors are relevant in every case.  In fact, there is no need for each factor to support Reynolds' position for Reynolds to establish likelihood of confusion.[9]

---

[9] *Rosetta Stone Ltd. v Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) ("These factors are not always weighted equally, and not all factors are relevant in every case. In fact, there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue.") (citations omitted).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 6**

**VALIDITY AND OWNERSHIP OF REYNOLDS TRADE DRESS**

An owner of trade dress may obtain a certificate of registration issued by the United States Patent and Trademark Office.[10]  A certificate of registration for trade dress is presumptive evidence of the validity of the registered trade dress and of the registration of the trade dress, of the owner's ownership of the trade dress, and of the owner's exclusive right to use the registered trade dress in commerce on or in connection with the goods or services specified in the certificate.[11]

Reynolds has registered and obtained certificates of registration for the Reynolds' trade dress.

---

[10] 15 U.S.C. § 1057(a).

[11] 15 U.S.C. § 1057(b).

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 7

### INCONTESTABILITY OF REYNOLDS TRADEMARK AND TRADE DRESS

A trademark or trade dress that has been registered with the U.S. Patent and Trademark Office becomes incontestable after five years of continuous use.[12]   An incontestable mark is conclusively determined to be distinctive and to have secondary meaning, and the trademark owner is conclusively determined to own the mark and have exclusive rights to it.[13]

The REYNOLDS WRAP® and Reynolds' trade dress registrations are incontestable.

---

[12] 15 U.S.C. § 1065

[13] 15 U.S.C. § 1115(b); *Retail Servs. Inc. v. Freebie Publishing*, 364 F.3d 535, 548 (4th Cir. 2004) ("If a registered trademark becomes incontestable, the rebuttable presumption that a registered mark has acquired secondary meaning becomes 'conclusive evidence of the registrant's exclusive right to use the registered mark' subject to a number of affirmative defenses enumerated in the Lanham Act.").

<u>PLAINTIFF'S PROPOSED INSTRUCTION NO. 8</u>

**LIKELIHOOD OF CONFUSION FACTORS – STRENGTH OR DISTINCTIVENESS**

The first likelihood of confusion factor focuses on the strength of the mark. Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. Strength consists of both conceptual strength and commercial strength.[14]

A mark's conceptual strength is determined by its placement into one of five categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or (5) fanciful.[15] Because Reynolds trade dress is incontestable it is conclusively determined to be distinctive.[16] Suggestive, arbitrary and fanciful marks are inherently distinctive and receive the greatest protection against infringement.[17]   See instruction 8A below regarding determining the inherent distinctiveness of trade dress.

The second step in the strength analysis considers the commercial strength of the trade dress.  In analyzing commercial strength the factors to consider are: (1) Reynolds' advertising expenditures; (2) consumer studies linking Reynolds trade dress to a source; (3) Reynolds' record of sales success; (4) unsolicited media coverage of the Reynolds' business; (5) attempts to plagiarize Reynolds' trade dress; and (6) the length and exclusivity of Reynolds' use of the trade dress.[18]

---

[14]  *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

[15] *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 394 (4th Cir. 2009); *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999).

[16]  15 U.S.C. § 1115(b).

[17]  *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 369 (4th Cir. 1999) ("suggestive, arbitrary, and fanciful marks are deemed inherently distinctive and are entitled to protection") (citation omitted); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) ("'Fanciful,' 'arbitrary,' and 'suggestive' marks are inherently distinctive, and thus receive the greatest protection against infringement.").

[18]  *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 395 (4th Cir. 2009).

To the extent that Handi-Foil contends there is such extensive third party use of similar trade dress on aluminum foil boxes that Reynolds' trade dress must be considered weak, it is Handi-Foil's burden to show, by a preponderance of the evidence, the nature, extent, and scope of actual use by competitors of similar trade dress.[19]   Third party uses of trademarks or trade dress may weaken strength only if Handi-Foil shows such usage is so widespread that it is recognized by consumers to weaken recognition of the Reynolds' trade dress.[20]

---

[19] *McCarthy on Trademarks and Unfair Competition* § 11.88 (The "evidentiary impact of third party marks turns entirely upon the probable impact that the use of these marks has had on the mind of the target group."); *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 598 (4th Cir. 1992) ("third party registrations may not be evidence of use of the mark nor the public's understanding of the mark") citing *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) (significance of third party uses "depends wholly upon their usage" including whether such uses "were well promoted or that they were recognized by consumers").

[20] *Smith Bros. Mfg. Co. v. Stone Mfg. Co.*, 476 F.2d 1004, 1005 (C.C.P.A. 1973) ("in the absence of any evidence showing the extent of use of any of such marks or whether any of them are now in use, they provide no basis for saying that the marks have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion."); *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001) (probative value of third party use was minimal because the record included "no evidence about the extent of those uses").

WAI-3167589v1

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 8A

### INHERENT DISTINCTIVENESS OF TRADE DRESS

Trade dress is the "total image" of a product, and thus the relevant inquiry is not whether the individual components of a design are common or not, but rather whether the alleged trade dress as a whole is inherently distinctive.[21]   To be sure, a basic *overall* design that is "common" or simply a "refinement of a commonly-adopted and well-known" design cannot be inherently distinctive.[22]   But the fact that design elements have been used separately before does not foreclose the possibility that their combination in a new, unique way will create an inherently distinctive trade dress.[23]

In determining inherent distinctiveness, the question is not whether a product design identifies a product, is likely to identify a product, or is likely to be understood as identifying a product.  Rather, that the question is whether the design is capable of identifying a product, that is, whether, consciously or not, consumers would be impressed enough by a product design that if they were to see something sufficiently like it, it would be reasonable for them to assume

---

[21] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 373 (4th Cir. 1999) ("In fact, trade dress is the 'total image' of a product, and thus the relevant inquiry is not whether the individual components of a design are common or not, but rather whether the alleged trade dress as a whole is inherently distinctive.").

[22] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 373 (4th Cir. 1999) ("To be sure, a basic *overall* design that is 'common' or simply a 'refinement of a commonly-adopted and well-known' design cannot be inherently distinctive.").

[23] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 373 (4th Cir. 1999) ("But the fact that design elements have been used separately before does not foreclose the possibility that their combination in a new, unique way will create an inherently distinctive trade dress.") (citations omitted).

either that it is exactly the same product (and therefore implicitly the product of the same

producer) or that it was a different product made by the same producer.[24]

---

[24] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 372-73 (4th Cir. 1999) ("Thus, in determining inherent distinctiveness the question is not whether a product design 'identifies' a product, is 'likely to identify' a product, or is 'likely to be understood' as identifying a product. We believe, rather, that the question is whether the design is 'capable of identifying a product,' that is, whether, consciously or not, consumers would be impressed enough by a product design that if they were to see something sufficiently like it, it would be reasonable for them to assume either that it is exactly the same product (and therefore implicitly the product of the same producer) or that it was a different product made by the same producer.") (citations omitted).

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 8B

### "GENERICNESS"

A generic mark refers to the genus or class of which a particular product is a member and can never be protected.[25]   For example, the trade name "Pet Store" for a shop that sold pets would be generic. [26]

Because a certificate of registration for trade dress carries with it the presumption that the trade dress is valid, to the extent that Handi-Foil claims that Reynolds trade dress is generic, Handi-Foil has the burden of proving prove that the primary significance of the trade dress to the relevant public is to identify the class of product or service to which the mark relates rather than the brand of the product.[27]

---

[25] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 369 (4th Cir. 1999) ("A generic mark refers to the genus or class of which a particular product is a member and can never be protected.").

[26] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 369 (4th Cir. 1999) ("For example, the trade name 'Pet Store' for a shop that sold pets would be generic.").

[27] *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996).

14

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 8C**

**FUNCTIONALITY OF TRADE DRESS**

To be protectable trade dress, the trade dress must be primarily non-functional.  Trade dress is functional if it is essential to the use or purpose of the article or affects the cost or quality of the article, that is, if exclusive use of it would put competitors at a significant non-reputation-related disadvantage.[28]  An aesthetic design would be considered functional if it would deprive competitors of alternative designs, and, thus, foreclose competition from the relevant market.[29] Functional features of a product are features which constitute the actual benefit that the customer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.[30]

The critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress as a whole is functional.[31]

---

[28] *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995) ("This Court consequently has explained that, '[i]n general terms, a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.").

[29] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 376 (4th Cir. 1999) ("If trade dress protection for an aesthetic design 'would deprive competitors of alternative designs, and, thus, foreclose competition from the relevant market,' the design would be considered functional and could not be protected.")

[30] *Tools USA and Equipment Co. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654, 657-58 (4th Cir. 1996) (citation omitted).

[31] *Tools USA and Equipment Co. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654, 658 (4th Cir. 1996) ("In support of its argument that the jury erred in finding that Tools USA's trade dress was non-functional, Champ focuses on individual aspects of the 'Tools USA' catalog trade dress. Champ explains at some length why it believes each feature is functional. This tactic ignores the fact that the critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress *as a whole* is functional.").

15

<u>PLAINTIFF'S PROPOSED INSTRUCTION NO. 9</u>

**LIKELIHOOD OF CONFUSION FACTORS – ACTUAL CONFUSION**

Proof of actual confusion is unnecessary to a finding of trademark infringement, the likelihood of confusion is the determinative factor.[32]   However, actual confusion can be demonstrated by both anecdotal and survey evidence.[33]   Survey evidence showing a confusion level of over 10% is sufficient to demonstrate actual confusion, and a confusion level of 15%-20% is significant.[34] Survey evidence is not required to prove likelihood of confusion.[35]

Strength of the trademark or trade dress, and evidence of actual confusion, may be sufficient to show likelihood of confusion.  Where an alleged infringer has elected to use a mark similar to a trademark owner's distinctive mark, and, as a result, has actually confused the public, the inquiry ends almost as soon as it begins.[36]

---

[32] *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).

[33] *George & Co. v. Imagination Entertainment Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) ("Actual confusion can be demonstrated by both anecdotal and survey evidence.").

[34] *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466-67 and n. 15 (4th Cir. 1996) ("Sara Lee produced additional evidence in the form of surveys that it had conducted, indicating that approximately thirty to forty percent of the consuming public was confused by the  similarity of the L'eggs(R) and Leg Looks(R) marks. The district court discounted the survey evidence on the ground that its reliability may have been in question, but *even if the true figure were only half of the survey estimate, actual confusion would, in our view, nevertheless exist to a significant degree.*) (emphasis added); ("survey evidence indicating ten to twelve percent confusion was sufficient to demonstrate actual confusion…survey evidence showing confusion level of between ten and eleven percent sufficient to demonstrate actual confusion") (citations omitted).

[35] *Tools USA and Equipment Co. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654, 661 (4th Cir. 1996) ("Actual confusion can be demonstrated by survey evidence, but contrary to Champ's suggestion, survey evidence is not necessarily the best evidence of actual confusion and 'surveys are not required to prove likelihood of confusion.'") (citations omitted).

[36] *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996) ("We have previously acknowledged that the distinctiveness of the senior user's mark is 'the first and paramount factor' in determining the likelihood of confusion.' If the strength of the senior mark is the alpha of infringement analysis, then evidence of actual confusion is surely the omega; where the defendant in an infringement case has elected to use a mark similar to that of a competitor's

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 10

### LIKELIHOOD OF CONFUSION FACTORS –
### INTENT AND PRESUMPTION OF CONFUSION

If you decide that Handi-Foil copied Reynolds' trademark or trade dress with the intent to benefit from the Reynolds' goodwill by getting consumers to believe that Handi-Foil's product is the same, or originates from the same source as Reynolds, then a presumption of a likelihood of confusion arises.[37]   In that case, the burden shifts to Handi-Foil to prove, by a preponderance of the evidence, that consumers have not been confused.[38]   Absent such proof, you must conclude that a likelihood of confusion exists.[39]

---

distinctive mark, and, as a result, has actually confused the public, our inquiry ends almost as soon as it begins.") (citation omitted).

[37] *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 165 (4th Cir. 1990) ("When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose trade dress was copied. Logic requires, no less than the presumption of secondary meaning from copying, that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion. It would be inconsistent not to require one who tries to deceive customers to prove they have not been deceived.").

[38] *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 165 (4th Cir. 1990) ("The proper course of action in a case such as this where the newcomer copied its competitor's trade dress is to apply the presumption and consider (in the setting of an application for a preliminary injunction) whether the newcomer presented sufficient evidence to rebut the presumption."); *Larsen v. Terk Technologies Corp.*, 151 F.3d 140, 148 (4th Cir. 1998) ("courts have almost unanimously presumed a likelihood of confusion upon a showing that the defendant intentionally copied the plaintiff's trademark *or* trade dress") (emphasis in original).").

[39] *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 165 (4th Cir. 1990) ("Logic requires, no less than the presumption of secondary meaning from copying, that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion. It would be inconsistent not to require one who tries to deceive customers to prove they have not been deceived.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 11

## LIKELIHOOD OF CONFUSION FACTORS – OTHER FACTORS

In evaluating the remaining likelihood of confusion factors, you may consider the following:

Similarity of the two trademarks or trade dress to consumers: This factor may be evaluated through a visual inspection of Reynolds trade dress and Handi-Foil's trade dress.[40]

Similarity of the goods or services that the trademarks or trade dress identify:  This factor considers the similarity of the goods identified by Reynolds trade dress and Handi-Foil's trade dress.  If you conclude that Reynolds and Handi-Foil's goods are similar, then this factor weighs in favor of Reynolds.[41]

Similarity of the facilities used by the parties: This factor considers whether Reynolds and Handi-Foil sell their goods through the same retail outlets to the same customers.  If you conclude that both Reynolds and Handi-Foil sell the same products through the same or similar stores to the same customers, then this factor weighs in favor of Reynolds.[42]

Similarity of advertising used by the parties: In comparing the parties' advertising, you should consider the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements.[43]

Quality of Handi-Foil's product: Consideration of the quality of the Handi-Foil's product is appropriate in situations involving the production of cheap copies or knockoffs of a

---

[40] *Tools USA and Equipment Co. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654, 660 (4th Cir. 1996) ("[a] visual inspection of the catalogs is certainly a way to evaluate 'the similarity of the trade dress'").

[41] *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009).

[42] *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984).

[43] *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 273 (4th Cir. 2006).

18

competitor's trademark-protected goods.   If you conclude that Handi-Foil markets a product under a mark or trade dress similar to that affixed by Reynolds to a similar product but of superior manufacture, and that Handi-Foil's product is markedly inferior, this is likely to be highly probative of Handi-Foil's reliance on the similarity of the two trade dresses to generate undeserved sales.[44]

Sophistication of the consuming public: In analyzing this factor you may consider the nature of the product or its price.[45]   When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased.[46]

---

[44] *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996).

[45] *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 160 (4th Cir. 2012)  ("a court may reach a conclusion about consumer sophistication based solely on the nature of the product or its price") (citation omitted).

[46] *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000) ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care."); *Sara Lee Corp. v. Kayser-Roth Corp.*, Civ. No. 6:92CV00460, 1992 WL 436279, at *24 (M.D.N.C. Dec. 1, 1992) ("In the present case [involving pantyhose sold at convenience stores] this risk of initial confusion is particularly high since the product is a low priced item that consumers often only take seconds to purchase.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 12

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

To establish a claim for unfair competition or false designation under the Lanham Act, Reynolds must prove that Handi-Foil used in commerce in connection with its goods or services, or the packaging for its goods, a word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Handi-Foil with Reynolds, or as to the origin, sponsorship, or approval of Handi-Foil's goods, services, or commercial activities by Reynolds.[47]

---

[47] 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 13

## FAIR USE AS A DEFENSE TO INFRINGEMENT

Handi-Foil can avoid liability for trademark or trade dress infringement if it can establish by a preponderance of the evidence that its use of Reynolds' trademark or trade dress is a fair use. "Fair use" is a use, (1) made fairly and in good faith by a defendant, (2) only to describe its own goods, and (3) without using the allegedly infringing mark as a trademark, *i.e.*, to designate source, affiliation, sponsorship or branding.[48] However, referring to another party's trademark or trade dress to help describe your own product or service, such as by comparison, is not a permissible fair use.[49]

"Fair use" is an affirmative defense to infringement.[50] Because it is an affirmative defense, "fair use" does not negate the elements of an infringement claim. Rather, the "fair use"

---

[48] 15 U.S.C. § 1115(b)(4); *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 840 (4th Cir. 1990) ("To establish a fair use defense for these designators, Lane must prove that the designators are used 'fairly and in good faith' only to describe the punches and that the infringing mark is not used as a trademark.").

[49] *Lorillard Tobacco Co. v. S&M Brands, Inc.*, 616 F. Supp.2d 581, 589 (E.D. Va. 2009) (finding trademark infringement by "COMPARE TO" claim on cigarettes and rejecting nominative fair use as a defense: "While the Third Circuit and Ninth Circuit apply this standard differently, the Fourth Circuit has not adopted it in any form. *National Fed'n of the Blind v. Loompanics Enters.*, 936 F.Supp. 1232, 1241 (D.Md.1996) ('Because the *New Kids* test is not the law of this Circuit, and because neither the statute nor Fourth Circuit case law portend its adoption, I decline to follow it.'). This Court, therefore, will not either. Accordingly, no statutory or common law defense exists to Defendant's alleged infringement, and as such, Plaintiff is likely to succeed on the merits.").

[50] 15 U.S.C. § 1115(b)(4); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) (referring to "an affirmative defense of fair use, available to a party whose 'use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin ....' § 1115(b)(4).").

defense comes into play only when infringement – including a likelihood of confusion – has been established.[51]

Handi-Foil must prove each of the elements of fair use by a preponderance of the evidence.[52]

---

[51] *Shakespeare Co. v. Silstar Corp. of America, Inc.*, 110 F.3d 234, 243 (4th Cir. 1997) ("The fair-use defense comes into play only when infringement—including a likelihood of confusion—has been established."); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004)

[52] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (placing burden of proof of fair use on defendant in copyright infringement case); *see also Dixon v. U.S.*, 548 U.S. 1, 13 (2006) (noting long common law history that party asserting affirmative defenses bears the burden of proof).

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 14

### FEDERAL TRADEMARK DILUTION

In addition to infringement of its trademark and trade dress, Reynolds claims that Handi-Foil is committing trademark dilution.  Dilution is not concerned with confusion in the marketplace.  Rather, dilution theory provides that if customers or prospective customers see the plaintiff's famous mark used by other persons in a non-confusing way to identify other sources for many different goods and services, then the ability of the famous mark to clearly identify and distinguish only one source might be "diluted" or weakened. Thus, trademark dilution is the whittling away of the established trademark's selling power and value through its unauthorized use by others.[53]

To prove trademark dilution Reynolds must show:

(1) it owns a famous mark that is distinctive;

(2) Handi-Foil has commenced using a mark in commerce that allegedly is diluting the famous mark;

(3) a similarity between Handi-Foil's mark and  Reynolds' famous mark gives rise to an association between the marks; and

(4) the association is likely to impair the distinctiveness of Reynolds' famous mark or likely to harm the reputation of Reynolds' famous mark.[54]

---

[53] *Rosetta Stone Ltd. v Google, Inc.*, 676 F.3d 144, 167 (4th Cir. 2012) ("Dilution is not concerned with confusion in the marketplace. Rather, dilution theory provides that 'if customers or prospective customers see the plaintiff's famous mark used by other persons in a non-confusing way to identify other sources for many different goods and services, then the ability of the famous mark to clearly identify and distinguish only one source might be "diluted" or weakened.' Thus, trademark dilution is 'the whittling away of the established trademark's selling power and value through its unauthorized use by others.'") (citations omitted).

[54] *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007) ("Thus, to state a dilution claim under the TDRA, a plaintiff must show: (1) that the plaintiff

In proving its dilution claim, Reynolds does not need to show actual or likely confusion, the presence of competition, or actual economic loss or reputational injury.[55]

---

owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.").

[55] *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 265 (4th Cir. 2007); *Rosetta Stone Ltd. v Google, Inc.*, 676 F.3d 144, 171 (4th Cir. 2012) ("Under the FTDA, Rosetta Stone must show only a *likelihood* of dilution and need not prove actual economic loss or reputational injury.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 15

### LIKELIHOOD OF DILUTION – FAME

A trademark or trade dress is "famous" when it is widely recognized by the general consuming public of the United States as a designation of source of the goods of the trademark's or trade dress's owner.[56]

A trademark or trade dress is "distinctive" when it has the ability to identify a single source and thus maintain its selling power.[57]

In determining whether Reynolds' trade dress is famous you may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of Reynolds trade dress, whether advertised or publicized by the Reynolds or third parties;

(ii) The amount, volume, and geographic extent of sales of goods or services offered under Reynolds' trade dress;

(iii) The extent of actual recognition of Reynolds trade dress; and

(iv) that Reynolds trade dress is registered at the U.S. Patent & Trademark Office on the principal register.[58]

---

[56] 15 U.S.C. § 1125(c)(1); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264 (4th Cir. 2007) ("A mark is 'famous' when it is 'widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.'").

[57] *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 265 (4th Cir. 2007) ("In the context of blurring, distinctiveness refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power.").

[58] 15 U.S.C. § 1125(c)(2).

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 16

## LIKELIHOOD OF DILUTION

Reynolds does not need to show actual dilution of its trademark or trade dress to prevail. Instead, Reynolds must show a likelihood of dilution.  Likelihood of dilution is determined based on weighing a number of factors, including:

(1)  The degree of similarity between Handi-Foil's mark or trade dress and Reynolds' trademark or trade dress.

(2)  The degree of inherent or acquired distinctiveness of Reynolds trademark or trade dress.

(3)  The extent to which the Reynolds is engaging in substantially exclusive use of its trademark or trade dress.

(4) The degree of recognition of the Reynolds trademark or trade dress.

(5)  Whether the Handi-Foil intended to create an association with the Reynolds' trademark or trade dress.

(6)  Any actual association between Handi-Foil's trade dress and Reynolds' trademark or trade dress.[59]

Not every factor will be relevant in every case, and not every case will require extensive consideration of each factors.[60]

---

[59] 15 U.S.C. § 1125(c)(2)(B); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 266 (4th Cir. 2007) ("To determine whether a junior mark is likely to dilute a famous mark through blurring, the TDRA directs the court to consider all factors relevant to the issue, including six factors that are enumerated in the statute: (i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition of the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (vi) Any actual association between the mark or trade name and the famous mark. 15 U.S.C.A. § 1125(c)(2)(B).").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 17

### POLICING OF TRADEMARKS

The strength of the distinctiveness of a trademark or trade dress can be weakened by failing to take action against infringers.[61]   However, a trademark owner is not required to act immediately against every possible infringer.[62]   A company may be excused for not taking action against an infringer if the trademark owner believes the infringement will be short lived and will disappear on its own.[63]   A trademark owner has no obligation to sue until the likelihood of confusion looms large.[64]

Successful policing of a trademark or trade dress adds to its strength to the extent that it prevents weakening of the mark's distinctiveness in the relevant market.[65]

---

[60] *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 266 (4th Cir. 2007) ("Not every factor will be relevant in every case, and not every blurring claim will require extensive discussion of the factors.").

[61] *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1048 (4th Cir. 1984) ("The only relevance in the typical case of failure to prosecute others is as to the element of strength of the mark. That is, the mark is so crowded in by similar marks used by competitors that the mark is alive, but weakened.")  *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (4th Cir. 1982) ("distinctiveness can be lost by failing to take action against infringers.").

[62] *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (4th Cir. 1982) ("However, an owner is not required to act immediately against every possibly infringing use to avoid a holding of abandonment.").

[63] *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (4th Cir. 1982) ("Such a requirement would unnecessarily clutter the courts. Some infringements are short-lived and will disappear without action by the trademark owner.").

[64] *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) ("We agree with Professor McCarthy that the owner 'has no obligation to sue until the likelihood of confusion looms large.'") (internal citations omitted).

[65] *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 692 (E.D. Va. 2005) ("successful policing of a mark adds to its strength to the extent that it prevents weakening of the mark's distinctiveness in the relevant market.") citing *McCarthy on Trademarks and Unfair Competition* § 11:91.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 18

### ELEMENTS OF FALSE ADVERTISING

In order to succeed on its false advertising claim, Reynolds must show: (1) Handi-Foil made a false or misleading statement in a commercial advertisement about either a Handi-Foil or Reynolds product; (2) the misrepresentation was material in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has a tendency to deceive a substantial segment of its audience; (4) Handi-Foil placed the misrepresentation in interstate commerce; and (5) Handi-Foil's misrepresentation has been or is likely to injure Reynolds as a result of the misrepresentation, either by a direct diversion of sales or by a lessening of goodwill associated with its products.[66]

A statement is material if it is likely to influence a purchasing decision.[67]  In other words, a statement is material if it describes a product or service as having a characteristic that most consumers would find appealing.[68]

---

[66] *PBM Prod., LLC v Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) ("Thus, a plaintiff asserting a false advertising claim under the Lanham Act must establish that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.").

[67] *PBM Prod., LLC v Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (identifying the materiality factor as, "the misrepresentation is material, in that it is likely to influence the purchasing decision").

[68] *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC*, 875 F. Supp. 2d 511, 529-30 (D. Md. 2012) ("A statement is material if it describes a product or service as having a characteristic that most consumers would find appealing.") (citing cases from within the Fourth Circuit).

28

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 19

## ESTABLISHING A COMMERCIAL ADVERTISEMENT

For Handi-Foil's statements to be commercial advertisements, they must be: (1) commercial speech; (2) made by Handi-Foil in competition with Reynolds; (3) for the purpose of influencing consumers to buy Handi-Foil's goods; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion."[69]

Concerning the fourth factor, one-to-one promotion, such as in sales meetings, may be considered "advertising" or "promotion."[70]  Also, where the relevant market is limited, the level of dissemination can be low.[71]

---

[69] *Applied Med. Res. Corp. v. Steuer*, 527 F. Supp.2d 489, 493 (E.D. Va. 2007) ("In *Fashion Boutique,* the court restated the four-part test for determining what representations qualify as 'commercial advertising or promotion.' The contested representations must be (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public. *Id.* at 56. Although this standard for 'commercial advertising or promotion' has never been formally adopted by the Fourth Circuit, it has been uniformly embraced by district courts in this Circuit.").

[70] *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012) (reversing district court's dismissal of Lanham Act false advertising claim based on one-to-one sales meetings).

[71] *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012) ("'the required level of dissemination to the relevant purchasing public "will vary according to the specifics of the industry."'") (citation omitted); *Tao of Systems Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp.2d 565, 573 (E.D. Va. 2004) ("Whether such misrepresentations actually qualify as advertising or promotion depends on the number of alleged contacts or misrepresentations made in relation to the total market. If the total market is small, isolated contacts may be enough. In various scenarios, courts have found that communications to a very limited number of consumers can reach the required level of dissemination to constitute commercial advertising or promotion.") (citations omitted).

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 20

### ESTABLISHING FALSITY

Falsity may be established in one of two ways.  The contested statement or representation must be either (1) literally false on its face or, (2) although literally true, likely to mislead and to confuse consumers given the merchandising context.[72]  A statement that is literally false on its face may be either explicitly false, or conveyed by necessary implication when considering the statement within its full context such that the audience would recognize the claim as readily as if it had been explicitly stated.[73]  A statement that is literally false will constitute false advertising, even without evidence of any consumer confusion.[74]

Certain types of advertising claims either expressly or impliedly assert that the favorable fact is test-validated.[75]  These are called "tests show" claims.  In this case, Handi-Foil's claims that lab testing shows equivalent strength are "tests show" claims.  To prove a "tests show" claim

---

[72] *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997) ("To constitute a violation of § 43(a), by either type of advertisement 'the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.').

[73] *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) ("A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.").

[74] *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception.").

[75] *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997) ("When an advertising claim of favorable fact either expressly or impliedly asserts that the fact is testor study-validated, the fact of the validation becomes an integral and critical part of the claim. Such a claim may therefore be proven literally false by showing only that the test asserted to validate it did not in fact do so.").

WAI-3167589v1

to be literally false, Reynolds need only prove that the test asserted to validate the claim did not, in fact, prove the claim.[76]

An alternative type of advertising claim makes no reference to validating tests, but simply asserts baldly a favorable fact about a product.  These are called "bald claims," and those claims can be proven literally false only by showing the baldly asserted fact is false.[77]  Handi-Foil's "new" claim is an example of a "bald claim."

---

[76] *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997) ("When an advertising claim of favorable fact either expressly or impliedly asserts that the fact is testor study-validated, the fact of the validation becomes an integral and critical part of the claim. Such a claim may therefore be proven literally false by showing only that the test asserted to validate it did not in fact do so.").

[77] *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997) ("On the other hand, where the claim is made baldly, with no assertion of test or study validation, its literal falsity may only be proven by proof that the favorable fact baldly asserted is false.").

31

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 21

## DAMAGES

If you find that Handi-Foil has committed trademark or trade dress infringement, then you should consider whether to award damages to Reynolds. The law allows Reynolds to recover (1) Handi-Foil's profits, or (2) any damages sustained by Reynolds.[78] In this case, Reynolds seeks Handi-Foil's profits.

The purpose of allowing recovery of the infringer's profits is to take all the economic incentive out of trademark infringement.[79] It may be appropriate to award an infringer's profits to compensate for diverted sales, to remedy for unjust enrichment, or to deter future infringement.[80]

In considering whether to award Handi-Foil's profits on its infringing sales to Reynolds, you should consider:

(1) whether Handi-Foil had the intent to confuse or deceive,

(2) whether sales have been diverted,

(3) the adequacy of other remedies,

(4) any unreasonable delay by Reynolds in asserting its rights,

(5) the public interest in making the misconduct unprofitable, and

---

[78] 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.").

[79] *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 340 (5th Cir. 2008) ("[t]he purpose of section 1117 is to take all the economic incentive out of trademark infringement.").

[80] *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 340 (5th Cir. 2008) ("This Court has held it appropriate to award profits of an infringer pursuant to § 1117(a) for various purposes: to compensate for diverted sales, to remedy unjust enrichment of the infringer, or to deter future infringement.").

(6) whether it is a case of palming off.[81]

The first factor -- whether the defendant had an intent to confuse or deceive -- addresses whether there has been a willful infringement on the trademark or trade dress rights of Reynolds, or whether Handi-Foil has acted in bad faith.[82]   While the issue of whether Handi-Foil's alleged infringement of Reynolds' trademark and trade dress was willful is an important factor in determining whether to award damages, it is not required that you find willfulness to make a damages award.[83]

The second factor -- whether sales have been diverted -- involves the issue of whether the Reynolds lost sales as a result of the Handi-Foil's alleged infringement of Reynolds' trademark and trade dress, and the extent to which Reynolds was in the market area where Handi-Foil's alleged infringement occurred.[84]

---

[81] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("In making a damages award under the Lanham Act, the Third and the Fifth Circuits have identified six factors to guide the process. As those courts have spelled out, these factors include: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. We agree with Korman that the district court abused its discretion in making the damages award, and that the foregoing factors are appropriate for consideration in connection with damages issues in Lanham Act litigation.") (citations omitted).

[82] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("The first -- whether the defendant had an intent to confuse or deceive -- addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith.")

[83] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("We agree, however, with the Third and Fifth Circuits that although willfulness is a proper and important factor in an assessment of whether to make a damages award, it is not an essential predicate thereto. In other words, a lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award.") (citations omitted).

[84] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("The second factor identified above -- whether sales have been diverted -- involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities,  and the extent to which the plaintiff had entered the market area where the infringement occurred.")

The third factor -- the adequacy of other remedies -- addresses whether another remedy, such as an injunction, might more appropriately correct any injury Reynolds suffered from Handi-Foil's alleged infringement.[85]

The fourth factor -- unreasonable delay by Reynolds in asserting its rights -- addresses the temporal issue of whether Reynolds waited too long, after the infringement began, before seeking court relief.[86]

The fifth factor -- the public interest in making the infringing misconduct unprofitable -- addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty.[87]

The sixth factor "palming off" occurs when the defendant used its infringement of the plaintiff's mark to sell its own products, misrepresenting to the public that defendant's products were really those of plaintiff.[88]  If you find that Handi-Foil used Reynolds' trademark or trade dress to sell its own products, misrepresenting to the public that Handi-Foil's products were

---

[85] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006) (The third of the six factors -- the adequacy of other remedies -- addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities.").

[86] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006) ("The fourth factor -- unreasonable delay by the plaintiff in asserting its rights -- addresses the temporal issue of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief.").

[87] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006) ("The fifth factor -- the public interest in making the infringing misconduct unprofitable -- addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty.").

[88] *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006) ("The sixth and final factor—whether the situation involved a case of 'palming off'—involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff.").

really those of Reynolds, then you should find "palming off" and this factor would favor an award of Handi-Foil's profits to Reynolds.

WAI-3167589v1

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 22

## CALCULATION OF HANDI-FOIL'S PROFITS

In determining Handi-Foil's profits, Reynolds needs to prove the amount of Handi-Foil's sales of infringing products.  Then Handi-Foil must prove all elements of costs or deductions to arrive at the amount profit.[89]  In this case, the parties have stipulated  that Handi-Foil's net sales from sales of all the products Handi-Foil has sold in package designs accused in this action are █████████  Therefore, you need only consider whether Handi-Foil has proven all elements of costs or deductions to arrive at its profits.

In determining deductible costs, Handi-Foil must prove two things: (1) that the type of cost or deduction is allowed to be deducted from its sales under the law; and (2) the amount of those allowable costs or deductions.[90]

Only certain types of costs or deductions can be subtracted to arrive at an appropriate profit number.  In particular, only variable costs, not fixed costs, are to be deducted.[91]  Variable costs are those costs directly attributable to the sale of the infringing goods.[92]  The difficulty in

---

[89] 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").

[90] *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, No. 3:07-cv-163, 2009 WL 2105933, at *3 (W.D. N.C. Jul. 13, 2009) ("First, the defendant must prove that the type of cost or deduction is allowed to be deducted from the defendant's sales under the Lanham Act. Second, the defendant must prove the amount of the allowable costs or deductions.") (citing *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586-87 (5th Cir. 1980)).

[91] *JTH Tax , Inc. v. H&R Block Eastern Servs., Inc.*, 245 F. Supp.2d 749, 751 (E.D. Va. 2002) ("Legal authority dictates that only variable costs, and not fixed costs, are to be deducted from gross revenues to calculate profits.").

[92] *JTH Tax , Inc. v. H&R Block Eastern Servs., Inc.*, 245 F. Supp.2d 749, 752 (E.D. Va. 2002) (disallowing deduction where no proof of variable costs "attributed solely to [the product]"); *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, No. 3:07-cv-163, 2009 WL 2105933, at *3 (W.D.N.C. Jul. 13, 2009); *see also Capital Concepts, Inc. v. Mountain Corp.*, 936 F. Supp.2d 661, 673 (W.D. Va. 2013) (interpreting parallel scheme under the Copyright Act, "The

separating variable costs from fixed costs does not excuse Handi-Foil's burden to identify variable costs attributed solely to the infringing product.[93]   Overhead expenses are deductible only if Handi-Foil can demonstrate the expenses were of actual assistance in the production, distribution or sale of the infringing product.[94]   However, a proportionate share of overhead expenses would not be deductible if Handi-Foil's sales of the infringing product constitute only a small percentage of its overall sales.[95]

Finally, if you find infringement by Handi-Foil, and determine that Reynolds is entitled to Handi-Foil's profits, then Reynolds would be entitled all profits from the infringing sales.[96]

---

only expenses Defendants are entitled to deduct from revenues of the allegedly infringing t-shirts are those that they can show were actually increased by the production or sale of the t-shirts.").

[93] *JTH Tax , Inc. v. H&R Block Eastern Servs., Inc.*, 245 F. Supp.2d 749, 752 (E.D. Va. 2002) ("Defendants bear the burden, which they found impossible to meet (as did the Plaintiffs). *See* Tr. at 308, 800. The Court has considered Defendants' evidence of costs and finds that Defendants did not meet their burden of proof on several fronts. The Court cannot speculate what Defendants' variable costs might be and declines to reduce the damages award on something that is impossible to determine. Moreover, the Court will not permit Defendants the windfall opportunity to allocate their fixed costs to reduce an award for impermissibly obtained profits.").

[94] *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, No. 3:07-cv-163, 2009 WL 2105933, at *4 (W.D.N.C. Jul. 13, 2009) ("An award of infringer's profits is aimed in part at deterring infringements and in part at appropriately compensating the [trademark] holder. These goals ... can best be achieved by allowing a deduction for overhead only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product.") (quoting copyright case, *Kamar Int'l, Inc. v. Russ Berrie and Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984)).

[95] *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980) ("Furthermore, we note that a proportionate share of overhead is not deductible when the sales of an infringing product constitute only a small percentage of total sales.").

[96] *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 262 (1916) ("In the very nature of the case it would be impossible to ascertain to what extent he could have effected sales and at what prices except for the use of the trademark. No one will deny that on every principle of reason and justice the owner of the trademark is entitled to so much of the profit as resulted from the use of the trademark. The difficulty lies in ascertaining what proportion of the profit is due to the trademark, and what to the intrinsic value of the commodity; and as this cannot be ascertained with any reasonable certainty, it is more consonant with reason and justice that the owner of the trademark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 23

### WILLFUL INFRINGEMENT

Willful infringement occurs when a defendant has knowledge, either actual or constructive, that its actions constitute an infringement, or recklessly disregards a trademark owner's rights.[97]  Constructive knowledge is knowledge that a party should have known through the exercise of reasonable diligence.[98]

---

[97] *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (defining willfulness under the Copyright Act); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988) (abandoning statute- and context-specific definition of "willfulness" under the Fair Labor Standards Act in favor of general definition civil actions from prior Supreme Court cases to mean "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute"); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*) (adopting same definition for willful patent infringement, citing *Mclaughlin*).

[98] *Imagexpo, L.L.C. v. Microsoft Corp.*, 281 F. Supp.2d 846, 850 (E.D. Va. 2003) ("The period of delay begins at the time the patentee gains actual or constructive knowledge of the defendant's potentially infringing activities or when, in the exercise of reasonable diligence, he should have known of the defendant's allegedly infringing activities.").

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 24

## UNJUST ENRICHMENT

Reynolds also claims that Handi-Foil was unjustly enriched by its activities. To prove unjust enrichment, Reynolds must prove: (1) it conferred a benefit on Handi-Foil; (2) Handi-Foil knew of the benefit and should reasonably have expected to pay Reynolds; and (3) Handi-Foil accepted or retained the benefit without paying for its value.[99] Recovery for unjust enrichment is the reasonable value of the benefit incurred.[100] In other words, if you find Handi-Foil was unjustly enriched, you should award Reynolds as its damages the amount Handi-Foil would have expected to pay Reynolds for use of its trademark or trade dress.[101]

---

[99] *Schmidt v. Household Finance Corp. II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (Va. 2008) ("To state a cause of action for unjust enrichment Schmidt had to allege that: (1) he conferred a benefit on Household Finance; (2) Household Finance knew of the benefit and should reasonably have expected to repay Schmidt; and (3) Household Finance accepted or retained the benefit without paying for its value.").

[100] *Marine Development Corp. v. Rodak*, 225 Va. 137, 144, 300 S.E.2d 763, 767 (Va. 1983) ("The measure of recovery is the reasonable value of the services performed, and not the amount of benefit which actually accrued from them to him for whom they were performed.").

[101] *Marine Development Corp. v. Rodak*, 225 Va. 137, 144, 300 S.E.2d 763, 767 (Va. 1983) ("The measure of recovery is the reasonable value of the services performed, and not the amount of benefit which actually accrued from them to him for whom they were performed.").

WAI-3167589v1

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 25**

**UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
UNDER VIRGINIA LAW**

The test for unfair competition and trademark infringement under Virginia law is the same as the test applied under federal law, namely, is Handi-Foil's use of Reynolds' trademark and Handi-Foil's product packaging likely to confuse consumers as to the source of goods.[102]

---

[102] *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved.") (citations omitted)

WAI-3167589v1

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 26

### FALSE ADVERTISING UNDER VIRGINIA LAW

Reynolds has also alleged that Handi-Foil has engaged in false advertising under Virginia law.  Under Virginia law, false advertising is any non-oral promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, if the advertisement is made with the intent to sell or to induce the public in any manner to enter into any obligation.[103]

---

[103] Va. Code § 18.2-216; *AvePoint, Inc. v. Power Tools, Inc.*, 2013 WL 5963034, at *18 (W.D. Va. 2013) ("Count VII asserts a claim for false advertising under Virginia law. Virginia Code § 18.2–216 prohibits the use, in any advertisement, of 'any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading,' if the advertisement is made with the 'intent to sell' or 'to induce the public in any manner to enter into any obligation.' The Supreme Court of Virginia has held that the statute only applies to 'non-oral' advertisements.") (citations omitted).

41

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification to the following ECF participants:

> Brian N. Gross
> D. Sean Trainor
> Kirkland & Ellis LLP
> 655 15th St NW
> Suite 12
> Washington, DC 20005-5701
> brian.gross@kirkland.com
> dtrainor@kirkland.com
>
> *Attorneys for Defendant*
> *Handi-Foil Corporation*

The undersigned also certifies that a copy of the foregoing was served by electronic mail on the following non-filing users:

> David Callahan
> Ian J. Block
> Robin A. McCue
> Susan Lester
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> dcallahan@kirkland.com
> ian.block@kirkland.com
> rmccue@kirkland.com
> susan.lester@kirkland.com
>
>   /s/ John G. Froemming
> John G. Froemming (VSB No. 25319)
> JONES DAY
> 51 Louisiana Avenue, NW
> Washington, DC 20001
> Tel: (202) 879-3939
> Fax: (202) 626-1700
> Email: jfroemming@jonesday.com
> *Attorney for Plaintiff*
> *Reynolds Consumer Products LLC*

WAI-3167589v1