**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>HANDI-FOIL CORPORATION, )<br><br>Defendant. ) | Case No.: 1:13-cv-214 LO/TRJ |

**DEFENDANT HANDI-FOIL CORPORATION'S PROPOSED**
**<u>JURY INSTRUCTIONS AND SPECIAL VERDICT FORM</u>**

## TABLE OF CONTENTS

**PART I:  HANDI-FOIL'S PROPOSED PRELIMINARY INSTRUCTIONS ...................... 1**

PRELIMINARY INSTRUCTION NO. 1:  INTRODUCTORY REMARKS.................. 2

PRELIMINARY INSTRUCTION NO. 2:  ORDER OF TRIAL ...................................... 4

PRELIMINARY INSTRUCTION NO. 3:  CLAIMS AND DEFENSES ......................... 5

PRELIMINARY INSTRUCTION NO. 4:  BURDEN OF PROOF
        PREPONDERANCE ........................................................................... 6

PRELIMINARY INSTRUCTION NO. 5:  PROVINCE OF JUDGE AND JURY ........... 7

PRELIMINARY INSTRUCTION NO. 6:  EVIDENCE IN THE CASE ......................... 8

PRELIMINARY INSTRUCTION NO. 7:  JUROR USE OF ELECTRONIC
        TECHNOLOGY ................................................................................ 9

PRELIMINARY INSTRUCTION NO. 8:  CREDIBILITY OF THE WITNESS .......... 10

PRELIMINARY INSTRUCTION NO. 9:  ADVERSE WITNESSES ........................... 11

PRELIMINARY INSTRUCTION NO. 10:  EXPERT WITNESS ................................. 12

PRELIMINARY INSTRUCTION NO. 11:  DEFINITION OF "DIRECT" AND
        "CIRCUMSTANTIAL" EVIDENCE................................................... 13

PRELIMINARY INSTRUCTION NO. 12:  INFERENCES .......................................... 14

PRELIMINARY INSTRUCTIONS NO. 13:  RULINGS ON OBJECTIONS ............... 15

PRELIMINARY INSTRUCTIONS NO. 14:  BENCH CONFERENCES ..................... 16

PRELIMINARY INSTRUCTIONS NO. 15:  NOTE-TAKING PERMITTED.............. 17

PRELIMINARY INSTRUCTIONS NO. 16:  NO TRANSCRIPT AVAILABLE
        TO JURY ........................................................................................ 18

PRELIMINARY INSTRUCTION NO. 17:  QUESTIONS BY JURORS
        PROHIBITED................................................................................... 19

PRELIMINARY INSTRUCTION NO. 18:  NO INFERENCE FROM JUDGE'S
        QUESTIONS ................................................................................... 20

PRELIMINARY INSTRUCTION NO. 19:  JURY CONDUCT ................................... 21

**PART II:  HANDI-FOIL'S PROPOSED POST-TRIAL JURY INSTRUCTIONS.............22**

POST-TRIAL INSTRUCTION NO. 1:  GENERAL INTRODUCTION ........................23

POST-TRIAL INSTRUCTION NO. 2:  USE OF DEPOSITIONS AS
    EVIDENCE....................................................................................................24

POST-TRIAL INSTRUCTION NO. 3:  CONSIDERATION OF EVIDENCE...............25

POST-TRIAL INSTRUCTION NO. 4:  NOTE-TAKING.............................................26

POST-TRIAL INSTRUCTION NO. 5:  EVIDENCE ADMITTED FOR A
    LIMITED PURPOSE ONLY ..............................................................27

POST-TRIAL INSTRUCTION NO. 6:  INFERENCES ..................................................28

POST-TRIAL INSTRUCTION NO. 7:  DEFINITION OF "DIRECT" AND
    "CIRCUMSTANTIAL" EVIDENCE....................................................29

POST-TRIAL INSTRUCTION NO. 8:  NUMBER OF WITNESSES...........................30

POST-TRIAL INSTRUCTION NO. 9:  DISCREPANCIES IN TESTIMONY.............31

POST-TRIAL INSTRUCTION NO. 10:  IMPEACHMENT—INCONSISTENT
    STATEMENT OR CONDUCT............................................................32

POST-TRIAL INSTRUCTION NO. 11:  EFFECT OF PRIOR INCONSISTENT
    STATEMENTS OR CONDUCT..........................................................33

POST-TRIAL INSTRUCTION NO. 12:  EFFECT OF REFUSAL OF WITNESS
    TO ANSWER ....................................................................................34

POST-TRIAL INSTRUCTION NO. 13:  ALL AVAILABLE WITNESSES OR
    EVIDENCE NEED NOT BE PRODUCED .........................................35

POST-TRIAL INSTRUCTION NO. 14:  EXPERT WITNESSES.................................36

POST-TRIAL INSTRUCTION NO. 15:  CHARTS AND SUMMARIES......................37

POST-TRIAL INSTRUCTION NO. 16:  ORAL STATEMENTS OR
    ADMISSIONS ...................................................................................38

POST-TRIAL INSTRUCTION NO. 17:  DEMONSTRATIVE EXHIBITS...................39

POST-TRIAL INSTRUCTION NO. 18:  ANSWERS TO INTERROGATORIES.........40

POST-TRIAL INSTRUCTION NO. 19:  ELECTION OF FOREPERSON; DUTY
    TO DELIBERATE; COMMUNICATIONS WITH COURT;
    CAUTIONARY UNANIMOUS VERDICT; VERDICT FORM........................41

POST-TRIAL INSTRUCTION NO. 20:  COMMUNICATIONS BETWEEN
    COURT AND JURY DURING JURY'S DELIBERATIONS.............................. 42

POST-TRIAL INSTRUCTION NO. 21:  DISAGREEMENT AMONG JURORS ......... 43

POST-TRIAL INSTRUCTION NO. 22:  ELECTION OF FOREPERSON—
    VERDICT FORM ................................................................................................ 44

POST-TRIAL INSTRUCTION NO. 23:  BURDEN OF PROOF.................................... 45

POST-TRIAL INSTRUCTION NO. 24:   TRADEMARKS AND TRADE
    DRESS CLAIMS ................................................................................................ 46

POST-TRIAL INSTRUCTION NO. 25:  TRADEMARK INFRINGEMENT
    AND FALSE DESIGNATION OF ORIGIN—ELEMENTS OF CLAIMS ........ 48

POST-TRIAL INSTRUCTION NO. 26:  TRADE DRESS INFRINGEMENT—
    ELEMENTS OF CLAIM...................................................................................... 49

POST-TRIAL INSTRUCTION NO. 27:  TRADE DRESS INFRINGEMENT—
    FUNCTIONALITY ............................................................................................. 50

POST-TRIAL INSTRUCTION NO. 28:  TRADE DRESS INFRINGEMENT—
    INHERENTLY DISTINCTIVE ........................................................................... 51

POST-TRIAL INSTRUCTION NO. 29:  TRADE DRESS INFRINGEMENT—
    SECONDARY MEANING ................................................................................... 52

POST-TRIAL INSTRUCTION NO. 30:  STATE LAW TRADEMARK
    INFRINGEMENT—ELEMENTS OF CLAIM.................................................... 53

POST-TRIAL INSTRUCTION NO. 31:  COMMON LAW UNFAIR
    COMPETITION—ELEMENTS OF CLAIM........................................................ 54

POST-TRIAL INSTRUCTION NO. 32:  LIKELIHOOD OF CONFUSION—
    THE NINE FACTORS ........................................................................................ 55

POST-TRIAL INSTRUCTION NO. 33:  LIKELIHOOD OF CONFUSION—
    ABSENCE OF ACTUAL CONFUSION .............................................................. 56

POST-TRIAL INSTRUCTION NO. 34:  LIKELIHOOD OF CONFUSION—
    STRENGTH OF MARK—CROWDED FIELD .................................................... 57

POST-TRIAL INSTRUCTION NO. 35:  FEDERAL TRADEMARK
    DILUTION—ELEMENTS.................................................................................... 58

POST-TRIAL INSTRUCTION NO. 36:  FEDERAL TRADEMARK
    DILUTION—FAME ............................................................................................ 59

POST-TRIAL INSTRUCTION NO. 37:  FEDERAL TRADEMARK
DILUTION—DILUTION BY BLURRING ........................................................ 60

POST-TRIAL INSTRUCTION NO. 38:  FEDERAL TRADEMARK
DILUTION—DILUTION BY TARNISHMENT ................................................ 61

POST-TRIAL INSTRUCTION NO. 39:  UNJUST ENRICHMENT—
ELEMENTS OF CLAIM .................................................................................... 62

POST-TRIAL INSTRUCTION NO. 40:  FALSE ADVERTISING—ELEMENTS
OF CLAIM ......................................................................................................... 63

POST-TRIAL INSTRUCTION NO. 41:  FALSE ADVERTISING—
COMMERCIAL ADVERTISING AND PROMOTION .................................... 64

POST-TRIAL INSTRUCTION NO. 42:  FALSE ADVERTISING—LITERAL
OR IMPLIED FALSITY .................................................................................... 65

POST-TRIAL INSTRUCTION NO. 43:  FALSE ADVERTISING—
MATERIALITY ................................................................................................. 66

POST-TRIAL INSTRUCTION NO. 44:  AFFIRMATIVE DEFENSE—
WAIVER, ACQUIESCENCE, LACHES AND/OR ESTOPPEL ........................ 67

POST-TRIAL INSTRUCTION NO. 45:  EFFECT OF INSTRUCTIONS AS TO
DAMAGES ......................................................................................................... 68

POST-TRIAL INSTRUCTION NO. 46:  HANDI-FOIL'S PROFITS
(DISGORGEMENT) .......................................................................................... 69

POST-TRIAL INSTRUCTION NO. 47  COSTS AND ATTORNEYS' FEES ............... 70

**PART III: HANDI-FOIL'S PROPOSED SPECIAL VERDICT FORM ............................ 71**

## PART I:  HANDI-FOIL'S PROPOSED PRELIMINARY INSTRUCTIONS

**PRELIMINARY INSTRUCTION NO. 1:  INTRODUCTORY REMARKS**

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions.  Those instructions will control your deliberations.

One of my duties is to decide all questions of law and procedure.  From time to time during the trial and at the end of trial, I will instruct you on the rules of law that you must follow in making your decision.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

By your verdict, you will decide disputed issues of fact.  Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence.  You should avoid reading any news articles that might be published about the case.  You should also avoid watching or listening to any television or radio comments on the Internet about the trial.

The party who sues is called the plaintiff. In this action, the plaintiff is Reynolds Consumer Products LLC.  The party being sued is called the defendant.  In this action, the defendant is Handi-Foil Corporation.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received in to evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

From time to time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.  You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences

or conclusions from the question.   You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side of the other.[1]

---

[1]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:01 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.000 (2013); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 338 (2009) (citing NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.1 (2001); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil) (2004)); ELEVENTH CIRCUIT CIVIL PATTERN JURY INSTRUCTION § 1.1 (2013).

**PRELIMINARY INSTRUCTION NO. 2:  ORDER OF TRIAL**

The trial will proceed in the following manner:

First, Reynolds' attorney may make an opening statement. Next, Handi-Foil's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

After the opening statements, Reynolds will call witnesses and present evidence. Then, Handi-Foil will have an opportunity to call witnesses and present evidence. After the parties' main cases are completed, Reynolds may be permitted to present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.  What is said in closing arguments is not evidence.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then go to the jury room and decide the case.[2]

---

[2]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:02 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 338 (2009) (citing EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.06 (2001); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) (2004); NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.02 (2001)); *see also* United States District Court Eastern District of Virginia, Handbook for Trial Jurors, The Eight Staged of Trial (http://www.vaed.uscourts.gov/jury/trialhandbook.html#top).

**PRELIMINARY INSTRUCTION NO. 3:  CLAIMS AND DEFENSES**

In order to help you follow the evidence, I will now give you a brief summary of the positions of the parties.

The plaintiff, Reynolds, and the defendant, Handi-Foil, the parties to this case, both make and sell aluminum foil.  Reynolds sells Reynolds Wrap brand aluminum foil and Handi-Foil sells Handi-Foil brand aluminum foil.

Reynolds has sued Handi-Foil for trademark infringement, false designation of origin, trade dress infringement, trademark dilution, false advertising and unfair competition under the federal statute known as the Lanham Act based on the package designs of Handi-Foil's Handi-Foil brand aluminum foil and certain statements Handi-Foil and its independent sales representatives have made to sell these products to retailers, such as grocery stores.  Reynolds also has asserted claims of unjust enrichment, common law unfair competition and trademark infringement under Virginia state law.  Handi-Foil denies all of these claims.

On certain other issues, called affirmative defenses, Handi-Foil has the burden of proving the elements of its defense by a preponderance of the evidence.  Handi-Foil is asserting the affirmative defenses of failure to state a claim of damages, laches and/or estoppel, and the doctrine of unclean hands.

What I have just given you is only a preliminary outline.  At the end of trial I will give you a final instruction on these matters.  If there is any difference between what I just told you, and what I tell you in the instructions I give you at the end of the trial, the instructions given at the end of the trial govern.[3]

---

[3]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:03 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 339 (2009); ELEVENTH CIRCUIT CIVIL PATTERN JURY INSTRUCTION § 1.1 (2013).

**PRELIMINARY INSTRUCTION NO. 4:  BURDEN OF PROOF PREPONDERANCE**

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean:  When you have considered all of the evidence in this case, you must be persuaded that it is more probably true than not true.

This is a civil case and as such the Reynolds has the burden of proving the material allegations of its complaint.  Similarly, with respect to Handi-Foil's affirmative defenses, Handi-Foil has the burden to prove the material allegations of those counterclaims.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[4]

---

[4]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:41 (6th ed. 2011); John S. Siffert, *Modern Federal Jury Instructions* ¶ 73.01 (2007); Virginia Model Jury Instructions - Civil, Vol. 1 3.100 (2013); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTION § 1.27 (2009); ELEVENTH CIRCUIT CIVIL PATTERN JURY INSTRUCTION § 1.1 (2013).

**PRELIMINARY INSTRUCTION NO. 5:  PROVINCE OF JUDGE AND JURY**

       After all of the evidence has been heard and arguments and instructions are finished, you will need to make your decision.  You will determine the facts from all the testimony and other evidence that is presented.  You are the sole and exclusive judge of the facts.  I must stress that you must accept the rules of law that I give you, whether or not you agree with them.

       The law permits me to comment on the evidence in the case during the trial or while instructing the jury.  Such comments are only expressions of my opinion as to the facts.  You may disregard these comments entirely because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.[5]

---

[5]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:10 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 340 (2009).

**PRELIMINARY INSTRUCTION NO. 6:  EVIDENCE IN THE CASE**

The evidence in this case will consist of the following:

1.  The sworn testimony of the witnesses, no matter who called a witness.

2.  All exhibits received in evidence, regardless of who may have produced the exhibits.

3.  All facts that may have been judicially noticed and that you must take as true for purpose of this case.

Depositions may also be received in evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  In some cases, a deposition may be played for you on videotape.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.

A "stipulation" is an agreement between both sides that certain facts are true or that person would have given testimony.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witness.  In other words, you are not limited solely to what you see and hear as the witness testified.  You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of trial you will have to make your decision based on what you recall of the evidence.  You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony.  I urge you to pay close attention to the testimony as it is given.[6]

---

[6]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:40; 101.45 (6th ed. 2011).

**PRELIMINARY INSTRUCTION NO. 7:     JUROR USE OF ELECTRONIC TECHNOLOGY**

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  This means that during the trial you must not conduct any independent research about this case, the matters in this case, or the individuals or organizations involved in the case.  In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you retire to deliberate, you may begin discussion the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.  I hope that for all of you this case is interesting and noteworthy.  I know that many of you use cell phones, Blackberries, iPhones, the Internet and other tools of technology.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, My Space, LinkedIn and YouTube.[7]

---

[7]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:13 (6th ed. 2011).

**PRELIMINARY INSTRUCTION NO. 8:  CREDIBILITY OF THE WITNESS**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.[8]

---

[8]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:43 (6th ed. 2011); John S. Siffert, *Modern Federal Jury Instructions* ¶ 76.01 (2007); Virginia Model Jury Instructions - Civil, Vol. 1 2.020 (2013).

**PRELIMINARY INSTRUCTION NO. 9:  ADVERSE WITNESSES**

A party may call one or more of the other party's employees as an adverse witness. The party calling the adverse witness is bound by as much of the witness's testimony given as an adverse witness as is clear, logical, reasonable and uncontradicted.

The party is not bound by any of the witness's testimony given as an adversely conflicts with any of the other evidence in the case.[9]

---

[9]    Virginia Model Jury Instructions - Civil, Vol. 1 2.030 (2013) (modified).

**PRELIMINARY INSTRUCTION NO. 10:  EXPERT WITNESS**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession or calling.  Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.[10]

---

[10]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:4 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.040 (2013).

**PRELIMINARY INSTRUCTION NO. 11:    DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE**

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.

"Indirect or circumstantial" evidence is proof of a claim of facts and circumstance indicating the existence or nonexistence of a fact. The law generally makes no distinction between the weight or value given to either direct or circumstantial evidence.  A greater degree of certainty is not required of circumstantial evidence.  You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.[11]

---

[11]   Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013); Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:42 (6th ed. 2011).

**PRELIMINARY INSTRUCTION NO. 12:  INFERENCES**

You are to consider only the evidence in this case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.[12]

---

[12] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:20 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 341 (2009).

**PRELIMINARY INSTRUCTIONS NO. 13:  RULINGS ON OBJECTIONS**

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side believes the question or exhibit is not admissible under the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received into evidence.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been.  In addition, you must not consider evidence that I have ordered stricken from the record.[13]

---

[13]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:49 (6th ed. 2011).

**PRELIMINARY INSTRUCTIONS NO. 14:  BENCH CONFERENCES**

From time to time it may be necessary for me to talk to the lawyers out of your hearing. The purpose of these conferences is to decide how certain matters are to be treated under the rules of evidence.

We will, of course, do what we can to keep the number and length of these conferences to a minimum, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.[14]

---

[14]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:31 (6th ed. 2011); Seventh Circuit Federal Civil Jury Instructions Preliminary Instructions at 342 (2009) (citing Fifth Circuit Pattern Jury Instructions § 2.7 (Civil) (2004); Eighth Circuit Manual of Model Civil Jury Instructions § 1.03 (2001); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2000)).

**PRELIMINARY INSTRUCTIONS NO. 15:  NOTE-TAKING PERMITTED**

During this trial, I will permit you to take notes. You are not required to take notes.  If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

Because many courts do not permit note-taking by jurors, a word of caution is in order. You must not allow your note taking to distract you from the proceedings.

Frequently, there is a tendency to attach too much important to what a person writes down.  Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes to deciding this case.[15]

---

[15] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:15 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 1.07 (2009); EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.06 (2013).

**PRELIMINARY INSTRUCTIONS NO. 16: NO TRANSCRIPT AVAILABLE TO JURY**

At the end of the trial, you will have to make your decision based on what you remember about the evidence. You will not have a written transcript to read, and it is difficult and time-consuming for the reporter to read/play back testimony. I urge you to pay close attention to the testimony as it is presented at the trial.[16]

---

[16] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:20 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS at 343 (2009) (citing EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.04 (2001)).

**PRELIMINARY INSTRUCTION NO. 17:  QUESTIONS BY JURORS PROHIBITED**

I do not permit jurors to ask questions of witnesses or of the lawyers. Please do not interrupt the lawyers during their examination of witnesses.

If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that it is corrected.[17]

---

[17]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:18 (6th ed. 2011).

**PRELIMINARY INSTRUCTION NO. 18:   NO INFERENCE FROM JUDGE'S QUESTIONS**

During the trial, I may sometimes ask a witness questions.  Do not assume that because I ask questions I hold any opinion on the matters I ask about, or on how the case should be decided.[18]

---

[18]   SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 1.02 (2009).

**PRELIMINARY INSTRUCTION NO. 19: JURY CONDUCT**

To ensure fairness, all jurors must follow certain rules of conduct, and you must follow them, too.

1. Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3. Outside of the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4. During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5. Do not read any news stories or articles about this case, or about anyone involved with it, or listen to any radio or television reports about the case or anyone involved with it.

6. Do not do any research, such as checking dictionaries, or make any investigation about the case on your own.

7. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8. If you need to tell me something, simply give a signed note to the marshal to give to me.[19]

---

[19]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 101:11 (6th ed. 2011).

**PART II:  HANDI-FOIL'S PROPOSED POST-TRIAL JURY INSTRUCTIONS**

**POST-TRIAL INSTRUCTION NO. 1:  GENERAL INTRODUCTION**

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.

It is your duty to follow the law as I will state it.  You must apply the law to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

Nothing I say in these instructions indicates I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you and reach a just verdict, regardless of the consequences.[20]

---

[20] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 103:01 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 2:  USE OF DEPOSITIONS AS EVIDENCE**

During the trial, certain testimony has been presented to you by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented in writing under oath, or on a videotape.

Such testimony is entitled to the same consideration and is to be judged as to credibility, weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.[21]

---

[21] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105:02 (6th ed. 2011).

24

**POST-TRIAL INSTRUCTION NO. 3:  CONSIDERATION OF EVIDENCE**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

If I have taken judicial notice of a fact, you must accept it as true.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.[22]

---

[22]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 103:30 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 4:  NOTE-TAKING**

You may use the notes taken by you during the trial.  However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.[23]

---

[23]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 103:02 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 5:   EVIDENCE ADMITTED FOR A LIMITED PURPOSE ONLY**

Sometimes evidence may be admitted for a particular purpose and not generally for all purposes.  You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose.  You must consider this evidence only for the limited purpose for which it was admitted.[24]

---

[24] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 102:40 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 6:  INFERENCES**

You are to consider only the evidence in this case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.[25]

---

[25]   3  Kevin  F.  O'Malley,  Jay  Grenig,  and  William  C.  Lee,  *Federal  Jury  Practice  and Instructions* § 104:20 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 7:    DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE**

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.   "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.

"Indirect or circumstantial" evidence is proof of a claim of facts and circumstance indicating the existence or nonexistence of a fact. The law generally makes no distinction between the weight or value to given to either direct or circumstantial evidence.   A greater degree of certainty is not required of circumstantial evidence.   You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.[26]

---

[26]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:05 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 8:  NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.[27]

---

[27] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:54 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 9:  DISCREPANCIES IN TESTIMONY**

You are the sole judges of the credibility of witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matter as to which the witness has testified and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.[28]

---

[28] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105:01 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 10: IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's current testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown to have knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of the witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[29]

---

[29] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105:04 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 11:    EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT**

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness's testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness.   However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.[30]

---

[30]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105.09 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 12:   EFFECT OF REFUSAL OF WITNESS TO ANSWER**

The law requires every witness to answer all proper questions put to the witness at trial, unless I rule the witness is privileged to refuse to answer on constitutional or other grounds.

The fact a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and weight his or her testimony deserves.[31]

---

[31]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105:10 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 13:    ALL AVAILABLE WITNESSES OR EVIDENCE NEED NOT BE PRODUCED**

      The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue at this trial.   Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence of the case.[32]

---

[32]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 105:11 (6th ed. 2011)

**POST-TRIAL INSTRUCTION NO. 14:  EXPERT WITNESSES**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  There is an exception to this rule for "expert witnesses."  An expert witness is a person who by education and experience has become expert in some art, science, profession or calling.  Expert witnesses state their opinions as to matters in which they profess to be expert and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's is outweighed by other evidence, you may disregard the opinion entirely.[33]

---

[33]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:40 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 15:  CHARTS AND SUMMARIES**

Charts and summaries have been shown to you in order to help explain facts disclosed by books, records and other documents in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

The charts and summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.[34]

---

[34] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:50 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 16:  ORAL STATEMENTS OR ADMISSIONS**

Evidence as to any oral statements or admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care.   The person alleged to have made the alleged statement or admission may not have expressed clearly the meaning intended, or the witness testifying to an alleged admission may have misunderstood or may have misquoted what was actually said.

However, when an oral statement or admission made outside of court is proved by reliable evidence, the statement or admission may be treated as trustworthy and should be considered along with all other evidence in the case.[35]

---

[35]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:53 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 17:  DEMONSTRATIVE EXHIBITS**

Certain demonstrative exhibits have been shown to you, *e.g.*, models, diagrams, timelines, devices and sketches. Those exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.[36]

---

[36]   SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 1.24 (2009).

**POST-TRIAL INSTRUCTION NO. 18:  ANSWERS TO INTERROGATORIES**

Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party.  A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, the introducing party does not bind itself to those answers.  The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.[37]

---

[37]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:72 (6th ed. 2011); Virginia Model Jury Instructions - Civil, Vol. 1 2.100 (2013).

**POST-TRIAL INSTRUCTION NO. 19: ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY UNANIMOUS VERDICT; VERDICT FORM**

You must follow these rules while deliberating and returning your verdict.

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussions persuade you that you should. But do not make a decision simply because other jurors think it is right or simply to reach a verdict. Remember at all times that you are juries of the facts. Your sole interest is to seek the truth from the evidence in this case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember you should not tell anyone— including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law I have given to you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be-that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.[38]

---

[38] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 103:50 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 20: COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.[39]

---

[39] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 106:08 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 21:  DISAGREEMENT AMONG JURORS**

I have a few thoughts for you to consider in your deliberations.  You should consider these thoughts along with the evidence received during the trial and all the instructions previously given to you.

You should not surrender your honest beliefs as to the weight or effect of evidence solely because of the opinions of other jurors or for the mere purpose of returning a unanimous verdict.  However, it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violating individual judgment.  Each of you must decide the case for yourself, but you should do so only after a consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.

You are not partisans.  You are judges—judges of the facts.  Your sole interest here is to determine whether the plaintiff has proven each essential element of each claim concerning the defendant by a preponderance of the evidence.  You are the exclusive judges of the credibility of all the witnesses and of the weight and effect of all the evidence.

At all times no juror is expected to yield a conscientious belief that the juror may have as to the weight or effect of evidence.  Remember that, after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience.

You may conduct your deliberations as you choose, but I suggest you carefully reexamine and reconsider all the evidence in the case bearing upon the questions before you in the light of the Court's instructions on the law.

You may be as leisurely in your deliberations as the occasion may require and you may take all the time you may feel is necessary.[40]

---

[40]  3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 106:10 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 22:   ELECTION OF FOREPERSON—VERDICT FORM**

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesperson here in court.

Verdict forms have been prepared for your convenience.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree.  You will then return with your verdict to the courtroom.[41]

---

[41]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 106:04 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 23:  BURDEN OF PROOF**

As I instructed you at the beginning of trial, Reynolds has the burden to prove every essential element of each of its claims by a preponderance of the evidence.  If Reynolds should fail to establish any essential element of any particular claim by a preponderance of the evidence you should find for Handi-Foil as to that claim.[42]

---

[42] 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 104:01 (6th ed. 2011); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 1.27 (2009).

**POST-TRIAL INSTRUCTION NO. 24:   TRADEMARKS AND TRADE DRESS CLAIMS**

Reynolds claims that Handi-Foil has infringed Reynolds' trademark and trade dress.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

A trade dress is a type of trademark used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product. The term "trade dress" refers to the total image of a product, product packaging, product label, product design, or a combination of these things. It includes features such as size, shape, color or color combinations, texture, graphics, or particular sales techniques.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark and trade dress owners to show ownership of their products and control their product's reputation.[43]

Reynolds claims that Handi-Foil infringed Reynolds' trademarks and trade dress for the design of the Reynolds Wrap package by adopting the package designs Handi-Foil has used on its packages of Handi-Foil brand aluminum roll foil.

Reynolds claims that the following elements make up its protectable trade dress:[44]

a. The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

b. The use of the color scheme – the blue and pink sections run left to right;

c. The use of prominent lettering to display the brand name within the blue section on the front of the box;

d. The use of silver bands to separate the blue from the pink sections of the front of the box;

e. The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

f. The inclusion that "FOIL MADE IN U.S.A." in silver lettering on the front of the box;

g. The repetition of the color scheme and type on the ends of the box;

---

[43] SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 13.1.1 (2009); 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:4 (4th ed. 2014).

[44] June 11, 2013 Reynolds' First Amended Responses to Handi-Foil's First Set of Interrogatories, No. 1.

h. The use of the "press here to lock" feature on the ends of the boxes;

i. The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

j. The use of the "Lift" graphic to indicate how to open the box;

k. The positioning of REYNOLDS WRAP on the top flap of the box; and

l. The color (yellow), placement, and text used to caution the consumer.

**POST-TRIAL INSTRUCTION NO. 25:   TRADEMARK INFRINGEMENT AND FALSE
DESIGNATION OF ORIGIN—ELEMENTS OF CLAIMS**

Reynolds claims that Handi-Foil infringed Reynolds' registered trademarks and falsely
designated the origin of its products.  To prevail under either cause of action, Reynolds must
prove by a preponderance of the evidence that:

1.   Reynolds owns a valid, protectable trademark;

2.   Reynolds trademark became unique associated with Reynolds as the source of the
aluminum foil packages prior to 2011;

3.   Handi-Foil used Reynolds trademark without the consent of Reynolds that is likely to
cause confusion among ordinary purchasers as to the source of the goods;

4.   Reynolds was damages by Handi-Foil's use of its trademark.[45]

_____

[45]   15 U.S.C. §§ 1114, 1125; *Lamparello v. Falwell*, 420 F.3d 309, 312-13 (4th Cir. 2005)
(finding judgment of noninfringement).

**POST-TRIAL INSTRUCTION NO. 26:   TRADE DRESS INFRINGEMENT—ELEMENTS OF CLAIM**

To prove its claim for trade dress infringement, Reynolds must prove by a preponderance of the evidence that:

1. Reynolds' trade dress is primarily non-functional;

2. The alleged infringement creates a likelihood of confusion; and

3. The trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning.[46]

---

[46] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999); *X-IT Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 617 (E.D. Va. 2001).

**POST-TRIAL INSTRUCTION NO. 27:     TRADE DRESS INFRINGEMENT— FUNCTIONALITY**

Reynolds has the burden of establishing that the trade dress elements it claims are not functional.  A product design or feature is functional if it is essential to the use or purpose of the product or it affects the cost or quality of the article.  Instructions are inherently functional.[47]

---

[47] *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 640 (6th Cir. 2002); *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 376 (4th Cir. 1999); *see e.g.*, *Close To My Heart, Inc. v. Enthusiast Media LLC*, 508 F. Supp. 2d 963, 970 (D. Utah 2007) ("informational instruction on how to put together a scrap book page [claimed as trade dress]" are functional); *E-Z Bowz, L.L.C. v. Prof. Prod. Res. Co., Inc.*, No. 00 Civ. 9670(LTS)GWG, 2003 WL 22068573, at *23 (S.D.N.Y. Sept. 5, 2003) ("instructions are inherently functional"); Seventh Circuit Federal Civil Jury Instructions, trademark/trade dress infringement at 310 (2009).

**POST-TRIAL INSTRUCTION NO. 28:    TRADE DRESS INFRINGEMENT— INHERENTLY DISTINCTIVE**

In order to demonstrate its trade dress is inherently distinctive, Reynolds must prove by a preponderance of the evidence that consumers would be impressed enough by its trade dress that if they were to see something sufficiently like it, it would be reasonable for them to assume either that is exactly the same product (and therefore implicitly the product of the same producer) or that it was different product made by the same producer.  For example, a basic overall design that is common or simply a refinement of a commonly-adopted and well-known design cannot be inherently distinctive.

An inherently distinctive trade dress is one that consumers would almost automatically recognize as identifying a particular brand or source of the product. To determine whether the Reynolds Wrap package design is inherently distinctive, you should consider it as a whole. Some of the factors you may consider are:

- Whether the Reynolds Wrap package design is a common basic design (which suggests that the trade dress is not inherently distinctive), or instead is an uncommon design (which suggests that the trade dress is inherently distinctive); and

- Whether the Reynolds Wrap package design is unique or unusual in a particular field (which suggests that the trade dress is inherently distinctive), or instead is common in that field (which suggests that the trade dress is not inherently distinctive).[48]

---

[48] *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 372-73 (4th Cir. 1999); *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) ("The attribution of inherent distinctiveness to certain categories of word marks and product packaging derives from the fact that the very purpose of attaching a particular word to a product, or encasing it in a distinctive packaging, is most often to identify the source of the product."); *Devan Designs, Inc. v. Palliser Furniture Corp.*, No. 2:91CV00512, 1992 WL 511694, at *6 n.2 (M.D.N.C. 1992) (the test for inherent distinctiveness is to ask "whether the trade dress is a common basic design, unique or unusual and merely a refinement of a well-known form; furniture design held not inherently distinctive"); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS § 13.1.2.2.2 (2009).

**POST-TRIAL INSTRUCTION NO. 29:   TRADE DRESS INFRINGEMENT—SECONDARY MEANING**

Reynolds has the burden of establishing its trade dress has acquired secondary meaning if it is non-functional and not inherently distinctive.  Secondary meaning is developed over time, and in the minds of the public the trade dress must be the primary identifier of the source of the product.  It is difficult to achieve secondary meaning if a design is common among the market of other sellers of aluminum foil.

Reynolds must demonstrate that: (1) a substantial portion of the consuming public (who buy or use or consider or using the product) identifies Reynolds' trade dress with a particular source; and (2) Reynolds' trade dress acquired the secondary meaning prior to when Handi-Foil allegedly began infringing Reynolds' trade dress.[49]

---

[49]   *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); 1 McCarthy on Trademarks and Unfair Competition § 8:11:50 (4th ed. 2014).

**POST-TRIAL INSTRUCTION NO. 30:   STATE LAW TRADEMARK INFRINGEMENT—ELEMENTS OF CLAIM**

To prove a claim of trademark infringement under state law, Reynolds must demonstrate that Handi-Foil (1) used the mark in a manner likely to cause a consumer confusion, mistake, or deception as to the source of origin of any goods or services, without the consent of the owner of a registered mark, any reproduction, counterfeit, copy or colorable imitation of registered mark in connection with the sale, offering for sale, distribution, or advertising of such goods or services or (2) reproduces, counterfeits, copies or colorable imitates a registered mark and applies such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, advertisements or any item intended to be used in a manner likely to cause a consumer confusion, mistake or deception as to the source or origin of any goods or services in connection with the sale, offering for sale, distribution or advertising of such goods or services shall be liable in a civil action by the owner of a registered mark.

Virginia state law requires a finding of likelihood of confusion to prove trademark infringement.[50]

---

[50]   Va. Code Ann. § 59.1-92.12(i); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162-63 (4th Cir. 2014).

**POST-TRIAL INSTRUCTION NO. 31:   COMMON LAW UNFAIR COMPETITION—
ELEMENTS OF CLAIM**

      Virginia common law unfair competition claim requires the same proof, including likelihood of confusion, as the Lanham Act offenses.[51]

---

[51] *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162-63 (4th Cir. 2014); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n. 10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as the source of the goods or services involved.").

**POST-TRIAL INSTRUCTION NO. 32:   LIKELIHOOD OF CONFUSION—THE NINE FACTORS**

Likelihood of confusion is an element that Reynolds must prove in order to succeed on its claims for trademark infringement, false designation of origin and trade dress infringement.  The same likelihood of confusion analysis applies to Reynolds' claims for trademark infringement, false designation of origin and trade dress infringement.

A likelihood of confusion exists between two marks or trade dress if Handi-Foil's package design is likely to cause confusion in the minds of consumers about the source or origin of the goods or services in question.

To determine if there is a likelihood of confusion, you should consider the following nine factors:

1.  The strength or distinctiveness of the plaintiff's mark as actually used in marketplace;

2.  The similarity of the two marks to consumers;

3.  The similarity of the goods or services that the marks identify;

4.  The similarity of the facilities used by the markholders;

5.  The similarity of advertising used by the markholders;

6.  The defendant's intent;

7.  Actual confusion;

8.  The quality of the defendant's product; and

9.  The sophistication of the consuming public.

These nine factors serve as a guide rather than "a rigid formula for infringement"; they are not all of equal importance and not all factors are relevant in every case.[52]

---

[52]   *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158-89 (4th Cir. 2014); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); SEVENTH CIRCUIT FEDERAL CIVIL JURY INSTRUCTIONS, TRADEMARK/TRADE DRESS INFRINGEMENT at 312 (2009).

**POST-TRIAL INSTRUCTION NO. 33:   LIKELIHOOD OF CONFUSION—ABSENCE OF ACTUAL CONFUSION**

Absence of any evidence of actual confusion over a substantial period of time creates a strong inference that there is no likelihood of confusion.  Generally, whether or not there is confusion is considered the most important factor in a likelihood of confusion analysis.[53]

---

[53]   *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (actual confusion factor is considered the "most important factor" in a likelihood of confusion analysis "and that the 'absence of any evidence of actual confusion over a substantial period of time … creates a strong inference that there is no likelihood of confusion"); *George & Co. v. Imagination Entm't Ltd.,* 575 F.3d 383, 399 (4th Cir. 2009); *CareFirst of Md. Inc. v. First Care, P.C.*, 434 F.3d 263, 268-69 (4th Cir. 2005) ("[E]vidence of action confusion is 'often paramount' in the likelihood-of-confusion analysis."); ELEVENTH CIRCUIT CIVIL PATTERN JURY INSTRUCTIONS at 656-57 (2013).

**POST-TRIAL INSTRUCTION NO. 34:   LIKELIHOOD OF CONFUSION—STRENGTH OF MARK—CROWDED FIELD**

The fact that there are other third-party users of similar marks on similar product is relevant to the alleged strength of Reynolds' mark and is known as the crowded field doctrine. The crowded field doctrine applies when there are numerous similar marks in the same industry. If a crowded field exists, then each mark in that crowd is a relatively weak mark and is weak in its ability to prevent use by others in the crowd.[54]

---

[54] *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. WDQ-08-2764, 2011 WL 862729, at *10-11 (D. Md. Mar. 10. 2011) (third-party use of trademarks is relevant to the strength of the mark); *see JL Beverage Co., LLC v. Beam, Inc.*, 899 F. Supp. 2d 991, 1000 (D. Nev. 2012) (finding that a crowded field existed in a beverage industry and weakened the mark); *Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1231-32 (D. Kan. 2008) (noting that "third-party use of a mark is admissible"); *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1036-37 (N.D. Ca. 2003) (finding that plaintiff did not establish a threshold likelihood of confusion because it found that the market place was replete with products using similar names); 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:85 (4th Ed. 2013) (a crowded field weakens a mark).

**POST-TRIAL INSTRUCTION NO. 35:    FEDERAL TRADEMARK DILUTION— ELEMENTS**

To prevail on its dilution claim, Reynolds has the burden of proving each of the following by a preponderance of the evidence as to each of Reynolds' marks and trade dress:

1.  Reynolds owns a valid, protectable mark;

2.  Reynolds' mark is famous and it became famous before 2012;

3.  Reynolds mark is distinctive, either inherently or acquired through use;

4.  Handi-Foil commenced use in commerce of a mark different than Reynolds on its own goods after Reynolds mark became famous; and

5.  Handi-Foil's use of its mark is likely to cause dilution of Reynolds' mark by blurring or tarnishment.[55]

---

[55]  15 U.S.C. § 1125(c); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 264-65 (4th Cir. 2007); *see Tiffany Inc. v. eBay Inc.*, No. 08-3947-cv, 2010 WL 1236315, at *15 (2d. Cir. Apr. 1, 2010) (in order to sustain a claim for dilution, defendant must (1) use a different mark than that of plaintiff and (2) sell the goods itself).

**POST-TRIAL INSTRUCTION NO. 36:  FEDERAL TRADEMARK DILUTION—FAME**

In order to demonstrate that dilution occurred, Reynolds must prove that a mark is famous.  Under the Lanham Act a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of mark's owner.  To determine whether a mark is famous, you should consider the following factors:

1. The duration, extent and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner of third parties;

2. The amount, volume and geographic extent of sales of goods or services offered under the mark; and

3. The extent of actual recognition of the mark.[56]

Reynolds' mark is not strong enough to be diluted by Handi-Foil's use if it has already been weakened by third party uses.[57]

---

[56]  15 U.S.C. § 1125(c)(2)(A); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 264-65 (4th Cir. 2007); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §24:106 (4th ed. 2014) (suggesting that for a mark to be famous it must have at least 75% awareness in a survey of the general consuming public).

[57]  *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d. Cir. 1999), as reprinted in *Jury Instructions in Intellectual Property Cases*, Duane Burton, § 30:51:15.

**POST-TRIAL INSTRUCTION NO. 37:   FEDERAL TRADEMARK DILUTION—DILUTION BY BLURRING**

Under the Lanham Act there are two types of dilution.  The first one is "dilution by blurring."  Dilution by blurring is the association arising from the similarity between a mark or trade name and a famous mark and impairs the distinctiveness of the famous mark.  To determine whether a mark or trade name is likely to cause dilution by blurring, you should consider the following:

1. The degree of similarity between the mark or trade name and the famous mark;

2. The degree of inherent or acquired distinctiveness of the famous mark;

3. The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;

4. The degree of recognition of the famous mark;

5. Whether the user of the mark or trade name intended to create an association with the famous mark; and

6. Any actual association between the mark or trade name and the famous mark.[58]

---

[58]   15 U.S.C. § 1125(c)(2)(B); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 266 (4th Cir. 2007).

**POST-TRIAL INSTRUCTION NO. 38:   FEDERAL TRADEMARK DILUTION—DILUTION BY TARNISHMENT**

The second type of dilution is "dilution by tarnishment."  Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.[59]

---

[59]  15 U.S.C. § 1125(c)(2)(C); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 268 (4th Cir. 2007) (dilution by tarnishment is defined as "the association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark").

**POST-TRIAL INSTRUCTION NO. 39:   UNJUST ENRICHMENT—ELEMENTS OF CLAIM**

To prove unjust enrichment, Reynolds must demonstrate three elements: (1) Reynolds conferred a benefit on Handi-Foil; (2) Handi-Foil knew of the benefit and should reasonably have expected to repay Reynolds; and (3) Handi-Foil accepted or retained the benefit without paying its value.[60]

---

[60]   *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 165-66 (4th Cir. 2012).

**POST-TRIAL INSTRUCTION NO. 40:  FALSE ADVERTISING—ELEMENTS OF CLAIM**

Under the federal statue, the Lanham Act, it is unlawful in commercial advertising or promotion for a corporation to use either a false description of fact or a misleading description of fact that misrepresents the nature, characteristics or qualities of its or another company's goods, services or commercial activities.

A party claiming either a false advertising or a misleading advertising must prove by a preponderance of the evidence:

1. That the advertiser made either a false statement or a misleading statement as to its own products or another's;

2. That there is actual deception or at least the tendency to deceive a substantial portion of the intended audience;

3. That the deception is material, in that it is likely to influence the purchasing decision;

4. That the advertised goods traveled in interstate commerce; and

5. That there is a likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc.

In its claim for false advertising under the Lanham Act, Reynolds may establish Handi-Foil's liability by proving that the alleged statements are literally false.  To be literally false, the falsity must be evident on the face of the advertisement.

Alternatively, Reynolds may establish Handi-Foil's liability by proving that the alleged statements are literally true descriptions of Handi-Foil, they nevertheless have a tendency to mislead, confuse or deceive a substantial number of aluminum foil purchasers about its aluminum foil. Reynolds has the burden of demonstrating how consumers interpret the alleged statements and must submit evidence to that effect.

In determining whether the alleged statements have a tendency to mislead, confuse or deceive, you should not ask whether you yourself would be misled.  You should determine if the ordinarily consumers of aluminum foil are likely to be misled, confused or deceived.  The Lanham Act does not require that a false or misleading statement be made with intent to mislead, confuse, or deceive.[61]

---

[61]  15 U.S.C. § 1125(a); *PBM Prods., LLC v. Mead Johnson & Co.*, No. 3:09-CV-269, 2010 WL 723750, at *3 (E.D. Va. Mar. 2, 2010); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1182 (8th Cir. 1998).

**POST-TRIAL INSTRUCTION NO. 41:   FALSE ADVERTISING—COMMERCIAL ADVERTISING AND PROMOTION**

Commercial advertising and promotion is any commercial statement made for the purpose of influencing consumers to buy products or services, provided that such promotion is communicated to the relevant purchasing public.   Commercial advertising is not limited to newspaper, magazine, radio and television advertising and can include more informal types of "promotion;" however, it must be disseminated sufficiently to the relevant purchasing public. Further, an accused statement must be part of an organized campaign to penetrate the relevant market.[62]

---

[62]   15 U.S.C. §1125(a)(1)(B); *Applied Med. Res. Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002); *Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 275 (D. Md. 2001).

**POST-TRIAL INSTRUCTION NO. 42:   FALSE ADVERTISING—LITERAL OR IMPLIED FALSITY**

To establish that Handi-Foil's claims are misleading representations that deceive or are likely to deceive the intended audience, Reynolds must either show (1) that representations made by Handi-Foil are literally false or (2) that consumers are likely to find the claims made by Handi-Foil misleading because it implies a false message.

If Reynolds proved literal falsity, there is no need to show that the buying public was misled.

If Handi-Foil's statements are literally true, yet deceptive, Reynolds must prove that there is either actual deception or a tendency to mislead consumers.[63]

---

[63] *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

**POST-TRIAL INSTRUCTION NO. 43:  FALSE ADVERTISING—MATERIALITY**

To establish that deception is "material," the plaintiff must present evidence proving that the advertising claims at issue are likely to influence the purchasing decision of consumers.[64]

---

[64] *PBM Prods., LLC v. Mead Johnson & Co.*, No. 3:09-CV-269, 2010 WL 723750, at *3 (E.D. Va. Mar. 2, 2010); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27.35 (4th ed. 2014).

**POST-TRIAL INSTRUCTION NO. 44: AFFIRMATIVE DEFENSE—WAIVER, ACQUIESCENCE, LACHES AND/OR ESTOPPEL**

Handi-Foil asserts an affirmative defense known as "laches."  Laches may be applied in trademark cases to deny relief to Reynolds who though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress.

For Handi-Foil to prevail on its defense of laches, Handi-Foil must prove by a preponderance of the evidence that (1) Reynolds knew of the infringing use; (2) Reynolds failed to exercise due diligence and delayed inexcusably in instituting this action; and (3) Handi-Foil was prejudiced by that delay.

Reynolds' trademark infringement action may also be barred by acquiescence if it is found that Reynolds, as the trademark owner, conveyed to the defendant through affirmative act or deed, expressly or impliedly consents to the infringement.

To prevail on its claim of estoppel, Handi-Foil must prove that: (1) Handi-Foil's lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Handi-Foil's reliance, in good faith, upon Reynolds' misleading conduct or false representations; and (3) Handi-Foil's changes in position based thereon to Handi-Foil's injury, detriment or prejudice.[65]

---

[65] *What-A-Burger v. Whataburger, Inc.* 357 F.3d 441, 449 (4th Cir. 2004); *Oylmpia Wreke Aktiengesellschaft v. Gen. Elec. Co.*, 545 F. Supp. 598, 611 (W.D. Va. 1982); 4 J. McCarthy, MCCARTHY ON TRADEMARK AND UNFAIR COMPETITION §§ 31.02, 31:12, 31.14 (3d ed. 2014).

**POST-TRIAL INSTRUCTION NO. 45:   EFFECT OF INSTRUCTIONS AS TO DAMAGES**

The fact I am about to instruct you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of the plaintiff from a preponderance of the evidence in the case in accordance with the other instructions.[66]

---

[66]   3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice and Instructions* § 106:02 (6th ed. 2011).

**POST-TRIAL INSTRUCTION NO. 46:  HANDI-FOIL'S PROFITS (DISGORGEMENT)**

Reynolds seeks to recover the profits Handi-Foil gained from infringing Reynolds' asserted trademarks and trade dress, also referred to as disgorgement.  Reynolds, if successful, is not automatically entitled to an award of Handi-Foil's profits attributable to the infringement. Reynolds must prove by the preponderance of the evidence that such an award would be reasonable.

In determining whether or not to make such an award, you may consider whether or not the infringement caused Reynolds to lose sales of its own products, whether actual confusion in the marketplace has occurred, whether Handi-Foil's conduct was intentionally wrongful, and whether or not Reynolds promptly asserted its claim.

Profit is determined by deducting expenses from gross revenue.

Reynolds is required only to prove Handi-Foil's gross revenue.  Handi-Foil is required to prove any expenses that it argues should be deducted in determining its profits.

Although Reynolds may be awarded Handi-Foil's profits, it is only awarded those profits it can prove are due to the allegedly infringing activity.  Reynolds is only entitled to the amount of sales made to consumers who purchased any of the allegedly infringing Handi-Foil products because of either Reynolds' trademarks or trade dress.  Thus, if you find that a portion of the sales of any infringing goods are attributable to factors other than the accused trade dress, then you may appropriation the amount of profits that you find to be attributable to that accused trade dress.[67]

---

[67]   15 U.S.C. § 1117(a); *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 n.13 (4th Cir. 2006) (applying factors for determining award of lost profit damages under Lanham Act); *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 361 n. 2, 362 (E.D.N.Y. 2010); *Gucci Am., Inc. v. Daffy's*, 354 F.3d 228, 246-47 (3rd Cir. 2003) ("An award of the infringer's profits seeks to make the trademark owner whole for losses sustained by the plaintiff as a result of infringer's use of something that did not belong to him."); *see Quik Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002); *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1092-93, 1096 (7th Cir. 1994) ("The variety of circumstances in which a court *may*  award disgorgement by no means indicate that the district court is required to award disgorgement." (emphasis in original)); *Life Indus. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926, 933 (E.D.N.Y. 1993) (damage award only awarded if both causation and amount is sufficiently shown).

**POST-TRIAL INSTRUCTION NO. 47:  COSTS AND ATTORNEYS' FEES**

In a trademark infringement or false advertising case under the Lanham Act, a prevailing party (*i.e.*, the party that wins) can recover its attorneys' fees and costs of the action, which include such things as filing fees and copy fees.  These fees and costs should only be awarded in exceptional cases.

If Reynolds prevails, the case could be deemed "exceptional" if you find that Reynolds has demonstrated that Handi-Foil's conduct was malicious, fraudulent, willful or deliberate in nature.  If you make these findings, you may, but are not required to, assess costs and attorneys' fees against Handi-Foil for its willful, deliberate, or intentional violations of the Lanham Act, or for Handi-Foil's litigation misconduct.

If Handi-Foil prevails, the case could be deemed "exceptional" if you find that Reynolds was guilty of abuse of process in suing Handi-Foil in this action.  If you make this finding, you may, but are not required to, assess costs and attorneys' fees against Reynolds for its litigation misconduct.[68]

---

[68]   15 U.S.C. § 1117(a); *Nightingale Home Healthcare v. Anodyne Therapy*, 626 F. 3d 958, 963-64 (7th Cir. 2010); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001); *Shell Oil Co. v. Comm. Petroleum, Inc.*, 928 F.2d 104, 108 n.6 (4th Cir. 1991).

**PART III: HANDI-FOIL'S PROPOSED SPECIAL VERDICT FORM**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:13-cv-214 LO/TRJ |
| HANDI-FOIL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## SPECIAL VERDICT FORM

We, the jury, for our special verdict, do find as follows:

## I.   TRADEMARK INFRINGEMENT

Question No. 1:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' registered trademarks?



*Answer:*

Yes_____          No_____

<u>Question No. 2</u>:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' registered trademarks?



>    *Answer:*

>        Yes_____        No_____

<u>Question No. 3</u>:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' registered trademarks?



>    *Answer:*

>        Yes_____        No_____

<u>Question No. 4</u>:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' registered trademarks?



>    *Answer:*

>        Yes_____        No_____

**Please proceed to Question 5.**

## II.     TRADE DRESS INFRINGEMENT

<u>Question No. 5</u>:  Has Reynolds proven by a preponderance of the evidence that the asserted trade dress that consists of the following claimed elements is both (1) non-functional and (2) inherently distinctive or has acquired secondary meaning:

a. The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

b. The use of the color scheme – the blue and pink sections run left to right;

c. The use of prominent lettering to display the brand name within the blue section on the front of the box;

d. The use of silver bands to separate the blue from the pink sections of the front of the box;

e. The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

f. The inclusion that "FOIL MADE IN U.S.A." in silver lettering on the front of the box;

g. The repetition of the color scheme and type on the ends of the box;

h. The use of the "press here to lock" feature on the ends of the boxes;

i. The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

j. The use of the "Lift" graphic to indicate how to open the box;

k. The positioning of REYNOLDS WRAP on the top flap of the box; and

l. The color (yellow), placement, and text used to caution the consumer.

*Answer:*

       Yes_____          No_____


**If you answered "Yes" to Question 5, then you must answer Questions 6-9.  If you answered "No" to Question 5, then proceed to the Note before Question 10**.

<u>Question No. 6</u>:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' trade dress?



*Answer:*

Yes_____          No_____


<u>Question No. 7</u>:  Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' trade dress?



*Answer:*

Yes_____          No_____


<u>Question No. 8</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' trade dress?



*Answer:*

Yes_____          No_____

<u>Question No. 9</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below infringes Reynolds' trade dress?



    *Answer:*

        Yes_____       No_____

**Please proceed to the Note before Question 10.**

III.    **PROFITS**


**NOTE: Only answer Question 10 if you answered "Yes" to one or more of Questions 1-4 or Questions 6-9.  If you answered "No" to Questions 1-4 and Questions 6-9, proceed to Question 12.**


Question No. 10: Has Reynolds proven by a preponderance of the evidence that it is entitled to recover Handi-Foil's profits due to Handi-Foils trademark or trade dress infringement?

   *Answer:*

            Yes_____          No_____


**If you answered "Yes" to Question 10, then you must answer Question 11.  If you answered "No" to Question 10, proceed to Question 12.**


Question No. 11: What amount of Handi-Foil's profits do you find that Reynolds is entitled to recover due to Handi-Foils trademark or trade dress infringement?

   *Answer*:

      $_____


**Please proceed to Question 12.**

## IV.    DILUTION

<u>Question 12</u>: Has Reynolds proven by a preponderance of the evidence that its registered trademarks are famous?

    *Answer:*

        Yes_____            No_____

**If you answered "Yes" to Question 12, then you must answer Question 13.  If you answered "No" to Question 12, proceed to Question 22.**

<u>Question 13</u>: Has Reynolds proven by a preponderance of the evidence that its registered trademarks are inherently distinctive or has acquired secondary meaning?

    *Answer:*

        Yes_____            No_____

**If you answered "Yes" to Question 13, then you must answer Questions 14-21.  If you answered "No" to Question 12, proceed to Question 22.**

<u>Question 14</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by blurring?



    *Answer:*

        Yes_____            No_____

<u>Question 15</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by blurring?



*Answer:*

       Yes_____        No_____

<u>Question 16</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by blurring?



*Answer:*

       Yes_____        No_____

<u>Question 17</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by blurring?



*Answer:*

       Yes_____        No_____

<u>Question 18</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by tarnishment?



 *Answer:*

   Yes_____   No_____

<u>Question 19</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by tarnishment?

 *Answer:*

   Yes_____   No_____

Question 20: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by tarnishment?



   *Answer:*

   Yes_____          No_____


Question 21: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' registered trademarks by tarnishment?



   *Answer:*

   Yes_____          No_____


**Please proceed to Question 22.**

10

<u>Question 22</u>: Has Reynolds proven by a preponderance of the evidence that its asserted trade dress that contains the following claimed elements is famous?

a. The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

b. The use of the color scheme – the blue and pink sections run left to right;

c. The use of prominent lettering to display the brand name within the blue section on the front of the box;

d. The use of silver bands to separate the blue from the pink sections of the front of the box;

e. The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

f. The inclusion that "FOIL MADE IN U.S.A." in silver lettering on the front of the box;

g. The repetition of the color scheme and type on the ends of the box;

h. The use of the "press here to lock" feature on the ends of the boxes;

i. The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

j. The use of the "Lift" graphic to indicate how to open the box;

k. The positioning of REYNOLDS WRAP on the top flap of the box; and

l. The color (yellow), placement, and text used to caution the consumer.

*Answer:*

Yes_____        No_____

**If you answered "Yes" to Question 22, then you must answer Question 23.  If you answered "No" to Question 22, proceed to Question 32.**

<u>Question 23</u>: Has Reynolds proven by a preponderance of the evidence that its asserted trade dress that consists of the following claimed elements is inherently distinctive or has acquired secondary meaning?

a. The color scheme – the majority of the box is a bright shade of blue, called "reflex blue," created specifically for Reynolds, and the rest of the front of the box is a shade of pink that is slightly darker than PMS 486;

b. The use of the color scheme – the blue and pink sections run left to right;

c. The use of prominent lettering to display the brand name within the blue section on the front of the box;

d. The use of silver bands to separate the blue from the pink sections of the front of the box;

e. The placement of the quantity information (square footage) in the pink section on the right side front of the box, using bold type written in blue, and including, in white lettering, the number of yards by inches and the total meters, broken down into the number of meters by millimeters;

f. The inclusion that "FOIL MADE IN U.S.A." in silver lettering on the front of the box;

g. The repetition of the color scheme and type on the ends of the box;

h. The use of the "press here to lock" feature on the ends of the boxes;

i. The use of graphics with how-to information showing how to "Wrap food to keep it fresh & to prevent freezer burn," "Line pans before cooking to make cleanup easy," and "Cover bowls to help keep food moist & prevent splatters";

j. The use of the "Lift" graphic to indicate how to open the box;

k. The positioning of REYNOLDS WRAP on the top flap of the box; and

l. The color (yellow), placement, and text used to caution the consumer.

*Answer:*

Yes_____          No_____


**If you answered "Yes" to Question 23, then you must answer Questions 24-31.   If you answered "No" to Question 23, proceed to Question 32.**

12

Question 24: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by blurring?



*Answer:*

      Yes_____          No_____

Question 25: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by blurring?



*Answer:*

      Yes_____          No_____

Question 26: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by blurring?



*Answer:*

      Yes_____          No_____

Question 27: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by blurring?



   *Answer:*

       Yes_____         No_____

Question 28: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by tarnishment?



   *Answer:*

       Yes_____         No_____

Question 29: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by tarnishment?



   *Answer:*

       Yes_____         No_____

<u>Question 30</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by tarnishment?



*Answer:*

      Yes_____          No_____

<u>Question 31</u>: Has Reynolds proven by a preponderance of the evidence that Handi-Foil's package depicted below is likely to cause dilution to Reynolds' trade dress by tarnishment?



*Answer:*

      Yes_____          No_____

**Please proceed to Question 32(a).**

15

## V.     FALSE ADVERTISING

Question No. 32(a): Has Reynolds proven by a preponderance of the evidence that Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as new is false?

*Answer:*

Yes_____          No_____

**If you answered "Yes" to Question 32(a), then you must answer Questions 32(b)-(d).  If you answered "No" to Question 32(a), proceed to Question 33(a).**

Question No. 32(b): Has Reynolds proven by a preponderance of the evidence that Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as new, as the statement appears in the marketplace, has caused either actual deception or at least the tendency to deceive a substantial portion of the intended audience?

*Answer:*

Yes_____          No_____

Question No. 32(c): Has Reynolds proven by a preponderance of the evidence that any actual deception or tendency to deceive that may result from Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as new, as the statement appears in the marketplace, is material, in that it is likely to influence the purchasing decision of any the retailers to which it was made?

*Answer:*

Yes_____          No_____

Question No. 32(d): Has Reynolds proven by a preponderance of the evidence that it is likely to suffer injury as a result of Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as new, as the statement appears in the marketplace?

*Answer:*

Yes_____          No_____

16

Question No. 33(a): Has Reynolds proven by a preponderance of the evidence that Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as having equivalent strength and gauge to Reynolds Wrap is false?

> *Answer:*
>
> Yes_____          No_____

**If you answered "Yes" to Question 33(a), then you must answer Questions 33(b)-(d).  If you answered "No" to Question 33(a), then please stop here.**

Question No. 33(b): Has Reynolds proven by a preponderance of the evidence that Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as having equivalent strength and gauge to Reynolds Wrap, as the statement appears in the marketplace, has caused either actual deception or at least the tendency to deceive a substantial portion of the intended audience?

> *Answer:*
>
> Yes_____          No_____

Question No. 33(c): Has Reynolds proven by a preponderance of the evidence that any actual deception or tendency to deceive that may result from Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as having equivalent strength and gauge to Reynolds Wrap, as the statement appears in the marketplace, is material, in that it is likely to influence the purchasing decision of any the retailers to which it was made?

> *Answer:*
>
> Yes_____          No_____

Question No. 33(d): Has Reynolds proven by a preponderance of the evidence that it is likely to suffer injury as a result of Hand-Foil's statement describing its line of Handi-Foil brand aluminum foil products as having equivalent strength and gauge to Reynolds Wrap, as the statement appears in the marketplace?

> *Answer:*
>
> Yes_____          No_____

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of March, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

        John G. Froemming
        jfroeming@jonesday.com
        Jessica D. Bradley
        jbradley@jonesday.com
        JONES DAY
        51 Louisiana Avenue, NW
        Washington, D.C. 20001-2113
        Telephone: (202) 879-3939

                                        */s/ Brian N. Gross*
                                        Brian N. Gross (Va. Bar No. 76795)
                                        brian.gross@kirkland.com
                                        KIRKLAND & ELLIS LLP
                                        655 Fifteenth Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 879-5000
                                        Facsimile: (202) 879-5200