**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| REYNOLDS CONSUMER PRODUCTS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:13-cv-214 LO/TRJ |
| ) | |
| HANDI-FOIL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT HANDI-FOIL CORPORATION'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW**
**AND ITS COSTS OR, IN THE ALTERNATIVE, A NEW TRIAL**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND .................................................................................................... 1

III. LEGAL STANDARD ............................................................................................ 2

   A.   Judgment As A Matter Of Law Under Rule 50 ...................................... 2

   B.   Requests For A New Trial ....................................................................... 3

        1.   Request For A New Trial Under Rule 59 ..................................... 3

        2.   Request For A New Trial As A Remedy For Inconsistent Verdict ........... 4

IV.  ARGUMENT ......................................................................................................... 4

   A.   Handi-Foil Is Entitled To Judgment As Matter Of Law On Reynolds'
        Claim For Federal Trade Dress Infringement (Count 3). ....................... 4

        1.   Reynolds Failed To Prove That It Suffered Any Injury Due To
             Handi-Foil's Accused Packages, An Essential Element Of Proof
             For Reynolds' Section 1125(a) Claim. ....................................... 5

        2.   No Reasonable Jury Could Have Found That Any Of Handi-Foil's
             Accused Packages Creates A Likelihood Of Confusion With
             Reynolds' Common Law Trade Dress ......................................... 8

   B.   Alternatively, Handi-Foil Is Entitled To A New Trial On Reynolds'
        Claim For Federal Trade Dress Infringement (Count 3) Because The
        Clear Weight Of The Evidence Presented At Trial Compels A Finding Of
        Non-Infringement. ................................................................................. 12

   C.   Alternatively, Handi-Foil Is Entitled To A New Trial On Reynolds'
        Infringement Claims (Counts 1, 3, 5, and 6) Because The Jury Issued An
        Inconsistent Verdict. ............................................................................. 15

        1.   This Court Instructed The Jury To Apply The Same Standard
             When Ruling On Reynolds' Federal And State Claims, Yet The
             Jury Reached Different, Inconsistent Results. ........................... 16

        2.   The Jury's Finding Of No Infringement Of Reynolds' Federal
             Trademark Registrations While Also Finding Infringement Of
             Reynolds' Current Packaging Is Inconsistent In Light Of This
             Court's Prior Ruling In This Case. ........................................... 19

   D.   As The Prevailing Party, Handi-Foil Is Entitled To Its Costs. ............. 21

V.   CONCLUSION ................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*,
  174 F.3d 1308 (Fed. Cir. 1999) ............................................................................................ 5

*Anheuser-Busch, Inc. v. L&L Wings, Inc.*,
  962 F.2d 316 (4th Cir. 1992) ................................................................................................ 9

*Ashley Furniture Indus., Inc. v. Can Giacomo N.A. Ltd.*,
  187 F.3d 363 (4th Cir. 1999) ................................................................................................ 4

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*,
  532 U.S. 598 (2001) ............................................................................................................ 21

*Burlew v. Eaton Co.*,
  869 F.2d 1063 (7th Cir. 1989) ............................................................................................ 19

*CareFirst of Md., Inc. v. First Care, P.C.*,
  434 F.3d 263 (4th Cir. 2006) .............................................................................................. 12

*Cline v. Wal-Mart Stores, Inc.*,
  144 F.3d 294  (4th Cir. 1998) ............................................................................................... 3

*Comaper Corp. v. Antex, Inc.*,
  596 F. 3d 1343 (Fed. Cir. 2010) ......................................................................................... 18

*Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*,
  718 F.3d 249 (4th Cir. 2013) .............................................................................................. 22

*Crawford Fitting Co. v. JT Gibbons, Inc.*,
  482 U.S. 437  (1987) ........................................................................................................... 22

*Custer v. Terex Corp.*,
  196 F. App'x 733 (11th Cir. 2006) ..................................................................................... 18

*Eagles Ltd. v. Am. Eagle Found.*,
  356 F.3d 724 (6th Cir. 2004) .............................................................................................. 22

*Essex v. Prince George's Cty Maryland*,
  17 F. App'x 107  (4th Cir. 2001) ........................................................................................ 18

*Fells v. Virginia Dept. of Transp.*,
  605 F. Supp. 2d 740 (E.D. Va. 2009) ................................................................................. 22

*FiberMark, Inc. v. Brownville Specialty Paper Prods., Inc.*,
    419 F. Supp. 2d 225 (N.D.N.Y. 2005) ................................................................ 4, 18

*Fox v. Dynamark Sec. Ctrs., Inc.*,
    885 F.2d 864, 1989 WL 106802 (4th Cir. May 9, 1989) ...................................... 4, 19

*Frain v. Andy Frain, Inc.*,
    660 F. Supp. 97 (N.D. Ill. 1987) ........................................................................ 4, 19

*George & Co., LLC v. Imagination Entm't Ltd.*,
    575 F.3d 383 (4th Cir. 2009).............................................................................. 9, 12

*Groenevald Transp. Efficiency, Inc. v. Lubecore Int'l Inc.*,
    730 F.3d 494 (6th Cir. 2013)................................................................................... 4

*Honestech, Inc. v. Sonic Solutions*,
    725 F. Supp. 2d 573 (W.D. Tex. 2010) ................................................................. 21

*Johnson v. VeriSign, Inc.*,
    No. Civ.A. 01-765-A, 2002 WL 1887527 (E.D. Va. Aug. 15, 2002) ...................... 13

*Knussman v. Maryland*,
    272 F.3d 625 (4th Cir. 2001).................................................................................... 3

*Konkel v. Bob Evans Farms Inc.*,
    165 F.3d 275 (4th Cir. 1999).................................................................................... 3

*Kosmynka v. Polaris Indus., Inc.*,
    462 F.3d 74 (2d Cir. 2006).................................................................................... 18

*Lexmark Int'l v. Static Control Components*,
    134 S. Ct. 1377 (2014) .................................................................................. 5, 6, 8

*Lovell v. BBNT Sols., LLC*,
    295 F. Supp. 2d 611 (E.D. Va. 2003)....................................................................... 3

*Mother & Father v. Cassidy*,
    338 F.3d 704 (7th Cir. 2003).................................................................................. 22

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
    771 F.2d 521 (D.C.C. 1985)................................................................................... 22

*Poynter by Poynter v. Ratcliff*,
    874 F.2d 219 (4th Cir. 1989).................................................................................. 13

*Swatch AG v. Beehive Wholesale, LLC*,
    739 F.3d 150 (4th Cir. 2014)................................................................................ 9, 12

*Talkington v. Atria Reclamelucifers Fabrieken BV,*
   152 F.3d 254 (4th Cir. 1998)............................................................................ 4

*Williams v. Nichols,*
   266 F.2d 389 (4th Cir. 1959)........................................................................... 13

**Statutes**

15 U.S.C. § 1125.............................................................................................. 5, 6

15 U.S.C. § 1127.................................................................................................. 6

**Rules**

Fed. R. Civ. P. 50............................................................................................. 2, 3

Fed. R. Civ. P. 54.............................................................................................. 22

Fed. R. Civ. P. 59............................................................................................ 3, 21

Fed. R. Civ. P. 60.............................................................................................. 21

L.R. 54. ............................................................................................................. 23

**Treatises**

Wright & Miller, Fed. Prac. & Proc. Civ. § 2667 (3d ed. 2014)............................ 21

## I.     INTRODUCTION

After a four-day trial on trademark infringement, trade dress infringement, false advertising, and other related claims, the jury reached a verdict in favor of Handi-Foil on every claim save one.   The jury's finding of infringement on Count 3 (unregistered trade dress infringement under federal law) is not supported by substantial evidence.   Indeed, there is no *evidence* (as opposed to argument) that Reynolds suffered any harm related to Handi-Foil's allegedly infringing trade dress.   Because, among others, injury in fact is an essential element of Reynolds' proof, Handi-Foil is entitled to judgment as a matter of law on this claim. Alternatively, Handi-Foil requests a new trial on this claim because the jury's finding of likelihood of confusion on Count 3 is contrary to the weight of the evidence presented at trial and is inconsistent with its determination—based on instructions providing identical standards—of no likelihood of confusion on Counts 1, 5, and 6.   This Court should either enter judgment as a matter of law for Handi-Foil on Count 3 or should throw out the jury's verdict on that count and order a new trial.   And, as the prevailing party on at least six of the seven claims the jury decided, Handi-Foil also requests that this Court find Handi-Foil is entitled to recover its costs.

## II.     BACKGROUND

On February 15, 2013, Reynolds filed its initial Complaint in this action, accusing Handi-Foil's Dollar Tree Box and Trade Show Box of infringing Reynolds' asserted registrations and trade dress in the packaging design for its Reynolds Wrap aluminum foil.   (Dkt. No. 1.) Reynolds amended the Complaint twice, asserting a claim for false advertising and accusing additional Handi-Foil packages.   (Dkt. No. 56 (2d Am. Comp.).)   Two weeks before trial began, Reynolds unilaterally filed a covenant not to sue with respect to Handi-Foil's red-and-blue Trade Show Box, excusing that previously accused package from the case as non-infringing. (Dkt. No. 177.)   The parties also agreed to have this Court dismiss Reynolds' unjust enrichment

claim and Handi-Foil's non-infringement counterclaim related to the Trade Show Box. (Dkt. No. 259.)

The parties tried this case from March 24-27, 2014. Handi-Foil sought judgment as a matter of law at the close of Reynolds' affirmative case and renewed its request at the close of its own; this Court denied both motions. (Ex. 1, Final Trial Transcript at 630:21-638:22, 1012:9-15 ("Trial Tr.").) The jury reached a verdict on March 28, 2014, finding in Handi-Foil's favor on every claim presented except for Count 3 (common law trade dress infringement under federal law). (Dkt. No. 250 at 3 (Verdict Form).) Although the jury found trade dress infringement under federal law, it also found that Handi-Foil did *not* infringe Reynolds' federal trademark registrations for the Reynolds Wrap package design (Count 1), did *not* infringe Reynolds' trademark registrations or trade dress under Virginia's trademark infringement statute (Count 5), and was *not* liable for common law unfair competition under Virginia common law (Count 6).[1] (*Id.*) The jury so found despite using the ***same instructions on the law*** as to all four counts. Handi-Foil raised the jury's inconsistent verdict with this Court immediately after the verdict was published. (Ex. 1, Trial Tr. at 1135:13-23.)

Handi-Foil now renews its motion for judgment as a matter of law; alternatively, Handi-Foil seeks a new trial on the trade dress infringement claims given the jury's inconsistent verdict.

## III.   LEGAL STANDARD

### A.   Judgment As A Matter Of Law Under Rule 50

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to renew a motion for judgment as a matter of law made pursuant to Rule 50(a). FED. R. CIV. P. 50(b). Rule 50(a) requires that such a motion "must specify the judgment sought and the law and facts that entitle

---

[1]   The jury also found no false designation of origin, no dilution, and no false advertising. (Dkt. No. 250.) The jury awarded Reynolds no damages. (*Id.* at 8.)

the movant to the judgment." FED. R. CIV. P. 50(a)(2).  This Court may grant the motion where it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the relevant] issue." FED. R. CIV. P. 50(a)(1).  Judgment as a matter of law is proper "if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings," when viewed in the light most favorable to the prevailing party.  *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999).

### B.     Requests For A New Trial

### 1.     Request For A New Trial Under Rule 59

Alternatively, Handi-Foil seeks a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure because the verdict is against the clear weight of the evidence.  FED. R. CIV. P. 59(a)(1)(A).  This Court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  *Id.*  A "decision to grant or deny a new trial is within the sound discretion of the district court."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998); *City of Richmond v. Atlantic Co.*, 273 F.2d 902, 916 (4th Cir. 1960).  In the Fourth Circuit, the trial court has a duty to set aside the verdict and grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001).  When ruling on a Rule 59 motion, this Court "may make credibility judgments in determining the clear weight of the evidence."  *Lovell v. BBNT Sols., LLC*, 295 F. Supp. 2d 611, 618 (E.D. Va. 2003) (citing *Knussman*, 272 F.3d at 647).

### 2.      Request For A New Trial As A Remedy For Inconsistent Verdict

Handi-Foil also requests a new trial because of the inconsistent verdict, the remedy for which is a new trial.  *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 261 (4th Cir. 1998).  Where, as here, an inconsistent verdict cannot be reconciled in any reasonable way, a district court may order a new trial on the relevant aspects of the case.  *Fox v. Dynamark Sec. Ctrs., Inc.*, 885 F.2d 864, 1989 WL 106802, at *1, *3-*4 (4th Cir. May 9, 1989) (unpublished) (remanding for a new trial because of an inconsistent jury verdict); *FiberMark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225, 234 (N.D.N.Y. 2005) (ordering a new trial *sua sponte* where inconsistent jury verdict could not be harmonized); *Frain v. Andy Frain, Inc.*, 660 F. Supp. 97, 100-01 (N.D. Ill. 1987) ("When exercising its discretion, the court must keep in mind that if the verdict reflects inconsistencies indicating that the jury was confused, granting a new trial is proper.").

## IV.    ARGUMENT

### A.      Handi-Foil Is Entitled To Judgment As Matter Of Law On Reynolds' Claim For Federal Trade Dress Infringement (Count 3).

To prove trade dress infringement under Section 1125(a) of the Lanham Act, Reynolds must prove that: (1) Reynolds' asserted trade dress is primarily non-functional; (2) Handi-Foil's use of its packaging creates a likelihood of confusion; and (3) Reynolds' asserted trade dress is either inherently distinctive or has acquired secondary meaning.  *Ashley Furniture Indus., Inc. v. Can Giacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999).  "If the plaintiff fails to present sufficient evidence for a reasonable jury to find in its favor on one of the three elements, then judgment as a matter of law should be entered for the defendant."  *Groenevald Transp. Efficiency, Inc. v. Lubecore Int'l Inc.*, 730 F.3d 494, 504, 520 (6th Cir. 2013) (applying the same three factors for trade dress as Fourth Circuit; granting JMOL of no trade dress infringement);

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1326, 1330 (Fed. Cir. 1999) (district court erred by not granting JMOL of no trade dress infringement).  In addition, per the U.S. Supreme Court, a Lanham Act plaintiff must plead and ***prove*** injury in fact to prevail on claims brought under Section 1125(a).  *Lexmark Int'l v. Static Control Components*, 134 S. Ct. 1377, 1395 (2014).

Here, there is no evidence to support a finding either that Reynolds suffered such injury to its sales or business reputation as required under *Lexmark*, or that Handi-Foil's accused products create a likelihood of confusion.  Accordingly, this Court should enter judgment as a matter of law on Count 3.

> **1.    Reynolds Failed To Prove That It Suffered Any Injury Due To Handi-Foil's Accused Packages, An Essential Element Of Proof For Reynolds' Section 1125(a) Claim.**

In its recent opinion in *Lexmark International v. Static Control Components*, the U.S. Supreme Court made clear that a plaintiff bringing suit under Section 1125(a) of the Lanham Act "cannot obtain relief without *evidence* of injury proximately caused" by the defendant's accused actions.  134 S. Ct. 1377, 1395 (2014) (emphasis in original).  Although the specific facts at issue in *Lexmark* concerned a false advertising claim brought under Section 1125(a)(1)(B) of the Lanham Act, the Court based its holding on the statutory provision authorizing suit by "any person who believes that he or she is likely to be damaged."  *Lexmark*, 134 S. Ct. at 1388 (quoting 15 U.S.C. § 1125(a)(1)).  By its very language, this portion of the Lanham Act applies to Reynolds' common law trade dress infringement claim brought under Section 1125(a)(1)(A).[2]

---

[2]    In full, Section 1125(a)(1) states (emphasis added):

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin,

Both subsections of § 1125(a) operate to protect against "unfair competition," which the Supreme Court explained has long been "understood to be concerned with injuries to business reputation and present and future sales." *Lexmark*, 134 S. Ct. at 1389-90 (quoting 15 U.S.C. § 1127, identifying the interests protected by the Lanham Act). Accordingly, to sustain a verdict on its Lanham Act claim under § 1125(a), Reynolds must be able to both "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 134 S. Ct. at 1395.

In this case, although Reynolds asserts federal trade dress infringement against Handi-Foil in violation of Section 1125(a) (Dkt. No. 56 ¶ 82 (2d Am. Comp.)), it came forward with no evidence at trial to prove that it has suffered any such injury whatsoever. To the contrary, Reynolds' witnesses consistently testified that Reynolds had ***not*** been harmed by Handi-Foil's trade dress, including when it was sold side by side with Reynolds' products. For example, Mr. Kenard Lane, Reynolds' Vice President of Marketing for Cooking Brands and primary corporate representative in this litigation, could only speculate about ***potential*** harm, admitting that Reynolds had not identified any ***actual*** harm:

---

false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action ***by any person who believes that he or she is or is likely to be damaged by such act***.

Q:  So sitting here today, you're not aware of any lost sales, is that correct?

A:  I'm not aware of any data around that, yes.

. . .

Q:  So sitting here today, you think there is a likelihood of harm, but you're not aware of any actual harm at this point?

A:  I'm not aware of actual -- yeah, I think harm is likely.

. . .

Q:  All right.  Do you have any facts to support a contention that the Reynolds Wrap brand has been diminished by the sale of the Handi-Foil and the accused packages?

A:  I don't have any, I have not seen any facts to that regard.

. . .

Q:  Okay.  Do you have any facts or data to support that the 66-, soon to be 67-year-old brand's reputation has been harmed?

A:  Not as of yet.

Q:  Sitting here today, are you aware of any loss of market share in the aluminum roll foil product that Reynolds Consumer Products has experienced after the introduction of the Handi-Foil accused packages?

A:  I don't have data around that.

(Ex. 1, Trial. Tr. at 679:1-3; 679:7-9; 679:23-680:2; 680:25-681:7.)   Reynolds' inability to

demonstrate any injury in fact is unsurprising given the complete lack of evidence of any actual

consumer being confused in the marketplace by Handi-Foil's accused products.

Nor did Reynolds demonstrate any harm to its sales or business reputation in monetary

terms.   After this Court struck Reynolds' untimely damages submission (Dkt. No. 171),

Reynolds' Chief Marketing Officer, Mr. David Bryla, ***claimed*** a loss of market share in an

attempted end-run around that ruling (Ex. 1, Trial Tr. at 540:3-18).  But Mr. Bryla's admissions

on cross examination belie his unsupported claim that Handi-Foil cost Reynolds market share

7

and sales: Mr. Bryla admitted on cross that Reynolds' 2013 sales of Reynolds Wrap products *increased $52 million* from 2012—that is, nearly 15%—to a total of $435 million.  (Ex. 1, Trial Tr. at 565:3-6; *see* Ex. 2, Pl.'s Demonstrative Ex. 5; Ex. 1, Trial Tr. at 1064:13-1065:2.)

Simply stated, Reynolds did not present any evidence that Handi-Foil's alleged infringement caused it any harm at all, the only evidence being to the contrary—that Reynolds enjoyed a robust increase in sales during the first and only full year it had Handi-Foil as a competitor.   Reynolds there fails *Lexmark*'s requirement that it prove "injury to a commercial interest in sales or business reputation."   *Lexmark*, 134 S. Ct. at 1395.  With no instances of actual confusion despite years of coexistence and the sale of 30 million of the accused products, the jury's verdict of no dilution by blurring, and no evidence of harm to Reynolds, no reasonable juror could have found in Reynolds' favor, and this Court should enter judgment as a matter of law on Reynolds' claim for trade dress infringement.

### 2. No Reasonable Jury Could Have Found That Any Of Handi-Foil's Accused Packages Creates A Likelihood Of Confusion With Reynolds' Common Law Trade Dress.

In light of the evidence presented at trial, the jury correctly found Handi-Foil not liable on three of the four claims as to which this Court instructed it to apply a likelihood of confusion analysis.  No substantial evidence supports the jury's finding of a likelihood of confusion on Count 3.

As the verdict on the three other counts demonstrates, the substantial evidence did not support the jury's verdict on Count 3.  The Fourth Circuit considers nine factors to determine whether the defendant's use creates a likelihood of confusion: (1) strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual

confusion; (8) the quality of the defendant's products; and (9) the sophistication of the consuming public. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 161-62 (4th Cir. 2014). "Not all of these factors are of equal importance, nor are they always relevant in any given case." *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (internal quotations omitted). The Fourth Circuit has explained that, where the marks at issue are dissimilar and there is no evidence of actual confusion, extrinsic factors such as the strength of the plaintiff's mark and the similarity of the products, sales outlets, and advertising are insufficient to create a likelihood of confusion. *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992). This is precisely the situation proved at trial in this case.

*First*, Reynolds' and Handi-Foil's respective packages are dissimilar. Most telling, the differences between the packages are so obvious to consumers that Reynolds' Chief Marketing Officer—who had years of experience in consumer packaging—admitted at trial that consumers would be able to determine the source of each products within two to three seconds, the amount of time Reynolds claimed consumers spend when making purchasing decisions for aluminum foil products:

> Q: And you said you wouldn't expect somebody who had a problem with, let's use the Handi-Foil Dollar Tree box as a example, you wouldn't expect somebody who had a problem with the Handi-Foil box to call Reynolds, would you?
>
> A: No, I would not.
>
> Q: Because they'd know to call Handi-Foil, right?
>
> A: Correct.
>
> Q: Because they would look at the box, even a two- to three-second look at the box tells you who makes it, right?
>
> A: Correct.

(Ex. 1, Trial Tr. at 568:22-569:6.)   Moreover, as Reynolds' witnesses admitted, Handi-Foil's trade dress lacks many of the elements that Reynolds asserts make up its alleged trade dress. Handi-Foil does not use the Reflex Blue color.   (Ex. 1, Trial Tr. at 174:18-25.)   Reynolds' witnesses admitted that the Handi-Foil packages do not use the color pink or curved silver bands. (Ex. 1, Trial Tr. at 175:1-176:8; 566:6-19.)   Most importantly, Handi-Foil does not brand its products with the Reynolds Wrap name; rather, the accused say "Handi-Foil" in the largest font used on the package.  (Ex. 3, DTX 248 (Dollar Tree Box); Ex. 4, DTX 250 (New Grocery Box); Ex. 5, DTX 256 (Old Grocery Box); Ex. 1, Trial Tr. at 174:14-17; *id.* at 723:19-724:6.)   These missing elements are precisely the features of the Reynolds Wrap package that Reynolds' witnesses testified make up the core of its brand equity in this trade dress—and Handi-Foil simply does not use any of them.  (Ex. 1, Trial Tr. at 173:18-176:8; 566:6-19.)

Indeed, Handi-Foil's only use of the words "Reynolds Wrap" are in connection with a "compare to" statement that Reynolds' own witnesses admitted ***distinguish*** Handi-Foil's products from Reynolds' and in a disclaimer explaining that Handi-Foil's aluminum foil products are ***not*** made by Reynolds.[3]  (Ex. 1, Trial Tr. at 178:10-18; *see id.* at 723:19-724:6.) Nor does Handi-Foil use many of the other ancillary elements Reynolds asserted as comprising its trade dress, such as repetition of the color scheme on the ends of the box, visually similar "how-to" instructions, or cautionary language written in yellow font, among others.  (Ex. 3, DTX 248; Ex. 4, DTX 250; Ex. 5, DTX 256.)  Taken together, no substantial evidence supports a finding that the accused products are similar to the Reynolds' trade dress, as claimed.

---

[3]    The jury's rejection of Reynolds' false designation of origin claim (Count 2)—which was premised on the "Compare to Reynolds" language on Handi-Foil's box—strongly supports the fact that this statement helps further ***distinguish*** the Handi-Foil products from Reynolds.

**Second**, Reynolds offered no evidence whatsoever of a single instance of any consumer actually being confused as a result of Handi-Foil's accused products.  No Reynolds witness testified about even a single such instance.  (Ex. 1, Trial Tr. at 179:24-180:11; 605:17-606:17.) Indeed, Reynolds' Vice President of Marketing for Cooking Brands, Mr. Lane—the Reynolds employee currently responsible for managing the Reynolds Wrap brand and product line— testified that he had not heard of actual confusion of any kind:

> Q:  Okay.  Are you aware of any instances where a consumer was confused?
>
> A:  Directly no.
>
> . . .
>
> Q:  Ever heard any retailer or person in the trade express any confusion about the package?
>
> A:  No.
>
> Q:  Ever heard of an end user expressing any confusion as to the package?
>
> A:  Not to me.
>
> Q:  To anyone?
>
> A:  Not that's been played back.
>
> . . .
>
> Q:  Are you aware of any complaints of someone complaining about the quality of a product that you learned was Handi-Foil and not Reynolds?
>
> A:  Not -- no.

(Ex. 1, Trial Tr. at 659:12-14; 660:10-17; 662:24-663:2.)  This lack of actual confusion is striking because Reynolds' and Handi-Foil's products have been offered side by side on retail store shelves since March 2012 (Ex. 1, Trial Tr. at 936:22-937:10; *see id.* at 446:11-19), during which time Handi-Foil has sold **_over 30 million boxes_** of the accused products (Ex. 1, Trial Tr. at 840:14-16).  The Fourth Circuit has held that actual confusion is "generally considered to be

the 'most important factor,'" yet Reynolds presented no such evidence.  *Swatch*, 739 F.3d at 162

(endorsing the district court's characterization of actual confusion as "the most significant

factor" and quoting *George & Co.*, 575 F.3d at 398);[4] *CareFirst of Md., Inc. v. First Care, P.C.*,

434 F.3d 263, 269 (4th Cir. 2006) (the "absence of any evidence of actual confusion over a

substantial period of time . . . creates a strong inference that there is no likelihood of confusion").

Furthermore, this lack of actual confusion in the marketplace is consistent with Reynolds'

knowing ambivalence towards Handi-Foil's nationwide sale of the Dollar Tree box in over 4,500

Dollar Tree stores for nearly a year before bringing suit.  (Dkt. No. 62 at ¶ 16 (Stipulated Facts);

Ex. 1, Trial Tr. at 622:24-623:1.)

Because the substantial evidence presented at trial shows that the parties' respective trade

dress are dissimilar and there is no evidence of any instances of actual confusion in the

marketplace, no reasonable juror could have found that Handi-Foil's accused packages infringe

the Reynolds Wrap package.  Indeed, the jury here found there was ***no*** likelihood of confusion in

three different instances; its aberrant verdict on Count 3 is against the manifest weight of the

evidence.

**B.** **Alternatively, Handi-Foil Is Entitled To A New Trial On Reynolds'
Claim For Federal Trade Dress Infringement (Count 3) Because The
Clear Weight Of The Evidence Presented At Trial Compels A Finding Of
Non-Infringement.**

If this Court declines to grant Handi-Foil judgment as a matter of law, then Handi-Foil

alternatively requests that this Court grant a new trial on Count 3.  Rule 59 empowers this Court

to weigh the evidence and consider the credibility of witnesses and, if this Court finds the jury's

verdict is against the clear weight of evidence, set the verdict aside.  *Johnson v. VeriSign, Inc.*,

---

[4]   Indeed, in *Swatch*, the Fourth Circuit affirmed the heavy weight this Court accorded to the
factor of actual confusion, where no evidence actual confusion existed, as is the case here.
739 F.3d at 162.

No. Civ. A. 01-765-A, 2002 WL 1887527, at *11 (E.D. Va. Aug. 15, 2002) (granting new trial) (citing *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989)).  In ruling on a motion for new trial, this Court should exercise its own independent judgment, after a weighing of all the evidence and other pertinent factors in determining whether the jury's verdict of infringement on this one claim was against the clear weight of the evidence.  *Williams v. Nichols*, 266 F.2d 389, 391-92 (4th Cir. 1959) (remanding case for new trial).  All of the shortcomings in Reynolds' trade dress infringement case set out above in Section IV.A for JMOL are relevant to this Court's consideration of whether to order a new trial on Count 3 under Rule 59:  Reynolds' and Handi-Foil's packages are dissimilar; there is no evidence that even a single consumer actually has been confused in the marketplace by Handi-Foil's accused products, even though they been offered side by side for over two years and Handi-Foil has sold over 30 million boxes; and Reynolds' was entirely unable to prove it suffered any harm from Handi-Foil's burgeoning retail aluminum roll foil business.

In addition to all of these points, for the purposes of Rule 59, this Court may also apply its own judgment to the weight and credibility due to Reynolds' witnesses, in particular to Reynolds' survey expert, Ms. Sarah Butler.  As Handi-Foil explained in its *Daubert* motion briefing, Ms. Butler's survey is unreliable for at least the following reasons: (1) it tested the wrong universe of consumers; (2) the survey design contradicted market conditions by utilizing products that never appeared together in the marketplace; (3) Ms. Butler used leading questions to elicit unreliable responses; and (4) the survey used an improper control.  (Dkt. No. 105 at 10-24.)  But more importantly, this Court can weigh the reliability of her testimony in connection with the fact that Ms. Butler attempted to opine on the grocery boxes and the Trade Show box—testifying that she thought those were equally likely to confuse consumers—without

any facts or basis for such opinion.  Specifically, Ms. Butler's trial testimony showed that she had no basis to opine on any likelihood of confusion with respect to the grocery boxes because she did not survey those boxes, nor—more importantly—did she have any idea at the time she offered her opinion on those boxes that they included a disclaimer disavowing any relationship with Reynolds.

Ms. Butler admitted she had never seen the actual packages for the two accused Handi-Foil products that were offered in the grocery channel when she designed her survey.  (Ex. 1, Trial Tr. at 445:2-5; *see* Ex. 4, DTX 250 (Handi-Foil's New Grocery Box); Ex. 5, DTX 256 (Handi-Foil's Old Grocery Box).)  Indeed, Ms. Butler admitted that the first time she ever saw these packages in person was when Handi-Foil's counsel showed them to her at her deposition months after she submitted her survey and opinions.  (*Id.* at 445:6-10.)   Ms. Butler had no idea that Handi-Foil's accused grocery packages included disclaimers indicating that these products were made by Handi-Foil and not by Reynolds.  (Ex. 1, Trial Tr. at 445:14-446:4.)  Accordingly, neither Ms. Butler's surveys nor her conclusions took into account the undisputed fact that Handi-Foil's accused grocery packages reflect the following language on the box: "Reynolds Wrap is the registered trademark of Reynolds Consumer Products Company.  This product is neither manufactured nor made under the authorization of Reynolds Consumer Products Company."  (*Id.*; Ex. 4, DTX 250; Ex. 5, DTX 256.)  Ms. Butler admitted that knowing these packages had a disclaimer would have been relevant to her survey because it would impact how consumers react to these grocery packages.  (*Id.* at 473:21-474:3.)  And, even though Ms. Butler did not survey either of these packages and did not know that they had a disclaimer, she reached the unsupported conclusion that they would be likely to yield the same or substantially similar potential confusion rates as the Dollar Tree Box.  (*Id.* at 472:7-473:4.)  Nor did Ms. Butler test

14

Handi-Foil's Trade Show Box.  Even though Reynolds dismissed this package as non-infringing on the eve of trial (Dkt. No. 177), Ms. Butler opined that this package—which is primarily red in color—also would have elicited similar potential confusion rates as the Dollar Tree Box and the untested grocery boxes.  (Ex. 1, Trial Tr. at 474:11-475:1.)  These admissions at trial are representative of the flaws that permeate Ms. Butler's survey and the opinions she presented to the jury.  This Court should ascribe no weight to either, especially in light of the fact that no actual consumer confusion has occurred, as well as the jury's rejection of Reynolds' other infringement claims.

The clear weight of the evidence presented at trial demonstrates the impropriety of the jury's anomalous finding of infringement on Count 3.  Accordingly, this Court should order a new trial on Reynolds' federal trade dress infringement claim.

**C.    Alternatively, Handi-Foil Is Entitled To A New Trial On Reynolds' Infringement Claims (Counts 1, 3, 5, and 6) Because The Jury Issued An Inconsistent Verdict.**

The Verdict Form presented the jury with decisions on four counts in Reynolds' Second Amended Complaint for which the jury was required to consider whether Handi-Foil's packages created a likelihood of confusion with Reynolds' trademarks and/or trade dress: federal trademark infringement, federal trade dress infringement, state trademark infringement, and state unfair competition.  (Dkt. No. 250.)  By finding infringement of the common law trade dress under federal law but no infringement as to the other three claims, the jury issued an inconsistent and irreconcilable verdict on these claims for at least two reasons.

*First*, this Court specifically instructed the jury to apply the identical likelihood of confusion standard when ruling on Reynolds' various claims, yet the jury found infringement on the one claim that included additional substantive requirements in beyond likelihood of confusion.  *Second*, this Court has previously ruled as a matter of law that Reynolds' registered

15

trademarks and its current trade dress are legally identical, so any distinction in the jury's findings based on differences between the figures depicted in Reynolds' registrations and its current packaging necessarily is inconsistent and irreconcilable with the law of this case.

> **1.    This Court Instructed The Jury To Apply The Same Standard When Ruling On Reynolds' Federal And State Claims, Yet The Jury Reached Different, Inconsistent Results.**

In answer to Question 2 on the Verdict Form—Federal Trade Dress Infringement of Unregistered "Reynolds Wrap Package Design"—the jury found that Reynolds proved that Handi-Foil infringed the trade dress in Reynolds' common-law package design under federal law.  (Dkt. No. 250 at 3.)  However, the jury also found that Reynolds did not prove that Handi-Foil infringed Reynolds' trademark or trade dress under Virginia law or that Handi-Foil is liable under common law unfair competition.  (Dkt. No. 250 at 6-7, Questions 5-6.)  As Handi-Foil noted immediately following the publication of the verdict, the answers to Questions 5 and 6 are inconsistent with the jury's answer to Question 2.  (Ex. 1, Trial Tr. at 1135:13-19.)  The reason these verdicts are inconsistent is because this Court specifically instructed the jury to apply the *identical* likelihood of confusion standard when deciding the verdict for Reynolds' trade dress infringement claim under federal law and its state law claims.  Compare Jury Instruction No. 22 on federal trademark and trade dress infringement with Jury Instruction Nos. 31 and 32 for Virginia trademark infringement and Virginia common law unfair competition:

JURY INSTRUCTION NO. 22: Trademark/Trade Dress Infringement - Elements:

> Reynolds claims that Handi-Foil infringed Reynolds' trademarks and trade dress.  To succeed on these claims, Reynolds must prove the following things by a preponderance of the evidence:
>
> 1.    Reynolds owns trademarks and trade dress in the Reynolds Wrap package as trademarks and trade dress;
>
> 2.    Reynolds' trademarks and trade dress are valid trademarks and trade dress;

3.   Handi-Foil used its trade dress for the Handi-Foil brand packages in interstate commerce in connection with the sale or offering for sale of goods;

4.   Handi-Foil used its trade dress for the Handi-Foil brand packages in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Handi-Foil's products;

5.   Reynolds' claimed trade dress is not functional.

I will explain what I mean by those terms.

If you find that Reynolds has proved each of these things by a preponderance of the evidence, then you must find for Reynolds. However, if Reynolds did not prove each of these things by a preponderance of the evidence, then you must find for Handi-Foil.

INSTRUCTION NO. 31: State Law Trademark Infringement – Elements of Claim

Virginia state law requires a finding of likelihood of confusion to prove trademark infringement.

JURY INSTRUCTION NO. 32: Virginia Common Law- Elements of Claim

Virginia Common law unfair competition claim requires the same proof, including likelihood of confusion, as the Lanham Act offenses.

(Ex. 6, Jury Instructions at 24, 34, 35; *see* Ex. 1, Trial Tr. at 1111:23-1112:18; *id.* at 1118:5-10.)

As these instructions demonstrate, the jury was instructed to apply the same analysis to the federal and state law claims: likelihood of confusion. Even more specifically, the Virginia common law instruction explicitly stated that it "requires the ***same proof***" . . . "as the ***Lanham Act offenses***." Similarly, the instruction for the Virginia trademark infringement claim states that it also requires a finding of likelihood of confusion, which is only set out once, in Jury Instruction No. 30. (Ex. 6, Jury Instructions at 33.) If those claims require the same proof under the same facts, verdicts with two ***different*** outcomes are irreconcilable. "Because the jury essentially was asked the same question twice, but came up with opposite answers, the Court

17

[should] determine[] that the findings at issue here cannot be harmonized" and thus must be resolved by holding a new trial on these claims. *FiberMark, Inc. v. Brownville Specialty Paper*, 419 F. Supp. 2d 225, 234 (N.D.N.Y. 2005).

In a similar case from the Northern District of New York, the court instructed the jury to apply the same analysis to both the trademark infringement and anti-dilution claims. *Fibermark*, 419 F. Supp. 2d at 232. Despite these instructions, the jury found a yes verdict on secondary meaning under the Lanham Act but no under the anti-dilution state law claim. *Id.* As the court noted, "[i]n effect, the jury was asked to decide twice whether FiberMark's mottled appearance acquired secondary meaning and came up with two separate answers." *Id.* Because of the inconsistent verdict, the court found the verdict could not be reconciled. *Id.*

Courts regularly order new trials when verdicts cannot be reconciled with what the instruction stated or what the law requires. *See, e.g., Comaper Corp. v. Antex, Inc.*, 596 F.3d 1343, 1354-55 (Fed. Cir. 2010) (remanding for a new trial on invalidity because the jury's verdict "that independent claims 1 and 12 were not obvious, while dependent claims 2, 7, and 13 were obvious . . . reflect an irreconcilable inconsistency"); *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 87 (2d Cir. 2006) (vacating a judgment because of an inconsistent verdict finding negligence but no strict liability when the court instructed the jury "negligence mandated a corollary finding of strict products liability"); *Custer v. Terex Corp.*, 196 F. App'x 733, 737-38 (11th Cir. 2006) (unpublished) (remanding for a new trial because it was inconsistent for a jury to award damages that is 30% of the stipulated amount when the defendant is more than 50% at fault under the law); *Essex v. Prince George's Cty Maryland*, 17 F. App'x 107, 117 (4th Cir. 2001) (unpublished) (granting new trial where the court could not harmonize jury verdict reaching different outcomes on claims that hinged on the same underlying contentions); *Fox v.*

*Dynamark Sec. Ctrs., Inc.*, 885 F.2d 864, 1989 WL 106802, at *4 (4th Cir. May 9, 1989) (unpublished) (remanding for a new trial due to inconsistent verdict because "there is no theory, legal or factual, on which the inconsistent verdicts can be reconciled"); *Burlew v. Eaton Co.*, 869 F.2d 1063, 1069 (7th Cir. 1989) (verdict finding unconscious discrimination and pretext were fatally inconsistent where conscious discrimination was required); *Frain v. Andy Frain, Inc.*, 660 F. Supp. 97, 100 (N.D. Ill. 1987) (ordering new trial due to inconsistent verdict where jury reached different conclusions on three claims that required the same proof).

Because the jury reached different outcomes in the face of identical jury instructions, this Court should remand for a new trial on federal common law trade dress infringement (Count 3), trademark or trade dress infringement under Virginia law (Count 5), and unfair competition under Virginia common law (Count 6).

> **2.     The Jury's Finding Of No Infringement Of Reynolds' Federal Trademark Registrations While Also Finding Infringement Of Reynolds' Current Packaging Is Inconsistent In Light Of This Court's Prior Ruling In This Case.**

Handi-Foil and Reynolds filed cross briefs for summary judgment on whether Reynolds abandoned its federally registered trademarks or whether Reynolds could tack its use of the current Reynolds Wrap package design to its federally registered marks.  This Court explained that "the principal issue is what two boxes the Court should consider in conducting its tacking inquiry.  The Court finds the logical points of comparison are the Reynolds Wrap box as currently used in commerce and the box as registered with the PTO.  This in turn requires the Court to compare the current Reynolds Wrap box with the 2007 specimen."  (Dkt. No. 164 at 7.) After its analysis, this Court held "[i]f Reynolds' current box and the 2007 specimen cannot be said to create a continuing commercial impression, however, the Court cannot imagine any two non-identical marks that would.  Based on sight alone, the Court finds that reasonable juror could

not find that the marks in question fail to produce a continuing commercial impression." (Dkt. No. 164 at 7.) In deciding that tacking applied, this Court determined that Reynolds' current package design was the "'legal equivalent' of the earlier marks," *i.e.*, the federally-registered package design. (Dkt. No. 164 at 3-4.) As a result—because this Court ruled ***as a matter of law*** that Reynolds' current package design is the legal equivalent of the registered marks—the jury's finding that Handi-Foil's packages do not infringe Reynolds' registered trademarks but do infringe Reynolds' common law rights in its current package cannot be reconciled with the law of this case.

Because the registered trademarks and the common law trade dress are legally identical, the results of infringement should have come out the same. Here, however, the jury necessarily found that Reynolds' registered trademarks and its current trade dress are sufficiently different from one another to warrant opposite findings on infringement. This must be the case because likelihood of confusion was the only element of Reynolds' trademark infringement claim (Count 1) that was in dispute since Reynolds' registrations are incontestable.[5] In other words, the jury's verdict on Question 2 regarding trade dress infringement either is contrary to the law of this case or is inconsistent with the jury's finding in response to Question 1 on trademark infringement. Either way, the inconsistency is irreconcilable.

---

[5] This Court gave the following instruction on incontestability and its effect: "In this case, there is no dispute that Reynolds received two registrations for the trademarks depicting certain elements of the Reynolds Wrap package design and these registrations are now 'incontestable' under the trademark laws. This means that Reynolds' registrations of the trademarks are conclusive evidence of Reynolds' ownership of those trademarks and that the trademarks are valid and protectable." (Ex. 6, Jury Instructions at 26; *see* Ex. 1, Trial Tr. at 1113:7-13.)

Because of the inconsistent verdict between Reynolds' registered trademarks (Count 1) and Reynolds' unregistered federal trade dress (Count 3), this Court should remand both counts for a new trial.[6]

### D.    As The Prevailing Party, Handi-Foil Is Entitled To Its Costs.

Pursuant to Rule 54, Handi-Foil is entitled to recover its costs as the prevailing party in this litigation.  Handi-Foil "does not have to prevail on all issues to be entitled to an award of costs."  *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010); *see Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001) (holding that one can be a prevailing party if "a party has prevailed on the merits of at least some of the claims); Wright & Miller, FED. PRAC. & PROC. CIV. § 2667 (3d ed. 2014) ("A party who is only partially successful also can be deemed a prevailing party.").  Here, Handi-Foil is the prevailing party.

Handi-Foil prevailed on nearly every single one of Reynolds' eight claims.  At trial, the jury sided with Handi-Foil on six counts, finding that Handi-Foil did ***not***: (1) infringe either of Reynolds' registered trademarks; (2) falsely designate its products; (3) dilute Reynolds' trademarks or trade dress; (4) infringe Reynolds' trademarks under Virginia law; (5) unfairly compete under Virginia law; or, most importantly, (6) falsely advertise its products.  (Dkt. No. 250 (Verdict Form).)   The jury only found for Reynolds on Count 3—an unsupported finding Handi-Foil seeks to correct in this Motion, but one for which the jury levied no damages.

---

[6]   Alternatively, if this Court allows the jury's inconsistent verdict to stand—which essentially would require a finding that the marks depicted in Reynolds' registrations are ***not*** legally identical to the current Reynolds Wrap package design, thus precluding Reynolds' ability to tack its current use to its former—then Handi-Foil respectfully requests that this Court reconsider its Order denying Handi-Foil's motion for summary judgment of abandonment (Dkt. Nos. 100, 102-03) under either Rule 59 or Rule 60 and enter an order cancelling Reynolds' asserted registrations as abandoned.

And Handi-Foil won other aspects of the case before trial, as Reynolds excused the Trade Show Box from the case as non-infringing despite pursuing that box for over a year in litigation (Dkt. No. 177).   The latter development, which Reynolds effected unilaterally through a covenant not to sue filed just two weeks before trial, is analogous to a voluntary dismissal, making Handi-Foil the prevailing party on all counts as they relate to this package.   *Eagles Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 726 (6th Cir. 2004) (considering defendant the prevailing party where plaintiff moved to voluntary dismiss the case); *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003) ("[A] voluntary dismissal with prejudice renders the opposing party a 'prevailing party' within the meaning of Rule 54."); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 525 (D.C. Cir. 1985) (finding a defendant the prevailing party where plaintiff voluntarily dismissed the case).   Accordingly, Handi-Foil is the prevailing party.

As the prevailing party, Handi-Foil is entitled to its costs.   FED. R. CIV. P. 54(d)(1) ("costs . . . should be allowed to the prevailing party"); *Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 254 (4th Cir. 2013) ("Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs should be allowed to the prevailing party unless a federal statute provides otherwise.") (internal quotation marks omitted); *see Crawford Fitting Co. v. JT Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("costs" are to be determined in accordance with 28 U.S.C. § 1920).   In the Fourth Circuit, "there is a ***presumption*** that the prevailing party will be awarded costs."   *Fells v. Virginia Dept. of Transp.*, 605 F. Supp. 2d 740, 741 (E.D. Va. 2009) (emphasis added).   Upon this Court's determination that Handi-Foil is the prevailing party and

thus is entitled to its costs, Handi-Foil will submit the proper bill of costs in accordance with Local Rule 54.[7]

## V.    CONCLUSION

For the foregoing reasons, Handi-Foil respectfully requests that this Court grant Handi-Foil judgment as a matter of law against Reynolds' claim for federal common law trade dress infringement (Count 3).  Alternatively, Handi-Foil requests that this Court order a new trial on Count 3 because the jury's verdict was contrary to the clear weight of the evidence; in the alternative, Handi-Foil requests that this Court order a new trial on Reynolds' claims for federal trademark infringement (Count 1), federal common law trade dress infringement (Count 3), state law trademark infringement (Count 5), and Virginia common law unfair competition (Count 6) to resolve the jury's inconsistent verdict on these claims.  Handi-Foil also requests that this Court declare Handi-Foil the prevailing party in this litigation and thus find Handi-Foil is entitled to recover its costs.


Dated:  April 30, 2014                    Respectfully Submitted,


                                          By: */s/ Brian N. Gross*
                                              D. Sean Trainor (Va. Bar No. 43260)
                                              dtrainor@kirkland.com
                                              Brian N. Gross (Va. Bar No. 76795)
                                              brian.gross@kirkland.com
                                              KIRKLAND & ELLIS LLP
                                              655 Fifteenth Street, N.W.
                                              Washington, D.C. 20005
                                              Telephone: (202) 879-5000
                                              Facsimile: (202) 879-5200

---

[7]   If this Court orders a new trial then Handi-Foil proposes delaying the submission of a bill of its costs until after such trial is completed.

David K. Callahan (admitted *pro hac vice*)
david.callahan@lw.com
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7694
Facsimile: (312) 543-8673

Robin A. McCue (admitted *pro hac vice*)
rmccue@kirkland.com
Ian J. Block (admitted *pro hac vice*)
ian.block@kirkland.com
Susan E. Lester (admitted *pro hac vice*)
susan.lester@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for Defendant*
*Handi-Foil Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of April, 2014, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

John G. Froemming
jfroeming@jonesday.com
Jessica D. Bradley
jbradley@jonesday.com
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone: (202) 879-3939

*/s/ Brian N. Gross*
Brian N. Gross (Va. Bar No. 76795)
brian.gross@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200