# EXHIBIT 6

INSTRUCTION NO. 1

Introduction to the Final Charge – Province of the Court and of the Jury

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case.  You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court--those given to you at the beginning of the trial, those given to you during the trial, and these final instructions--must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you.  If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decisions.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than that given in these instructions of the Court just as it would be a violation of your sworn

1

duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

You were chosen as juror for this trial in order to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations brought by the Plaintiff and Defendant.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice–through trial by jury–depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

INSTRUCTION NO. 2

Judging the Evidence

There is nothing particularly different in the way that a juror should consider the evidence in a trial from that in which any reasonable and careful person would deal with any very important question that must be resolved by examining facts, opinions, and evidence.  You are expected to use your good sense in considering and evaluating the evidence in the case.  Use the evidence only for those purposes for which it has been received and give the evidence a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

INSTRUCTION NO. 3

Evidence Received in the Case–Stipulations, Judicial Notice & Inferences Permitted

The evidence in this case consists of the sworn testimony of the witnesses–regardless of who may have called them–all exhibits received in evidence–regardless of who may have produced them–all facts which may have been agreed to or stipulated and all facts and events which may have been judicially noticed.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court must be entirely disregarded by you.  Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Questions, objections, statements, and arguments of counsel are not evidence in the case unless made as an admission or stipulation of fact.  You are to base your verdict only on the evidence received in the case.  In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits.  In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted.  You are permitted to draw from the facts which you find have been proved such reasonable inferences as you feel are justified in the light of your experience and common sense.

INSTRUCTION NO. 4

Rejected and Stricken Evidence

You must not consider any matter that was rejected or stricken by the Court. It is not

evidence and should be disregarded.

INSTRUCTION NO. 5

Direct and Circumstantial Evidence

There are two types of evidence which are generally presented during a trial–direct evidence and circumstantial evidence.  Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.  The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.  You should weigh all the evidence in the case.

INSTRUCTION NO. 6

Inferences from the Evidence

Inferences are simply deductions or conclusions which reason and common sense lead

the jury to draw from the evidence received in the case.

<u>INSTRUCTION NO. 7</u>

<u>Jury's Recollection Controls</u>

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

INSTRUCTION NO. 8

The Question Is Not Evidence

The questions asked by a lawyer for either party to this case are not evidence.  If a lawyer asks a question of a witness which contains an assertion of fact, therefore, you may not consider the assertion by the lawyer as any evidence of that fact.  Only the answers are evidence.

INSTRUCTION NO. 9

Objections and Rulings

Testimony and exhibits can be admitted into evidence during a trial only if it meets certain criteria or standards.  It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law.  Only by raising an objection can a lawyer request and then obtain a ruling from the Court on the admissibility of the evidence being offered by the other side.  You should not be influenced against an attorney or his client because the attorney has made an objection.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating how I think you should decide this case.  I am simply making a ruling on a legal question regarding that particular piece of testimony or exhibit.

INSTRUCTION NO. 10

Court's Comments to Counsel

It is the duty of the Court to admonish an attorney who, out of zeal for his or her cause, does something which I feel is not in keeping with the rules of evidence or procedure.

You are to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

INSTRUCTION NO. 11

Court's Questions to Witnesses

During the course of a trial, I may occasionally ask questions of a witness. Do not assume that I hold any opinion on the matters to which my questions may relate. The Court may ask a question simply to clarify a matter—not to help one side of the case or hurt the other side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

INSTRUCTION NO. 12

Use of Depositions as Evidence

During the trial, certain testimony has been presented to you by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witnesses in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented in writing under oath, or on a videotape.

Such testimony is entitled to the same consideration and is to be judged as to credibility, weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

INSTRUCTION NO. 13

Credibility of Witnesses–Generally

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight, if any, that their testimony deserves.  After making your assessment concerning the credibility of a witness, you may decide to believe all of that witness's testimony, only a portion of it, or none of it.

In making your assessment of that witness you should carefully scrutinize all of the testimony given by that witness, the circumstances under which each witness has testified, and all of the other evidence which tends to show whether a witness, in your opinion, is worthy of belief.  Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while on the witness stand.  Consider the witness's ability to observe the matters as to which he or she has testified and consider whether he or she impresses you as having an accurate memory or recollection of these matters.  Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony.  Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon human experience.  In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

14

After making your own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves.

INSTRUCTION NO. 14

Expert Witness

The rules of evidence ordinarily do not permit witnesses to testify as to their own opinions or their own conclusions about important questions in a trial. An exception to this rule exists as to those persons who are described as "expert witnesses."  An "expert witness" is someone who, by education or by experience, may have become knowledgeable in some technical, scientific, or very specialized area.  If such knowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an "expert witness" in that area may state an opinion as to a matter in which he or she claims to be an expert.

You should consider each expert opinion received in evidence in this case and give it such weight, if any, as you may think it deserves. You should consider the testimony of expert witnesses just as you consider other evidence in this case. If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you should conclude that the opinion is outweighed by other evidence, you may disregard the opinion in part or in its entirety.

As I have told you several times, you—the jury—are the sole judges of the facts of this case.

INSTRUCTION NO. 15

Impeachment—Inconsistent Statement or Conduct

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's current testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown to have knowingly testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of the witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

INSTRUCTION NO. 16

Prior Inconsistent Statement by Witness

If you believe from the evidence that a witness previously made a statement inconsistent with his testimony at this trial, the only purpose for which the statement may be considered by you is its bearing on the witness's credibility.  It is not evidence that what the witness previously said is true.

<u>INSTRUCTION NO. 17</u>

<u>Evidence Admitted for a Limited Purpose Only</u>

Sometimes evidence may be admitted for a particular purpose and not generally for all purposes.  You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose.  You must consider this evidence only for the limited purpose for which it was admitted.

INSTRUCTION NO. 18

Answers to Interrogatories

Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party.  A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, the introducing party does not bind itself to those answers.  The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

INSTRUCTION NO. 19

All Available Witnesses or Evidence Need Not be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence of the case.

INSTRUCTION NO. 20

Burden of Proof

As I instructed you at the beginning of trial, Reynolds has the burden to prove every essential element of each of its claims by a preponderance of the evidence.  If Reynolds should fail to establish any essential element of any particular claim by a preponderance of the evidence you should find for Handi-Foil as to that claim.

INSTRUCTION NO. 21

Trademarks and Trade Dress Claims

Reynolds claims that Handi-Foil has infringed Reynolds' trademark and trade dress.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product, even if that source is generally unknown.

A trade dress is a type of trademark used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product. The term "trade dress" refers to the total image and overall appearance of a product, product packaging, product label, product design, or a combination of these things. It includes features such as size, shape, color or color combinations, texture, graphics, or particular sales techniques.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark and trade dress owners to show ownership of their products and control their product's reputation.

Reynolds claims that Handi-Foil infringed Reynolds' trademarks and trade dress for the design of the Reynolds Wrap package by adopting the package designs Handi-Foil has used on its packages of Handi-Foil brand aluminum roll foil.  Handi-Foil denies that its use of its trade dress on Handi-Foil brand packages either infringes or causes a likelihood of confusion.

INSTRUCTION NO. 22

Trademark/Trade Dress Infringement – Elements

Reynolds claims that Handi-Foil infringed Reynolds' trademarks and trade dress.  To

succeed on these claims, Reynolds must prove the following things by a preponderance of the

evidence:

1.  Reynolds owns trademarks and trade dress in the Reynolds Wrap package as

    trademarks and trade dress;

2.  Reynolds' trademarks and trade dress are valid trademarks and trade dress;

3.  Handi-Foil used its trade dress for the Handi-Foil brand packages in interstate

    commerce in connection with the sale or offering for sale of goods.

4.  Handi-Foil used its trade dress for the Handi-Foil brand packages in a manner that

    is likely to cause confusion as to the source, origin, sponsorship, or approval of

    Handi-Foil's products.

5.  Reynolds' claimed trade dress is not functional.

I will explain what I mean by these terms.

If you find that Reynolds has proved each of these things by a preponderance of the

evidence, then you must find for Reynolds.  However, if Reynolds did not prove each of these

things by a preponderance of the evidence, then you must find for Handi-Foil.

INSTRUCTION NO. 23

Ownership and Priority -- Unregistered and Contestable Marks

One of the things Reynolds must prove is that Reynolds owns the Reynolds Wrap package design as trademarks and common law trade dress.

Reynolds owns the Reynolds Wrap package design as trademarks and trade dress if Reynolds used the trademarks and trade dress in a manner that allowed consumers to identify the trademarks and trade dress with Reynolds or its product before Handi-Foil began to use the package designs for the Handi-Foil brand packages on its aluminum roll foil boxes.

Among the factors you may consider are the volume of sales of Reynolds' product, the nature of Reynolds' sales and purchasers, and the amount of Reynolds' advertising, promotion, and publicity relating to the product.

INSTRUCTION NO. 24

Ownership – Incontestable Registration

In this case, there is no dispute that Reynolds received two registrations for the trademarks depicting certain elements of the Reynolds Wrap package design and these registrations are now "incontestable" under the trademark laws.  This means that Reynolds' registrations of the trademarks are conclusive evidence of Reynolds' ownership of those trademarks and that the trademarks are valid and protectable.

INSTRUCTION NO. 25

Validity – Trade Dress

A valid common law trade dress is a package design that is "distinctive," which means that the package design is capable of distinguishing Reynolds' product from the products of others.  A trade dress is valid if it is inherently distinctive or if it has acquired distinctiveness, and it is nonfunctional.  I will explain these terms to you.

INSTRUCTION NO. 26

Validity – Trade Dress – Inherent Distinctiveness

An inherently distinctive common law trade dress is one that consumers would almost automatically recognize as identifying a particular brand or source of the product.

To determine whether Reynolds' common law trade dress is inherently distinctive, you should consider it as a whole.  Some of the factors you may consider are:

- Whether the product packaging is a common basic shape or design (which suggests that the trade dress is not inherently distinctive), or instead is an uncommon shape or design (which suggests that the trade dress is inherently distinctive);

- Whether the product packaging is unique or unusual in a particular field (which suggests that the trade dress is inherently distinctive), or instead is common in that field (which suggests that the trade dress is not inherently distinctive);

- Whether the product packaging is a unique feature for that type of product (which suggests that the trade dress is inherently distinctive), or instead is merely a refinement of a commonly decorative feature for that type of product (which suggests that the trade dress is not inherently distinctive).

If you find that Reynolds proved that the Reynolds Wrap package design is inherently distinctive, then you should consider whether Reynolds' claimed trade dress is functional.  I will tell you what I mean by functional.

If, on the other hand, you find that Reynolds did not prove that the Reynolds Wrap package design is inherently distinctive, then you must decide (1) whether the claimed trade dress is "descriptive" and has "acquired distinctiveness," and if so, (2) whether Reynolds'

28

claimed trade dress is "functional."  I will tell you what I mean by "descriptive," "acquired distinctiveness," and "functional."

INSTRUCTION NO. 27

Validity – Descriptive Trade Dress – Acquired Distinctiveness

Another type of valid common law trade dress is a "descriptive" package design that has "acquired distinctiveness."

A "descriptive" design directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark or trade dress. For example, a yellow container in the shape of a lemon is a descriptive trade dress when used as a container for lemon juice.

A descriptive trade dress can be valid only if it has "acquired distinctiveness."

INSTRUCTION NO. 28

Validity—Trade Dress – Acquired Distinctiveness

To show that the Reynolds Wrap package design has "acquired distinctiveness,"

Reynolds must prove:

1.    A substantial portion of the consuming public identifies the Reynolds Wrap package

design with a particular source, whether or not consumers know who or what that

source is.  The consuming public consists of people who may buy or use, or consider

buying or using, the product or similar products; and

2.    The Reynolds Wrap package design acquired distinctiveness before Handi-Foil first

began to use the package designs for the Handi-Foil products.

To decide whether the Reynolds Wrap package design has "acquired distinctiveness,"

you may consider the following:

•    the amount and manner of advertising, promotion, and other publicity of Reynolds'

product using the Reynolds Wrap package design;

•    the sales volume of Reynolds' product using the Reynolds Wrap package design;

•    the length and manner of use of the Reynolds Wrap package design;

•    consumer testimony;

•    consumer surveys.

31

INSTRUCTION NO. 29

Validity – Trade Dress – Non-Functionality Requirement

As I stated earlier, Reynolds must prove that the Reynolds Wrap package design is not "functional."

A common law trade dress is "functional" if it is essential to the operation of the product as a whole. To determine this, you are to consider the following:

- Are there other designs that could perform the function equally well?  If so, this is evidence that the design is not functional.

- Is there a patent that discloses the practical advantages of the design?  If so, this is strong evidence that the design is functional.

- Does the design provide a practical advantage?  If so, this is evidence that the design is functional.

- Has Reynolds advertised or promoted the practical advantages of the design?  If so, this is evidence that the design is functional.

- Does the design result from a comparatively simple, cheap, or superior method of manufacturing the product?  If so, this is evidence that the design is functional.

To determine whether a product's trade dress is functional, you should consider everything that makes up the trade dress.

INSTRUCTION NO. 30

Infringement – Elements – Likelihood of Confusion – Factors

As I have told you, one of the things that Reynolds must prove is that Handi-Foil used the packages designs for the Handi-Foil brand products in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Handi-Foil's products.

In deciding this, you should consider the following:

1.    The strength or distinctiveness of Reynolds' mark as actually used in marketplace;

2.    The similarity of the two marks to consumers;

3.    The similarity of the goods or services that the marks identify;

4.    The similarity of the facilities used by the markholders;

5.    The similarity of advertising used by the markholders;

6.    The defendant's intent;

7.    Actual confusion;

8.    The quality of the defendant's product; and

9.    The sophistication of the consuming public.

The weight to be given to each of these factors is up to you to determine.  No particular factor or number of factors is required to prove likelihood of confusion.

INSTRUCTION NO. 31

State Law Trademark Infringement – Elements of Claim

Virginia state law requires a finding of likelihood of confusion to prove trademark infringement.

INSTRUCTION NO. 32

Virginia Common Law – Elements of Claim

Virginia common law unfair competition claim requires the same proof, including

likelihood of confusion, as the Lanham Act offenses.

INSTRUCTION NO. 33

False Advertising Under Lanham Act – Elements of Claim

Reynolds claims that Handi-Foil engaged in false advertising.  To succeed on this claim, Reynolds must prove five things by a preponderance of the evidence:

1.  Handi-Foil made a false statement of fact in a commercial advertisement about the nature, quality, or characteristic of its own product.

2.  The statement actually deceived or had the tendency to deceive a substantial segment of Handi-Foil's audience.

3.  The deception was likely to influence the purchasing decisions of consumers.

4.  Handi-Foil caused the false statement to enter interstate commerce.  A false statement enters interstate commerce if Handi-Foil's products are advertised or sold across state lines or if Reynolds' products is advertised or sold across state lines and Handi-Foil's activities have a substantial effect on Reynolds' business.

5.  Reynolds has been or is likely to be injured as a result of the false statement. Injury includes direct diversion of sales from itself to Handi-Foil or a loss of goodwill associated with its products.

If you find that Reynolds has proved each of these things, then you must find for Reynolds.  If, on the other hand, you find that Reynolds has failed to prove any one of these things, then you must find for Handi-Foil.

36

INSTRUCTION NO. 34

Federal Trademark Dilution – Elements

Reynolds claims that Handi-Foil's use is likely to dilute the distinctiveness of Reynolds' trademarks and trade dress.  To prove its claim of likely dilution, Reynolds must prove the following facts by a preponderance of the evidence:

1.  Reynolds' trademarks and trade dress are famous and distinctive, either inherently or through acquired distinctiveness;

2.  Handi-Foil's use of its trade dress began after Reynolds' trademarks and trade dress became famous; and

3.  Handi-Foil's use of its trademark is likely to cause dilution by blurring of Reynolds' famous trademark.

INSTRUCTION NO. 35

Federal Trademark Dilution – Fame

To prevail on a claim for likely dilution of its trademarks and trade dress, Reynolds must prove by a preponderance of the evidence that its trademarks and trade dress were "famous" at the time of Handi-Foil's first use of Handi-Foil's trade dress.  A claimed trademark is "famous" if it is widely recognized by the general consuming public of the United States as the designation of the source of the owner's goods.  In considering whether Reynolds' trademarks and trade dress are "famous," you may consider all relevant factors, including the following:

1. The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by Reynolds or third parties;

2. The amount, volume, and geographic extent of sales of goods offered under Reynolds' trademarks and trade dress;

3. The extent of actual recognition of Reynolds' trademark; and

4. Whether Reynolds' trademark was registered on the Principal Register of the United States Patent and Trademark Office.

INSTRUCTION NO. 36

Federal Trademark Dilution – Dilution by Blurring

Reynolds claims that Handi-Foil's use of its trademark is likely to blur Reynolds' trademarks and trade dress.  Likelihood of dilution by blurring occurs when the similarity between Handi-Foil's trade dress and Reynolds' famous trademarks and trade dress impairs the distinctiveness of the famous trademarks and trade dress.  In determining whether Handi-Foil's trade dress is likely to blur the distinctiveness of Reynolds' trademarks and trade dress you may consider all relevant factors, including the following:

1. The degree of similarity between Handi-Foil's trade dress and Reynolds' trademarks and trade dress;

2. The degree of inherent or acquired distinctiveness of Reynolds' trademarks and trade dress;

3. The extent to which Reynolds is engaging in substantially exclusive use of its trademarks and trade dress;

4. The degree of recognition of Reynolds' trademark;

5. Whether Handi-Foil intended to create an association with Reynolds' trademarks and trade dress; and

6. Any actual association between Handi-Foil's trade dress and Reynolds' trademarks and trade dress.

Reynolds is not required to prove actual or likely confusion or actual economic injury to prove that blurring is likely.

INSTRUCTION NO. 37

Effect of Instructions as to Damages

The fact I am about to instruct you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of Reynolds from a preponderance of the evidence in the case in accordance with the other instructions.

INSTRUCTION NO. 38

Remedies – Types

If you decide for Reynolds on the question of liability, then you should consider the amount of money to award to Reynolds, if any.  This should include damages that Reynolds sustained because of Handi-Foil's infringement, and profits that Handi-Foil made because of its infringement.

If you decide for Handi-Foil on the question of liability, then you should not consider this issue.

<u>INSTRUCTION NO. 39</u>

<u>Defendant's Profits</u>

Reynolds may recover the profits Handi-Foil gained from the trademark infringement or trade dress infringement.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Defendant received due to its use of the trade dress.

Reynolds is required only to prove Handi-Foil's gross revenue.  Handi-Foil is required to prove any expenses that it argues should be deducted in determining its profits.

Reynolds is entitled to recover Handi-Foil's total profits from its use of the trademarks and trade dress, unless Handi-Foil proves that a portion of the profit is due to factors other than use of the trademarks and trade dress.

42

INSTRUCTION NO. 40

Intentional Infringement

If you find that Handi-Foil infringed Reynolds' trademarks and trade dress or engaged in false advertising, you must also determine whether Reynolds has proven that, at the time Handi-Foil used the trademarks and trade dress or engaged in the false advertising Handi-Foil acted willfully.  Handi-Foil acted willfully if it knew that it was infringing Reynolds' trademarks and trade dress, if its advertising was false, or if it acted with indifference to Reynolds' trademark and trade dress rights or whether its advertising was false.

INSTRUCTION NO. 41

Verdict – Election of Foreperson – Duty to Deliberate – Unanimity – Form of Verdict –

Communication with the Court

Upon retiring to your jury room to begin your deliberation, you must elect one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury.  In order to return a verdict, it is necessary that each juror agree to it.  Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous.  Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans.  You are judges–judges of the facts of this case.  Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case.  Nothing you have seen or read outside of court may be considered.  Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be.  Nothing said in these instructions and nothing in any form of verdict, is to

suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the facts.

A form of verdict has been prepared for your convenience.

[The form of verdict should be read to the jury]

You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson write your verdict, on the form, date and sign the form, and then return with your verdict to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

Bear in mind also that you are never to reveal to any person–not even to the Court–how the jury stands, numerically or otherwise until after you have reached a unanimous verdict.

45

<u>INSTRUCTION NO. 42</u>

<u>Exhibits During Deliberations</u>

I am sending the exhibits which have been received in evidence during the trial with you as you retire for your deliberations.