IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**ALEXANDRIA DIVISION**

JUL 1 8 2014

CLERK, U.S.
ALEXANDRIA, VIRGINIA

REYNOLDS CONSUMER PRODUCTS, INC. )
                        *Plaintiff*, )
                                  )
               v.                  )       Case No. 1:13-cv-214
                                  )
HANDI-FOIL CORPORATION, )
                                  )
                     *Defendant*. )
                                  )

## MEMORANDUM OPINION

Following a four day trial, a jury found the Defendant liable of willfully infringing on the

Plaintiff's trade dress rights in violation of the Lanham Act. The jury found in favor of the

Defendant on all other counts. The parties have filed numerous post-trial motions. The

Defendant's primary request is that the Court set aside the verdict. The Plaintiff requests the

Court enforce the jury's verdict by way of permanent injunction and award it its costs and fees.

For the reasons set forth below, the Court upholds the jury's verdict and grants an injunction in

the Plaintiff's favor. The Court also grants the Plaintiff's motion for costs, but denies its request

for attorney's fees.

## BACKGROUND

This dispute began on February 15, 2013 when the Plaintiff, Reynolds Consumer

Products Inc. ("Reynolds") sued the Defendant, Handi-Foil Corporation ("Handi-Foil"). Each

party manufactures, markets, and sells aluminum roll foil. Reynolds' version of this product,

Reynolds Wrap, has been the leading brand in the field for decades. In 2012, Handi-Foil

launched a line of roll foil products bearing the Handi-Foil name and claiming to be new to the

1

market. This matter arises from Reynolds' allegation that the packaging of this Handi-Foil product infringed and diluted the "famous and distinctive" Reynolds Wrap trade dress.

Reynolds twice moved to amend its complaint. Each time the motion was granted. On August 28, 2013, Reynolds filed its Second Amended Complaint, which became the operative complaint for the litigation. All told, Reynolds raised eight causes of action against Handi-Foil based on the marketing of the Handi-Foil roll foil product.[1] In its answer, Handi-Foil asserted two counterclaims. The first sought a cancellation of Reynolds' trademark registrations and the second sought a declaratory judgment of non-infringement.

The parties filed extensive pre-trial motions including cross-motions for partial summary judgment. At the time, the parties fervently debated whether or not Reynolds had abandoned its pertinent trade mark registrations. In a Memorandum Opinion dated February 27, 2014, the Court granted Reynolds' motion for partial summary judgment, thus dismissing Handi-Foil's abandonment counterclaim. The court also denied Handi-Foil's corresponding motion for partial summary judgment and its motion to strike Reynolds' jury demand.

On March 21, 2014 the Court held argument on multiple evidentiary motions. Upon ruling on those motions the Court invited the parties to contact a Magistrate Judge to further mediate their dispute. The Court also invited the parties to consider voluntarily waiving the jury and conducting a bench trial instead. Both invitations were refused. With the parties having agreed to dismiss Reynolds' seventh cause of action (unjust enrichment) as well as Handi-Foil's declaratory judgment counterclaim, the seven remaining counts of Reynolds' complaint were left to be tried by jury.

---

[1] The eight counts brought by Reynolds were: federal trademark infringement in violation of § 32 of the Lanham Act (Count 1); federal false designation of origin in violation of § 43(a) of the Lanham Act (Count 2); federal trade dress infringement in violation of § 43(a) of the Lanham Act (Count 3); federal trademark dilution in violation of § 43(c) of the Lanham Act (Count 4); state law trademark infringement (Count 5); common law unfair competition (Count 6); unjust enrichment (Count 7); and federal false advertising and unfair competition (Count 8).

The jury trial began on March 21, 2014. Four days later the jury unanimously found that Handi-Foil had willfully infringed on Reynolds' federal trade dress rights (Count 3). The jury found in favor of Handi-Foil on the remaining counts and awarded no damages.

The parties submitted post-trial motions on April 30, 2014, pursuant to their agreed upon post-trial briefing schedule. Handi-Foil submitted (i) a motion for judgment as a matter of law and costs, or, in the alternative, a motion for new trial; and (ii) a motion to bar Reynolds from seeking relief under the doctrine of laches. Reynolds filed (i) a request for a permanent injunction; and (ii) a motion for costs and attorney's fees. All four motions were fully briefed, and the Court heard oral argument on them in open court on June 13, 2014.

## DISCUSSION

### I.  Handi-Foil's Post-Trial Motions

Handi-Foil requests the Court enter judgment as a matter of law in its favor on Count 3, or, in the alternative, order a new trial. Additionally, Handi-Foil argues that its affirmative defense of laches should bar Reynolds from obtaining any relief on Count 3.

#### a.  Renewed Motion for Judgment As A Matter of Law Under Rule 50

Handi-Foil appropriately moved for judgment as a matter of law before the case was submitted to the jury. Handi-Foil now renews its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). Such a motion "should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999) (citing *White v. County of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993)). In considering Handi-Foil's Rule 50(b) motion, the Court views all the trial evidence in the light

most favorable to Reynolds and draws all reasonable inferences in its favor. *Id.* (citing *Austin v. Torrington Co.*, 810 F.2d 416, 420 (4th Cir. 1987)).

Handi-Foil first claims it is entitled to judgment as a matter of law due to the Supreme Court's recent opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Handi-Foil asserts that under *Lexmark* Reynolds cannot prevail on its trade dress infringement claim because it did not produce "substantial evidence" of harm during trial. Putting aside the contention that Reynolds failed to demonstrate harm, Handi-Foil's argument fails because *Lexmark* is totally inapplicable to the issue of whether the jury's finding of trade dress infringement was appropriate.

In *Lexmark*, the Supreme Court "granted certiorari to decide the appropriate analytical framework for determining a party's standing to maintain an *action for false advertising* under the Lanham Act." 134 S. Ct. at 1385 (emphasis added) (internal citations omitted). A unanimous Supreme Court answered this question by holding that "[t]o invoke the Lanham Act's cause of action *for false advertising*, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395 (emphasis added). Neither the Court nor Handi-Foil has ever questioned Reynolds' standing to bring its various Lanham Act claims. Moreover, the jury's false advertising verdict in Handi-Foil's favor is not being challenged. Consequently, Handi-Foil's attempt to broaden the ruling in *Lexmark*—which applies specifically to standing in false advertising claims—to the issue of whether Reynolds provided substantial evidence to support the jury's finding of trade dress infringement is entirely unavailing.

As an alternative basis for its Rule 50(b) motion, Handi-Foil asserts it was unreasonable for the jury to find that Handi-Foil's packages create a likelihood of confusion with Reynolds'

4

trade dress. Under well-settled Fourth Circuit precedent, the Court instructed the jury that it should consider nine factors in determining whether there was a likelihood of confusion:

> (1) The strength or distinctiveness of Reynolds' mark as actually used in marketplace; (2) The similarity of the two marks to consumers; (3) The similarity of the goods or services that the marks identify; (4) The similarity of the facilities used by the markholders; (5) The similarity of advertising used by the markholders; (6) The defendant's intent; (7) Actual confusion; (8) The quality of the defendant's product; and (9) The sophistication of the consuming public.

*See* Trial Tr. vol. 4, 1117-1118, Apr. 14, 2014 [hereinafter "Tr."]. *See also Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158-59 (4th Cir. 2014) (citing *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009)).

After reviewing the nine factors listed above, the Court instructed the jury that "[t]he weight to be given each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion." *See* Tr. at 1118:2-4. This clarifying instruction is also firmly supported by Fourth Circuit law. *See Swatch AG*, 739 F.3d at 158-59 ("These nine factors serve as a guide rather than 'a rigid formula for infringement'; they are not all of equal importance and not all factors are relevant in every case." (citing *George & Co.*, 575 F.3d at 393)).

In Handi-Foil's view, the packages in question are indisputably dissimilar and there was no evidence of actual consumer confusion. In its memorandum in support of its motion for judgment as a matter of law, Handi-Foil states that "where the marks at issue are dissimilar and there is no evidence of actual confusion, extrinsic factors such as the strength of the plaintiff's mark and the similarity of the products, sales outlets, and advertising are insufficient to create a likelihood of confusion." *See* Dkt. No. 266 at 9. Handi-Foil maintains that this alleged absence of the second and seventh factors alone requires setting aside the jury's verdict.

In support of this far-reaching proposition, Handi-Foil first turns to *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992). Rather than back this claim, *Anheuser-Busch* directly contradicts Handi-Foil's contention. There the Fourth Circuit reversed a grant of judgment as a matter of law and affirmed a jury verdict. In so doing the Fourth Circuit noted that the "pivotal" issue of likelihood of confusion is "particularly amendable to resolution by a jury." *Anheuser-Busch*, 962 F.2d at 318 ("Likelihood of confusion is 'frequently a fairly disputed issue of fact on which reasonable minds may differ.'" (citing *Warner Bros., Inc. v. American Broad. Cos.*, 720 F.2d 231, 246 (2d Cir. 1983)). Additionally, the *Anheuser-Busch* court noted the likelihood of confusion factors are "not meant to be a 'rigid formula' for infringement," but are merely a "catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion." *Id.* at 320 (internal citations omitted).

In its reply memorandum in support of its motion for judgment as a matter of law Handi-Foil backtracks slightly, stating that "[w]hile the Fourth Circuit considers nine factors to determine if the defendant's use creates a likelihood of confusion, it weighs two with particular importance—similarity of the marks and actual confusion." *See* Dkt. No. 285 at 12. Even then, however, Handi-Foil maintains that "[n]othing Reynolds cites . . . cures its failure to provide substantial evidence on those two factors." *Id.* To support this slightly less absolute focus on two factors alone, Handi-Foil turns to *Swatch AG*. In that case the Fourth Circuit did note that "absence of any evidence of actual confusion over a substantial period of time creates a strong inference that there is no likelihood of confusion." *Swatch AG*, 739 F.3d at 162 (citing *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 268-69 (4th Cir. 2006)). As this citation itself suggests, actual confusion may be less important if the packages in question have not been on the market for a "substantial period of time." Moreover, in *Swatch AG* the Fourth Circuit

6

continued to maintain that "the factors are weighed differently depending on the circumstances of the cases." *Id.*[2]

Stepping away from Handi-Foil's focus on actual confusion and turning instead to the likelihood of confusion test as accurately represented to the jury, it cannot be said that the verdict was unsupported by substantial evidence. While the parties' individual experts unsurprisingly reached opposing views as to actual confusion, Reynolds presented evidence supporting all of the other relevant likelihood of confusion factors. For example, Reynolds provided overwhelming evidence of the strength and distinctiveness of its trade dress,[3] similarity of the two packages,[4] similarity of the goods identified,[5] similarity of the facilities used,[6] similarity in advertising,[7] and, perhaps most significantly, Handi-Foil's intent.[8] Taken together, this evidence supported the jury's finding that certain Handi-Foil packages would likely cause confusion with the Reynolds Wrap trade dress.

---

[2] The Court is aware that in some cases actual confusion "provides the most compelling evidence of likelihood of confusion." *See Lone Star Steakhouse & Saloon v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir. 1995) (citing *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 448 n.24 (4th Cir. 1986); *AMP Inc. v. Foy*, 540 F.2d 1181, 1186 n. 8 (4th Cir. 1976); *HMH Publishing Co. v. Brincat*, 504 F.2d 713, 719 (9th Cir. 1974)). Yet Handi-Foil's attempt to twist this standard such that the potential absence of actual confusion mandates a finding of non-infringement misreads precedent and is an exercise in faulty logic. Under Handi-Foil's view, in all cases likelihood of confusion would be determined merely by looking at actual confusion first and similarity second, thus eliminating seven or eight of the nine factors. The Court rejects Handi-Foil's invitation to take such a significant departure from Fourth Circuit law.

[3] Reynolds submitted evidence showing multiple years in which Reynolds Wrap Aluminum Foil ranked at the top of EquiTrend's Overall Brand Equity benchmark, which measures the familiarity, quality, purchase intent, brand expectations, and distinctiveness of a number of well-known products. *See* Dkt. 283, Ex. 27-29; Plfs. Tr. Exs. 376 and 377.

[4] Evidence supporting the similarities between the Handi-Foil and Reynolds Wrap packages is described in more detail below in the Court's discussion on Handi-Foil's Rule 59 motion.

[5] Both packages are used to identify aluminum roll foil product.

[6] Both products are sold at large consumer grocery stores.

[7] While Handi-Foil does not advertise to individual aluminum roll foil consumers, almost the entirety of the marketing pitch for the Handi-Foil roll foil centered on the product being "comparable to Reynolds Wrap."

[8] Reynolds produced emails between Handi-Foil and its package manufacturer where the parties articulated their specific intent to make the Handi-Foil aluminum roll foil box resemble Reynolds Wrap. *See, e.g.*, Dkt. 283, Ex. 12; Plf. Tr. Ex. 120.

### b. Motion for New Trial Under Rule 59

In the alternative, Handi-Foil requests the Court order a new trial pursuant to Fed. R. Civ. P. 59. Under Rule 59 the Court may weigh the evidence and consider the credibility of witnesses, and set the verdict aside if it finds the verdict to be against the clear weight of evidence. *See Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989). This inquiry differs from the Rule 50 inquiry above in that the Court may order a new trial even if the jury's verdict is supported by substantial evidence. *Id.*

Handi-Foil incorporates all of its arguments from its Rule 50(b) motion into its request for a new trial under Rule 59. Additionally, Handi-Foil argues the jury's verdict must be set aside because Reynolds' expert, Sarah Butler, was not credible. The Court addressed why most of these arguments fail during its discussion of Handi-Foil's Rule 50(b) motion. As for the testimony of Sarah Butler, the Court finds no reason to render her consumer survey and report not credible. Even if the Court were so compelled, Ms. Butler's testimony would only weigh against Reynolds on the actual confusion factor. As noted above, the evidence regarding the other relevant likelihood of confusion factors clearly weighed in Reynolds' favor.

### c. Motion for New Trial Due to Inconsistent Verdict

Handi-Foil's final attempt to set aside the verdict rests on an argument that the jury's decision is inconsistent and cannot be reconciled. To show this inconsistency Handi-Foil points to the jury instructions, the Court's summary judgment order, and the relationship between trademark and trade dress rights. Before turning to these arguments, the Court first addresses Reynolds' argument that Handi-Foil has waived its right to a new trial because Handi-Foil failed to properly object to the verdict before the jury was dismissed.

8

*i.*   *Waiver*

After the verdict was read, Handi-Foil's lawyer did not make a formal request for a new trial, he merely pointed out an alleged inconsistency in the jury's verdict to the Court. The Court then advised him to address the matter in post-trial briefing, which Handi-Foil has done. Rule 49(b) of the Federal Rules of Civil Procedure mandates that "[w]hen the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." The Fourth Circuit has interpreted this rule as imposing "an obligation upon trial counsel to object to any asserted inconsistencies in the response to jury interrogatories prior to the discharge of the jury." *See White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989) (citing *Fernandez v. Chardon*, 681 F.2d 42, 58 (1st Cir. 1982); *Merchant v. Ruhle*, 740 F.2d 86, 89 (1st Cir. 1984)). A failure to "bring any purported inconsistencies in the jury's verdict to the attention of the court prior to release of the jury will constitute a waiver of a party's right to seek a new trial." *Id.*

Reynolds argues that Handi-Foil's actions constitute a waiver under the rule from *White*. This argument fails. Another Fourth Circuit case applying the rule in *White* is highly instructive. In *Essex v. Prince George's County*, the Fourth Circuit found no waiver in circumstances similar to those here. 17 Fed. App'x 107, 118, n. 4 (4th Cir. 2001). There, like here, an attorney notified the district court of a potential inconsistency in the jury's verdict but was instructed to address the issue in post-trial motions and the jury was then released. *See Id.* Relying in part on *White*, the Fourth Circuit noted the party claiming waiver had "cited no authority, and we can discover none, for the proposition that a party who timely objects to an inconsistent verdict but does not request the proper relief, waives his or her right to a new trial." *Id.* The *Essex* court went on to

9

find that "[i]n any event, under the circumstances of this case, we conclude that [the party seeking to set aside the verdict] fairly preserved the issue of the inconsistency of the verdict." *Id.* As *Essex* demonstrates, Handi-Foil did not waive its right to a new trial under the rule in *White*.

### ii.   Legal Standard

Having decided that Handi-Foil did not waive its right to a new trial, the Court now turns to Handi-Foil's argument that the jury's verdict must be set aside because it is inconsistent. The standard for setting aside an allegedly inconsistent jury verdict is a high one. If there is a view of the jury's verdict which makes it consistent, it "must be resolved that way." *See City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 456 (4th Cir. 1990) (citing *A. & G. Stevedores v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962)). The Court is not to seek out a potential view of the case which makes the jury's finding inconsistent since such an approach "results in a collision with the Seventh Amendment." *Id.* Put differently, the Court is "required to determine whether the verdict can be sustained on any reasonable theory." *See Vigilant Ins. Co. of New York v. McKenney's Inc.*, 524 F. App'x 909, 911-12 (4th Cir. 2013) (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 599 (4th Cir. 1996)). Given these standards, the Court must decide if there is any reasonable theory that can reconcile the jury's finding in favor of Reynolds on Count 3 (trade dress infringement) with its findings in favor of Handi-Foil on Counts 1 (trademark infringement), 5 (state law trademark infringement), and 6 (common law unfair competition).

### iii.   Trademark vs. Trade Dress Infringement

The crux of Handi-Foil's inconsistency argument is that Reynolds' registered trademarks provide broader rights than the Reynolds Wrap common law trade dress. Under this theory, Reynolds' trade dress claim must be subsumed within its trademark claim, thus making it

impossible for a jury to find trade dress infringement *but not* trademark infringement. Reynolds argues the opposite, stating that its trade dress rights are broader than those accompanying its registered marks. Clarifying this dispute is a necessary part of the Court's review. So too is an understanding of the specific facts of this case and how those facts were presented to the jury. The jury's verdict is reconcilable when all of these elements are first clarified individually and then reviewed together in the proper context.

The Lanham Act defines a "trademark" as "any word, name, symbol, or device, or any combination thereof. . . used by a person. . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *See* 15 U.S.C. § 1127. *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A product's "trade dress," on the other hand, is "essentially its total image and overall appearance." *See Two Pesos*, 505 U.S. at 764 n. 1 (citations omitted). Trade dress thus deals with "the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id. See also* 1 J. THOMAS MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:1 (4th ed. 2014) [hereinafter "1 J. McCarthy"]. Both a company's registered trademarks and its common law trade dress are protected from infringement under the Lanham Act. *See* 15 U.S.C. §§ 1114, 1125. Trademark infringement "focuses on one aspect of a product's 'image,' i.e., the trademark." *See M. Kramer Mfg.*, 783 F.2d at 448 n. 25. Trade dress infringement differs in that it "focuses on 'the total image of plaintiff's product, package, and advertising and compare[s] this with the defendant's image." *Id.* (citing 1 J. McCarthy at § 8:1).

The Court, appropriately in its view, instructed the jury on the differences between trademark and trade dress as follows:

11

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold, even if that source is generally unknown.

. . .

The term "trade dress" refers to the total image and overall appearance of a product, product packaging, product label, product design, or a combination of these things. It includes features such as size, shape, color or color combinations, texture, graphics, or particular sales techniques.

*See* Tr. at 1110:23 – 1111:11.

Before addressing the issue of whether Reynolds' trade dress infringement claim is subsumed by its trademark infringement claim, or vice-versa, it is important to analyze how Reynolds chose to present these various rights.

Reynolds' trademark registrations are as follows:

| <u>Reg.</u> | <u>Reg. Date</u> | <u>Mark</u> | <u>Image</u> |
|---|---|---|---|
| 1,070,888 | August 9, 1977 | Reynolds Wrap Package Design |  |
| 1,067,092 | June 7, 1977 | Reynolds Wrap Package Design (with name) |  |

*See* Plf. Second Amend. Complaint, Dkt. No. 56 at ¶ 10. The drawing for Reynolds' Trademark No. 1,070,888 [hereinafter "the '888 mark"] is "lined to designate the colors blue (horizontal), silver (diagonal), and pink (vertical)." *Id.* The drawing for Reynolds' Trademark No. 1,067,092 [hereinafter "the '092 mark"] repeats the color scheme from the '888 mark and merely adds the words "Reynolds Wrap" on the drawing. *Id.* Combined, these two registered marks protect the Reynolds Wrap color scheme and brand name.

12

Additionally, in its operative complaint, Reynolds claimed to own "extensive common law trade dress rights in the overall look, feel and commercial impression of its Reynolds Wrap packaging design." *Id.* at ¶ 11. Reynolds identified *at least* twelve elements that make up this common law trade dress: (a) the color scheme; (b) the use of the color scheme; (c) the use of prominent lettering within the blue section; (d) the use of silver bands to separate the blue and pink sections; (e) the placement of the quantity information; (f) the inclusion of the "made in the U.S.A." lettering; (g) the repetition of the color scheme and type on the ends of the boxes; (h) the "press here to lock" feature at the ends of the boxes; (i) the use of graphics with how-to information; (j) the "Lift" graphic; (k) the positioning of the brand name on the top flap of the box; and (l) the color yellow, placement, and text used to caution the consumer. *Id.*

With Reynolds' own descriptions of its trademark and trade dress in mind, it is far easier to dissect the parties' competing claims over which provides broader rights, and more importantly, to analyze Handi-Foil's claim that there was no rational basis for the jury to find trade dress infringement but not trademark infringement.

The first point of confusion which can be quickly clarified stems from Professor McCarthy's comment that distinctions between trademarks and trade dress "have largely disappeared." *See* 1 J. McCarthy at § 8:1. Isolated on its own, this observation bolsters Handi-Foil's irreconcilability argument. In the very next sentence of his treatise, however, Professor McCarthy goes on to say "[t]oday, many types of designations protectable as 'trade dress' are also registerable as 'trademarks.'" *Id.* This accurate description of the law only notes that what makes up a product's trade dress *can hypothetically* just as easily be registered as a trademark. Applied to the facts of this case, the following should therefore be obvious: although Reynolds *could have* likely obtained a registered trademark that is identical in all respects to its trade dress,

13

it chose not to. Additionally, as Reynolds' own non-exhaustive listing of its trade dress elements demonstrates, the marks Reynolds has chosen to register are different than its unregistered trade dress. This is all to say that, in the context of this case, trademarks are not the same as trade dress. On its face, this premise does little to reconcile the parties' competing arguments about whether trademarks or trade dress provide broader rights. Again, the facts—which include the reality that Reynolds Wrap trade dress is different than the registered marks—are central.

Reynolds points to *Two Pesos* for the proposition that the Lanham Act's trade dress infringement provision "prohibits a broader range of practices" than it does for trademark infringement. The text pointed to in *Two Pesos* merely notes that "the general [Lanham Act] principles qualifying a mark for registration . . . are for the most part applicable in determining whether an unregistered mark is entitled to protection." 505 U.S. at 768. As Handi-Foil correctly notes, the entire quotation from *Two Pesos*—not to mention the issue actually addressed in that case—does little to support Reynolds' argument and is mostly irrelevant.

Professor McCarthy has advised that "the irony of both patent claims and definitions of trade dress is that the more elements that are listed, the narrower and weaker the claim." *See* 1 J. McCarthy at § 8:3. To bolster its argument, Handi-Foil focuses on this statement and the fact that Reynolds' trade dress includes at least twelve elements while its registered marks contain significantly less. The Court does not doubt the accuracy of Professor McCarthy's observation. Unfortunately for Handi-Foil, this statement does not mandate the conclusion Handi-Foil suggests. Professor McCarthy only notes that trade dress with more elements will generally be weaker than trade dress with fewer elements. Even if this proposition was transferred to an argument that a trade dress with more elements is generally weaker than a *trademark* with fewer

14

elements—a suggestion the Court offers no opinion on—such a theoretical deduction cannot be divorced from the facts of this case as presented to the jury.

For Reynolds trademark infringement claims (Counts 1 and 5), the jury was told that "Reynolds received two registrations for the trademarks depicting certain elements of the Reynolds Wrap package design." *See* Tr. at 1113:7-13. As Reynolds' registered marks show, those "certain elements" are *only* the color scheme and the words "Reynolds Wrap." As already described in greater detail above, the jury was also appropriately instructed that Reynolds' trade dress "refers to the total image and overall appearance of a product." *Id.* at 1111:6-7. The jury therefore had two inquiries to keep in mind when comparing the Reynolds and Handi-Foil boxes: (1) for the purposes of trademark infringement, are the Handi-Foil boxes likely to cause confusion with the *"certain elements"* making up Reynolds' *registered marks*; and (2) for the purposes of trade dress infringement, are the Handi-Foil boxes likely to cause confusion with "the *total image and overall appearance*" of the Reynolds Wrap *boxes*. The jury answered the first inquiry in the negative and the second in the affirmative. While this may not have been the most reasonable verdict, it was not an unreasonable one.

A picture is worth a thousand words. Moving away from the theoretical arguments above to the actual boxes presented at trial provides further context for the jury's verdict. Consider the two following sets of boxes:

**Example No. 1**

*Reynolds Wrap Box:*



*Corresponding Allegedly-Infringing Handi-Foil Box:*



**Example No. 2** [9]

*Reynolds Wrap Box:*



*Corresponding Allegedly-Infringing Handi-Foil Box:*



The jury easily could have looked at the boxes and decided the difference between the words "hand-foil" and "Reynolds Wrap" on each box were enough to find no infringement between the Handi-Foil boxes and the '092 mark (which includes the words "Reynolds Wrap"). As for the '888 mark (which focuses on the color scheme), the jury could have also determined that the Handi-Foil boxes did not infringe on "certain elements" of Reynolds' trademark. For example, the jury could have noticed that each Reynolds box above has three curved silver lines, separating the blue from the pinkish areas in Example No. 1 and the yellow area in Example No.

---

[9] Reynolds alleged that Handi-Foil had four infringing boxes, and the jury found that the four Handi-Foil boxes in question did infringe on Reynolds' trade dress rights (Count 3) but not on its trademark rights (Count 1). The Court's analysis of the two sets of boxes above can easily be expanded to cover all of the boxes considered by the jury.

2. The jury could easily have also noticed that on the Handi-Foil boxes the blue area is directly next to the pink and yellow areas. This would have been a reasonable theory, and there are surely others that would have been just as reasonable as well.

Turning to trade dress, the similarity between the overall impressions of the two boxes in each set is striking. This is the case even if the boxes' color schemes are put aside. Take Example No. 2. In this set, the two boxes both say "non-stick" and "heavy duty." The Reynolds box says "foods lift right off!" and the Handi-Foil box says "Food Easily Lifts Off!" Both boxes place the (identical) square footage on the right end of the box, with the metric conversions typed neatly below. Additionally, the two-dimensional images above cannot capture the similarity of the boxes' side and end panels, all of which bear striking semblance. Add to these characteristics the "Made in USA" language on the right portion of the boxes in Example No. 1—not to mention the other likelihood of confusion factors including the overwhelming evidence of Handi-Foil's intent to mimic the Reynolds Wrap box—and the reasonableness of the jury's trade dress verdict becomes obvious. In fact, any other finding may well have been unreasonable.

> iv.    *The Jury Instructions*

Handi-Foil notes that, even if the trademark and trade dress rights are different, the jury was instructed to apply the same likelihood of confusion test to each. In Handi-Foil's view, this also renders the verdict irreconcilable. Handi-Foil correctly points out that the Court instructed the jury to use the same likelihood of confusion test for analyzing Counts 1, 2, 5, and 6 of Reynolds' complaint. Without repeating the extensive discussion above, the Court is confident that the jury applied the likelihood of confusion test in the context of two different inquiries: trademark and trade dress infringement. It was therefore rational for the jury to reach one finding

on the likelihood of confusion test regarding Reynolds' discrete registered marks and an opposite finding on the same test regarding the overall trade dress of Reynolds Wrap.

It is perhaps more difficult to square the jury's finding of likelihood of confusion for trade dress with its finding that Handi-Foil is not guilty of common law unfair competition (Count 6). *See, e.g.*, 1 J. McCarthy at § 8:1 ("If defendant's trade dress is likely to cause confusion with plaintiff's trade dress, then a finding of unfair competition is warranted."). This decision may be attributable to nothing more than the jury's misunderstanding of the instructions. Such misunderstandings do not require a new trial. *See City of Richmond*, 918 F.2d at 458 ("a jury verdict inconsistent on its face does not require a new trial if the inconsistency may reasonably be attributed to the jury's misunderstanding of the jury instructions." (citing *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 685 n. 10 (11th Cir. 1983))).

The only instruction provided to the jury for Reynolds' unfair competition claim (Count 6) stated that "Virginia common law unfair competition claim requires the same proof, including likelihood of confusion, as the Lanham Act offenses." *See* Tr. at 1118:8-10. Reasonable jurors could look at this instruction and determine that a finding of non-infringement on *any* of the Lanham Act claims required a finding in Handi-Foil's favor on the unfair competition count. Such a view is not necessarily irrational nor does it render the jury's careful deliberations inconsistent. *City of Richmond*, 918 F.2d at 462 n. 19 ("[A]s far as irreconcilability is concerned, our inquiry ends when, after viewing all surrounding circumstances, we conclude that the jury's verdict is 'consistent.'").

         v.    *The Court's Summary Judgment Memorandum Opinion*

Finally, Handi-Foil claims that, if the jury's verdict can be reconciled, then it cannot be squared with the Court's February 27, 2014 Memorandum Opinion resolving the parties' cross-

motions for partial summary judgment. *See* Dkt. No. 164. In its summary judgment motion, Handi-Foil argued that Reynolds had abandoned its registered marks. This question forced the court to decide whether the Reynolds Wrap boxes used in commerce create the "same continuing commercial impression" as the '888 and '092 marks. *Id.* at 4 (applying the Fourth Circuit standard for abandonment set out in *George & Co.*, 575 F.3d at 402). In deciding the abandonment issue, the Court held that, as a matter of law, the specimen Reynolds provided to the United States Patent and Trademark Office ("USPTO") created the same continuing commercial impression as its current box. *Id.* at 7. Handi-Foil relies on this language to show that the jury could not have rationally seen a substantive difference between Reynolds' trade dress and the registered marks. Alternatively, Handi-Foil requests the Court reverse its position and find that Reynolds has abandoned its marks.

This argument fails for a number of reasons. Paramount among them is that in its February Memorandum Opinion on abandonment the Court compared different items under a different standard than what the jury compared at the close of trial. In its decision the Court compared the Reynolds' 2007 USPTO specimen with the Reynolds Wrap box as currently sold under the standard for "tacking," which is a question of law. At the close of trial, the jury was asked to make an entirely factual determination by comparing a variety of Handi-Foil boxes to other Reynolds Wrap boxes as well as Reynolds' registered marks. Handi-Foil's reliance on the Court's February Memorandum Opinion is therefore misplaced.

### d. Affirmative Defense of Laches

Having denied Handi-Foil's motion for judgment as a matter of law or a new trial, the Court turns to Handi-Foil's affirmative defense of estoppel by laches. For the doctrine to bar Reynolds from obtaining relief, Handi-Foil bears the burden of proving that: (1) Reynolds knew

of Handi-Foil's infringing use, (2) Reynolds' delay in challenging the infringement was unreasonable, and (3) Handi-Foil has been unduly prejudiced by Reynolds' delay. *See Sara Lee Corp. v. Kayer-Roth Corp.*, 81 F.3d 455, 461 n. 7 (4th Cir. 1996) (citing *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005). Because the Court finds that Reynolds' delay was not unreasonable, Handi-Foil's laches defense fails.

Handi-Foil claims Reynolds failed to act reasonably by waiting ten months between allegedly gaining knowledge of the infringing Handi-Foil boxes and bringing suit. Several principles bear on the issue of whether this delay was unreasonable. First, and in this case determinatively, the Fourth Circuit has noted that "estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion." *Sara Lee*, 81 F.3d at 461 (citing 4 McCarthy at § 31.04[1]; *Univ. of Pittsburgh v. Champion Prod., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982)). *See also Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) ("A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm. Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches." (citations omitted)).  Given the jury's finding of willful trade dress infringement, and the Court's granting of an injunction in Reynolds' favor in light of that finding, estoppel by laches is inappropriate. *See Rothman v. Greyhound Corp.*, 175 F.2d 893, 895 (4th Cir. 1949) ("It is settled that mere delay in seeking relief is no bar to an injunction when the infringer has had knowledge of the fact that he is infringing and has deliberately set out to capitalize on the good will of the owner." (citing *Menendez v. Holt*, 128 U.S. 514, 523-24 (1888)).

In determining whether Reynolds' delay was unreasonable, the Court is also guided by the limitations period it would borrow from actions at law in Virginia. *See, e.g., Lyons*, 243 F.3d at 799 (citing *Sara Lee*, 81 F.3d at 461). In this case the analogous statute of limitations period is two years. *See, e.g., Teaching Co. Ltd. P'Ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 585 (E.D. Va. 2000) (citing *Unlimited Screw Prods., Inc. v. Malm*, 781 F. Supp. 1121, 1125 (E.D. Va. 1991)). That Reynolds' ten month delay fits comfortably within this two year statute of limitations is further evidence that the delay was reasonable.

The Court is also mindful of the dilemma sometimes faced by plaintiffs in Reynolds' position. If Reynolds had filed its claims earlier, it may have been even more difficult for it to prove damages or reputational harm. *See Sara Lee Corp.*, 81 F.3d at 462 ("If [the trademark owner] rushes immediately into litigation, it may have little or no evidence of actual confusion and real commercial damage . . . and may even face a counterclaim for overly aggressive use of litigation." (citing 4 McCarthy § 31.06[2][c])). Therefore, Reynolds had "no obligation to sue until the likelihood of confusion loom[ed] large." *See id.*

## II.   Reynolds' Request for a Permanent Injunction

Given the jury's finding of willful trade dress infringement, Reynolds seeks a permanent injunction pursuant to Section 34 of the Lanham Act. This section vests the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent a violation" of the Act's trade dress infringement provision. *See* 15 U.S.C. § 1116(a). Traditionally, such injunctive relief has been the "preferred remedy to insure [*sic*] that future violations will not occur." *See Lone Star*, 43 F.3d at 939 (citation omitted). The Supreme Court, however, has warned against any categorical grants, or denials, of such relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

Instead, for the Court to grant an injunction, Reynolds must show that (1) it has suffered irreparable harm; (2) its remedies at law are inadequate; (3) the balance of the hardships favors Reynolds; and (4) the public interest would not be disserved by the injunction. *See PBM Prods., LLM v. Mead Johnson & Co*, 639 F.3d 111, 126 (4th Cir. 2011) (citing *eBay*, 547 U.S. at 391)). Reynolds has made this showing.

Prior to the Supreme Court's ruling in *eBay*, the Fourth Circuit held that "a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *See Lone Star*, 43 F.3d at 938 (citations omitted). While under *eBay* a finding of irreparable harm on its own does not automatically trigger injunctive relief, this Court has continued to find that "irreparable harm is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element of an infringement case." *See, e.g., Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, 895 F. Supp. 2d 752, 761 (E.D. Va. 2012) (citing *Scotts v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) (citing *Eli Lily & Co. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997))). *See also Lorillard Tobacco Co. v. S & M Brands, Inc.*, 616 F. Supp. 2d 581, 587 (E.D. Va. 2009) (also citing *Scotts* and *Genesee Brewing*).

Handi-Foil argues that Reynolds' failure to show actual harm in the form of actual consumer confusion or monetary damages is fatal to its request for an injunction. This argument misapplies the relevant standards. The jury found that Handi-Foil willfully infringed on Reynolds' trade dress rights. This verdict required the jury to find that Handi-Foil had created a likelihood of confusion. This likelihood of confusion "primarily represents an injury to reputation." *See Lone Star*, 43 F.3d at 939 (citing *Commc's Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1250 (4th Cir. 1970) (quoting *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d

Cir. 1928))). Consequently, infringement "gives rise to irreparable injury, in that plaintiff has lost control of its business reputation . . . and there is an inherent injury to the good will and reputation of the plaintiff." *Id.* The jury thus found that Reynolds suffered irreparable harm, and in this case that ongoing injury must be cured by way of an injunction.

Importantly, Handi-Foil does not claim that Reynolds' remedies at law are adequate, nor could it. It is true the jury found Reynolds failed to prove that Handi-Foil earned profits from the infringing products. Reynolds provided evidence regarding potential lost market share, but also failed to substantially demonstrate any lost profits. Despite this, the jury's finding of likelihood of confusion demonstrates a palpable risk of continuing and future harm. This is the exact type of harm meant to be remedied by injunctive relief. *See Teaching Co.*, 87 F. Supp. 2d at 587 ("denial of an injunction forces the plaintiff to suffer continued infringement and to bring successive suits. . .") (citing *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639-40 (D.C. Cir. 1982)).[10]

Handi-Foil argues that equitable balancing should also defeat Reynolds' request for injunctive relief. In support of this position Handi-Foil first incorporates its estoppel by laches argument. That argument is rejected for the reasons discussed above. Second, Handi-Foil asserts the doctrine of unclean hands. This equitable position also fails. Handi-Foil's defense of unclean hands is based on the allegation that representatives of Reynolds stole a Handi-Foil trade show box that was not being used in commerce. In order to avail itself of the unclean hands doctrine, Handi-Foil must demonstrate that it was injured by Reynolds' conduct. *See Lawler v. Gilliam*, 569 F.2d 1283, 1294 (4th Cir. 1978). Reynolds agreed to drop its claims related to this trade

---

[10] Pointing to the jury's finding in its favor on Reynolds' false advertising claim, Handi-Foil also argues that Reynolds has failed to show irreparable harm because the jury found that Handi-Foil roll foil is of the same quality as Reynolds Wrap. This argument is unavailing. Even assuming the jury's verdict on Count 8 demonstrates the jury's belief that Handi-Foil is "comparable" to Reynolds Wrap, this alone does not negate any reputational harm suffered by Reynolds due to Handi-Foil's infringement. Furthermore, the quality of goods is irrelevant to any infringement claim. *See, e.g., Am. Petroleum Inst. v. Cooper*, 718 F.3d 347, 359 (4th Cir. 2013) (citing *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991)).

show box as soon as it was notified that the box was not used in commerce. Accordingly, without determining whether Reynolds did in fact act unfairly, it is clear Handi-Foil was not injured by any such activity.

Finally, the public interest would benefit from an injunction. Handi-Foil's specific intent to mimic the Reynolds Wrap trade dress was made evident at trial. It is therefore not surprising that the jury found Handi-Foil's trade dress infringement was willful. This finding also indicates the jury's belief that future consumers may be misled. An injunction would serve the public interest by mitigating this future risk. *See Lone Star*, 43 F.3d at 939 ("[A]an injunction in this case would serve the public interest by preventing future consumers from being misled." (citing *AMP Inc.*, 540 F.2d at 1184-85; *Commc'ns Satellite Corp.*, 429 F.2d at 1251)).

Having found that a permanent injunction is appropriate, for the purposes of this opinion the Court will refrain from immediately specifying the scope of such an injunction. The Court has invited the parties to meet in order to reach an agreement on the appropriate scope of this relief. If the parties fail to reach such an agreement within a reasonable timeframe, the Court will issue a subsequent order articulating the scope of the injunction.

### III.   Costs & Attorney's Fees

Each party has moved for costs pursuant to the Federal Rules of Civil Procedure. Under Fed. R. Civ. P. 54(d)(1) costs "should be allowed to the prevailing party." As the rule makes clear, the decision to award costs lies within the Court's discretion. *See Marx v. Gen. Revenue Corp.*, 131 S. Ct. 1166, 1172-73 (2013) ("the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court. (citing *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012)). This discretion, however, can be displaced by federal statute. *See* Fed. R. Civ. P. 54(d)(1).

24

In their cross-motions for costs each party claims to be the "prevailing party" under Rule 54. The jury's verdict was split, and the parties unsurprisingly agree that neither had to succeed on every individual count in order to be the "prevailing party." The Fourth Circuit has defined a "prevailing party" as the "one who succeeds on any significant issue and thereby achieves some of the benefit he sought in commencing the litigation." *See Abernathy v. Clarke*, 857 F.2d 237, 239 (4th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the jury's split decision, each party can claim to have succeeded on a significant issue in the case. But, by obtaining a permanent injunction, only Reynolds achieved some of the benefit it sought in commencing the litigation. Any question as to which party "prevailed" can be laid to rest by Handi-Foil's exhaustive requests that the jury's verdict be set aside. Accordingly, the Court finds that Reynolds is the prevailing party and is entitled to its reasonable costs.[11]

In addition to its costs, Reynolds has moved to collect attorney's fees. 15 U.S.C. § 1117 allows the Court to award reasonable attorney fees to the prevailing party in "exceptional cases." The Supreme Court recently clarified what constitutes such an "exceptional case." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Under this clarification, a case is exceptional when it "stands out from others with respect to the substantive strength of the party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* Whether or not a case is deemed "exceptional" is a matter left to the Court's discretion. *Id.* In view of this standard, this case cannot be deemed "exceptional." Accordingly, the Court rejects Reynolds' requests for attorney's fees.

---

[11] Given the jury's finding of willful trade dress infringement, section 1117(a) also allows Reynolds to recover any damages sustained as well as Handi-Foil's profits. The jury, however, found that Reynolds failed to prove Handi-Foil earned profits from the infringing products. Additionally, Reynolds failed to adequately prove it suffered monetary damages. Consequently, the Court limits Reynolds' recovery to the costs of the action.

## CONCLUSION

For the reasons set forth above, and for good cause shown, the clerk shall enter judgment in accordance with the jury's verdict in favor of Reynolds on Count 3 (trade dress infringement). The court also grants a permanent injunction in Reynolds' favor, the scope of which will be determined at a future date.  Reynolds shall be entitled to collect its reasonable costs, but no further damages or fees.

/s/

Liam O'Grady
United States District Judge

July [ ], 2014
Alexandria, Virginia